IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOURDEAN LORAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-538-SLR |
| | ) |
| TETRA TECH INC., | ) |
| | ) |
| Defendant. | ) |

Jourdean Lorah, Wilmington, Delaware, pro se Plaintiff.

David E. Wilks, Esquire, Reed Smith LLP.  Counsel for Defendant Tetra Tech Inc.

**MEMORANDUM OPINION**

Dated: March 31, 2008
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

On August 31, 2006, Jourdean Lorah ("plaintiff"), proceeding pro se, filed suit against Tetra Tech Inc. ("defendant") alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (D.I. 2, 17) Presently before the court is defendant's motion to dismiss, plaintiff's response thereto, and plaintiff's motion for hearing. (D.I. 21, 22, 30, 31, 32, 33) For the reasons set forth below, the court will grant in part and deny in part the motion to dismiss and will deny the motion for hearing. (D.I. 21, 31)

## II. BACKGROUND

Although at issue is defendant's motion to dismiss, plaintiff has submitted documents from which the following facts are evinced:[1]

In 2005, plaintiff was taking courses in architectural engineering at Delaware Technical & Community College in Newark, Delaware. (D.I. 17) In March 2005, plaintiff executed an "Employment Agreement" ("the Agreement") with Synerfac Technical Staffing, New Castle, Delaware ("Synerfac"). The Agreement begins by welcoming plaintiff

> as the newest member of the Synerfac Team. We enjoy and maintain

---

[1] When considering a rule 12(b)(6) motion, the court accepts as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (citation omitted). Although a district court may not consider matters extraneous to the pleadings, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." Id. (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

>an excellent reputation with both Clients and Employees, and recognize this reputation is acquired only through the talent and effort you bring to your new position. We trust that you will help us to enhance this reputation and that your association with us will be professionally and financially rewarding.

(Id.)

The Agreement required plaintiff to submit her Synerfac time sheets to the local Synerfac office in order to collect her wages. Aside from wages, Synerfac also offered plaintiff participation in the Synerfac Group Insurance Program, which included the Aetna HMO (Super Value Plus) Plan, the Aetna Quality Point of Service Plan, and the MetLife Dental Plan. Finally, the Agreement included plaintiff's "Assignment Information," with defendant Tetra Tech Inc. noted as the "Client." Plaintiff was to start work with defendant on March 22, 2005; she was to report to John Traynor and was going to be paid $14.00 an hour, with an hourly wage of $21.00 after forty (40) hours worked in any one (1) week. (Id.) The record includes the following documents related to the wages paid for the hours plaintiff worked at Tetra Tech: Tax returns listing Synerfac, Inc. as the employer; Synerfac time sheets reflecting the hours worked for Tetra Tech as "client"; and Tetra Tech "survey work logs" completed by plaintiff, describing her work tasks.

Plaintiff started work for defendant on March 22, 2005. According to papers submitted by plaintiff in connection with the pending motion practice, she asserts that she had

>an agreement with my supervisor at Tetra Tech, Inc. in Christiana, Delaware, to be hired as a survey assistant as well as an administrative assist[ant]. I was also told that I would receive six months of training before a decision or a review concerning a position as an employee of Tetra Tech. During my contract

> w[ith] Tetra Tech (through Synerfac), I was demoted from a survey assist[ant]. When I began the contract I had a computer and a desk. Then I was asked to share a work station because a male employee who was younger than me needed my desk. Several employees knew that I was older. The younger employees who were hired after me received a desk and training. I was also referred [to] as Jordan Lorah who is a nineteen y[ear] old man. I corrected my colleagues, but they continued to harass me and lower my dignity. Various colleagues referred to me as someone who was ill w[ith] a contagious illness. This was untrue. My supervisor was aware of the right to sue letter that I had received. He also know that I was not represented by an attorney.

(Id.)

On or around June 6, 2005, plaintiff went to Synerfac with her complaint of harassment. On June 14, 2005, plaintiff's contract was terminated. On June 20, 2005, plaintiff filed a complaint of retaliation with the EEOC, charging Synerfac and defendant with retaliation based upon the above allegations. On October 25, 2005, plaintiff filed a charge of discrimination with the Delaware Department of Labor against defendant, asserting that on June 14, 2005 she was subjected to retaliation, as well as discrimination based on sex, age and disability, giving the following as supporting "particulars:"

> I. I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees received this training including a younger female who was hired by Respondent. On or about June 14, 2005, Respondent had my employer terminate my contract. I was replaced by a younger male.
>
> II. I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). During my interview, a Respondent supervisor asked me if I had a disability.

> After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.

(Id.)

Plaintiff received her right to sue letter in June 2006. Plaintiff timely filed the instant lawsuit.

## III. STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, –U.S.–, 127 S.Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, –U.S.–, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Fed. R. Civ. P. 8. A complaint does not need detailed factual allegations, however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). Plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. Phillips v. County of Allegheny, –F.3d–, No. 06-2869, 2008 WL 305025, at *5 (3d Cir. 2008). "[W]ithout

some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. Id. (citing Twombly, 127 S.Ct. at 1965 n.3.) Therefore, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips v. County of Allegheny, 2008 WL 305025, at *6 (quoting Twombly, 127 S.Ct. at 1965 n.3.) "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id. Because plaintiff proceeds pro se, her pleading is liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

Defendant argues that dismissal is appropriate because plaintiff was not its employee, she fails to articulate what claims she seeks to bring, and she fails to articulate any cognizable claims.

## IV. DISCUSSION

### A. Employer

Title VII and the ADA regulate the relationship between employers and employees. As a result, in Title VII and ADA cases, the relevant question is whether defendant was plaintiff's employer under the statute. If defendant was an employer, as defined by the statute, it may be sued under Title VII or the ADA. Doe v. William Shapiro, Esq. P.C., 852 F. Supp. 1246, 1253 (E.D. Pa. 1994). Title VII authorizes a cause of action only against employers, employment agencies, labor organizations, and training programs, see 42 U.S.C. § 2000e-2, just as the ADA similarly covers only

employers, employment agencies, and labor organizations, see 42 U.S.C. § 12111(2).

When a statute containing the term "employee" does not define the term, or defines it in a completely circular fashion, the court should apply the common law definition. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-24 (1992).[2] In Darden, the Supreme Court set forth relevant factors to determine whether a hired party is an employee under the general common law of agency and considers the hiring party's right to control the manner and means by which the product is accomplished using the following factors: (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party. Darden, 503 U.S. at 323-24 (citing Community for Creative Non-Violence v. Reid, 490 U.S. 730, 740 (1989)).

Regarding the issue of plaintiff's employer, the court does not determine whether plaintiff is technically an employee of defendant, but instead must discern "the level of control an organization asserts over an individual's access to employment and the

---

[2]Darden applies to Title VII cases. See Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 11 (1st Cir. 2004) (applying the Darden rationale to Title VII because Title VII and ERISA contain the same definition of "employee").

6

organization's power to deny such access." Graves v. Lowery, 117 F.3d 723, 728 (3d Cir. 1997) (citing Sibley Mem'l Hosp. v. Wilson, 488 F.2d 1338, 1342 (D.C. Cir. 1973)). "[T]he precise contours of an employment relationship can only be established by a careful factual inquiry." Id. at 729 (citation omitted).

It is evident from the record that plaintiff entered into an "Employment Agreement" with Synerfac, that Synerfac paid plaintiff both her wages and benefits, and that Synerfac was characterized as plaintiff's employer for federal income tax purposes. Under the case law, however, it is possible for both Synerfac and defendant to be "employers" and the record is insufficiently developed to determine if defendant exercised sufficient control over plaintiff's work, as in supervising her and monitoring her performance, to qualify as an employer. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-24 (1992); Graves v. Lowery, 117 F.3d 723, 728 (3d Cir.1997); Williams v. Caruso, 966 F. Supp. 287 (D. Del. 1997); Cameron v. Infoconsulting Int'l, LLC, No. 04-4365, 2006 WL 1450842 (E.D. Pa. 2006); Cimino v. Borough of Dunmore, No. 02-1137, 2005 WL 3488419, at *8 (M.D. Pa. 2005); Rodriguez v. Lauren, 77 F. Supp. 2d 643, 647-48 (E.D. Pa. 1996). Therefore, the court cannot dismiss the complaint on this basis at this time.

### B. Age Discrimination

Defendant moves for dismissal of plaintiff's age discrimination claim on the basis that she has failed to plead that she was discriminated against in any way "because of" her age. To state a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., plaintiff must allege that (1) she is over forty; (2) she is qualified for the position in question; (3) she suffered from an

adverse employment decision; and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination. Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004). Construing the allegations in the most favorable light, and assuming for the purposes of this motion that defendant employed plaintiff, the court finds that plaintiff satisfies these requirements. Plaintiff's charge of discrimination attached to her complaint alleges, among other things, that she was over 40, that she was promised on-the-job training and she did not receive it while younger employees hired after her did, and that she was discharged and replaced by a younger man. Plaintiff, therefore, has stated an ADEA claim that survives dismissal under Rule 12(b)(6).

### C. Disability Discrimination

Defendant moves for dismissal of the ADA claim on the bases that plaintiff has not pled that she is a disabled person within the meaning of the ADA, that she alleges she is physically fit and that, despite the fact that she responded affirmatively to an interview question about whether she had any disabilities, she was "successfully placed" with defendant. Plaintiff's disability discrimination claims appears to rest upon her allegation that when Traynor interviewed her, he asked if she had a disability. Plaintiff alleges that "you are not allowed to ask if one has a disability upon seeking employment." (D.I. 17)

In order to state a claim under the ADA, a plaintiff must first establish that he or she "(1) has a 'disability'; (2) is a 'qualified individual'; and (3) has suffered an adverse employment decision because of that disability." Tice v. Centre Area Transp. Auth., 247 F.3d 506, 512 (3d Cir. 2001) (citation omitted). Plaintiff fails to state a claim under the

ADA. While she alleges that she has asthma, she also alleges that she is physically and mentally fit. Notably, she does not allege that she suffered an adverse employment decision due to her disability. Indeed, she alleges that she was hired despite informing defendant that she suffered from asthma. Accordingly, the court will grant the motion to dismiss the ADA claim.

### D. Gender Discrimination

Defendant moves for dismissal of plaintiff's gender discrimination claim arguing that she failed to explain or reference her job title, duties or qualifications and that her allegation that males were hired before and after her placement with defendant is not tantamount to discrimination. Defendant also argues that there are no allegations it took adverse action against plaintiff under circumstances giving rise to an inference of discrimination.

In order to state a gender discrimination claim under Title VII, plaintiff must allege that she: (1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n.1, 352, 356 (3d Cir. 1999)).

Assuming for the purposes of this motion that defendant employed plaintiff, the court finds that plaintiff has not adequately alleged a Title VII gender discrimination claim. Throughout her papers, plaintiff complains about the disparate treatment she

received vis a vis a younger female, Erin Moran. Plaintiff cannot complain, on the one hand, about female colleagues being treated better than she was and, on the other hand, complain that she was not treated well because she was female. Therefore, the court will grant the motion to dismiss based upon the gender discrimination issue.

### E. Retaliation

Defendant moves for dismissal of plaintiff's retaliation claim on the basis that there are no allegations of causation. Plaintiff did not respond to this portion of defendant's motion to dismiss.

To state a claim for retaliation under Title VII, plaintiff must allege that: (1) she engaged in a protected activity; (2) she subsequently suffered an adverse employment action; and (3) there was a causal connection between her engaging in the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006). It is unclear if plaintiff's complaints about harassment could be construed as such since the harassment is not described. Nonetheless, liberally construing the allegations, plaintiff's complaints to Synerfac that she was required to give up her desk for her male co-worker could be construed as protected activity. Additionally, her dismissal three months prior to the end of her six month contract constitutes an adverse employment action. Defendant, however, argues that plaintiff has failed to link the early termination of her contract to her meeting with a Synerfac employee who was not defendant's employee.

When examining the issue of causation, courts have tended to focus on two factors: (i) the temporal proximity between the protected activity and the alleged discrimination, and (ii) the existence of a pattern of antagonism in the intervening

period.  See Jensen v. Potter, 435 F.3d 444, 450 (3d Cir. 2006).  Timing alone raises the requisite inference of causation when it is "unusually suggestive" of retaliatory motive.  Id.  To be "unusually suggestive" of retaliatory motive, the temporal proximity must be immediate.  Compare Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (finding the requisite causal link when the adverse employment action occurred two days after the protected activity) with Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760-61 (3d Cir. 2004) (finding a two-month lapse between the protected activity and the adverse employment action to be insufficient).

Here, plaintiff alleges that she was terminated eight days[3] after she complained to Synerfac that she was required to give up her desk for a younger male and that she was being harassed.  Given the temporal proximity from the date plaintiff complained until the date her contract was terminated and, assuming for the purposes of this motion that defendant employed plaintiff, the court finds that plaintiff adequately alleges causation to support a Title VII retaliation claim.  Therefore, the court will deny the motion to dismiss based upon the retaliation issue.

## V. CONCLUSION

Based upon the foregoing analysis, the court will grant in part and deny in part defendant's motion to dismiss.  The court will deny plaintiff's motion for hearing.  An appropriate order will issue.

---

[3]Plaintiff complained on June 6, 2005, and eight days later, on June 14, 2005, her contract was terminated.  Defendant incorrectly argues that plaintiff was terminated ten days after she made her complaint.