

**Katharine V. Jackson**
Direct Phone: +1 302 778 7510
Email: KJackson@reedsmith.com

Reed Smith LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801-1163
+1 302 778 7500
Fax +1 302 778 7575
www.reedsmith.com

April 16, 2008

**VIA ECF**
The Honorable Sue L. Robinson
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124
Lockbox 31
Wilmington, DE 19801

**Re: Lorah v. Tetra Tech, Inc., C.A. No. 06-00538**

Dear Judge Robinson:

I am writing on behalf of Tetra Tech, Inc., this firm's client and the defendant in the above-referenced civil action, regarding the discovery filed today with the Court.

Pursuant to this Court's Local Rules and Your Honor's Order of March 31, 2008, I have electronically filed on behalf of Tetra Tech, Inc. "all documents within [Tetra Tech's] possession or control that relate to Plaintiff's work at Tetra Tech from March 16, 2006 through June 14, 2005, including all documents to or from Synerfac."

However, certain documents have been withheld and/or redacted on the basis of work product, attorney/client privilege, and/or confidentiality of other employee(s)' personnel and/or financial information. A privilege log will be electronically filed with the Court and served upon the plaintiff as soon as possible.

Please do not hesitate to contact me if Your Honor has any questions or concerns.

Respectfully submitted,

*/s/ Katharine V. Jackson*

Katharine V. Jackson (Del. I.D. No. 4800)

Enclosures

cc:    Sara A. Begley, Esq.
       Shannon E. McClure, Esq.
       Jordean Lorah (via US mail) (w/enclosures)

NEW YORK ◆ LONDON ◆ HONG KONG ◆ CHICAGO ◆ WASHINGTON, D.C. ◆ BEIJING ◆ PARIS ◆ LOS ANGELES ◆ SAN FRANCISCO ◆ PHILADELPHIA ◆ PITTSBURGH
OAKLAND ◆ MUNICH ◆ ABU DHABI ◆ PRINCETON ◆ NORTHERN VIRGINIA ◆ WILMINGTON ◆ BIRMINGHAM ◆ DUBAI ◆ CENTURY CITY ◆ RICHMOND ◆ GREECE

4/16/08 5:08 PM

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a copy of **"all documents within [Tetra Tech's] possession or control that relate to Plaintiff's work at Tetra Tech from March 16, 2006 through June 14, 2005, including all documents to or from Synerfac"** was served upon the following parties via United States, first class mail, postage prepaid, this 16th day of April, 2008:

Jordean Lorah
114 Walls Ave.
Wilmington, DE 19805


*/s/ Katharine V. Jackson*
Katharine V. Jackson (Del. I.D. No. 4800)

4/16/08 5:12 PM

EEOC Form 161-B (10/96)

## U.S. Equal Employment Opportunity Commission

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: **Ms. Jourdean Lorah**
**114 Walls Avenue**
**Wilmington, DE 19805**

From: Equal Employment Opportunity Commission
Philadelphia District Office
21 South Fifth Street
Philadelphia, PA 19106-2515

[    ]  *On behalf of person(s) aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2005-02819 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ **X** ]    More than 180 days have passed since the filing of this charge.

[    ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ **X** ]    The EEOC is terminating its processing of this charge.

[    ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ **X** ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[    ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso, District Director

June 21, 2006

*(Date Mailed)*

Enclosure(s)

cc:    Ms. Amy Clark (for Respondent)

*Civil Engineer L-1*

*(Start date 4/18/05 )*

# Erin L. Moran

erin@mindviz.com
406 Sierra Court
Newark, DE 19711
646-327-2216

**Objective:**

To obtain a full time permanent position in an engineering organization that will allow me to utilize and expand my knowledge in Civil Engineering. Availability: May 15th, 2005

**Education:**

**Rochester Institute of Technology, (Rochester, NY)**
*Bachelor of Science, Civil Engineering Technology*, May 2004

**Related Courses:**

| | | |
|---|---|---|
| Hydraulics | Land Use Planning | Engineering Economics |
| Construction Safety | Pavement Design | Chemistry of Waste Water Treatment |
| Plane and Route Surveying | Materials of Construction | Applied Mechanics of Materials |
| Elements of Building Construction | Statics | Structural Analysis |
| Engineering Geology | C++ | Contracts and Specifications |
| Technical Writing | Technical Communication | Transportation |
| AutoCAD | Physics | Chemistry |
| Labor Relations | Strength of Materials | Electronics |
| Elementary Soils | Civil Engineering Graphics | Water & Wastewater Transport Systems |
| Elementary Structures | Dynamics | Principles of Treatment: Water & Wastewater |
| Structural Design Concrete | Soils Mechanics & Foundations | |

**Technical Skills:**

AutoCAD 2003, Microstation J & V8, InRoads, Land Development (AutoDesk), SurvCAD, ArchiBUS, C++, Excel, Word, PowerPoint, Materials Testing, Manual Drafting, Surveying (EDM & GPS), STADD, Pictometry.

**Employment:**

- **Johnson, Mirmiran & Thompson,** Newark, DE (June 2004 – Current)
Employed a *Design Engineer*. Performed transportation and highway designs and calculations for several projects for DelDOT including: SR 141 Advanced Utility Relocations and Road Contract, Elkton Road traffic study, & US 13 Pedestrian Improvements.
- **Monroe County, Dept of Environmental Services,** Rochester, NY (Winter 2003)
Employed a *Civil Engineering Intern*. Designed and updated county buildings and bridges with AutoCAD under supervision of Mechanical Engineer. Performed space and area calculations. Observed work in progress on large bridges and foundations.
- **Town of Brighton, Dept. of Public Works,** Rochester, NY (March 2003 - August 2003)
Employed as a *Civil Engineering Intern*. Member of a survey party and performed SurvCAD/ AutoCAD design work. Projects included new road design, drainage design, Brighton Landfill survey, map checks for property and working with town maps and records. I also participated in drainage complaints from residents and engineering seminars to engineer better communities.
- **Epstein Engineering, P.C.,** Manhattan, NY (May 2002 - August 2002)
Employed as a *Civil Engineering Intern* for the top ranked co-op engineering/architectural firm in New York City; Performed quantity calculations and AutoCAD design drafting work for details and elevations. Also performed building inspections for repairing large hi-rise buildings throughout Manhattan, New York.

**Affiliations & Activities:**

-**Delaware Bobcats Ice Hockey Team,** Assistant Captain (current)
-**Rochester Institute of Technology, NCAA Division III Ice Hockey Team,** Alumnae Player
-**American Society of Civil Engineers,** Member
-**Delta Zeta National Sorority,** Vice President, 1999-2001, Alumnae Chapter of Rochester, Present
-**Los Angeles Kings,** Volunteer and Part-time Hockey Coach developing Hockey Skills and team leadership to underprivileged children throughout Los Angeles by promoting the sport of hockey.

References Furnished Upon Request

TT0002

 **TETRA TECH, INC.**

*[handwritten: Original Sent to EEOC via FedEx 12/30/05]*

December 30, 2005

George King, Jr.
Supervisory Investigator
Philadelphia District Office
21 South 5th Street, Suite 400
Philadelphia, PA 19106

**Re:     Charge No. 170-2005-02819**

Dear Mr. King:

This letter constitutes the written statement of position for Tetra Tech Division (Tetra Tech) in the above-captioned Notice of Charge. As the facts set forth below make clear, there is no basis for Ms. Jourdean Lorah's allegation of discrimination on the basis of retaliation, gender, age or disability. Tetra Tech's employment decisions regarding Ms. Lorah were not motivated by retaliation, gender, age, disability or any other unlawful basis.

Tetra Tech wishes to cooperate with the department and its investigation into this matter. If you have further questions or need any additional information upon reviewing this response, please contact me at (626) 470-2516.

Sincerely,

Amy Clark
Human Resources Director
Tetra Tech Division

3475 East Foothill Boulevard, Pasadena, CA 91107
Tel 626.351.4664 Fax 626.351.5291

TT0003

**REQUEST FOR INORMATION AND REQUEST FOR POSITION STATEMENT**
**by Tetra Tech Division**

**Charge number: 170-2005-02819**

**PART I – GENERAL INFORMATION**

1.  **State the correct name and address of the specific installation charged.**

    Tetra Tech Division
    56 West Main Street
    Christiana, DE 19702

2.  **Briefly identify the primary function of the establishment charged and where incorporated.**

    The primary function of the establishment charged is architecture and engineering consulting. Tetra Tech was incorporated in Delaware.

3.  **State the number of persons (including supervisors and managers and part-time employees) employed at the specific installation charged and by the organization as a whole on the most recent payroll date.**

    Installation – 81
    Organization - 797

## PART II – POSITION STATEMENT

Provide a position statement responding to the facts and circumstances surrounding each alleged discriminatory act, and describe and explain your reasons for taking such actions, along with applicable supporting documentation.

I.    **"I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005."**

Tetra Tech acknowledges that Ms. Lorah was brought in to work for Tetra Tech through the temporary agency Synerfac on March 22, 2005.

   **"After I began my employment, I never received the on-the-job training that was promised."**

Tetra Tech denies this allegation. Ms Lorah was brought in to provide administrative assistance in the Survey Department. During her interview with John Traynor, Ms. Lorah was presented with a listing of job responsibilities for the position of Survey Assistant – Office (see Attachment A). At that time Ms Lorah admitted that she had no knowledge of AutoCADD software and Mr. Traynor said we would provide basic training for her in that program.

Once on the job, Ms. Lorah was partnered with another employee, Casey Grabowski, for a full-day training session in AutoCADD. At that time, Ms. Lorah's computers skills were assessed as being below the remedial level. She was given some additional self-study lessons for AutoCADD as well as the Illustrated Guide for Windows 2000 to assist with basic questions on Word and Excel. Additionally, Mr. Traynor and others made themselves available to answer Ms Lorah's computer related questions.

   **"Younger employees received this training including a younger female who was hired by the Respondent."**

Tetra Tech denies that there was a younger female employee in the survey department in a similar position to Ms. Lorah. The only other female in the department, Erin Moran, is an Engineer with a different level and scope of job responsibility than Ms. Lorah. Ms Moran already possessed the basic skills in AutoCADD was provided with more advanced training based on her job responsibilities (see Attachment B).

   **"On or about June 14, 2005, Respondent had my employer terminate my contract."**

Tetra Tech acknowledges that on June 14, 2005, Synerfac terminated Ms. Lorah's assignment with Tetra Tech per Tetra Tech's request.

   **"I was replaced by a younger male."**

Tetra Tech denies that Ms. Lorah was replaced by a younger male. The duties previously assigned to Ms Lorah were reassigned to a female. Tetra Tech is not aware of this individuals age as she is an employee of Synerfac temporary agency on assignment at Tetra Tech.

II.    **"I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA")."**

Tetra Tech denies all allegations in this statement. While Ms. Lorah was working with Tetra Tech, we were not aware of Ms. Lorah's age, or of any disability she may have. Additionally, the duties previously assigned to Ms. Lorah are now assigned to a female.

**"During my interview, a Respondent supervisor asked me if I had a disability."**

During the interview with Ms. Lorah, Mr. Traynor asked if there was anything that might prevent Ms. Lorah from being able to perform the job as outlined. In response to this question, Ms. Lorah did not disclose any disability.

**"After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married."**

Tetra Tech denies that Ms. Lorah was asked by her supervisor if she had any children or had ever been married.

## PART III – RESPONSE TO THE CHARGE

1. **Copies of all Respondent documents, correspondence or memoranda, whether initiated by Respondent, by Charging Party or by other sources, concerning the Charging Party insofar as they relate to the allegations contained in the charge.**

   Copies of the following are attached (see Attachment C);
   - Ms. Lorah's cover letter and resume
   - Notes taken by Ms. Susan Brewer regarding complaints made by Ms. Lorah and Tetra Tech's response to those complaints.
   - A notice Ms. Lorah requested to be posted in the Survey Department.

2. **Copies of the applicable policies or procedures relating to each and every one of the act(s) alleged to be discriminatory.**

   Attached is Tetra Tech's Corporate EEO Statement and Code of Employee Conduct (see Attachment D).

3. **A listing by name and job title of all officials who participated in or made decisions relative to the issues raised in the charge and what role was played by each named official. Provide statements from each person in response to all allegations of discriminatory treatment for which that official was in any manner involved.**

   The following individuals participated in the decisions relative to this complaint:

   - Susan Brewer, Manager General Services and Administration - Ms Brewer was responsible for coordinating with Synerfac temporary agency and investigating the complaints raised by Ms. Lorah.

   - Bob Maffia, Location Manager - Mr. Maffia is responsible for managing the Christiana, DE office. He was made aware of the complaints raised by Ms. Lorah and that Ms. Brewer was unable to substantiate her complaints. Mr. Maffia and Ms. Brewer together decided to terminate Ms. Lorah's assignment with Tetra Tech through Synerfac temporary agency.

   - John Traynor, Survey Department Manager - Mr. Traynor was the supervisor of the Survey Department and the person to whom Ms. Lorah reported.

   All of the above individuals state that the decisions regarding Ms. Lorah's assignment with Tetra Tech were not based on her age, gender or disability and instead were based on her inability to work well with others in the survey department.

4. **For any person(s) who allegedly received more favorable treatment than Charging Party (as identified on the face of the charge or otherwise), provide documents which show how each person was treated and the reason(s) for such treatment.**

   Ms. Lorah's complaint alleges that a younger female employee received on-the-job training that was denied Ms. Lorah. As our position statement outlines, there

were no other younger female employees in the Survey Department in a similar position to Ms. Lorah. The only other female in the department, Erin Moran, is an Engineer. Ms. Moran's position required a higher level of proficiency in computer drafting programs including AutoCADD. Since Ms. Moran already possessed the basic skills in this software program (see Attachment E), she received more advanced on-the-job training to accommodate her job responsibilities.

5. **For charges that include an allegation of discriminatory termination, layoff or demotion, provide documents to show the replacement's: a) name; b) date of hire, transfer or promotion into the position; c) relevant qualifications for the position; and d) starting salary.**

Ms. Lorah's position was replaced by Ms. Linda Whiteford on June 20, 2005. Ms. Whiteford was contracted through Synerfac temporary agency at a rate of $16.50 per hour. Ms. Whiteford's qualifications are outlined in her resume (see Attachment F).

6. **Not Applicable**

7. **Not Applicable**

8. **For charges which include an allegation of disability-based discrimination, provide documents which establish Respondent's understanding of the nature of the disability(ies) and any work-related restrictions or limitations.**

Tetra Tech was not aware of Ms. Lorah's disability or any work-related restrictions or limitations.

9. **For charges that include an allegation of retaliation:**

   a. **Provide a copy of any grievance, complaint, formal charge or any other written concern raised by Charging Party at any time during his/her employment that includes an allegation of discrimination (with respect to Charging Party or on behalf of other persons) based on race, color, religion, sex, national origin, age or disability.**
   b. **Provide a summary of any similar allegation not reduced to writing by Charging Party or his/her representative.**
   c. **Specify each management official identified in Part III(3) who was aware of any or all of the complaints identified in parts (a) and (b) above and the approximate date he/she first became aware of each such complaint(s).**

Attached are the notes taken by Ms. Susan Brewer regarding Ms. Lorah's complaints and Tetra Tech's response to said complaints (see Attachment C). Mr. John Traynor was first made aware of Ms. Lorah's complaint by Ms. Lorah on April 29, 2005. Ms. Lorah then contacted Ms. Susan Brewer on May 11, 2005 regarding the issue. Ms. Brewer informed Mr. Bob Maffia on approximately May 16, 2005.

10. **If Charging Party has raised any or all of the allegations contained in this charge with any other internal or external source or agency, provide a copy of the**

**grievance/complaint, Respondent's response to the grievance and/or complaint, and a copy of the resulting findings or order, if any.**

Tetra Tech is unaware if Ms. Lorah has raised any or all of the allegations contained in this charge with any other internal or external source or agency.

11. **State whether this matter has been resolved, and if not, how the matter might be resolved and your proposal for resolution.**

This matter has not yet been resolved. Tetra Tech believes there is no basis for Ms. Lorah's allegation of discrimination on the basis of retaliation, gender, age or disability and therefore wishes to have this charge dismissed.

ATTACHMENT A

TT0010

JOB DUTIES FOR SURVEY ASST.

**Survey Assistant – Office**

Survey Assistant Field

Quality Control / Quality Assurance
(includes: transmittals, spelling, basic standards, consistency, proofreading, etc.)

Proposal Preparation

Clerical work includes organizing folders, filing, deliveries, etc.

CAD Drafting/Training

Assist Survey Manager (call clients, expense reports, letters, A/R, etc.)

ATTACHMENT B

TT0012



# TETRA TECH, INC.

## JOB DESCRIPTION – Civil Engineer L-1

**Requirements** – Minimum of BS degree in civil engineering. Excellent writing and communication skills required. Must be computer literate and have knowledge of AutoCAD 2000, Eaglepoint and or Land Development Desktop.

**Job Responsibilities** – Performs tasks requiring utilization of basic engineering and analytical techniques. Independently performs engineering surveying, civil design document preparation, construction monitoring, grading design, stormwater management design and erosion and sediment control design. Work is reviewed for application of sound professional judgment.

**Position Reports To** – Department Manager

**Physical Requirements** - The job will require, but not be limited to, the following physical requirements:

The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee is regularly required to talk or hear. The employee frequently is required to stand; walk; sit; use hands to finger, handle, or feel; and reach with hands and arms. The employee is occasionally required to climb or balance; stoop, kneel, crouch, or crawl; and taste or smell. The employee must regularly lift and/or move up 10 pounds, frequently lift and/or move up to 25 pounds. Specific vision abilities required by this job include close vision, distance vision, color vision, peripheral vision, depth perception, and ability to adjust focus.

**Work Environment** – The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee may be expected to visit job sites, where he or she may be exposed to moving mechanical parts and outside weather conditions. The employee is occasionally exposed to wet and/or humid conditions, fumes and airborne particles, toxic or caustic chemicals, and vibration. The noise level in the work environment is usually moderate.

**Language Skills** – Ability to read and interpret documents such as engineering drawings and specifications, safety rules, operating and maintenance instructions, and procedure manuals.



**JOB DESCRIPTION – Civil Engineer L-1**

Page 2

Ability to write routine reports and correspondence.  Ability to speak effectively before groups of customer or employees of organization.

**Mathematical Skills** – Ability to calculate figures and amounts such as commissions, proportions, percentages, area, circumference, and volume.  Ability to apply concepts of algebra, geometry, trigonometry and basic calculus.

**Reasoning Ability** – Ability to apply common sense understanding to carry out instructions furnished in written, oral, or diagram form.  Ability to deal with problems involving several concrete variables in standardized situations.

*I understand the requirements of the position:*

_____          _____

*Signature of applicant or employee required*                           *Date*

H:\RECRUITM\Engineer - Civil-L-1.doc

TT0014

ATTACHMENT C

Jourdean Lorah
114 Walls Avenue
Wilmington, Delaware  19805


February 22, 2005


TetraTech
Attention-John Traynor
56 W. Main Street  Suite 400
Christiana, Delaware  19702


Dear John Traynor,

　　The following letter is concerning a full time position as a civil designer or draftsman. Other positions related to various projects would be considered. Recently, I spoke with you about the various possibilities for a position as a civil designer.

　　Presently, I have six years of experience working as a designer among architects and engineers on both residential and commercial projects. All projects have consisted of marketing for future and potential clients, space planning, drafting of floor plans, elevations, renderings and the selection of materials and finishes. Other related positions have included surveying of residential lots and working with a field crew to obtain field coordinates.

　　My educational background includes; The Maryland College of Art & Design, The International Institute of Interior Design and Northern Virginia Community College. Currently, my credentials are a degree in Science. Other areas of interest include art, marketing and teaching. Your consideration to review my credentials for future opportunity would be most appreciated.


Sincerely,

Jourdean Lorah

302-381-0361  M  P  2-choice
225-0540    1st
residential

# jourdean sarah lorah

## Vital Statistics

114 Walls Avenue
Wilmington, Delaware 19805

## Objective

To work full time as a civil designer or draftsman among architects, engineers or designers on various commercial and residential projects.

## Highlights

- Marketing for future potential clients regarding expansions, merges and consolidations.
- Creative planning for visual presentations.
- Teaching all academics to special education or children who have learning disabilities.
- Planning creative projects for recreational positions during the summer.
- Drafting plans or deeds for architecture or surveying.
- Drawing and illustrating for visual communication.

## Technical Skills

- Drafting of architectural plans, elevations and renderings.
- Surveying and engineering for residential land lots.
- Working with a field crew to obtain coordinates for surveying a residential land lot.
- Designing commercial and residential interiors for architectural and aesthetic needs.
- Drawing and illustrating visuals to meet the aesthetic need of the client.
- Marketing fine art work to future clients for various projects.
- Drawing and painting for production.

## Work Related Experience

- Engineering - Drafting residential land lots and working with a field crew to obtain the coordinates for the deeds.
- Designing - Commercial and residential interiors for various design firms.
- Architecture - Drafting of elevations and plans for commercial and residential projects.

TT0017

**Page Two**

# jourdean sarah lorah

- **Classroom Teaching** - A creative and meaningful approach was taken to encourage the learning experience, participation and active involvement.
- **Marketing** - Contacting future prospective clients for consolidations, merges and expansions. Fine art work is also marketed to meet the client's aesthetic needs.

## Work History

- June '02 - Present - Dale Larsen -Sport's Historian -Marketing-De.
- May '03 - August '03 - Private Health Care - De.
- Sept. '02 - December '02 -Librarian -Ocean City Christian School - Md.
- Jan. '01 - June '01 - Substitute Teacher -Fairfax County Public Schools - Va.
- Sept. '99 - June '00 - Teacher - Fairfax Brewster School - Va.
- June '99 - Aug. '99 - Teacher - Adult Education/Fairfax County Public Schools - Va.
- Sept. '98 - June '99 - Teacher - Way of Faith Ministry -Va.
- Sept. '97 - June '98 - Teacher - Cloverlawn Academy -Va.
- Sept. '96 - June '97 - Teacher - Christian Fellowship School - Va.
- 1994-1996 - Attended College to complete my degree.
- 1993 - North American Network - Public Service Announcements - News Directors/Radio- Washington, D.C.

## Credentials and Education

The Maryland College of Art & Design - Silver Spring, Maryland
The International Institute of Interior Design - Washington, D.C. - G.P.A. - 3.35
Northern Virginia Community College -Manassas, Virginia - G.P.A. -3.25-3.45/Honors

Associates Degree in Science with a major in General Studies

## Other

Interests - Painting, drawing, pottery, jewelry design and winter sports.

Susan Brewer
NOTES:
Jourdean S. Lorah – Office Assistant for the Survey Department - Synerfac – Hired
March 22, 2005 $14/per hour.

On May 11, Joudean telephoned me and requested a meeting w/me. Would not tell me
what the meeting was about when asking to schedule it. Meeting: She wanted to post a
notice in the Survey Dept regarding individuals discussing personal issues that may harm
the reputation or morale of others. She spoke to her supervisor, John Traynor on 4/29.
John referred her to me.

- Thursday, May 12, Meeting with Jourdean - she informed me that on April 25
  another employee, Erin Moran, made a comment to her accusing Jourdean of
  being in a brothel. Also, indicated that Erin talked about this topic to other
  employees. This allegedly took place during a visit to the County Planning
  Department. She said that another Synerfac Tt temporary employee, Mat
  Mercado also made a comment directly to Jourdean regarding being in a brothel.

  Jourdean also mentioned Title 7 and the fact that she was older than Erin and the
  other people she is working with.

  Joudean mentioned that George Foxwell (Snyerfac employee) had invited her to
  lunch but, she declined the invitation. She didn't want to stir up more rumors
  about her reputation since George is married.

  When I asked Jourdean for details and what the exact issues were, she could not
  give a straight answer. She changed subjects often and answered out of context.
  I suggested that she may not have heard Erin correctly or perhaps misunderstood
  Erin's comment.

  On the same date, I conducted a meeting w/Erin and Jourdean to discuss the
  problem openly with both parties.

  Erin denied the accusations that Jourdean made and stated that Jourdean was not
  telling the truth.

  I suggested that all parties needed to resolve personality differences and their goal
  should be to be productive and to strive for a positive work environment.
  Personal differences needed to remain after hours and outside of this office, etc.
  They agreed. However, Jourdean left my office in a huff.

  Same date, I also called a meeting w/Jourdean, Mat and myself. Mat did not
  know what the word "brothel" meant either, and also denied having said any such
  thing. I gave the same speech about positive work environment and personality
  issues. Jourdean seemed satisfied at the conclusion of this meeting.

- Monday, May 16 – I telephoned Erin and Jourdean individually to inquire as to how things were going. Both stated that everything was going well. (Jourdean said, "that she would let me know if they weren't").

  I also called Greg Porter of Synerfac to inform the agency that Jourdean was having some problems and how Tetra Tech was handling the issues.

- Thursday, June 2 – I asked Jourdean how things were going and she stated, "great, fine." (with a smile on her face).

  Same date, George Foxwell came to me concerned that Jourdean was claiming some kind of harassment against him because he asked her to lunch. I assured him that she did not. However, she did mention the lunch request and her denial because George is a married man. George said that he only invited her because he didn't want to leave her out from the invitation that he had extended to the rest of the group.

- Tuesday, June 7 – Melissa Palese from Synerfac called me to report that Jourdean had requested a meeting w/her the day before. Melissa said that Jourdean told her the story about Erin and the brothel comment but, indicated that she thought that was resolved now. Jourdean also requested Melissa to help her regarding the following issues:

  > No work space
  > Low pay scale
  > Title 7
  > Training promise – not given. John Traynor does the work and Jourdean watches.
  > Casey Grabowski (DIV employ) spreading rumors about Jourdean and a bacterial infection.
  > Stated to Melissa that she has a "Corporate double who stole Jourdean's identity"
  > John had asked her to attend an Engineering Dinner Meeting that she declined due to her unavailability. (computer class that evening).

  When John was questioned by me, he stated:
  > Jourdean was trained how to use excel, word and windows (which she had no ability in previously). He has provided more than adequate training. She has learned very basic excel, word and windows since coming to Tt. Even though he expected to have to train someone regarding his expectations and Tt requirements, he also trained her in basic computer skills which she did not possess previously.

  > Her work space was changed at the end of last week (6/3) to accommodate additional employees being hired (both outside temp agencies and Tetra Tech). She is now sharing a work station and equipment with a Tetra

Tech employee who works in the field as a survey asst., which she is not happy about.

George Foxwell also appeared in my office today to inform me that Jourdean is angry about her shared work space and is spraying windex so much that the over spray caused another Tetra Tech employee, Dan Luther, to move from his work area to avoid being sprayed.

- Friday, June 10 – My telephone interview with Casey Grabowski –

  I asked Casey if he has had any issues w/Jourdeen in the last week or so that would cause her to think that he was spreading rumors about her. He said, no.

  I asked if he has ever made any comments to others about her physical attributes, her age, her sex or a medical condition. He responded emphatically, no to all.

  He did tell me that he has expressed his dissatisfaction with her skills to her in the past, i.e. – John put her in charge of the daily logs for 10 people. After two weeks of this task, Jourdean was still not doing hers correctly. Casey stated to Jourdean, "This is insanity" and Jourdean interpreted that to mean that Casey accused her of being insane. Casey's opinion is that Jourdean interprets conversations with individuals differently than most. He says that she does not interact well with any of the group.

  I instructed him that our conversation was to be held in the strictest confidence.

Signed:    Susan F. Brewer
Manager, General Services and Administration

**To all Survey Personnel:**

**As a reminder, there shall be no personal issues to be discussed on company time, particularly issues that may intentionally harm someone's reputation or harm their morale.**

**Business relationships grow over time as your colleagues will become more respectful.**

**This also makes the company look and be more professional.**

*Notice that Jourdean wanted permission to... part on 5/11/05. (Which made me meet w/ her).*

TT0022

ATTACHMENT D

TT0023

# TETRA TECH, INC. AND SUBSIDIARIES
## Corporate EEO Statement

It is and will continue to be the policy of Tetra Tech, Inc., all its office locations and subsidiaries, to practice equal opportunity in all aspects of employment. All persons will be treated on the basis of qualifications, competence, and merit without regard to race, color, religion, gender, national origin, ancestry, age, disability, veteran status, or other categories as required by law.

Decisions concerning employment have and will continue to be based on those considerations which further the principle of equal employment opportunity. All other personnel actions such as compensation, benefits, transfers, layoffs, returns from layoff, company-sponsored training, education and tuition assistance, and social programs are and will continue to be administered in accordance with the Company's EEO policy. Every member of management is held responsible for assuring non-discrimination equal employment opportunity within his or her assigned area of responsibility.

Any questions or situations arising regarding equal opportunity should be directed to the Human Resources Department.

TT0024

# TETRA TECH, INC. AND SUBSIDIARIES
# Code of Employee Conduct

## I.    POLICY STATEMENT

The Company is committed to maintaining a work environment that is free of harassment of any kind, including sexual harassment, harassment based upon race, color, sex, religion, sexual orientation, age, national origin, ancestry, citizenship status, marital status, disability, handicap, veteran status or any other reason prohibited by law. The Company will take prompt, appropriate corrective action if violations of this policy are discovered. Such action may include discipline up to and including termination of employment of the offending employee or employees. This policy applies to all Tetra Tech employees at all divisions.

## II.    DEFINITIONS

Harassment includes verbal, physical, and visual conduct that creates an intimidating, offensive, or hostile working environment or that interferes with work performance. Some examples include racial slurs or other offensive remarks; ethnic jokes; posting of offensive statements, posters or cartoons; or other similar verbal, graphic, or physical conduct, including inappropriate language.

Sexual harassment may include any unwelcome action that is sexual in content or implication. This includes but is not limited to:

- Verbal abuse of a sexual or suggestive nature including verbal sexual advances, propositions or requests;

- Unwelcome physical contact or sexual advances;

- Visual conduct, such as leering, making sexual gestures, displaying of sexually suggestive objects or pictures, cartoons or posters;

- Suggestive or obscene letters, notes or invitations; or

- The conditioning of employment benefits or employment conditions on sexual favors, including implied or overt threats concerning an individual's employment status, or implied or overt promises of preferential treatment in employment matters.

Sexual harassment also includes conduct of a sexual nature that interferes with an employee's work performance or creates an intimidating, hostile or offensive work environment. For example, sexual harassment may include such actions as sex-oriented kidding, teasing or jokes; repeated offensive sexual flirtation; or unwelcome display of posters, pictures, cartoons or drawings that are sexual in nature.

If you have any question regarding what may be considered sexual harassment, please contact your supervisor or manager, local human resources representative, or contact Corporate Human Resources in Pasadena at (626) 470-2489.

TT0025

**TETRA TECH, INC. AND SUBSIDIARIES**
**Code of Employee Conduct**

## III.     REPORTING PROCESS

An employee who has an allegation regarding harassment should immediately bring it to the Company's attention.   The employee should promptly contact his/her immediate supervisor (or manager) or, if the employee feels uncomfortable discussing the matter with that supervisor, with any of the following:  the next highest level supervisor in the regular chain of command, his or her human resources representative, Corporate Human Resources in Pasadena at (626) 470-2489, or the Tetra Tech Hotline at 1-800-886-2577.  Similarly, any employee who observes conduct that he/she believes may indicate that harassment has occurred or is occurring should bring this to the attention of his/her manager or Corporate Human Resources.  Employees may be assured that they will not be penalized in any way for reporting a harassment problem.

An allegation will be promptly and thoroughly investigated.   If the allegation is found to be meritorious, corrective action will be taken including appropriate disciplinary action up to and including termination.

Reports of harassment will be kept confidential and anonymous, except to the extent that some disclosure may be necessary for purposes of investigation or corrective action.

Harassment of employees in connection with their work by non-employees may also be a violation of this policy.  Any employee who experiences harassment by a non-employee, or who observes harassment of an employee by a non-employee should report such harassment to his or her supervisor or to Corporate Human Resources.  Appropriate action will be taken against violation of this policy by a non-employee.

Harassment of Tetra Tech's customers or employees or our customers, vendors, or suppliers by our employees is also strictly prohibited.  Any such harassment will subject an employee to disciplinary action, up to and including termination.

Employee notification of the problem is essential  to this Employee Code of Conduct.  Tetra Tech cannot help resolve a harassment problem unless it is reported.  It is the responsibility of each Tetra Tech employee to report those kind of problems so the Company can take whatever steps are necessary to correct the problem.

## IV.     PERSONAL APPEARANCE AND BEHAVIOR

In addition to our policy against harassment included in this Employee Code of Conduct, Tetra Tech maintains a Personal Appearance and Behavior policy.  This policy is directed toward conduct that may not otherwise fall within the legal definition of harassment, but nonetheless projects image problems for the Company.

Tetra Tech does not have a company-wide formal dress policy.  The Company relies on every employee's good judgment to dress appropriately for Tetra Tech's business and the job he or she is performing.   Please avoid extremes in dress and appearance, however.  Flashy, skimpy or revealing outfits and other non-business-like clothing are unacceptable.

TT0026

## PERSONAL APPEARANCE AND BEHAVIOR (continued)

Employees who report to work in unacceptable attire may be requested to leave work and return in acceptable attire. Such time off from work will generally be without pay.

Likewise, unprofessional behavior in the workplace, such as sexually related conversations, inappropriate touching (i.e. kissing, hugging, massaging, sitting on laps) of another employee, and any other behavior of a sexual nature is prohibited. Employees who fail to observe these standards will be subject to disciplinary action, up to and including termination.

## V.    NON-FRATERNIZATION

The Company desires to avoid misunderstandings, actual or potential conflicts of interest, complaints of favoritism, possible claims of sexual harassment, and the employee morale and dissension problems that can potentially result from romantic relationships between managerial and supervisory employees and subordinate employees.

Accordingly, managers and supervisors are prohibited from fraternizing or becoming romantically or sexually involved with their subordinate employees of the Company. Managers and supervisors are also prohibited from fraternizing or becoming romantically or sexually involved with any employee where the manager or supervisor has possible influence in employment decisions or actions relating to that employee. Additionally, all employees, both managerial and non-managerial, are prohibited from fraternizing or becoming romantically or sexually involved with other employees when, in the opinion of the Company, their personal relationships may create a conflict of interest, cause disruption, create a negative or unprofessional work environment, or present concerns regarding supervision, safety, security, or morale.

An employee who is presently romantically or sexually involved with another employee, and such relationship could be considered to violate the policy described above, shall immediately and fully disclose the relevant circumstances to any of the following: the next highest level supervisor in the regular chain of command, his or her human resources representative, Corporate Human Resources in Pasadena at (626) 470-2489, or the Tetra Tech Hotline at 1-800-886-2577. The circumstances should then be relayed to the Senior Vice President of Administration so that a determination can be made as to whether the relationship violates this policy. If a violation is found, the Company shall take appropriate action according to the circumstances, up to and including transfer or termination. Failure to fully disclose facts about a relationship between employees may lead to disciplinary action, up to and including termination.

## VI.    MANAGEMENT RESPONSIBILITIES

Supervisors (or managers) are responsible for creating and maintaining a positive and productive work environment. Supervisors are required to:

- Notify their human resources representative or Corporate Human Resources immediately of any allegations or evidence of harassment;

TT0027

**TETRA TECH, INC. AND SUBSIDIARIES**
**Code of Employee Conduct**

## MANAGEMENT RESPONSIBILITIES (continued)

- Bring this policy to the attention of their subordinate supervisors and employees;

- Take all steps possible to eliminate any harassment they become aware of;

- Initiate corrective action in consultation with Corporate Human Resources whenever it appears a violation of this policy has occurred.

As representatives of the Company, supervisors and other members of Company management understand that they may be held personally liable and responsible for acts of harassment that they commit, condone, tolerate or fail to investigate. Therefore, if any member of management knows of or has reason to know of any act of harassment or the existence of a hostile, intimidating or offensive work environment in the workplace and fails to report it to higher management or fails to take immediate and appropriate corrective action, that member of management places themselves and the Company in serious jeopardy.

Members of management may not date (see Non-Fraternization above), engage in any sexual activity with, or make sexual advances, welcome or unwelcome, toward any subordinate employee. In addition, members of management are strictly prohibited from offering an employment benefit (such as a raise or promotion or assistance with one's career) in exchange for sexual favors, or threatening an employment detriment (such as termination, demotion, or disciplinary action) for an employee's failure to engage in sexual activity.

The Company requires all members of management to cooperate completely in the investigation of any claims of harassment and to refrain from penalizing any person for making a complaint of harassment.

Finally, if any member of management violates any aspect of this policy, they will be subject to disciplinary action, up to and including termination, and additionally, can be sued and held personally liable for their acts or omissions.

## VII.    FALSE INFORMATION
The Company recognizes that false accusations of unlawful harassment can be made, can be difficult to refute, and can have serious effects on innocent individuals. Any employee who knowingly makes a false accusation of unlawful harassment or provides false information in connection with such an accusation is also subject to appropriate disciplinary action, up to and including termination. We expect that all employees will act responsibly to establish a pleasant working environment free from unlawful harassment.

## VIII.    ENFORCEMENT
The Company will vigorously enforce this Employee Code of Conduct policy consistent with all applicable federal, state, and local laws.

TT0028

ATTACHMENT E

TT0029

TETRA TECH - EMPLOYMENT APPLICATION (PAGE 4)

## References:

Please list three references who are not related to you and are familiar with your employment experience (preferably direct supervisor).

Name: Joe Cardinali, P.E.
Title: Mechanical Eng. (Senior) P.E.
Company: Monroe County
Address: 50 W. Main Street Suite 8100
City/State/Zip: Rochester NY 14614
Daytime Telephone: (585) 760-7543
☒ Prior Supervisor  ☐ Professional Contact
☐ Co-worker  ☐ Other

Name: Tim Keef, P.E.
Title: Town Engineer
Company: Town of Brighton
Address: 2300 Elmwood Ave.
City/State/Zip: Brighton NY
Daytime Telephone: 585-784-5250
☒ Prior Supervisor  ☐ Professional Contact
☐ Co-worker  ☐ Other

Name: Robert Scuteri
Title: Head Coach RIT
Company: RIT (Ice Hockey NCAA)
Address:
City/State/Zip: Rochester NY 14623
Daytime Telephone: (585) 227-4967
☐ Prior Supervisor  ☐ Professional Contact
☐ Co-worker  ☒ Other NCAA Ice Hockey Coach

## Skills/Qualifications:  List special skills and qualifications, such as specialized technical skills within your field of expertise.  List computer hardware and software packages with which you have experience.

Surveying Microstation AutoCAD (13 yrs. exp.) InRoads, SurvCAD, LDD Excel Word
Powerpoint Drafting Materials Testing Field Inspection of Bridges & High Rise Buildings

## Comments:  (List any information that you may wish to add about your abilities.)

I am very team-oriented and love working with & meeting new people. Very outgoing and more efficient, consistent to follow through with projects but also look for new and more efficient ways to attack a project.

**Criminal History:** Have you ever pleaded "guilty" or "no contest" to, or been convicted of, a misdemeanor or felony; or have you been arrested for any matter for which you are out on bail or on your own recognizance pending trial? ☐ Yes  ☒ No
If yes, please explain below.  *(Answering "yes" to these questions does not constitute an automatic bar to employment.  Do not include minor traffic violations.)*

I hereby certify that my answers to the foregoing questions and statements are true and correct to the best of my knowledge and I hereby authorize Tetra Tech, Inc. and its subsidiaries (hereafter called "The Company") to verify any of the information concerning my employment, education, credit, disciplinary or medical history with the appropriate individuals, companies, institutions, or agencies, and I authorize them to release such information without any obligation to give me notice of such disclosure.  I hereby release the Company and all individuals from any liability for any damage whatsoever for issuing this information.

I understand that any misrepresentation or omission of material fact in this application will constitute sufficient grounds for immediate dismissal.  I further understand the Company is an employer at will and employment is for no definite period, and my employment and compensation may be terminated at any time for any reason whatsoever, with or without good cause, at the option of either the Company or myself.  No implied, oral, or written agreements contrary to the express language of the agreement are valid and no agent of the Company has the authority to override the presumption of at will employment.

I understand and agree that I may be obligated to take medical examinations as directed by the Company if the Company believes that physical or mental conditions exist which may impair my performance or safety or the performance or safety of others.  I further understand that the Company maintains a drug-free workplace, and I am subject to undergoing drug screening at the Company's expense.  If hired, I will be required to read and sign consent to Tetra Tech's Substance Abuse Policy.

Employment is conditional upon the results of references, verification of eligibility for employment in the United States, and signing consent with Tetra Tech's Policies on Employee Conduct, Business Conduct, Conflict of Interest, and the Employee Confidentiality and Invention Assignment Agreement.  I understand and agree that the terms and conditions of employment may be altered by Tetra Tech at any time with or without cause or notice.

Signature of Applicant: _____  Date: 3/5/05
*This application is valid for 90 days.  If you wish to be considered for employment after this time, you must reapply.*

Rev. 01/09/01

TT0030

ATTACHMENT F

TT0031

**LINDA B. WHITEFORD**                                    484-753-3187
241 Beaumont Drive Oxford, PA 19363                    Whiteford@zoominternet.net

## ADMINISTRATIVE ASSISTANT SUPPORT PROFESSIONAL

**SUMMARY OF QUALIFICATIONS:**

Dedicated Administrative Assistant for Vice President, Project Managers, engineers and designers with more than 15 years experience. Eight of these years assisting Engineers. Word processing using Word, Excel, Access and PowerPoint. Excellent communication and marketing skills. Consistently solve problems. Dependable and hard working team player. Experienced using the following computer systems: Windows NT 4.0, Windows XP and 98. Advanced Computer software skills using the following programs: MS Word, Excel, Access, Act, PowerPoint, Lotus Notes, Outlook and Adobe. Maintain paper and electronic files. Manage office supplies and maintain equipment and call for repairs.

**PROFESSIONAL EXPERIENCE:**

**Sargent & Lundy**                    **Wilmington, DE**                    **March 2002 - Jan 2005**
Power Delivery Project Support Administrative Assistant 4
Provide administrative support for S&L's T&D project team members who design substations, transformers, circuit breakers, cables, sag & tension and rigid bus calculations and distribution systems, as well as transmission line uprating, substation expansions, condition assessment, and many other related modifications and studies. Working knowledge of electrical, structural and physical engineering terminology. Maintain department calendar. Set up AT&T telephone conferences with clients at different locations. Scan documents and enter into access database for storage and retrieval. AutoCad plot drawings and text editing. Able to log onto ftp site to create file and add or copy down AutoCad, Microstation and other files on secure ftp site for clients and vendors. Order office supplies.

Below is a list of projects that I have provided administrative support on:

Exelon/PECO Energy; A59/B30 Project - Assist in updating the drawing lists on the 8 existing substation's transmission lines voltage upgrades, circuit additions and structural modifications. Public Service Gas & Electric (PSE&G) Provided administrative support on the Marion and Hillsdale Substation projects. Add drawing files into electronic document control system. Responsible for receiving, logging, tracking, filing, and distributing all engineering and design documents and drawings. Burn CD files and create zip files as well as distribute hard copy to clients.

Baltimore Gas & Electric (BG&E) Various overhead and underground transmission lines uprgrades and open-air and gas-insulated substations, distribution networks and transmission system communication facilities. Lead secretary for BG&E Harford, Dover, Pumphrey and Calvert Cliffs NPP projects. Prepare, copy and fold permitting packages stamped by licensed engineer. Assist with word processing of various documents such as engineering standards, scope of works, budgets, schedules, staff forecasts, specifications, calculations, transmittals, resumes, drawing & document list and proposals.

Conectiv; Standards Development - Responsible for the word processing of the consolidating the standards of the merged electrical power companies Delmarva, Atlantic Electric and Conectiv for all components of transmission lines and substations into one governing standard. Incorporated as directed by project manager new standards and edit existing standards, update references as instructed by engineers of all applicable industry standards and guidelines and incorporating best practices and practical operations.

Consolidated Edison; Grasslands 138-kV Feeders 4-mile, underground 138-kV solid dielectric transmission line project. And the East River 69-kV Feeder Reroute ½-mile, single-circuit, underground 69-kV solid dielectric transmission line project in the streets of Manhattan, NY. Support the Structural Engineer with calculations and prepare transmittal packages.

TT0032

**Linda B. Whiteford**                                           Page 2 of 3

The National Grid; Nantucket and Barnstable project - Provide document control by scanning & copying various types of electrical, wiring, civil and structural documents and vendor drawings.  Prepare correspondence for signature of approval as requested and type transmittals.

**Braceland /Cenveo**                    **Philadelphia, PA**        **March 1997 - March 2002**
**Careers, U.S.A, Springfield, PA**                                **February 1996 - March 1997**
Administrator Sales and Marketing Department - Provide administrative support for sales department. Manage networked sales database for trade and commercial account executives. Synchronize databases into one main database. Clean data, export, import groups create lookups and queries. Research Internet for sales leads; assign leads to sales reps and evaluate geographic areas. Coordinate 12 trade shows yearly.  Track sales goals and budget, and prepare sales presentations. Arrange travel, hotel and shipping for trade shows exhibits.  Type memos and create monthly, quarterly and year-end reports of sales figures.  Calculate Sales Person of the Month and Year.  Schedule sales meetings and conferences.

**Day and Zimmerman (D&Z)**        **Philadelphia, PA**      **February 1988 - November 1993**
Lead Project Secretary for Keebler, Anheuser Busch, Clorox and Pepperidge Farms clients. Provide administrative support for the CEO, Vice President of Marketing, Project Managers and the Engineering Department.  Typed specification for chilled water expansion tank, chilled water air separator, and chiller, desiccant dryer, breathing air purifier, refrigerated dryer and rotary screw air compressor. Schedule meetings, order luncheons and made travel arrangements. Excellent communication skills with co-workers, clients, and vendors. Maintain project files. Provide back up reception desk coverage, answer 10-line phone, take messages and greet visitors.

**Provident Mutual Ins. Co.**        **Philadelphia PA**        **October 1983 - February 1987**
Greet all visitors to the Company.  Answer all incoming phone calls; take accurate messages and transfer calls.  Distribute mail to Human Resources and Public Relations Department.  Provide administrative support to the Director of Human Resources and the Public Relations Departments.

**EDUCATION:**

| | | |
|---|---|---|
| Upper Darby High School<br>High School Diploma | Drexel Hill, PA<br>Major:  Business Administration | Graduated:  1979 |
| Gordon Philips Cosmetology School<br>Cosmetologist, Hair Dressing and Beautician | Upper Darby, PA | State License:  1982 |
| Graphic Arts School<br>Printing, Graphic Arts, Desktop Publishing, Page Layout and Proofreading | Philadelphia, PA | Certificate:  1998 |
| New Horizons Computer<br>Microsoft Computer Programs: | King of Prussia, PA | Certificates:  2000 |

- Act 2000 Database
- MS Word 6.0
- Excel

**Linda B. Whiteford**

## TECHNICAL SKILLS:

- Word processing - Type 70 wpm accurately
- MS Word – format styles, create table of contents, templates and other documents
- Access – database, tables, address and lists
- Adobe Acrobat - Create PDF and tiffs using Acrobat Writer
- PowerPoint – create organizational charts, slide shows and proposals
- AutoCad - Plot drawings and edit text
- Database Administrator - Maintain networked database. Synchronize, merge, export and import data
- Excel - Create spreadsheets, produce quarterly and YTD reports, charts for overheads.
- MS Outlook and Lotus Notes – email to group members, use calendar and to-do lists
- General office administrative duties - Coordinate meetings, group travel and order office supplies, operate calculator, fax machine and copiers.
- Coordinate conference calls for project team meetings using AT&T service
- Take minutes of meetings and create Action Item list.

## REFERENCES:

- Rose Kiely, Financial Specialist, Nationwide Provident (302) 452-4010
- Helen Randall, Administrative Assistant of Sargent & Lundy (302) 622-7222
- Fred Ogden, Project Manager of Sargent & Lundy (302) 622-7273
- Kim Adams, Administrative Assistant of Sargent & Lundy (302) 622-7320
- Helen Haney, Accountant of Braceland/Cenveo (215) 492-0200

EEOC FORM 131 (5/01)

## U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Ms Janis Salin<br>**Vice President & General Counsel**<br>**TETRA TECH, INC.**<br>**3475 East Foothill Boulevard**<br>**Pasadena, CA 91107** | **Jourdean S. Lorah** |
| | THIS PERSON *(check one or both)*<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**170-2005-02819** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

**RECEIVED**

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act

[X] The Americans with Disabilities Act

NOV 1 5 2005

[X] The Age Discrimination in Employment Act

[ ] The Equal Pay Act

CORPORATE ADMINISTRATION

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by ~~09~~ **12-DEC-05** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [X] Please respond fully by ~~09~~ **12-DEC-05** to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **21-NOV-05** to **Phil A. Goldman, ADR Coordinator, at (215) 440-2819** If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**George King, Jr.,**
**Supervisory Investigator**

*EEOC Representative*

Telephone: **(215) 440-2659**

Enclosure(s): [X] Copy of Charge

**Philadelphia District Office**
**21 South 5th Street**
**Suite 400**
**Philadelphia, PA 19106**

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN [X] AGE [X] DISABILITY [ ] RETALIATION [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date<br>**Nov. 09, 2005** | Name / Title of Authorized Official<br>**Marie M. Tomasso,**<br>**District Director** | Signature |
|---|---|---|

TT0035



**U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington, DC   20507**

**Office of the Chair**

Dear Small Business Manager:

EEOC is the federal agency with primary responsibility for enforcing our nation's equal employment opportunity (EEO) laws. The laws we enforce prohibit job discrimination based on race, color, religion, sex, national origin, age and disability. We have enclosed a Fact Sheet which provides an overview of EEOC's procedures from the time a charge of employment discrimination is filed to the point that it is resolved.

In most cases, as our first step in processing a charge, we offer mediation as a neutral, voluntary and confidential way to achieve a mutually satisfactory resolution for all parties. Sixty-five percent of charges that are mediated are successfully resolved. In an independent study, 96% of employers who tried mediation said they would use it again if the need arose.

In addition to the EEOC representative identified on the "Notice of Charge of Discrimination," each of our district offices has a Small Business Liaison to provide technical assistance and help to resolve questions about the laws we enforce, mediation, and the charge process. For example, as part of the President's New Freedom Initiative, we provide technical assistance to small employers on the benefits of hiring individuals with disabilities. We have also developed a user-friendly Internet Web site (www.eeoc.gov) which has a special site designed to help small businesses who need to know more about EEO laws and the EEOC charge process. The names and phone numbers of our Small Business Liaisons are also listed on our Web site. We have noted some of the pages on our Web site that may be of particular interest to you on the attachment.

I encourage you to contact the Small Business Liaison in your area to answer any questions you may have and assure you that any inquiry or request for information will not adversely affect the investigation of the charge filed.

Yours truly,

Cari M. Dominguez, Chair
U.S. Equal Employment Opportunity Commission

Attachments:  Get the Facts: Small Business Information
              Answers to Your Questions May Be Only a "Click" Away

NOTE:  The Philadelphia District's small business liaison is Edward McCaffrey, who can be contacted at (215) 440-2671, or Stephen Cuyjet at (215) 440-2664.

*Answers to Your Questions May Be Only a "Click" Away* (09/03)

EEOC's Internet Website – **www.eeoc.gov** – is filled with useful information for small business and updated regularly with the latest EEO developments.

> *Free workshops for small businesses on the Americans with Disabilities Act (ADA).* As part of President Bush's *New Freedom Initiative,* EEOC is conducting free workshops, which include information on tax incentives and community resources, to encourage businesses with 15 to 100 employees to hire individuals with disabilities. Please visit this portion of our Web site to find out more.

**Topics of interest** are shown in the **left column** on our **Home Page:**

- **Quick Start – Employers** – see all topics, but the following in particular —

  - Under **Small Business Information** *go to* **Contacting EEOC** to find our field office **Small Business Liaisons**. Please contact any of these EEOC staff persons to get general information, to ask questions about specific workplace situations, and to learn about our outreach and education programs for employers.

  - Try **Mediation** – EEOC mediation is free, voluntary, confidential, and conducted by a neutral mediator. A comprehensive independent study of our mediation program rated it highly (*please see* **An Evaluation of the [EEOC] Mediation Program**).

- **Outreach, Education and Technical Assistance** - information on general programs offered to all interested employers; customer-specific training tailored to your specific needs; publications and technical assistance manuals.

- Under **Laws, Regulations and Policy Guidance** – useful information is provided in user-friendly format, including "Question and Answers" written in plain English. For example, under **Enforcement Guidances and Related Documents** *click on* **Small Employers and Reasonable Accommodation** for help on accommodating employees or applicants with disabilities as required by the Americans with Disabilities Act.

- Under **Publications** – you can order our publications on-line free of charge. Publications **listed in blue and underlined** are items you can *click on* **to review or print** for use. You can also order EEOC's poster "Equal Employment Is The Law" here.

- Under **Small Business Information**, *go to* **Other Employment Issues** to find out more about the Immigration Reform and Control Act (IRCA) and the Small Business Regulatory Enforcement Fairness Act (SBREFA), which allows small businesses to comment on federal agency enforcement actions to the SBA Ombudsman.

**Other sources of information and assistance for employers:**

Call your nearest EEOC field office **toll-free at 1-800-669-4000 (TTY: 1-800-669-6820)**. Or call our Washington DC information office at 202-663-4900 (TTY: 1-800-669-6820).



## *Get The Facts Series*

# Small Business Information

### What laws does the Equal Employment Opportunity Commission enforce?

The Equal Employment Opportunity Commission (EEOC) enforces the following federal laws: Title VII of the Civil Rights Act of 1964 (Title VII), Age Discrimination in Employment Act (ADEA), Equal Pay Act (EPA), and the Americans with Disabilities Act (ADA). These laws prohibit employment discrimination based on race, color, sex, religion, national origin, age, disability or in retaliation for opposing job discrimination, filing a charge or participating in proceedings under the laws. EEOC's mandate is to determine in a fair and objective manner whether the laws it enforces have been violated.

### What small businesses are covered?

The laws cover all private employers, state and local government employers, and educational institutions that employ 15 or more individuals, except for ADEA which covers employers with 20 or more employees. These laws also cover private and public employment agencies, labor organizations, and joint labor management committees controlling apprenticeship and training.

### When can employees file charges?

Employees must file their charge with EEOC within 180 days from the date of the alleged discrimination. If the employer is also covered by a state or local employment discrimination law, the time to file a charge with EEOC is extended to 300 days.

### How are charges filed with the EEOC?

Any individual who believes that his or her employment rights have been violated because of his or her race, color, sex, religion, national origin, age, disability or because of retaliation may file a charge of discrimination with EEOC. Under statute, EEOC must accept the filing of a charge.

EEOC investigators interview individuals alleging employment discrimination to establish whether we have jurisdiction. Investigators explore in detail a potential charging party's description of the alleged violation and the pertinent date(s). This information is assessed to determine the potential merits of the charge. Based upon our assessment, we advise the potential charging party whether we will investigate or immediately dismiss the charge.

EEOC will notify the employer within 10 days of accepting a charge. Notification normally includes a copy of the charge briefly identifying (a) the charging party, (b) the bases and issue(s) of the allegation, (c) the date of the alleged violation, and (d) an explanation of the employer's obligation to retain records pertaining to the charge. An invitation to mediate the complaint may also be included in the notification package.

||||➡

## Can a small business resolve a charge without an investigation?

Yes! EEOC has a free mediation program. The program is voluntary at all stages of the process. Neutral mediators provide employers and charging parties the opportunity to reach mutually agreeable solutions, while making efficient use of their time and money.

In the event that mediation does not result in a settlement, the charge is referred for investigation. Information disclosed by the parties during the mediation will not be used as a part of EEOC's investigation. Moreover, mediators are bound by confidentiality provisions and may not provide information about the mediation to EEOC investigative staff.

## How does EEOC investigate allegations of employment discrimination?

An EEOC investigator asks the employer to respond to the allegations in the charge and provide documentation to substantiate its response. EEOC usually asks for a written answer; however, on-site visits may occur to conduct document reviews and interviews. Although it is not usually necessary, if an employer does not provide the requested information or access, the EEOC may issue a subpoena for access, documents, or testimony. As soon as practical after we receive the position statement and gathering evidence from the employer, EEOC will determine whether to investigate further, propose settlement or dismiss the charge.

## What are an individual's rights once the charge has been dismissed?

If EEOC decides that there is insufficient evidence to conclude that a violation exists, the investigator explains the rationale for the decision to the charging party. He or she is given a dismissal notice which includes the right to file a lawsuit in federal court. The statutes EEOC enforces give a charging party a right to proceed in court within

90 days of receiving their dismissal notice. The laws also permit the charging party to choose to proceed to federal court instead of waiting for the EEOC to complete its investigation. In some cases, EEOC may issue a notice of right to sue upon the charging party's request.

## What does the EEOC do if it determines that a violation has occurred?

If EEOC decides that there is reasonable cause to believe that discrimination occurred, the investigator explains the rationale to the employer. This is followed by a written determination and invitation to enter into conciliation discussions. The purpose of these discussions is to eliminate the discrimination and provide relief to the charging party and others, if appropriate, without going to court. Negotiations will continue for a reasonable period until the case is resolved or conciliation fails. Conciliation agreements are ordinarily signed by the charging party, the employer, and the EEOC office director.

## Under what circumstances will EEOC pursue a charge in federal court?

If the conciliation efforts fail, EEOC will determine if it will sue a private employer or recommend litigation to the Department of Justice for state and local government employers. If EEOC decides against litigation, the charging party will be given his or her right to file a lawsuit in federal court.



For more small business information, please refer to EEOC's website at www.eeoc.gov or contact the nearest EEOC field office in your area by calling 1-800-669-4000 (voice) or 1-800-669-6820 (TTY)

Publication # EEOC-FS-E13



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Philadelphia District Office - Mediation Program

The Bourse Building
21 S. Fifth Street, Suite 400
Philadelphia, PA 19106
(215) 440-2816
TTY (215) 440-2610
FAX (215) 440-2822

## MEDIATION INVITATION RESPONSE FORM

**We appreciate your cooperation in responding to this invitation
by completing the appropriate option(s) below and returning
this form within seven (7) days from receipt of the charge.**

**170-2005-02819 - Jourdean S. Lorah  v.  Tetra Tech Inc.**

Charge Number & Case Name

You are hereby invited to participate in the Equal Employment Opportunity Commission's Mediation Program. As explained in the attached information sheet, we are making available this effective, neutral and confidential process to respondents and charging parties as a highly desirable alternative to the investigation and possible litigation of employment disputes. If you agree to participate in mediation, it is not necessary to respond to the charge and/or to any request for information at this time. The response will be suspended until the completion of mediation. If you choose not to take advantage of utilizing this highly popular process, you must respond to the charge and/or any request for information by the date specified in the Notice of Charge of Discrimination.

Please return this form to:      Phil A. Goldman, ADR Coordinator
Philadelphia District Office
Equal Employment Opportunity Commission
21 S. Fifth Street, Suite 400
Philadelphia, PA 19106-2515

Fax:  215-440-2822

( )      The Respondent would like to participate in the mediation program

Provide 3 Proposed Dates (Within 21 Calendar Days):_____  _____  _____

Name(s) of Attendees:_____

( )      The Respondent declines to participate in the mediation program
If you decline to participate in the mediation program, the ADR Coordinator would appreciate you stating the reason for declining. This information will be used for evaluative purposes only.

Comments:_____

_____

On behalf of Respondent (Please Print Clearly):

Name:_____      Title:_____

Street Address:_____

City,  State & Zip:_____

Telephone: _____      Fax: _____

E-mail: _____



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2632 & 2805

## REQUEST FOR INFORMATION

Your organization is hereby requested to submit information and records relevant to the subject charge of discrimination. The Equal Employment Opportunity Commission (EEOC) is authorized by law to investigate charges filed with it and this request constitutes a part of the investigation. This request does not necessarily represent the entire body of evidence which we will need to obtain from your organization in order that a proper determination as to the merits of the charge can be made.

**Provide the name, position, address and telephone number of the person who prepares the response to this request for information.**

**Please note as well that the Commission requests statements below from persons involved in the decisionmaking process that affected the Charging Party. In addition to the statements from the decisionmakers, please submit a formal position statement setting out your response(s) to the allegations or any other contentions or other information in addition to that requested by the Commission which you consider relevant to the disposition of this charge.**

Failure to follow the instructions contained herein. or providing an evasive or incomplete answer will constitute a failure to respond and shall subject the Respondent to the service of a Subpoena for the requested documents and information.

Please submit any additional evidence, along with the requested information, on or before the date specified on the enclosed EEOC Form 13 1, "Notice of Charge of Discrimination" . The information should be addressed to the EEOC Representative identified on the EEOC Form 13 1. If there are any questions concerning the Request for Information, you should contact the EEOC Representative at the phone number which is also indicated on the EEOC Form 13 1.

In addition, your attention is directed to the also enclosed "Notice of Settlement". That Notice provides information related to possibility of settlement of the charge as an alternative to a full Commission investigation of the allegations.

Thank you for your anticipated cooperation in this matter.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5ᵗʰ Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2632 & 2805

## EEOC PHILADELPHIA DISTRICT OFFICE

### NOTICE OF SETTLEMENT

The above-referenced charge of employment discrimination has been received by the Equal Employment Opportunity Commission (EEOC) and assigned the above charge number. In most instances, this office initiates its investigation by sending the Respondent a Request for Information (RFI). This Notice of Settlement is being sent as an attachment to the initial RFI for this charge.

In addition, this office attempts to negotiate a settlement for each charge. For such settlements, the EEOC representative attempts to facilitate settlement discussions between the two parties in the hopes of obtaining an agreement mutually satisfactory to the parties and to EEOC. If such a settlement is negotiated, the Commission will prepare a Settlement Agreement to be signed by all parties, including EEOC.

Negotiated Settlement Agreements typically include the following:

a) a description of the relief to be provided to the Charging Party as a result of the Agreement;
b) means of monitoring to insure that the terms of relief are met;
c) a statement which expressly indicates that the Respondent is not acknowledging any violation of the statute(s) under which the charge was filed;
d) a clause prohibiting retaliation; and
e) a waiver by the Charging Party of his/her private suit rights under the applicable statutes administered by EEOC.

In addition, a Settlement Agreement concludes EEOC's investigation of the subject charge. Such EEOC closure would eliminate the need thereafter for Respondent to prepare statements, to respond to RFIs, to make witnesses available or to otherwise respond to the Commission's investigation for that charge.

Although Respondent will be contacted by an EEOC representative to discuss the possibility of settlement, this office's increasing inventory has resulted in some delay before such settlement efforts can be initiated. However, if Respondent at this time is interested in pursuing settlement, the Respondent representative is invited to contact this office directly as a means of insuring expedited settlement discussions. If that is Respondent's intent, please contact the EEOC representative identified in the Notice of Charge of Discrimination (EEOC Form 131).

TT0042

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 170-2005-02819 |

| Delaware Department of Labor | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)*<br>**Ms. Jourdean S. Lorah** | Home Phone No. (Incl Area Code)<br>**(302) 225-0540** | Date of Birth |
|---|---|---|

| Street Address<br>**114 Walls Avenue, Wilmington, DE 19805** | City, State and ZIP Code | |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name<br>**TETRA TECH INC.** | No. Employees,<br>**101 - 200** | Phone No. (Include Area Code) |
|---|---|---|

| Street Address<br>**56 West Main Street,  Christiana, DE 19720** | City, State and ZIP Code | |
|---|---|---|

| Name | No. Employees, | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code | |
|---|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☒ AGE | ☒ DISABILITY | ☐ OTHER *(Specify below.)* | |

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| **06/14/2005** | **06/14/2005** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.  I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005.  After I began my employment, I never received the on-the-job training that was promised.  Younger employees recieved this training including a younger female w ho was hired by the Respondent.  On or about June 14, 2005, Respondent had my employer terminate my contract.   I was replaced by a younger male.

II.  I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").  During my interview, a Respondent supervisor asked me if I had a disability.  After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *October 25, '05*<br>Date          *Jourdean S. Lorah*<br>Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year )* |

TT0043

Enclosure with EEOC
Form 131 (5/01)

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

TT0044



# EEOC MEDIATION

## YOUR PARTNER IN WORKPLACE SOLUTIONS

United States Equal Employment
Opportunity Commission
Washington, D.C. 20507

1 (800) 669-4000 (Voice)
1 (800) 669-6820 (TTY)
www.eeoc.gov

"Once the employer gets past the myth of "If we didn't do anything wrong, we shouldn't go to mediation" and decides to participate, the real issues in the dispute become clear. Through mediation, we have had the opportunity to pro-actively resolve issues and avoid potential charges in the future. We have seen the number of charges filed with EEOC against us actually decline. We believe that our participating in mediation and listening to employees' concerns has contributed to that decline."

Donna M. Gwin
Director of Human Resources
Eastern Division, Safeway Inc.

"Regardless of the issue or whether it has merit under Title VII, if it is draining resources, weighing on the mind of the employee, or having a negative impact on productivity, then getting the issue out on the table, mediating it and resolving it is often the smartest and most expeditious way to ensure workforce effectiveness."

Linda I. Workman
Vice President
Workforce Effectiveness
ConAgre Foods, Inc.

"Hopkins is striving to be an employer of choice. We think that participating in EEOC's mediation program moves us that much closer to meeting that goal. . . .We learned that settlement is not always about money. Some-times there are non-economic ways to settle a case that may be important to the charging party and the respondent."

Laurice Royal, Esq.
Johns Hopkins Health System Corporation

## FACTS ABOUT MEDIATION

Mediation is a form of Alternative Dispute Resolution (ADR) offered by the U.S. Equal Employment Opportunity Commission (EEOC) as an alternative to the traditional investigative or litigation process. Mediation is an informal process in which a neutral third party helps the opposing parties reach a voluntary, negotiated resolution of a charge of discrimination. Mediation gives the parties the opportunity to discuss the issues raised in the charge, clear up misunderstandings, determine the underlying interests or concerns, find areas of agreement and, ultimately, incorporate those areas of agreement into solutions. A mediator does not impose a decision on the parties. Instead, the mediator helps the parties to agree on a mutually acceptable resolution.

## HOW DOES MEDIATION WORK?

If both parties agree, a mediation session conducted by a trained and experienced mediator is scheduled. While it is not necessary to have an attorney or other representation in order to participate in EEOC's mediation program, either party may choose to do so. If mediation is unsuccessful, the charge is investigated like any other charge. Information disclosed during the mediation will not be revealed to anyone, including other EEOC employees.

## ADVANTAGES OF MEDIATION

### Free
Mediation is available at no cost to the parties.

### Fair and Neutral
Parties have an equal say in the process and decide settlement terms. . . not the mediator. There is no determination of guilt or innocence in the process.

### Saves Time and Money
Mediation usually occurs early in the charge process, and many mediations are completed in one meeting. Legal or other representation is optional but not required.

### Confidential
All parties sign an agreement of confidentiality. Information disclosed during mediation will not be revealed to anyone. . . including other EEOC investigative or legal staff.

### Avoids Litigation
Lengthy litigation CAN be avoided. Mediation costs less than a lawsuit and avoids the uncertainty of judicial outcome.

### Fosters Cooperation
Mediation fosters a problem solving approach to complaints and workplace disruptions are reduced. With investigation, even if the charge is dismissed by EEOC, the underlying problems may remain, affecting others in the workforce and human resources staff.

### Improves Communication
Mediation provides a neutral and confidential setting where both parties can openly discuss their views on the underlying dispute. Enhanced communications can lead to mutually satisfactory resolutions.

### Discover the Real Issues in your Workplace.
Parties share information, which can lead to a better understanding of issues affecting the workplace.

### Design your own Solution
A neutral third party, with no decision making authority, assists the parties in reaching a voluntary, mutually beneficial resolution. Mediation can resolve all issues important to the parties, not just the underlying legal dispute.

### Everyone Wins
An independent survey showed 96% of all respondents and 91% of charging parties who used mediation would use it again if offered.

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 170-2006-00048 |

**Delaware Department of Labor** and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.)<br>**Ms. Jourdean S. Lorah** | Home Phone No. (Incl Area Code)<br>**(302) 225-0540** | Date of Birth |
|---|---|---|

| Street Address<br>**114 Walls Avenue, Wilmington, DE 19805** | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**Synerfac Agency** | No. Employees.<br>**101 - 200** | Phone No. (Include Area Code) |
|---|---|---|

| Street Address<br>**2 Reads Way; New Castle Corporate Commons; New Castle, DE 19720** | City, State and ZIP Code |
|---|---|

| Name | No. Employees. | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **06/14/2005**   Latest **06/14/2005**
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.  I was an employee of Synerfac (the "Respondent"), an employment agency, and was contracted to work at Tetra-Tech, Inc. beginning in or about March 2005.  After I began my employment, I never received the on-the-job training that was promised.  Younger employees recieved this training.  On or about June 14, 2005, Respondent terminated my employment.  I was replaced by a younger male.

II.  I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| ___October 25, '05___          _Jourdean S. Lorah_<br>Date                          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

TT0047

## Brewer, Susan — Tt, Inc.

| | |
|---|---|
| **From:** | Brewer, Susan — Tt, Inc. |
| **Sent:** | Thursday, November 17, 2005 4:50 PM |
| **To:** | 'Greg Porter' |
| **Subject:** | RE: Jourdean Lorah.... |

Dear Greg:

The following is a response to EEOC 170-2006-00048 (I.) — Jourdean S. Lorah complaint as requested by you:

- Jourdean was hired as a Survey Office Assistant and trained in; Excel, Word and Windows software programs by members of the Tetra Tech Inc staff during her tenure at Tt. Even though we expected to train someone regarding the Civil/Survey Departments performance expectations and Tt job requirements, she was also trained in basic computer skills which she _did not possess previously._ She was has provided with more than adequate training.
- Jourdean was replaced by a _female_, approximately 3-4 years younger.

If I can be of further assistance, please feel free to contact me.

*Susan J. Brewer*
Manager, General Services and Administration
Tetra Tech, Inc.
(302) 738-7551 - Christiana, DE
800-462-0910
(302) 454-5980 Fax
(302) 645-2135 - Lewes, DE
(302) 645-5085 Fax
susan.brewer@tetratech.com < mailto:susan.brewer@tetratech.com>
www.tetratech.com < http://www.tetratech.com>
www.tetratech-de.com < http://www.tetratech-de.com>
NOTICE OF CONFIDENTIALITY

This email message and its attachments (if any) are intended for the use of the addressees hereof. In addition, this message and the attachments (if any) may contain information that is confidential, privileged, and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are strictly prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. If you have received this message in error, please promptly notify the sender by reply email and immediately delete this message from your system.

---

**From:** Greg Porter [mailto:gporter@synerfac.com]
**Sent:** Wednesday, November 16, 2005 4:35 PM
**To:** susan.brewer@tetratech.com
**Subject:** Jourdean Lorah....

Good Afternoon Susan,

Per our conversation this afternoon could you please respond to the following complaints in the attached document below? If possible could you have this back to me by tomorrow afternoon? Synerfac would like to contact our laborer lawyer ASAP.....

11/17/2005

Thanks for all your help.....

Gregory W. Porter
Branch Manager
Synerfac Technical Staffing
2 Read's Way Suite 209
New Castle, DE 19720
P 302-324-9400
F 302-324-9404
C 302-593-1919
Toll Free: 1-800-562-7040

Please visit our website at www.synerfac.com

Synerfac Office Locations: Atlanta, GA - Baltimore, MD - Bridgewater, NJ - Columbus, OH - Cincinnati, OH -Langhorne,
PA Orlando, FL - Philadelphia, PA - Pittsburgh, PA - Raleigh, NC - Washington, D.C. - Wilmington, DE,- Cherry Hill, NJ

11/17/2005

NOTES:
Jourdean S. Lorah – Office Assistant for the Survey Department - Synerfac – Hired March 22, 2005
$14/per hour.

On May 11, Joudean telephoned me and requested a meeting w/me. Would not tell me what the meeting
was about when asking to schedule it. Meeting: She wanted to post a notice in the Survey Dept regarding
individuals discussing personal issues that may harm the reputation or morale of others. She spoke to her
supervisor, John Traynor on 4/29. John referred her to me.

- Thursday, May 12, Jourdean informed me that on April 25 another employee, Erin Moran, made
  a comment to her accusing Jourdean of being in a brothel. Also, indicated that Erin talked about
  this topic to other employees. This all took place during a visit to the County Planning
  Department. She said that another temporary employee, Mat Mercado also made a comment to
  Jourdean regarding being in a brothel.

  Jourdean also mentioned Title 7 and the fact that she was older than Erin and the other people she
  is working with.

  She spoke to her supervisor, John Traynor on 4/29. John referred her to me.

  On Thursday, May 12, I called a meeting w/Erin and Jourdean to discuss the problem openly with
  both parties.

  Erin denied the accusations that Jourdean made and stated that Jourdean was lying. Jourdean left
  in a huff.

  I suggested that all parties needed to resolve personality differences and their goal should be to be
  productive and to strive for a positive work environment. Personal differences needed to remain
  after hours and outside of this office, etc. They agreed.

  Same date, I also called a meeting w/Jourdean and Mat. Mat did not know what the word meant
  either and also denied having said any such thing. Gave the same speech about positive work
  environment and personality issues. Jourdean seemed satisfied.

- Monday, May 16 – I called Erin and Jourdean individually to inquire as to how things were going.
  Both stated that everything was going well. (Jourdean said that she would let me know if they
  weren't).

  I also called Greg Porter of Synerfac to inform the agency that there were some problems.
  Greg was not surprised. Also said that Jourdean struck him as "unique". Reminded me that
  Synerfac was acting as a payroll service only. (a client, Mike Early of Merestone referred
  Jourdean to John and John asked her to sign up w/the agency to act as a payroll service because
  this was a new position being tested by him).

- Thursday, June 2 – I asked Jourdean how things were going and she stated, "great, fine." (with a
  smile on her face).

  Same date, George Foxwell (Snyerfac employee) came to me concerned that Jourdean was
  claiming some kind of harassment by him asking her to lunch. I assured him that she did not.
  However, she did mention the lunch request and her denial because George is a married man.
  (George said that he only invited her because he didn't want to leave her out from the invitation
  because he invited the rest of the group).

- Tuesday, June 7 – Melissa Police from Synerfac called me to report that Jourdean had requested a
  meeting w/her the day before. Melissa said that Jourdean told her the story about Erin and the

TT0050

brothel comment but, indicated that she thought that was resolved now. Jourdean also requested
Melissa to help her regarding the following issues:

> No work space
> Low pay scale
> Title 7
> Training promise – not given. JJT does the work and Jourdean watches.
> Casey Grabowski (DIV employ) spreading rumors about Jourdean and a bacterial
infection
> Stated that she has a "Corporate double who stole Jourdean's identity"
> John had asked her to attend an Engineering Dinner Meeting which she denied.

When John was questioned, he stated:
> Jourdean was trained how to use excel, word and windows (which she had no skill in
> previously). He has provided more than adequate training. Even though he expected to
> have to train someone regarding his expectations and Tt requirements, he also trained her
> in routine computer skills which she did not possess previously.

> Her work space was changed at the end of last week (6/3) to accommodate additional
> employees being hired (both outside temp agencies and DIV). She is now sharing a work
> station and equipment w/a DIV emply who works in the field as a survey asst., which she
> is not happy about.

TT0051

Her work space was changed at the end of last week (6/3) to accommodate additional employees being hired (both outside temp agencies and DIV). She is now sharing a work station and equipment w/a DIV emply who works in the field as a survey asst., which she is not happy about.

George Foxwell also appeared in my office today to inform me that Jourdean is angry about her shared work space and is spraying windex so much that the over spray caused another DIV employee, Dan Luther, to move from his work area to avoid being sprayed.

- Friday, June 10 – My telephone interview with Casey Grabowski –

I asked Casey if he has had any issues w/Jourdeen in the last week or so that would cause her to think that he was spreading rumors about her. He said, no.

I asked if he has ever made any comments to others about her physical attributes, her age, her sex or her medical condition. He responded emphatically, NO to all.

He did tell me that he has expressed his dissatisfaction with her skills to her in the past, i.e. – John put her in charge of the daily logs for 10 people. After two weeks of this task, Jourdean was still not doing hers correctly. Casey stated to Jourdean, "This is insanity!" Jourdean immediately interpreted that to mean that Casey accused her of being insane. He stated that if someone says to him, "What is up with her?" He responds, "She works for John and you should just stay away from her. If you get to close to her you will have a conflict". Casey's opinion is that Jourdean interrupts conversations with individuals differently than most. He says that she does not interact well with any of the group.

I instructed him that our conversation was to be held in the strictest confidence.

Signed: Susan F. Brewer
Manager, General Services and Administration

TT0052

DEC. 12. 2005 12:31PM     TETRA-TECH-INC.                                    NO. 732     P. 5
                                                                                    Page 1 of 1

---

**Brewer, Susan -- Tt, Inc.**

**From:**    Brewer, Susan — Tt, Inc.
**Sent:**    Tuesday, June 14, 2005 5:06 PM
**To:**      Clark, Amy — Tt, Inc.
**Subject:** FW: Notes- Jourdean Lorah

Amy:
Attached are notes received from Synerfac regarding today's the previous conversation with Jourdean Lorah.
Today's conversation took place when she was communicating to Jourdean that her assignment here was over.

(She did avoid returning Melissa's call and approached John Traynor prior to reporting to Synerfac). Numbers 2,3
& 4 are news to me.  John did tell me what he and Jourdean discussed prior to her departure from Tt and
Melissa's account is the same as John's!$#!(_++!)!$M???!_!+!

I am leaving now but, we can talk tomorrow if you feel it is necessary.

Susan

---

**From:** Melissa Palese [mailto:mpalese@synerfac.com]
**Sent:** Tuesday, June 14, 2005 4:51 PM
**To:** Susan.Brewer@tetratech.com
**Cc:** Adam Heagy; Greg Porter
**Subject:** Notes- Jourdean Lorah

Susan,

I have attached the notes regarding my meetings with Jourdean Lorah.  Please let me know if you need additional
information.

Sincerely,

**Melissa K. Palese**
Recruiting Manager- Wilmington Branch
Synerfac Technical Staffing
2 Read's Way, Suite 209
New Castle, DE 19720
P 302.324.9400
F 302.324.9404
Toll Free 800.562.7040

Please visit our website at www.synerfac.com <http://www.synerfac.com>

*Atlanta, GA - Baltimore, MD - Bridgewater, NJ - Cherry Hill, NJ - Columbus, OH - Cincinnati, OH - Langhorne, PA*
*Orlando, FL - Philadelphia, PA - Pittsburgh, PA - Raleigh, NC - Washington, D.C. - Wilmington, DE*

TT0053

Meeting with Jourdean Lorah 6/6/05

Jourdean verbally gave me a list of concerns:

1.  Need a better workspace currently sharing with another employee
2.  Training- Never received proper training that was promised during conversations with John Traynor
3.  Overheard John Traynor calling her unintelligent
4.  Casey Grabowski spread a rumor about her regarding spreading a bacterial infection throughout the office
5.  Erin told Jourdean she was part of a brothel
6.  Jourdean feels she is discriminated against because of her age and that she does not receive equal pay claiming title 7 concerns

Meeting with Jourdean Lorah 6/14/05 *(when telling her that her assignment was completed )*

I address Jourdean's concerns again and this is a list of responses from her:

1.  Regarding the workspace- an Intern that has been there for 3-4 weeks has her own workspace and Jourdean feels this is unfair.  A woman in marketing said to Jourdean, "I see your point, you have so many documents to deal with."
2.  Regarding Casey Grabowski- Bob George said to Jourdean, "Casey is trying to fire you".  I asked Jourdean who was around when this comment was made and she said, " no one, he said it in a quiet whisper".
3.  Erin approached Jourdean and made a comment that she is trying to solicit parents and children involved in "math counts".
4.  Jeanie of the third floor said to Doug, "they are going to terminate her".  When I asked her whom was Jeanie referring to Jourdean said Jeanie did not identify "they" but "her" meant Jourdean.
5.  When Jourdean approached John Traynor about a possible termination this afternoon he said, "there was nothing at all concerning performance", I have absolutely no complaints at all, it is up to management."

**Brewer, Susan — Tt, Inc.**

| | |
|---|---|
| **From:** | Brewer, Susan — Tt, Inc. |
| **Sent:** | Monday, May 16, 2005 5:29 PM |
| **To:** | Clark, Amy — Tt, Inc. |
| **Subject:** | FW: Jourdean Lorah-Followup Notes |

Amy:

Please see my notes/message to John and Bob below. I will forward notes to you regarding the original meetings once I type them up from my notes.

Please note that the medical condition that is referenced below was "she is on an epipen". Also, John said that this was a newly created position and the duration of the assignment depends on how well it works out. John gave me a job description which Jourdean was given at the time of placement. She is still performing in that capacity. No special skills required. John is training her. Her background is as a school teacher (english), rod person on a survey crew (which I can't see) and hand drafting. We do not hand draft only electronic CAD, but John felt that the basics help her position here because she has some knowledge of drafitng and survey. He wants to keep her. (for now).

Susan

---

**From:** Brewer, Susan — Tt, Inc.
**Sent:** Monday, May 16, 2005 5:13 PM
**To:** John J. Traynor, III (John J. Traynor, III); Bob Maffia (Bob Maffia)
**Subject:** Jourdean Lorah-Followup Notes

I spoke to Greg Porter at Synerfac and gave him a very brief heads-up. Letting him know that Jourdean complained about a hostile work environment and how we handled her complaint. (no details)

Greg immediately said that, "she was a little unique and he is not surprised that we may be having some problems". He also stated that he only spent 10 minutes with her because in this particular case Synerfac is only working as a payroll service for her and Tt (She was refered to Tt by Mike Early of Merestone, and John sent Jourdean to Synerfac to sign up w/the agency in order for her placement at Tt). Greg also mentioned that she went on and on, and talked about a medical condition. When she left his office, he just shook his head. "She is different!" he told me.

He also reminded me that since she was/is not an originally contracted Synerfac employee and we sent her to them, they did not do any background investigation or past employment reference checking.

(Did we do any reference checking?)

I also called Jourdean this afternoon and simply asked how things were going. She said, "good, everything was going well and that she would let me know if they weren't".

I called Erin to ask how things are going for her too. She said, "excellent, good, everything is going great!"

John, as you and I discussed – try not to assign work tasks that Erin and Jourdean must work on alone together since there seems to be a large personality conflict.

I hope that we can just let this quietly rest now. If the environment between them continues to be a problem or interfer with productivity, I suggest we let Jourdean go.
Thanks and keep me informed.

**Susan F. Brewer**
Manager, General Services and Administration
Tetra Tech, Inc.
(302) 738-7551
800-462-0910
(302) 454-5980 Fax
susan.brewer@tetratech.com < mailto:susan.brewer@tetratech.com>
www.tetratech.com < http://www.tetratech.com>

1

**Survey Assistant – Office**

Survey Assistant Field

Quality Control / Quality Assurance
(includes: transmittals, spelling, basic standards, consistency, proofreading, etc.)

Proposal Preparation

Clerical work includes organizing folders, filing, deliveries, etc.

CAD Drafting/Training

Assist Survey Manager (call clients, expense reports, letters, A/R, etc.)

**To all Survey Personnel:**

**As a reminder, there shall be no personal issues to be discussed on company time, particularly issues that may intentionally harm someone's reputation or harm their morale.**

**Business relationships grow over time as your colleagues will become more respectful.**

**This also makes the company look and be more professional.**

Notice that (Jourdean) wanted
permission for past on 5/11/05.
(Which made me meet w/ her).

## Clark, Amy -- Tt, Inc.

**From:**        Brewer, Susan -- Tt, Inc.
**Sent:**        Tuesday, December 20, 2005 11:04 AM
**To:**          Clark, Amy -- Tt, Inc.
**Subject:**     FW: Hiring Individuals Through Outside Service Agencies

**From:** Brewer, Susan -- Tt, Inc.
**Sent:** Monday, March 28, 2005 2:49 PM
**To:** Allen A Jayne (Allen A Jayne); Arkan Say (Arkan Say); Carl Hsu (Carl Hsu); Dennis McCauley (Dennis McCauley); Harish Mital (Harish Mital); Harvey Rubenstein (Harvey Rubenstein); Jerry Rozanski (Jerry Rozanski); John J. Traynor, III (John J. Traynor, III); Ken Fearn (Ken Fearn); Terry Haskins (Terry Haskins); Maureen Page (Maureen Page); Moazzam Khan (Moazzam Khan)
**Cc:** Bob Maffia (Bob Maffia)
**Subject:** Hiring Individuals Through Outside Service Agencies

If you have a need to replace or increase your staff through an outside temporary employment agency, i.e. Synerfac, Manpower, Aerotek, management approval is necessary.  Beginning immediately, please use the attached form for approval <u>prior</u> to making any commitments.  Thank you.



Employment
eq_Outside Service.

*Susan F. Brewer*

Manager, General Services and Administration
Tetra Tech, Inc.
(302) 738-7551
800-462-0910
(302) 454-5980  Fax
susan.brewer@tetratech.com < mailto:susan.brewer@tetratech.com>
www.tetratech.com < http://www.tetratech.com>
www.tetratech-de.com < http://www.tetratech-de.com>

1

TT0058



## TETRA TECH EMPLOYMENT REQUISITION FOR OUTSIDE SERVICES

Position _____     Date Open _____

Location _____     Requester _____

EMPLOYMENT STATUS *Indicate the type of opening in each of the following two categories:*

1. Full Time _____
   Part Time _____     Average hours to be worked per week _____
                              Expected duration of assignment _____

2. Replacement _____     Name of departing employee _____
   Addition _____        Reason for opening _____

IS THIS A TEMP-TO-PERM HIRE?     Yes ☐          No ☐
*If so, specify the terms:*

**RECRUITING SOURCE:**
Outside Employment Service/Agency Name _____

Agency Contact Name _____     Phone No. _____

Recruitments Name _____

**REQUIREMENTS:**
Minimum education, experience and skills acceptable for this position: _____
_____
_____
_____

**WORK TO BE PERFORMED:**
Specify in detail the duties and responsibilities of this position: _____
_____
_____
_____
_____

-------------------- *Authorization* --------------------
Supervisor _____     Date _____
Department Manager _____     Date _____
Location Manager _____     Date _____
Personnel Mgr. _____     Date _____

TT0059

## CERTIFICATE TO RETURN TO WORK OR SCHOOL

Mr
Mrs
Ms  _Jourdean Lorah_

was under my care from _4/7/05_ to _4/7/05_

and will be able to return to work/school on _4/8/05_

Remarks  _Asthma & Allergic Rhinitis_

_____

Dr _Richard Kim_                    Phone _995-2952_

Address _1941 Limestone_           Date _4/7/05_

_Wilmington, De 19899_

©1998 Glaxo Wellcome Inc. All rights reserved. Printed in USA. CP2677R2 August 1999          *GlaxoWellcome*

TT0060

Jourdean Lorah
114 Walls Avenue
Wilmington, Delaware   19805

February 22, 2005

TetraTech
Attention-John Traynor
56 W. Main Street  Suite 400
Christiana, Delaware   19702

Dear John Traynor,

The following letter is concerning a full time position as a civil designer or draftsman. Other positions related to various projects would be considered. Recently, I spoke with you about the various possibilities for a position as a civil designer.

Presently, I have six years of experience working as a designer among architects and  engineers on both residential and commercial projects. All projects have consisted of marketing for future and potential clients, space planning, drafting of floor plans, elevations, renderings and the selection of materials and finishes. Other related positions have included surveying of residential lots and working with a field crew to obtain field coordinates.

My educational background includes; The Maryland College of Art & Design,  The International Institute of Interior Design and Northern Virginia Community College. Currently, my credentials are a degree in Science. Other areas of interest  include art, marketing and teaching. Your consideration to review my credentials for future opportunity would be most appreciated.

Sincerely,

Jourdean Lorah

302-381-0361 M P| 2-choice
225-0540  1st
residential

# jourdean sarah lorah

## Vital Statistics

114 Walls Avenue
Wilmington, Delaware 19805

## Objective

To work full time as a civil designer or draftsman among architects, engineers or designers on various commercial and residential projects.

## Highlights

- Marketing for future potential clients regarding expansions, merges and consolidations.
- Creative planning for visual presentations.
- Teaching all academics to special education or children who have learning disabilities.
- Planning creative projects for recreational positions during the summer.
- Drafting plans or deeds for architecture or surveying.
- Drawing and illustrating for visual communication.

## Technical Skills

- Drafting of architectural plans, elevations and renderings.
- Surveying and engineering for residential land lots.
- Working with a field crew to obtain coordinates for surveying a residential land lot.
- Designing commercial and residential interiors for architectural and aesthetic needs.
- Drawing and illustrating visuals to meet the aesthetic need of the client.
- Marketing fine art work to future clients for various projects.
- Drawing and painting for production.

## Work Related Experience

- Engineering - Drafting residential land lots and working with a field crew to obtain the coordinates for the deeds.
- Designing - Commercial and residential interiors for various design firms.
- Architecture - Drafting of elevations and plans for commercial and residential projects.

TT0062

Page Two

# jourdean sarah lorah

- **Classroom Teaching - A creative and meaningful approach was taken to encourage the learning experience, participation and active involvement.**
- **Marketing - Contacting future prospective clients for consolidations, merges and expansions. Fine art work is also marketed to meet the client's aesthetic needs.**

## Work History

- June '02 - Present - Dale Larsen -Sport's Historian -Marketing-De.
- May '03 - August '03 - Private Health Care - De.
- Sept. '02 - December '02 -Librarian -Ocean City Christian School - Md.
- Jan. '01 - June '01 - Substitute Teacher -Fairfax County Public Schools - Va.
- Sept. '99 - June '00 - Teacher - Fairfax Brewster School - Va.
- June '99 - Aug. '99 - Teacher - Adult Education/Fairfax County Public Schools - Va.
- Sept. '98 - June '99 - Teacher - Way of Faith Ministry -Va.
- Sept. '97 - June '98 - Teacher - Cloverlawn Academy -Va.
- Sept. '96 - June '97 - Teacher - Christian Fellowship School - Va.
- 1994-1996 - Attended College to complete my degree.
- 1993 - North American Network - Public Service Announcements - News Directors/Radio- Washington, D.C.

## Credentials and Education

The Maryland College of Art & Design - Silver Spring, Maryland
The International Institute of Interior Design - Washington, D.C. - G.P.A. - 3.35
Northern Virginia Community College -Manassas, Virginia - G.P.A. -3.25-3.45/Honors

Associates Degree in Science with a major in General Studies

## Other

Interests - Painting, drawing, pottery, jewelry design and winter sports.



# DALE LARSEN
## SPORTS HISTORIAN

RR-5, Box 149-68    41 Georgia Drive    Frankford, Delaware 19945

November 19, 2003

TO WHOM IT MAY CONCERN

I was a teacher and coach of various sports.  At the present,
I am retired.  I met Ms. Lorah when she was teaching in
Fairfax County, Virginia.  In my friendship with her, and her
family, I counselled her in various techniques of teaching, e.g.
planning, organization.etc.

Since my retirement I have become more involved in the history
of sports.  Ms. Lorah is doing my administrative/correspondence
work in acquiring sports data (for historical purposes).

In my relationship/work experience, I find Ms. Lorah dependable,
prompt and would recommend her as a very caring and professional
person.

Sincerely yours,

*Dale Larsen*

Dale Larsen

TT0064



## FAIRFAX-BREWSTER SCHOOL

5860 Glen Forest Drive

Bailey's Crossroads, Virginia 22041

(703) 820-2636

4/24/00

To Whom It May Concern:

This letter will serve as a reference for Miss Jourdean Lorah. Ms. Lorah was employed by the Fairfax Brewster School as a fourth grade teacher during the 1999-2000 school year. She taught all subject areas and also Art Club during our after school program.

Miss Lorah was a dependable, caring, and dedicated teacher. She was very creative and went the extra mile to provide interesting lessons for the children. Jourdean displayed patience and always tried to provide individual attention to all of her students.

Should you need any further information regarding Miss Lorah, please feel free to contact me at the number listed above.

Sincerely,

Katherine B. Webster
Principal

TT0065

October 15, 1990

D/B/I

To Whom It May Concern:

Jourdean S. Lorah was employed by DBI on a temporary, task-specific basis from June, 1990 to October, 1990. During this time she worked within the marketing department on a variety of tasks including contacting past and potential future clients.

I found her to be consistently enthusiastic, energetic, and well organized. I can highly recommend her skills and dedication.

Sincerely,

Michael D. Zeman
Director of Marketing

MDZ/kjh

1325
Massachusetts Ave.
Northwest
Suite 700
Washington. D.C.
20005
202.393.4500

TT0066

# Dewberry & Davis

**Architects Engineers Planners Surveyors**



8401 Arlington Boulevard
Fairfax, VA 22031-4666
703 849-0100

July 21, 1987

To Whom It May Concern:

This letter will verify that Jourdean S. Lorah was employed by Dewberry & Davis as a Drafter in our House Locations and Settlement Surveys Department, Land Development Engineering Division.  She worked from April 15, 1986 through November 21, 1986.

Ms. Lorah's drafting activities were performed under the supervision of Michael W. Kilby, Associate and Joseph Kaskey, Team Leader.

Sincerely,

Richard Penner
Assistant Director
Department of Human Resources

DEC. 20. 2005 3:37PMM   TETRA-TECH-INC.                    NO. 7836   P. 5/8



# DALE LARSEN
### SPORTS HISTORIAN

RR-5, Box 149-68    41 Georgia Drive    Frankford, Delaware 19945



November 19, 2003

**TO WHOM IT MAY CONCERN**

I was a teacher and coach of various sports.  At the present,
I am retired.  I met Ms. Lorah when she was teaching in
Fairfax County, Virginia.  In my friendship with her, and her
family, I counselled her in various techniques of teaching, e.g.
planning, organization.etc.

Since my retirement I have become more involved in the history
of sports.  Ms. Lorah is doing my administrative/correspondence
work in acquiring sports data (for historical purposes).

In my relationship/work experience, I find Ms. Lorah dependable,
prompt and would recommend her as a very caring and professional
person.

Sincerely yours,

Dale Larsen

TT0068



## FAIRFAX-BREWSTER SCHOOL
5300 Glen Forest Drive
Bailey's Crossroads, Virginia 22041
(703) 820-2828

4/24/00

To Whom It May Concern:

This letter will serve as a reference for Miss Jourdean Lorah. Ms. Lorah was employed by the Fairfax Brewster School as a fourth grade teacher during the 1999-2000 school year. She taught all subject areas and also Art Club during our after school program.

Miss Lorah was a dependable, caring, and dedicated teacher. She was very creative and went the extra mile to provide interesting lessons for the children. Jourdean displayed patience and always tried to provide individual attention to all of her students.

Should you need any further information regarding Miss Lorah, please feel free to contact me at the number listed above.

Sincerely,

Katherine B. Webster
Principal

TT0069

October 15, 1990                                                    D/B/1

To Whom It May Concern:

Jourdean S. Lorah was employed by DBI on a temporary, task-specific basis from June, 1990 to October, 1990. During this time she worked within the marketing department on a variety of tasks including contacting past and potential future clients.

I found her to be consistently enthusiastic, energetic, and well organized. I can highly recommend her skills and dedication.

Sincerely,

Michael D. Zeman
Director of Marketing

MDZ/kjh

1325
Massachusetts Ave.
Northwest
Suite 700
Washington, D.C.
20005
202.393.4500

TT0070

# Dewberry & Davis



**Architects Engineers Planners Surveyors**

8401 Arlington Boulevard
Fairfax, VA 22031-4566
703 849-0100

July 21, 1987

To Whom It May Concern:

This letter will verify that Jourdean S. Lorah was employed by Dewberry & Davis
as a Drafter in our House Locations and Settlement Surveys Department, Land
Development Engineering Division.  She worked from April 15, 1986 through
November 21, 1986.

Ms. Lorah's drafting activities were performed under the supervision of
Michael W. Kilby, Associate and Joseph Kaskey, Team Leader.

Sincerely,

Richard Penner
Assistant Director
Department of Human Resources

Fairfax, VA          Landover, MD          Morristown, TN

TT0071

## New Castle Staffing Team

Greg Porter
Melissa Palese
Wes Burritt
Mary Clay-Mitchell
Tim Gephart
Adam Mills
Martha C. Williams



SYNERFAC
TECHNICAL STAFFING

2 Read's Way, Suite 209
19720 Castle, DE
(302) 324-9400 FAX (302) 324-9404

# Fax

| To: | John Teaynor | From: | Greg Porter |
|-----|-----|-----|-----|
| Fax: | 454-5989 | Pages: | 1 |
| Phone: | | Date: | 6-6-05 |
| Re: | | Company: | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

● Comments

Confidentiality Note: The information contained in this facsimile message is legally privileged and confidential information intended for the use of the individual or the entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify by telephone at (302) 324-9400 and return the original message to us at 2 Read's Way, Suite 209, New Castle, DE 19720 the United States Postal Service. Thank You. Synerfac Technical Staffing is a division of Synerfac, Inc.

TT0072

2 Read's Way | Suite 209
New Castle | DE 19720

302 | 324-9400
fax: 302 | 324-9404

www.synerfac.com

A division of SYNERFAC, Inc.

June 3, 2005

To Whom It May Concern:

Per Jourdean Lorah's request, this letter is to inform you of her current pay rate of $14.00/hour.

If you have additional requests please let Jourdean know and with her permission I will release the information.

Sincerely,

*Melissa K. Palese*

**Melissa K. Palese**
Recruiting Manager- Wilmington Branch
Synerfac Technical Staffing
2 Read's Way, Suite 209
New Castle, DE 19720
P 302.324.9400
F 302.324.9404
Toll Free 800.562.7040

TT0073

LA RED CLINIC
**FABRICIO J. ALARCON, M.D.**
505-A WEST MARKET STREET
GEORGETOWN, DE 19947

(302) 855-1233                    DEA # BA 8246931

NAME _Lorah Jourdean_                    AGE _____

ADDRESS _____    DATE _9/13/02_

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

R:

mrs Jourdean suffers from respiratory
Symptoms that get aggravated when
exercising in warm environments.
I recommend that she exercises
only with air conditioning on.

Refill _____ times

DISPENSE AS WRITTEN _____

SUBSTITUTION PERMITTED _____

1JIM0206317

**TT0074**

## Health Care Associates, P.A.

| Jane Govatos. MSN, FNP-C | Paul E. Gorrin, M.D. | Margaret C. Gatti, MSN, FNP-C |
|---|---|---|
| *Family Nurse Practitioner* | *Internal Medicine* | *Family Nurse Practitioner* |
| | *Allergy* | |

January 21, 2004

To Whom It May Concern,

Jourdean Lorah has allergic rhinitis and asthma. She is medically stable. She does not have an infectious illness and consequently is not a risk for any other person.

Thank you for your cooperation in this matter.

Sincerely,

Paul E. Gorrin, M.D.

TT0075

\* \* \* Transmission Result Report(MemoryTX) ( Dec.20. 2005  2:47PM ) \* \* \*

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| )322 | Memory TX | 916264702716 | P. 1 | OK | |

Reason for error
  E.1) Hang up or line fail      E.2) Busy
  E.3) No answer           E.4) No facsimile connection

**CERTIFICATE TO RETURN TO WORK OR SCHOOL**

Mr
Mrs
Ms___Jourdean Lorah_____

was under my care from __4/7/05__ to __4/7/05__
and will be able to return to work/school on __4/8/05__
Remarks ___Asthma  & Allergie Rinitis___

Dr __Richard Kim__ Phone __995-2952__
Address __1941 Limestone__ Date __4/7/05__
__Wilmington De 19659__

©1990 Glaxo Wellcome Inc. All rights reserved. Printed in USA. CF28771K2 August 1999

*GlaxoWellcome*

**REDACTED**

(Del. Rev. 12/98)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Jourdean Lorah
_____

_____
(Name of Plaintiff or Plaintiffs)

v.

Tetra Tech Inc.
_____

_____
(Name of Defendant or Defendants)

CIVIL ACTION No. _____

06 - 538

2006 AUG 31 PM 3: 12

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED

## COMPLAINT UNDER TITLE VII

## OF THE CIVIL RIGHTS ACT OF 1964

1.    This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended, for employment discrimination. Jurisdiction exists by virtue of 42 U.S.C. $2000e-5. Equitable and other relief are also sought under 42 U.S.C. $2000e-5(g).

2.    Plaintiff resides at 114 Walls Ave.
(Street Address)
Wilmington (New Castle) De. 19805
(City)      (County)      (State)      (Zip Code)
(302) 225-0540
(Area Code) (Phone Number)

3.    Defendant resides at, or its business is located at 56 West Main St.
(Street Address)
Christiana          De.          19720
(City)      (County)      (State)      (Zip Code)

4.    The discriminatory conduct occurred in connection with plaintiff's employment at, or application to be employed at, defendant's Tetra Tech Inc. (Survey Dept.) place of business
(Defendant's Name)
located at 56 West Main St.
(Street Address)
Christiana          De.          19720
(City)      (County)      (State)      (Zip Code)

5.    The alleged discriminatory acts occurred on <u>FROM</u> <u>MARCH `05 - JUNE `05</u>
                                                        (Day)            (Month)                (Year)

6.    The alleged discriminatory practice  ⚪ is  ✓ is not continuing.

7.    Plaintiff filed charges with the Department of Labor of the State of Delaware, <u>EEOC</u>

<u>       21 SOUTH 5TH ST PHILADELPHIA , PA .        </u>
(Agency)          (Street Address)        (City)

_____ , regarding
(County)          (State)                (Zip Code)

defendant's alleged discriminatory conduct on <u>FROM MARCH `05 - JUNE `05</u>
                                                      (Day)        (Month)              (Year)

8.    Plaintiff filed charges with the Equal Employment opportunity Commission of the United States
regarding defendant's alleged discriminatory conduct on: <u>OCT. 25, 2005</u>
                                                              (Day)          (Month)          (Year)

9.    The Equal Employment Opportunity Commission issued the attached <u>Notice-of-Right-to-Sue</u> letter
                                                    ON OR AROUND
which was received by plaintiff on: <u>23RD</u> , <u>JUNE</u> , <u>`06</u> .
                                        (Day)          (Month)      (Year)

**_(NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)_**

10.    The alleged discriminatory acts, in this suit, concern:

A.    ✓ Failure to employ plaintiff.

B.    ⚪ Termination of plaintiff's employment.

C.    ✓ Failure to promote plaintiff.

D.    ✓ Other acts (please specify below)

---

<u>EMPLOYER DISCRIMINATED BY WAY OF AGE , GENDER</u>

<u>& DISABILITY. YOUNGER EMPLOYEES WERE</u>

<u>HIRED BEFORE AND AFTER ME. I WAS DENIED</u>

<u>MY TRAINING.</u>

---

TT0078

11.    Defendant's conduct is discriminatory with respect to the following:

A.    ⊙    Plaintiff's race

B.    ⊙    Plaintiff's color

C.    ⊙    Plaintiff's sex        AGE & DISABILITY

D.    ⊙    Plaintiff's religion

E.    ⊙    Plaintiff's national origin

12.    A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13.    If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 CivilRights Act, as amended.

14.    Plaintiff's has no adequate remedy at law to redress the wrongs described above.

**THEREFORE, Plaintiff prays as follows: (Check appropriate letter(s))**

A.    ⊙    That all fees, cost or security attendant to this litigation be hereby waived.

B.    ⊙    That the Court appoint legal counsel.

C.    ⊙    That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated:    Aug. 31, '06

_____
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

EEOC Form 161-B (10/96)

## U.S. Equal Employment Opportunity Commission

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: **Ms. Jourdean Lorah**
   **114 Walls Avenue**
   **Wilmington, DE 19805**

From: Equal Employment Opportunity Commission
   Philadelphia District Office
   21 South Fifth Street
   Philadelphia, PA 19106-2515

[      ]   *On behalf of person(s) aggrieved whose identity is*
          *CONFIDENTIAL (29 CFR § 1601.7(a)*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2005-02819 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[  X  ]   More than 180 days have passed since the filing of this charge.

[      ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[  X  ]   The EEOC is terminating its processing of this charge.

[      ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[  X  ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[      ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso,  District Director

June 21, 2006

*(Date Mailed)*

Enclosure(s)

cc:    Ms. Amy Clark (for Respondent)

TT0080

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA  [X] EEOC | 170-2005-02819 |

Delaware Department of Labor _____ and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Jourdean S. Lorah | (302) 225-0540 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 114 Walls Avenue, Wilmington, DE 19805 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, | Phone No. (Include Area Cod |
|---|---|---|
| TETRA TECH INC. | 101 - 200 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 56 West Main Street,  Christiana, DE 19720 | |

| Name | No. Employees, | Phone No. (Include Area Cod |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [X] AGE  [X] DISABILITY  [ ] OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 06/14/2005 | 06/14/2005 |
| [X] CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I. I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, In (the "Respondent") beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees recieved this training including a younger female w ho was hired by the Respondent. On or about June 14, 2005, Respondent had my employer terminate my contract. I was replaced by a younger male.**

**II. I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). During my interview, a Respondent supervisor asked me if I had a disability. After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| OCTOBER 25, '05 *Date*     *Jourdean S. Lorah* *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

TT0081

Equal Employment Opportunity Commission
PHILADELPHIA DISTRICT OFFICE
21 SOUTH 5TH STREET, SUITE 400
Philadelphia, PA 19106-2515

PHILADELPHIA PA 191

21 JUN 2006



02 1A                    $
0004601475        J
MAILED FROM ZIP (

Ms. Jourdean Lorah
114 Walls Avenue
Wilmington, DE 19805

19805+1053

## Health Care Associates, P.A.

| Jane Govatos. MSN, FNP-C | Paul E. Gorrin, M.D. | Margaret C. Gatti, MSN, FNP-C |
|---|---|---|
| *Family Nurse Practitioner* | *Internal Medicine* *Allergy* | *Family Nurse Practitioner* |

January 21, 2004

To Whom It May Concern,

Jourdean Lorah has allergic rhinitis and asthma.  She is medically stable.  She does not have an infectious illness and consequently is not a risk for any other person.

Thank you for your cooperation in this matter.

Sincerely,

Paul E. Gorrin, M.D.

TT0083



6301 Hanover Court
Springfield, Virginia 22150
703.922.1000

KAISER PERMANENTE
Medical Center
Springfield

---

# MEDICAL STATEMENT

## JUNE 15, 2000

Patient:       Jourdean Lorah
Diagnosis:     Allergic Rhino conjunctivitis
               Wheezing, sporadic

    Specific allergies include cat dander, dust mites, and pollen.  The patient is on allergy injections as well as Flonase nasal inhaler, Allegra/Chlortrimeton for congestion, and Entex LA for stuffiness.

    The patient also has a history of two brief wheezing episodes during the six-weeks prior to her initial Kaiser allergy evaluation on 3/31/00.  There is no history of chronic asthma.  Her lungs were clear and her peak flow was normal on 3/31/00.  She was provided with a Ventolin inhaler to use only as necessary in the event of a wheezing episode.

John R. Vroom, M.D.
Allergist

Mid-Atlantic Permanente Medical Group, P.C.
Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.

LA RED CLINIC
**FABRICIO J. ALARCON, M.D.**
505-A WEST MARKET STREET
GEORGETOWN, DE 19947

(302) 655-1233                                    DEA # BA 6246931

NAME _Lorah Jourdean_                            AGE ____

ADDRESS _____                DATE 9/13/02

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞

mrs Jourdean suffers from respiratory
symptoms that get aggravated when
exercising in warm environments.
I recommend that she exercises
only with air conditioning on.

Refill _____ times

DISPENSE AS WRITTEN _____

SUBSTITUTION PERMITTED _____

1JIM0206317

TT0085

## CERTIFICATE OF SERVICE

On this day of _____ 2006, the following

documents were sent or delivered to the Defendant.


**Jourdean Lorah - Plaintiff**
**114 Walls Ave.**
**Wilmington, Delaware   19805**


**Tetra Tech Inc.- Defendant**
**56 West Main Street**
**Christiana, Delaware   19720**

TT0086

(Del. Rev. 12/98)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JOURDEAN LORAH
_____

_____
(Name of Plaintiff or Plaintiffs)

v.                                          CIVIL ACTION No. _____

TETRA TECH INC.
_____

_____
(Name of Defendant or Defendants)

0 6 - 5 3 8

2006 AUG 31 PH 3: 12

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## *COMPLAINT UNDER TITLE VII*

## *OF THE CIVIL RIGHTS ACT OF 1964*

1.      This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended, for

**employment discrimination**. Jurisdiction exists by virtue of 42 U.S.C. $\S$2000e-5. Equitable and other relief are also

sought under 42 U.S.C. $\S$2000e-5(g).

2.      Plaintiff resides at 114 WALLS AVE.
                              (Street Address)

WILMINGTON (NEW CASTLE) DE. 19805
(City)      (County)      (State)    (Zip Code)

(302) 225-0540
(Area Code) (Phone Number)

3.      Defendant resides at, or its business is located at 56 WEST MAIN ST.
                                                        (Street Address)

CHRISTIANA            DE.            19720
(City)      (County)      (State)      (Zip Code)

4.      The discriminatory conduct occurred in connection with plaintiff's employment at, or application to

be employed at, defendant's TETRA TECH INC. (SURVEY DEPT.) place of business
                              (Defendant's Name)

located at 56 WEST MAIN ST.
           (Street Address)

CHRISTIANA            DE.            19720
(City)      (County)      (State)      (Zip Code)

5.    The alleged discriminatory acts occurred on ___FROM   MARCH '05 - JUNE '05___

(Day)                (Month)                (Year)

6.    The alleged discriminatory practice    ○ is    ✔ is not continuing.

7.    Plaintiff filed charges with the Department of Labor of the State of Delaware,    EEOC

___21 SOUTH 5TH ST   PHILADELPHIA , PA.___

(Agency)        (Street Address)        (City)

_____ , regarding

(County)        (State)        (Zip Code)

defendant's alleged discriminatory conduct on ___FROM  MARCH '05 - JUNE '05___

(Day)        (Month)        (Year)

8.    Plaintiff filed charges with the Equal Employment opportunity Commission of the United States

regarding defendant's alleged discriminatory conduct on: ___OCT. 25, 2005___.

(Day)        (Month)        (Year)

9.    The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter

ON OR AROUND

which was received by plaintiff on: ___23RD , JUNE , '06___

(Day)        (Month)        (Year)

**(NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)**

10.    The alleged discriminatory acts, in this suit, concern:

A.    ✔ Failure to employ plaintiff.

B.    ○ Termination of plaintiff's employment.

C.    ✔ Failure to promote plaintiff.

D.    ✔ Other acts (please specify below)

_____

EMPLOYER DISCRIMINATED BY WAY OF AGE, GENDER

& DISABILITY. YOUNGER EMPLOYEES WERE

HIRED BEFORE AND AFTER ME. I WAS DENIED

MY TRAINING.

_____

11.   Defendant's conduct is discriminatory with respect to the following:

A.    ●   Plaintiff's race

B.    ●   Plaintiff's color

C.    ✓   Plaintiff's sex              AGE & DISABILITY

D.    ●   Plaintiff's religion

E.    ●   Plaintiff's national origin

12.   A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13.   If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 Civil Rights Act, as amended.

14.   Plaintiff's has no adequate remedy at law to redress the wrongs described above.

*THEREFORE*,  Plaintiff prays as follows: (Check appropriate letter(s))

A.    ●   That all fees, cost or security attendant to this litigation be hereby waived.

B.    ●   That the Court appoint legal counsel.

C.    ●   That the Court grant relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _Aug. 31, '06_____

_Jundean Lorah_____
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

## U.S. Equal Employment Opportunity Commission

EEOC Form 161-B (10-96)

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Ms. Jourdean Lorah
114 Walls Avenue
Wilmington, DE 19805

From: Equal Employment Opportunity Commission
Philadelphia District Office
21 South Fifth Street
Philadelphia, PA 19106-2515

[   ]   *On behalf of person(s) aggrieved whose identity is*
         *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2005-02819 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]   More than 180 days have passed since the filing of this charge.

[   ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ X ]   The EEOC is terminating its processing of this charge.

[   ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to you case:

[ X ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[   ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso, District Director

June 21, 2006

*(Date Mailed)*

Enclosure(s)

cc:   Ms. Amy Clark (for Respondent)

TT0090

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA<br>☒ EEOC | 170-2005-02819 |

| Delaware Department of Labor | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| Ms. Jourdean S. Lorah | (302) 225-0540 | |
| Street Address | City, State and ZIP Code | |
| 114 Walls Avenue, Wilmington, DE 19805 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees. | Phone No. (Include Area Code) |
|---|---|---|
| TETRA TECH INC. | 101 - 200 | |
| Street Address | City, State and ZIP Code | |
| 56 West Main Street,  Christiana, DE 19720 | | |

| Name | No. Employees. | Phone No. (Include Area Code) |
|---|---|---|
| | | |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.) | Earliest: 06/14/2005   Latest: 06/14/2005<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.  I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, In (the "Respondent") beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees recieved this training including a younger female w ho was hired by the Respondent. On or about June 14, 2005, Respondent had my employer terminate my contract.   I was replaced by a younger male.

II.  I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). During my interview, a Respondent supervisor asked me if I had a disability. After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| OCTOBER 25, 05    *Jourdean S. Lorah*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

TT0091

Equal Employment Opportunity Commission
PHILADELPHIA DISTRICT OFFICE
21 SOUTH 5TH STREET, SUITE 400
Philadelphia, PA 19106-2515



PHILADELPHIA PA 191

21 JUN 2006

UNITED STATES POSTAGE

$

MAILED FROM ZIP

Ms. Jourdean Lorah
114 Walls Avenue
Wilmington, DE 19805

19805+1059

TT0092

**Health Care Associates, P.A.**

Jane Govatos. MSN, FNP-C
*Family Nurse Practitioner*

Paul E. Gorrin, M.D.
*Internal Medicine*
*Allergy*

Margaret C. Gatti, MSN, FNP-C
*Family Nurse Practitioner*

January 21, 2004

To Whom It May Concern,

Jourdean Lorah has allergic rhinitis and asthma.  She is medically stable.  She does not have an infectious illness and consequently is not a risk for any other person.

Thank you for your cooperation in this matter.

Sincerely,

Paul E. Gorrin, M.D.



Springfield, Virginia 22150
703.922.1000

KAISER PERMANENTE
Medical Center
Springfield

---

## MEDICAL STATEMENT

### JUNE 15, 2000

Patient:     Jourdean Lorah
Diagnosis:   Allergic Rhino conjunctivitis
             Wheezing, sporadic

Specific allergies include cat dander, dust mites, and pollen. The patient is on allergy injections as well as Flonase nasal inhaler, Allegra/Chlortrimeton for congestion, and Entex LA for stuffiness.

The patient also has a history of two brief wheezing episodes during the six-weeks prior to her initial Kaiser allergy evaluation on 3/31/00. There is no history of chronic asthma. Her lungs were clear and her peak flow was normal on 3/31/00. She was provided with a Ventolin inhaler to use only as necessary in the event of a wheezing episode.

John R. Vroom, M.D.
Allergist

Mid-Atlantic Permanente Medical Group, P.C.
Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.

LA RED CLINIC
**FABRICIO J. ALARCON, M.D.**
505-A WEST MARKET STREET
GEORGETOWN, DE 19947

(302) 855-1233                          DEA # BA 6246931

NAME _Loran Jourdean_                    AGE ____

ADDRESS _____          DATE _9/13/02_

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞

Mrs Jourdeon suffers from respiratory
symptoms that get aggravated when
exercising in warm environments.

I recommend that she exercises
only with air conditioning on.

Refill _____ times

DISPENSE AS WRITTEN _____

SUBSTITUTION PERMITTED _____

1JIM0206317

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOURDEAN LORAH,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   Civ. No. 06-538 SLR
                                   )
TETRA TECH INC.,                   )
                                   )
            Defendant.             )

**O R D E R**

At Wilmington this ~~6th~~ day of September, 2006,
the Court having considered the application to proceed without
prepayment of fees under 28 U.S.C. § 1915;

IT IS ORDERED that the application is GRANTED.


_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOURDEAN LORAH,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    Civ. No. 06-538-SLR
                                   )
TETRA TECH INC.,                   )
                                   )
            Defendant.             )

O R D E R

At Wilmington, this ___ day of September, 2006;

IT IS ORDERED:

1.    Plaintiff's motion to request appointed counsel (D.I.
3) is denied without prejudice with leave to renew following
service of the complaint.  See Ray v. Robinson, 640 F.2d 474, 477
(3d Cir. 1981) (a pro se litigant proceeding in forma pauperis,
has no constitutional or statutory right to representation by
counsel); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).

2.    Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2),
plaintiff shall complete and return to the clerk of the court an
original "U.S. Marshal-285" form for the defendant.  Plaintiff
shall also provide the court with a copy of the complaint (D.I.
2) for service upon the defendant.  Plaintiff is notified that
the United States Marshal will not serve the complaint until the
"U.S. Marshal 285" form has been received by the clerk of the
court.  Failure to provide the "U.S. Marshal 285" form and a copy
of the complaint for defendant within 120 days from the date of

this order may result in the complaint being dismissed or defendant being dismissed pursuant to Federal Rule of Civil Procedure 4(m).

3.    Upon receipt of the completed "U.S. Marshal 285" form(s) and copies of the complaint, the United States Marshal shall serve a copy of the complaint and this order upon defendant as directed by plaintiff.  All costs of service shall be advanced by the United States.

4.    No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

UNITED STATES DISTRICT JUDGE

United States District Court
544 King Street
Wilmington, Delaware   19801

Jourdean Lorah - Plaintiff                    Case Number- 1:06-cv-538 SLR
114 Walls Ave.
Wilmington, Delaware   19805


                    V.


Tetra Tech Inc.-Defendant
56 West Main Street
Christiana, Delaware   19805



Tetra Tech Inc. - Defendant
240 Continental Drive
Newark, Delaware   19713-4307


## MOTION TO RECONSIDER APPOINTED COUNSEL

Plaintiff, Jourdean Lorah respectively prays that reconsideration for appointed

counsel be granted. Plaintiff, is now unemployed without unemployment benefits.

Presently, there is no unemployment compensation in the Plaintiff's account.  The

continuing violation under Title VII is presently a lock out regarding Plaintiff's

last part time position with Tatnall School located at 1501 Barley Mill Road in

Wilmington, Delaware 19807. Plaintiff, Jourdean Lorah has met with an

investigator at OSHA who has advised the Plaintiff how to proceed administratively

regarding the wrongful violation concerning her rights. Plaintiff, Jourdean Lorah is

denied gainful opportunity and is denied administratively the due process of those

in authority (abuse of discretion/privacy).  Supervisors Mr. John Traynor from

Tetra Tech Inc. and Ms. Jennings/Ms. Cathcart  from Tatnall school  have denied

me employment. The doors are closed for gainful opportunity with benefits. The

EEOC has legal representation for discrimination. Plaintiff, Jourdean Lorah has

been denied equal opportunity and therefore is requesting counsel of an attorney

from the EEOC or the U.S. District Court.

Jourdean Lorah – PRO-SE
1/4/07

Page: 1 Document Name: untitled

```
ECHO                     DELAWARE DEPARTMENT OF LABOR              01/03/2007
                    UNEMPLOYMENT INSURANCE CLAIM HISTORY
REFER TO: C NOTES                  CLAIM DATA                      AC DATES
    SSN: 217 74 1460                      CLAIM DATE: 10/09/2005
   NAME: J S LORAH                   DISQUALIFIED DATE:
  ADDR1: 114 WALLS AVE              OVERPAYMENT DATE:
  ADDR2:                           INSUFFICIENT DATE:
   CITY: WILM          DE 19805
  PHONE: 302-225-0540  FIPS: 10-003-0   TOTAL MBA:  6,214 WBA: 239 BAL:      0
    DOB: 01/27/1959             FUND CODE: 10
LOCAL OFFICE:  2                NO. PAYMENTS: 26
 MASS LAYOFF:    (           )      MBA:  6,214
HIRING HALL: N                     WBA:    239
       RECALL: N DATE:          BALANCE:      0
RTRN TO WORK:                   PAY NO.: 27
      SCHOOL: Y                 LAST CWED: 04/15
     DET FLAG:                     SIC1: 736
EARNGS BYPSS:                  TAX CODE: Y
  SICK CLAIM: N DATE:          TAX DATE: 10/09/2005
 REDUCED HRS:                  TAX COUNT: 1
 PARTIAL CLM:          DET REG: Y DATE: 10/11/2005  ID: 000000000041816
    HOLD PAY: N (                          ) MAIL/PHONE: M
F1=MEN            F4=RTN F5=EXT F6=PND F7=CHK F8=WAG F10=DIS F11=NT ECHOMAP
                                                                    ECHOINQ
```

*Monetarily & yearly expired*

*Can not open a new Claim for W/O 12/31/07. See next page.*

Date: 1/3/2007 Time: 4:09:16 PM

TT0101

Page: 1 Document Name: untitled

ECHO                    DELAWARE DEPARTMENT OF LABOR                01/03/2007
                 UNEMPLOYMENT INSURANCE CLAIM HISTORY
                          WAGE HISTORY


   SSN: 217 74 1460    NAME: J S LORAH        CLAIM DATE: 10/09/2005


                          QUARTERLY WAGES

EMPLOYER              NAICS
- - - - - - - - - - - - - - - -   - - - - - -   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
TOTAL

NO WAGE HISTORY


                  No New Earnings on System


F1=MEN            F4=RTN F5=EXT F6-PND F7=CHK F9=HST F10=DIS F11=NT ECHOMAP
                                                                  ECHOINQ


Date: 1/3/2007 Time: 4:09:21 PM



**DELAWARE
DEPARTMENT OF**
# LABOR
**KEEPING
DELAWARE FIRST**

## Division of Unemployment Insurance

### CLAIMANT INCOME QUESTIONNAIRE

In order for the Division of Unemployment Insurance to correctly determine what effect your income may have on your entitlement to unemployment insurance benefits, please complete this questionnaire.

Name: _J. S. Lorah._

Social Security Number: 2 0 7 - 4 4 - 0 9 6 0

**Do you receive any of the following?**

| | | | Gross Monthly Amount: | Effective Date: |
|---|---|---|---|---|
| ☐ Yes | ☑ No | Employer Pension | _____ | _____ |
| ☐ Yes | ☑ No | Military Pension | _____ | _____ |
| ☐ Yes | ☑ No | Railroad Retirement | _____ | _____ |
| ☐ Yes | ☑ No | Lump Sum Pension | _____ | _____ |
| ☐ Yes | ☑ No | Other Pension/Annuity | _____ | _____ |
| ☐ Yes | ☑ No | Ira/Keogh | _____ | _____ |
| ☐ Yes | ☑ No | Workers Compensation | _____ | _____ |
| ☐ Yes | ☑ No | Sickness/Accident | _____ | _____ |
| ☐ Yes | ☑ No | Disability Pay | _____ | _____ |
| ☐ Yes | ☑ No | Severance/Bonus Pay | _____ | _____ |
| ☐ Yes | ☑ No | Holiday/Vacation Pay | _____ | _____ |
| ☐ Yes | ☑ No | Self-Employment/Other | _____ | _____ |

**Local Office Comments:**

_____

_____

_____

**Claimant Certification:** I understand that penalties are provided by law for an individual making false statements to obtain benefits. I also understand that it is my responsibility to immediately report any changes in the amount or type of income I receive. I certify that the above information is correct to the best of my knowledge.

| _J. Lang_ | 1/3/07 | _Jourdean Lorah_ | 1/3/07 |
|---|---|---|---|
| Agency Representative | Date | Claimant's Signature | Date |

UC-528A

TT0103



# Notice About
# Your Medical Assistance
### State of Delaware Division of Social Services

December 18, 2006

**Your Case #:**
9001440499

**Questions? Contact your Caseworker:**
I. HERNANDEZ-ORTIZ
POOL# 0110
1715  W 4TH ST
4TH ST. OFFICE
WILMINGTON DE 19805
(302) 577-3600
Fax: (302) 577-3648

To:     JOURDEAN S LORAH
114    WALLS AV
WILMINGTON DE    19805

---

**Medical Assistance for the following people has CHANGED:**

| Name | Start Date | End Date | Old Program | New Program |
|------|-----------|----------|-------------|-------------|
| Jourdean S Lorah | January 1, 2007 | Ongoing | Family Planning Services | Medicaid for Uninsured Adults |

You are changing to the Medicaid Program. Medicaid covers most medical care services. In addition to medical care services, Medicaid covers the cost of transportation to medical appointments. The program also covers dental services for children under age 21.

 **If you do not agree with this action, you have the right to a fair hearing.**
**Read the last page of this notice to see how to ask for a fair hearing.** 

Patty J. Lorah
114 Walls Ave.
Wilmington, Delaware 19805

January 2, 2007

Equal Employment Opportunity Commission
Philadelphia District Office
Attention: Mr. King
21 South Fifth Street
Philadelphia, Pennsylvania

Dear Mr. King,

I am a concerned parent of Jourdean Lorah who resides with me at 114
Walls Ave. in Wilmington, Delaware . There seems to be a pattern of
employment which results in either a layoff or a wrongful termination where no
explanation or reason is given. My daughter's employment usually lasts
approximately three months, each time resulting in a financial hardship with no
retirement and unemployment compensation. Jourdean Lorah has financial
responsibilities each month as a resident in my home.

Please contact me if there is anything that I can do or discuss with you. I know
an overburden of cases is a hardship at this time but any consideration you could
give us would be highly appreciated.   I can be reached at 302-381-2637 (if
possible to have a telephone conversation).

Sincerely yours,

*Patty J. Lorah*

Patty J. Lorah

Mr. King,
I will be back in the area
in Feb - if we need to set up a
meeting.          Thank you,

TT0105

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


JOURDEAN LORAH,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )  Civ. No. 06-538-SLR
                                   )
TETRA TECH, INC.,                  )
                                   )
          Defendant.               )


JOURDEAN LORAH,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )  Civ. No. 06-539-SLR
                                   )
DEPARTMENT OF NATURAL              )
RESOURCES AND ENVIRONMENTAL        )
CONTROL, et al.,                   )
                                   )
          Defendants.              )

### O R D E R

At Wilmington this 25th day of January, 2007, having

considered various motions pending in the above captioned cases;

IT IS ORDERED that:

1.  Plaintiff's motions to seal court documents (Civ. No.

06-538-SLR, D.I. 12; Civ. No. 06-539-SLR, D.I. 15) are denied, as

plaintiff is asking the court to take on the burden of

determining, in the first instance, what documents should be

sealed because of privacy issues.  It is the burden of each party

to review each document and make specific requests to seal.  The

court declines to grant such a broad, open-ended request.

2. Plaintiff's motion for an extension of time within which to serve process on defendant Tetra Tech, Inc. (Civ. No. 06-538-SLR, D.I. 8) is granted. Plaintiff shall have an additional 60 days, until **March 26, 2007,** to serve process on this defendant. NOTE: Failure to effectuate service within this period shall result in dismissal, without prejudice, of the case without further notice.

_____
United States District Judge

2

TT0107

AO 85 (Rev. 8/98) Notice, Consent, and Order of Reference — Exercise of Jurisdiction by a United States Magistrate Judge

# UNITED STATES DISTRICT COURT

District of _Delaware_

Plaintiff

V.

Defendant

NOTICE, CONSENT, AND ORDER OF REFERENCE — EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

Case Number: _06-538-SLR_

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c), and Fed.R.Civ.P. 73, you are notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

| Party Represented | Signatures | Date |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

## ORDER OF REFERENCE

IT IS ORDERED that this case be referred to _____
United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.

_____          _____
Date                              United States District Judge

NOTE:  RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED <u>ON THIS FORM</u> TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA<br>☒ EEOC | 170-2005-02819 |

Delaware Department of Labor _____ and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)*<br>**Ms. Jourdean S. Lorah** | Home Phone No. *(Incl Area Code)*<br>**(302) 225-0540** | Date of Birth |
|---|---|---|
| Street Address                City, State and ZIP Code<br>**114 Walls Avenue, Wilmington, DE 19805** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**TETRA TECH INC.** | No. Employees,<br>**101 - 200** | Phone No. *(Include Area Code)* |
|---|---|---|
| Street Address              City, State and ZIP Code<br>**56 West Main Street,  Christiana, DE 19720** | | |
| Name | No. Employees, | Phone No. *(Include Area Code)* |
| Street Address               City, State and ZIP Code | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)* | Earliest          Latest<br>06/14/2005    06/14/2005<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees recieved this training including a younger female who was hired by the Respondent. On or about June 14, 2005, Respondent had my employer terminate my contract. I was replaced by a younger male.

II. I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). During my interview, a Respondent supervisor asked me if I had a disability. After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| OCTOBER 25, '05          *Jourdean S. Lorah*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

TT0109

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 170-2006-00048 |

| Delaware Department of Labor | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(Indicate Mr., Ms., Mrs.)*<br>**Ms. Jourdean S. Lorah** | Home Phone No. *(Incl Area Code)*<br>**(302) 225-0540** | Date of Birth |
|---|---|---|

Street Address    City, State and ZIP Code
**114 Walls Avenue, Wilmington, DE 19805**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**Synerfac Agency** | No. Employees,<br>**101 - 200** | Phone No. *(Include Area Code)* |
|---|---|---|

Street Address    City, State and ZIP Code
**2 Reads Way; New Castle Corporate Commons; New Castle, DE 19720**

| Name | No. Employees, | Phone No. *(Include Area Code)* |
|---|---|---|

Street Address    City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **06/14/2005**    Latest **06/14/2005**
☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I.  I was an employee of Synerfac (the "Respondent"), an employment agency, and was contracted to work at Tetra-Tech, Inc. beginning in or about March 2005.  After I began my employment, I never received the on-the-job training that was promised.  Younger employees recieved this training.  On or about June 14, 2005, Respondent terminated my employment.  I was replaced by a younger male.**

**II.  I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *OCTOBER 25, '05*    *Jourdean S. Lorah*<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

## Brewer, Susan -- Tt, Inc.

**From:** Brewer, Susan -- Tt, Inc.

**Sent:** Thursday, November 17, 2005 4:50 PM

**To:** 'Greg Porter'

**Subject:** RE: Jourdean Lorah....

Dear Greg:

The following is a response to EEOC 170-2006-00048 (I.) – Jourdean S. Lorah complaint as requested by you:

- Jourdean was hired as a Survey Office Assistant and trained in; Excel, Word and Windows software programs by members of the Tetra Tech Inc staff during her tenure at Tt. Even though we expected to train someone regarding the Civil/Survey Departments performance expectations and Tt job requirements, she was also trained in basic computer skills which she *did not possess previously.* She was has provided with more than adequate training.
- Jourdean was replaced by a <u>female</u>, approximately 3-4 years younger.

If I can be of further assistance, please feel free to contact me.

*Susan F. Brewer*
Manager, General Services and Administration
Tetra Tech, Inc.
(302) 738-7551 - Christiana, DE
800-462-0910
(302) 454-5980  Fax
(302) 645-2135 - Lewes, DE
(302) 645-5085  Fax
susan.brewer@tetratech.com < mailto:susan.brewer@tetratech.com>
www.tetratech.com < http://www.tetratech.com>
www.tetratech-de.com < http://www.tetratech-de.com>
NOTICE OF CONFIDENTIALITY
This email message and its attachments (if any) are intended for the use of the addressees hereof.  In addition, this message and the attachments (if any) may contain information that is confidential, privileged, and exempt from disclosure under applicable law.  If you are not the intended recipient of this message, you are strictly prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission.  Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege.  If you have received this message in error, please promptly notify the sender by reply email and immediately delete this message from your system.

**From:** Greg Porter [mailto:gporter@synerfac.com]
**Sent:** Wednesday, November 16, 2005 4:35 PM
**To:** susan.brewer@tetratech.com
**Subject:** Jourdean Lorah....

Good Afternoon Susan,

Per our conversation this afternoon could you please respond to the following complaints in the attached document below? If possible could you have this back to me by tomorrow afternoon? Synerfac would like to contact our laborer lawyer ASAP.....

11/17/2005

Thanks for all your help…..

Gregory W. Porter
Branch Manager
Synerfac Technical Staffing
2 Read's Way Suite 209
New Castle, DE 19720
P 302-324-9400
F 302-324-9404
C 302-593-1919
Toll Free: 1-800-562-7040

Please visit our website at www.synerfac.com

Synerfac Office Locations: Atlanta, GA - Baltimore, MD - Bridgewater, NJ - Columbus, OH - Cincinnati, OH -Langhorne,
PA Orlando, FL - Philadelphia, PA - Pittsburgh, PA - Raleigh, NC - Washington, D.C. - Wilmington, DE,- Cherry Hill, NJ

11/17/2005

NOTES:

Jourdean S. Lorah – Office Assistant for the Survey Department - Synerfac – Hired March 22, 2005 $14/per hour.

On May 11, Jourdean telephoned me and requested a meeting w/me. Would not tell me what the meeting was about when asking to schedule it. Meeting: She wanted to post a notice in the Survey Dept regarding individuals discussing personal issues that may harm the reputation or morale of others. She spoke to her supervisor, John Traynor on 4/29. John referred her to me.

- Thursday, May 12, Jourdean informed me that on April 25 another employee, Erin Moran, made a comment to her accusing Jourdean of being in a brothel. Also, indicated that Erin talked about this topic to other employees. This all took place during a visit to the County Planning Department. She said that another temporary employee, Mat Mercado also made a comment to Jourdean regarding being in a brothel.

  Jourdean also mentioned Title 7 and the fact that she was older than Erin and the other people she is working with.

  She spoke to her supervisor, John Traynor on 4/29. John referred her to me.

  On Thursday, May 12, I called a meeting w/Erin and Jourdean to discuss the problem openly with both parties.

  Erin denied the accusations that Jourdean made and stated that Jourdean was lying. Jourdean left in a huff.

  I suggested that all parties needed to resolve personality differences and their goal should be to be productive and to strive for a positive work environment. Personal differences needed to remain after hours and outside of this office, etc. They agreed.

  Same date, I also called a meeting w/Jourdean and Mat. Mat did not know what the word meant either and also denied having said any such thing. Gave the same speech about positive work environment and personality issues. Jourdean seemed satisfied.

- Monday, May 16 – I called Erin and Jourdean individually to inquire as to how things were going. Both stated that everything was going well. (Jourdean said that she would let me know if they weren't).

  I also called Greg Porter of Synerfac to inform the agency that there were some problems. Greg was not surprised. Also said that Jourdean struck him as "unique". Reminded me that Synerfac was acting as a payroll service only. (a client, Mike Early of Merestone referred Jourdean to John and John asked her to sign up w/the agency to act as a payroll service because this was a new position being tested by him).

- Thursday, June 2 – I asked Jourdean how things were going and she stated, "great, fine." (with a smile on her face).

  Same date, George Foxwell (Snyerfac employee) came to me concerned that Jourdean was claiming some kind of harassment by him asking her to lunch. I assured him that she did not. However, she did mention the lunch request and her denial because George is a married man. (George said that he only invited her because he didn't want to leave her out from the invitation because he invited the rest of the group).

- Tuesday, June 7 – Melissa Police from Synerfac called me to report that Jourdean had requested a meeting w/her day before. Melissa said that Jourdean told her the story about Erin and the

brothel comment but, indicated that she thought that was resolved now.  Jourdean also requested Melissa to help her regarding the following issues:

> No work space
> Low pay scale
> Title 7
> Training promise – not given.  JJT does the work and Jourdean watches.
> Casey Grabowski (DIV employ) spreading rumors about Jourdean and a bacterial infection
> Stated that she has a "Corporate double who stole Jourdean's identity"
> John had asked her to attend an Engineering Dinner Meeting which she denied.

When John was questioned,  he stated:

> Jourdean was trained how to use excel, word and windows (which she had no skill in previously).  He has provided more than adequate training.  Even though he expected to have to train someone regarding his expectations and Tt requirements, he also trained her in routine computer skills which she did not possess previously.

> Her work space was changed at the end of last week (6/3) to accommodate additional employees being hired (both outside temp agencies and DIV).  She is now sharing a work station and equipment w/a DIV employ who works in the field as a survey asst., which she is not happy about.

Her work space was changed at the end of last week (6/3) to accommodate additional employees being hired (both outside temp agencies and DIV). She is now sharing a work station and equipment w/a DIV emply who works in the field as a survey asst., which she is not happy about.

George Foxwell also appeared in my office today to inform me that Jourdean is angry about her shared work space and is spraying windex so much that the over spray caused another DIV employee, Dan Luther, to move from his work area to avoid being sprayed.

- Friday, June 10 – My telephone interview with Casey Grabowski –

I asked Casey if he has had any issues w/Jourdeen in the last week or so that would cause her to think that he was spreading rumors about her. He said, no.

I asked if he has ever made any comments to others about her physical attributes, her age, her sex or her medical condition. He responded emphatically, NO to all.

He did tell me that he has expressed his dissatisfaction with her skills to her in the past, i.e. – John put her in charge of the daily logs for 10 people. After two weeks of this task, Jourdean was still not doing hers correctly. Casey stated to Jourdean, "This is insanity!" Jourdean immediately interpreted that to mean that Casey accused her of being insane. He stated that if someone says to him, "What is up with her?" He responds, "She works for John and you should just stay away from her. If you get to close to her you will have a conflict". Casey's opinion is that Jourdean interrupts conversations with individuals differently than most. He says that she does not interact well with any of the group.

I instructed him that our conversation was to be held in the strictest confidence.

Signed: Susan F. Brewer
Manager, General Services and Administration

Skills

Temp for about 1 month

5/16  HR ISSUE IN CPR

- CONTRACT FEE THRU AGENCY  -  SINGRATZ    SURVEY ASSISTANT
  REPORTS  TO JOHN TRAINOR          Temp ADMIN ASST function
                                    Mgr CASE work
              JOURDEAN LORAH

- ~~ERIN~~  MORTIN - went to county building to do deeds
  CLER                research Hls - Jourdean space to work ~ 5/19
  ENGINEER

  ~~~ Erin made comments that Jourdean that she
  Hired 4/10/05       was in a brothel

- made her feel uncomfortable

  feels she's talking about her

TIS    Matthew —
employee

- Susan will document

☐ Susan met w/ Jourdean on 5/12

Temp employee Jourdean Lorah
  complained to Susan Brewer that her age was
  an issue and that Erin Moran made her feel
  uncomfortable.

5/9
- No work space
- No training
-

TT0116

**Clark, Amy -- Tt, Inc.**

| | |
|---|---|
| **From:** | Brewer, Susan -- Tt, Inc. |
| **Sent:** | Monday, May 16, 2005 2:28 PM |
| **To:** | Clark, Amy -- Tt, Inc. |
| **Subject:** | FW: Jourdean Lorah-Followup Notes |

Amy:

Please see my notes/message to John and Bob below. I will forward notes to you regarding the original meetings once I type them up from my notes.

Please note that the medical condition that is referenced below was "she is on an epipen". Also, John said that this was a newly created position and the duration of the assignment depends on how well it works out. John gave me a job description which Jourdean was given at the time of placement. She is still performing in that capacity. No special skills required. John is training her. Her background is as a school teacher (english), rod person on a survey crew (which I can't see) and hand drafting. We do not hand draft only electronic CAD, but John felt that the basics help her position here because she has some knowledge of drafitng and survey. He wants to keep her. (for now).

Susan

---

**From:** Brewer, Susan -- Tt, Inc.
**Sent:** Monday, May 16, 2005 5:13 PM
**To:** John J. Traynor, III (John J. Traynor, III); Bob Maffia (Bob Maffia)
**Subject:** Jourdean Lorah-Followup Notes

 I spoke to Greg Porter at Synerfac and gave him a very brief heads-up. Letting him know that Jourdean complained about a hostile work environment and how we handled her complaint. (no details)

Greg immediately said that, "she was a little unique and he is not surprised that we may be having some problems". He also stated that he only spent 10 minutes with her because in this particular case Synerfac is only working as a payroll service for her and Tt (She was refered to Tt by Mike Early of Merestone, and John sent Jourdean to Synerfac to sign up w/the agency in order for her placement at Tt). Greg mentioned that she went on and on, and talked about a medical condition. When she left his office, he just shook his head. "She is different!" he told me.

He also reminded me that since she was/is not an originally contracted Synerfac employee and we sent her to them, they did not do any background investigation or past employment reference checking.

(Did we do any reference checking?)

I also called Jourdean this afternoon and simply asked how things were going. She said, "good, everything was going well and that she would let me know if they weren't".

I called Erin to ask how things are going for her too. She said, "excellent, good, everything is going great!"

John, as you and I discussed – try not to assign work tasks that Erin and Jourdean must work on alone together since there seems to be a large personality conflict.

I hope that we can just let this quietly rest now. If the environment between them continues to be a problem or interfer with productivity, I suggest we let Jourdean go.
Thanks and keep me informed.

*Susan F. Brewer*
Manager, General Services and Administration
Tetra Tech, Inc.
(302) 738-7551
800-462-0910
(302) 454-5980  Fax
susan.brewer@tetratech.com < mailto:susan.brewer@tetratech.com>
www.tetratech.com < http://www.tetratech.com>

1

TT0117

www.tetratech-de.com < http://www.tetratech-de.com>

TT0118

**Brewer, Susan -- Tt, Inc.**

| | |
|---|---|
| **From:** | Brewer, Susan -- Tt, Inc. |
| **Sent:** | Tuesday, June 14, 2005 5:06 PM |
| **To:** | Clark, Amy -- Tt, Inc. |
| **Subject:** | FW: Notes- Jourdean Lorah |

Amy:

Attached are notes received from Synerfac regarding today's the previous conversation with Jourdean Lorah. Today's conversation took place when she was communicating to Jourdean that her assignment here was over.

(She did avoid returning Melissa's call and approached John Traynor prior to reporting to Synerfac). Numbers 2,3 & 4 are news to me. John did tell me what he and Jourdean discussed prior to her departure from Tt and Melissa's account is the same as John's!$#!(_++!)!$M???!_!+!

I am leaving now but, we can talk tomorrow if you feel it is necessary.

Susan

---

**From:** Melissa Palese [mailto:mpalese@synerfac.com]
**Sent:** Tuesday, June 14, 2005 4:51 PM
**To:** Susan.Brewer@tetratech.com
**Cc:** Adam Heagy; Greg Porter
**Subject:** Notes- Jourdean Lorah

Susan,

I have attached the notes regarding my meetings with Jourdean Lorah. Please let me know if you need additional information.

Sincerely,

**Melissa K. Palese**
Recruiting Manager- Wilmington Branch
Synerfac Technical Staffing
2 Read's Way, Suite 209
New Castle, DE 19720
P 302.324.9400
F 302.324.9404
Toll Free 800.562.7040

Please visit our website at www.synerfac.com <http://www.synerfac.com>

*Atlanta, GA - Baltimore, MD - Bridgewater, NJ - Cherry Hill, NJ - Columbus, OH - Cincinnati, OH - Langhorne, PA*
*Orlando, FL - Philadelphia, PA - Pittsburgh, PA - Raleigh, NC - Washington, D.C. - Wilmington, DE*

12/12/2005

TT0119

Meeting with Jourdean Lorah 6/6/05

Jourdean verbally gave me a list of concerns:

1. Need a better workspace currently sharing with another employee
2. Training- Never received proper training that was promised during conversations with John Traynor
3. Overheard John Traynor calling her unintelligent
4. Casey Grabowski spread a rumor about her regarding spreading a bacterial infection throughout the office
5. Erin told Jourdean she was part of a brothel
6. Jourdean feels she is discriminated against because of her age and that she does not receive equal pay claiming title 7 concerns

Meeting with Jourdean Lorah 6/14/05 *(when telling her that her assignment was completed )*.

I address Jourdean's concerns again and this is a list of responses from her:

1. Regarding the workspace- an Intern that has been there for 3-4 weeks has her own workspace and Jourdean feels this is unfair. A woman in marketing said to Jourdean, "I see your point, you have so many documents to deal with."
2. Regarding Casey Grabowski- Bob George said to Jourdean, "Casey is trying to fire you". I asked Jourdean who was around when this comment was made and she said, " no one, he said it in a quiet whisper".
3. Erin approached Jourdean and made a comment that she is trying to solicit parents and children involved in "math counts".
4. Jeanie of the third floor said to Doug, "they are going to terminate her". When I asked her whom was Jeanie referring to Jourdean said Jeanie did not identify "they" but "her" meant Jourdean.
5. When Jourdean approached John Traynor about a possible termination this afternoon he said, "there was nothing at all concerning performance", I have absolutely no complaints at all, it is up to management."

**Brewer, Susan -- Tt, Inc.**

| | |
|---|---|
| **From:** | Brewer, Susan -- Tt, Inc. |
| **Sent:** | Monday, May 16, 2005 5:29 PM |
| **To:** | Clark, Amy -- Tt, Inc. |
| **Subject:** | FW: Jourdean Lorah-Followup Notes |

Amy:

Please see my notes/message to John and Bob below.  I will forward notes to you regarding the original meetings once I type them up from my notes.

Please note that the medical condition that is referenced below was "she is on an epipen".  Also, John said that this was a newly created position and the duration of the assignment depends on how well it works out.  John gave me a job description which Jourdean was given at the time of placement.  She is still performing in that capacity.  No special skills required.  John is training her.  Her background is as a school teacher (english), rod person on a survey crew (which I can't see) and hand drafting.  We do not hand draft only electronic CAD, but John felt that the basics help her position here because she has some knowledge of drafitng and survey.  He wants to keep her. (for now).

Susan

---

**From:** Brewer, Susan -- Tt, Inc.
**Sent:** Monday, May 16, 2005 5:13 PM
**To:** John J. Traynor, III (John J. Traynor, III); Bob Maffia (Bob Maffia)
**Subject:** Jourdean Lorah-Followup Notes

 I spoke to Greg Porter at Synerfac and gave him a very brief heads-up.  Letting him know that Jourdean complained about a hostile work environment and how we handled her complaint.  (no details)

Greg immediately said that, "she was a little unique and he is not surprised that we may be having some problems".  He also stated that he only spent 10 minutes with her because in this particular case Synerfac is only working as a payroll service for her and Tt (She was refered to Tt by Mike Early of Merestone, and John sent Jourdean to Synerfac to sign up w/the agency in order for her placement at Tt).  Greg also mentioned that she went on and on, and talked about a medical condition.  When she left his office, he just shook his head.  "She is different!" he told me.

He also reminded me that since she was/is not an originally contracted Synerfac employee and we sent her to them, they did not do any background investigation or past employment reference checking.

(Did we do any reference checking?)

I also called Jourdean this afternoon and simply asked how things were going.  She said, "good, everything was going well and that she would let me know if they weren't".

I called Erin to ask how things are going for her too.  She said,  "excellent, good, everything is going great!"

John, as you and I discussed – try not to assign work tasks that Erin and Jourdean must work on alone together since there seems to be a large personality conflict.

I hope that we can just let this quietly rest now.  If the environment between them continues to be a problem or interfer with productivity, I suggest we let Jourdean go.
Thanks and keep me informed.

**Susan F. Brewer**
Manager, General Services and Administration
Tetra Tech, Inc.
(302) 738-7551
800-462-0910
(302) 454-5980  Fax
susan.brewer@tetratech.com < mailto:susan.brewer@tetratech.com>
www.tetratech.com < http://www.tetratech.com>

1

**Survey Assistant – Office**

Survey Assistant Field

Quality Control / Quality Assurance
(includes: transmittals, spelling, basic standards, consistency, proofreading, etc.)

Proposal Preparation

Clerical work includes organizing folders, filing, deliveries, etc.

CAD Drafting/Training

Assist Survey Manager (call clients, expense reports, letters, A/R, etc.)

**To all Survey Personnel:**

**As a reminder, there shall be no personal issues to be discussed on company time, particularly issues that may intentionally harm someone's reputation or harm their morale.**

**Business relationships grow over time as your colleagues will become more respectful.**

**This also makes the company look and be more professional.**

Notice that Jourdean wanted permission for past on 5/11/05. (Which made me meet w/her).

TT0123

United States District Court
544 King Street
Wilmington, Delaware  19801

Jourdean Lorah - Plaintiff                    Case Number- 1:06-cv-538 SLR
114 Walls Ave.
Wilmington, Delaware  19805


           v.


Tetra Tech Inc.-Defendant
56 West Main Street
Christiana, Delaware    19805



Tetra Tech Inc. - Defendant
240 Continental Drive
Newark, Delaware  19713-4307


## MOTION TO RECONSIDER APPOINTED COUNSEL

Plaintiff, Jourdean Lorah respectively prays that reconsideration for appointed

counsel be granted. Plaintiff, is now unemployed without unemployment benefits.

Presently, there is no unemployment compensation in the Plaintiff's account.  The

continuing violation under Title VII is presently a lock out regarding Plaintiff's

last part time position with Tatnall School located at 1501 Barley Mill Road in

Wilmington, Delaware 19807. Plaintiff, Jourdean Lorah has met with an

investigator at OSHA who has advised the Plaintiff how to proceed administratively

regarding the wrongful violation concerning her rights. Plaintiff, Jourdean Lorah is

denied gainful opportunity and is denied administratively the due process of those

in authority (abuse of discretion/privacy). Supervisors Mr. John Traynor from

Tetra Tech Inc. and Ms. Jennings/Ms. Cathcart from Tatnall school have denied

me employment. The doors are closed for gainful opportunity with benefits. The

EEOC has legal representation for discrimination. Plaintiff, Jourdean Lorah has

been denied equal opportunity and therefore is requesting counsel of an attorney

from the EEOC or the U.S. District Court.

Jourdean Lorah - Pro-se
1/4/07

TT0125

Page: 1 Document Name: untitled

```
ECHO                    DELAWARE DEPARTMENT OF LABOR              01/03/2007
                     UNEMPLOYMENT INSURANCE CLAIM HISTORY
REFER TO: C NOTES                    CLAIM DATA                    AC DATES
    SSN: 217 74 1460                       CLAIM DATE: 10/09/2005
  NAME: J S LORAH                    DISQUALIFIED DATE:
 ADDR1: 114 WALLS AVE                OVERPAYMENT DATE:
 ADDR2:                              INSUFFICIENT DATE:
  CITY: WILM          DE 19805
 PHONE: 302-225-0540  FIPS: 10-003-0   TOTAL MBA:  6,214 WBA: 239 BAL:      0
   DOB: 01/27/1959               FUND CODE: 10
LOCAL OFFICE:  2                 NO. PAYMENTS: 26
 MASS LAYOFF:   (          )         MBA:  6,214
HIRING HALL: N                       WBA:    239
      RECALL: N DATE:             BALANCE:      0
RTRN TO WORK:                     PAY NO.: 27
      SCHOOL: Y                  LAST CWED: 04/15
    DET FLAG:                        SIC1: 736
EARNGS BYPSS:                     TAX CODE: Y
 SICK CLAIM: N DATE:             TAX DATE: 10/09/2005
 REDUCED HRS:                    TAX COUNT: 1
PARTIAL CLM:            DET REG: Y DATE: 10/11/2005  ID: 000000000041816
    HOLD PAY: N (                                 ) MAIL/PHONE: M
F1=MEN            F4=RTN F5=EXT F6-PND F7=CHK F8=WAG F10=DIS F11=NT ECHOMAP
                                                                 ECHOINQ
```

*Monetarily & yearly expired* (handwritten annotation)

*Can not open a new Claim for W/o 12/31/07 - See next page* (handwritten annotation)

Date: 1/3/2007 Time: 4:09:16 PM

Page: 1 Document Name: untitled

```
ECHO                 DELAWARE DEPARTMENT OF LABOR               01/03/2007
                  UNEMPLOYMENT INSURANCE CLAIM HISTORY
                            WAGE HISTORY


   SSN: 217 74 1460   NAME: J S LORAH          CLAIM DATE: 10/09/2005


                          QUARTERLY WAGES
EMPLOYER            NAICS
- - - - - - - - - - - - - - - -  - - - - - -  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
TOTAL

NO WAGE HISTORY
```

No New Earnings on System

```
   F1=MEN          F4=RTN F5=EXT F6-PND F7=CHK F9=HST F10=DIS F11=NT ECHOMAP
                                                                     ECHOINQ
```

Date: 1/3/2007 Time: 4:09:21 PM

TT0127



**DELAWARE
DEPARTMENT OF**
# LABOR
**KEEPING
DELAWARE FIRST**

### Division of Unemployment Insurance

### CLAIMANT INCOME QUESTIONNAIRE

In order for the Division of Unemployment Insurance to correctly determine what effect your income may have on your entitlement to unemployment insurance benefits, please complete this questionnaire.

Name: _____ J. S. Lorah. _____

Social Security Number: 2 0 7 - 4 4 - 1 4 6 0

---

**Do you receive any of the following?**

|  |  |  | Gross Monthly Amount: | Effective Date: |
|---|---|---|---|---|
| ☐ Yes | ☑ No | Employer Pension | _____ | _____ |
| ☐ Yes | ☑ No | Military Pension | _____ | _____ |
| ☐ Yes | ☑ No | Railroad Retirement | _____ | _____ |
| ☐ Yes | ☑ No | Lump Sum Pension | _____ | _____ |
| ☐ Yes | ☑ No | Other Pension/Annuity | _____ | _____ |
| ☐ Yes | ☑ No | Ira/Keogh | _____ | _____ |
| ☐ Yes | ☑ No | Workers Compensation | _____ | _____ |
| ☐ Yes | ☑ No | Sickness/Accident | _____ | _____ |
| ☐ Yes | ☑ No | Disability Pay | _____ | _____ |
| ☐ Yes | ☑ No | Severance/Bonus Pay | _____ | _____ |
| ☐ Yes | ☑ No | Holiday/Vacation Pay | _____ | _____ |
| ☐ Yes | ☑ No | Self-Employment/Other | _____ | _____ |

---

Local Office Comments:

_____

_____

_____

---

**Claimant Certification:** I understand that penalties are provided by law for an individual making false statements to obtain benefits. I also understand that it is my responsibility to immediately report any changes in the amount or type of income I receive. I certify that the above information is correct to the best of my knowledge.

| | | | |
|---|---|---|---|
| _J. Lang_ | 1/3/07 | _Jourdean Lorah_ | 1/3/07 |
| Agency Representative | Date | Claimant's Signature | Date |

UC-528A

TT0128



# Notice About
# Your Medical Assistance

### State of Delaware Division of Social Services

December 18, 2006

Your Case #:
9001440499

Questions? Contact your Caseworker:
I. HERNANDEZ-ORTIZ
POOL# 0110
1715  W 4TH ST
4TH ST. OFFICE
WILMINGTON DE 19805
(302) 577-3600
Fax: (302) 577-3648

To:    JOURDEAN S LORAH
       114    WALLS AV
       WILMINGTON DE    19805

---

**Medical Assistance for the following people has CHANGED:**

| Name | Start Date | End Date | Old Program | New Program |
|------|-----------|----------|-------------|-------------|
| Jourdean S Lorah | January 1, 2007 | Ongoing | Family Planning Services | Medicaid for Uninsured Adults |

You are changing to the Medicaid Program. Medicaid covers most medical care services. In addition to medical care services, Medicaid covers the cost of transportation to medical appointments. The program also covers dental services for children under age 21.

---

 **If you do not agree with this action, you have the right to a fair hearing. Read the last page of this notice to see how to ask for a fair hearing.** 

TT0129

Patty J. Lorah
114 Walls Ave.
Wilmington, Delaware  19805

January 2, 2007

Equal Employment Opportunity Commission
Philadelphia District Office
Attention: Mr. King
21 South Fifth Street
Philadelphia, Pennsylvania

Dear Mr. King,

   I am a concerned parent of Jourdean Lorah who resides with me at 114
Walls Ave. in Wilmington, Delaware . There seems to be a pattern of
employment which results in either a layoff or a wrongful termination where no
explanation or reason is given. My daughter's employment usually lasts
approximately three months, each time resulting in a financial hardship with no
retirement and unemployment compensation. Jourdean Lorah has financial
responsibilities each month as a resident in my home.

   Please contact me if there is anything that I can do or discuss with you. I know
an overburden of cases is a hardship at this time but any consideration you could
give us would be highly appreciated.   I can be reached at 302-381-2637 (if
possible to have a telephone conversation).

Sincerely yours,

*Patty J. Lorah*

Patty J. Lorah

Mr. King,
   I will be back in the area
in Feb. if we need to set up a
meeting.          Thank you,

TT0130

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOURDEAN LORAH,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    Civ. No. 06-538-SLR
                                   )
TETRA TECH INC.,                   )
                                   )
            Defendant.             )

**O R D E R**

At Wilmington, this ___ day of September, 2006;

IT IS ORDERED:

1.     Plaintiff's motion to request appointed counsel (D.I.
3) is denied without prejudice with leave to renew following
service of the complaint.  See Ray v. Robinson, 640 F.2d 474, 477
(3d Cir. 1981) (a pro se litigant proceeding in forma pauperis,
has no constitutional or statutory right to representation by
counsel); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).

2.     Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2),
plaintiff shall complete and return to the clerk of the court an
**original "U.S. Marshal-285" form for the defendant.  Plaintiff
shall also provide the court with a copy of the complaint (D.I.
2) for service upon the defendant.  Plaintiff is notified that
the United States Marshal will not serve the complaint until the
"U.S. Marshal 285" form has been received by the clerk of the
court.  Failure to provide the "U.S. Marshal 285" form and a copy
of the complaint for defendant within 120 days from the date of**

this order may result in the complaint being dismissed or defendant being dismissed pursuant to Federal Rule of Civil Procedure 4(m).

3.    Upon receipt of the completed "U.S. Marshal 285" form(s) and copies of the complaint, the United States Marshal shall serve a copy of the complaint and this order upon defendant as directed by plaintiff.  All costs of service shall be advanced by the United States.

4.    No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

_____
UNITED STATES DISTRICT JUDGE



**Fax Transmittal**
Tetra Tech Inc.
56 West Main Street, Suite 400
Christiana, DE 19702-1501
Phone: 302-738-7551
Fax: 302-454-5988 • 302-454-5980 • 302-454-5989
http://www.tetratech-de.com/

*TETRA*
*TECH*
ENGINEERS
ARCHITECTS
SCIENTISTS

| To: | **Gregory Porter** | Date: | **March 16, 2005** |
|---|---|---|---|
| | **Synerfac Technical Staffing, Inc.** | Page: | **1 of 3** |
| | **2 Read's Way, Suite 209 New Castle Corporate Commons** | RCN | N/A |
| | **New Castle, DE 19720** | Project: | **Jourdean Lorah Contract** |
| Fax Number: | **(302) 324-9404** | | |
| Phone Number: | (302) 324-9400 | | |
| From: | **John J. Traynor III, P.E., P.L.S., Manager, Surveying** | | |

Greg,

Attached is our signed contract for Jourdean Lorah Contract.

I've replaced the word "prior" with "within 60 days", and I've stricken the following sentence as it does not apply.

If you need anything else, do not hesitate to call me directly at (302) 283-2246.

Sincerely,

**John J. Traynor III, P.E., P.L.S.**
*Manager, Surveying*
**TETRA TECH**
*ENGINEERS ARCHITECTS SCIENTISTS*
*Direct Dial Phone: 302.283.2246*
*Digital Pager Phone Number: 302.435.1863*
*direct fax: 302.454.5989*
*e-mail to: john.traynor@tetratech.com*
*backup e-mail to: jtraynor@msn.com*
*http://www.tetratech.com/*
*http://www.tetratech-de.com/*

N:\Administration\Survey\Misc\2005\Synerfac_GreggPorter_ContractCover_F_03-16-05.doc

TT0133



2 Read's Way | Suite 209
New Castle | DE 19720

302 | 324-9400
fax: 302 | 324-9404

www.synerfac.com

A division of SYNERFAC, Inc.

March 16, 2005

John Traynor
Tetra Tech Inc.
56 West Main Street Suite 400
Christiana, DE 19720

Re: Jourdean Lorah Contract Proposal

Dear John,

We feel our contract-to-hire program is an excellent vehicle to evaluate job performance before making a hiring decision so you always get the right people.

We are pleased to represent Jourdean Lorah as a Survey Assistant to work onsite at your facility as a specialty contractor. The hourly billing rate for these services will be:

| Name | Position | Standard Bill Rate | O.T. Bill Rate |
|------|----------|--------------------|----------------|
| Jourdean Lorah | Survey Assistant | $21.28 | $29.79 |

Billings will be generated weekly based on time cards, which we will provide to Jourdean and which must be signed each week by you or an authorized company representative. This signed time card shall operate as confirmation of the actual number of hours worked by our employee that week. Payment is due to us within 30 days of receipt of invoice. Synerfac will pay Jourdean weekly.

*within 60 days* ~~Ⓡ~~ 3/16/05

All invoices for contract services must be paid in full ~~prior~~ to our employee converting to your payroll. ~~In addition, the conversion fee, if any, must be paid in full before our employee is converted to your payroll.~~ — *Ⓡ 3/16/05*

Tetra Tech is responsible for reasonable attorney's fees and other collection expenses for any contract or direct invoices not paid within ninety (90) days from the invoice date.

It's always satisfying to help good companies find the right technical personnel and I'm glad I had the chance to work with you on this placement. If we can help you with any other requirements, please do not hesitate to call.

TT0134



2 Read's Way | Suite 209
New Castle | DE 19720

302 | 324-9400
fax: 302 | 324-9404

www.synerfac.com

A division of SYNERFAC, Inc.

To confirm these rates and a start date of March 22, 2005 @ 8:00am for Jourdean please return this back to me via fax @ 302-324-9404 dated and with your signature.

I look forward to speaking to you again and to a continued rewarding business partnership between Synerfac Technical Staffing and Tetra Tech.

Thanks again,

Sincerely,

Gregory W. Porter
Branch Manager
gporter@synerfac.com

Client Authorization:

Name  *John J. Traynor III*
Title  *Manager, Surveying*
Date:  *3-16-05*

TT0135

P. 1

* * * Transmission Result Report(MemoryTX) ( Mar.16. 2005  3:33PM ) * * *

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 8334 Memory TX | 93249404 | P. 3 | OK | |

Reason for error
E.1) Hang up or line fail          E.2) Busy
E.3) No answer                     E.4) No facsimile connection



**Fax Transmittal**
**Tetra Tech Inc.**
56 West Main Street, Suite 400
Christiana, DE 19702-1501
Phone: 302-738-7551
Fax: 302-454-5988 • 302-454-5980 • 302-454-5989
http://www.tetratech-de.com/

**TETRA TECH**
ENGINEERS
ARCHITECTS
SCIENTISTS

| To: | Gregory Porter | Date: | March 16, 2005 |
|---|---|---|---|
| | Synerfac Technical Staffing, Inc. | Page: | 1 of 3 |
| | 2 Read's Way, Suite 209 | RCN | N/A |
| | New Castle Corporate Commons | | |
| | New Castle, DE 19720 | Project: | Jourdean Lorah Contract |
| Fax Number: | (302) 324-9404 | | |
| Phone Number: | (302) 324-9400 | | |
| From: | John J. Traynor III, P.E., P.L.S., Manager, Surveying | | |

Greg,

Attached is our signed contract for Jourdean Lorah Contract.

I've replaced the word "prior" with "within 60 days", and I've stricken the following sentence as it does not apply.

If you need anything else, do not hesitate to call me directly at (302) 283-2246.

Sincerely,

John J. Traynor III, P.E., P.L.S.
Manager, Surveying
**TETRA TECH**
ENGINEERS ARCHITECTS SCIENTISTS
Direct Dial Phone: 302.283.2246
Digital Pager Phone Number: 302.436.1863
direct fax: 302.454.5989
e-mail to: john.traynor@tetratech.com
backup e-mail to: jtraynor@msn.com
http://www.tetratech.com
http://www.tetratech-de.com/

H:\Administration\Survey\Word\2005\Synerfac_GreggPorter_ContractCover_F_03-16-05.doc

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT       │
└─────────────────────────────────────────┘

                                   TIME   : 03/14/2007 16:01
                                   NAME   :
                                   FAX    :
                                   TEL    :
                                   SER.#  : 000B6J721506
```

```
DATE,TIME                 03/14  15:57
FAX NO./NAME              13024545988
DURATION                  00:04:01
PAGE(S)                   22
RESULT                    OK
MODE                      STANDARD
                          ECM
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOURDEAN LORAH,              )
                            )
        Plaintiff,           )
                            )
    v.                       )   Civ. No. 06-538 SLR
                            )
TETRA TECH INC.,             )
                            )
        Defendant.           )

**O R D E R**

At Wilmington this _8th_ day of September, 2006,
the Court having considered the application to proceed without
prepayment of fees under 28 U.S.C. § 1915;

    IT IS ORDERED that the application is GRANTED.

                              _____
                              United States District Judge

TT0137

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOURDEAN LORAH,                        )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )   Civ. No. 06-538-SLR
                                       )
TETRA TECH, INC.,                      )
                                       )
            Defendant.                 )


JOURDEAN LORAH,                        )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )   Civ. No. 06-539-SLR
                                       )
DEPARTMENT OF NATURAL                  )
RESOURCES AND ENVIRONMENTAL            )
CONTROL, et al.,                       )
                                       )
            Defendants.                )

**O R D E R**

At Wilmington this 25th day of January, 2007, having

considered various motions pending in the above captioned cases;

IT IS ORDERED that:

1.  Plaintiff's motions to seal court documents (Civ. No.

06-538-SLR, D.I. 12; Civ. No. 06-539-SLR, D.I. 15) are denied, as

plaintiff is asking the court to take on the burden of

determining, in the first instance, what documents should be

sealed because of privacy issues.  It is the burden of each party

to review each document and make specific requests to seal.  The

court declines to grant such a broad, open-ended request.

2. Plaintiff's motion for an extension of time within which to serve process on defendant Tetra Tech, Inc. (Civ. No. 06-538-SLR, D.I. 8) is granted. Plaintiff shall have an additional 60 days, until **March 26, 2007,** to serve process on this defendant. NOTE: Failure to effectuate service within this period shall result in dismissal, without prejudice, of the case without further notice.

_____

United States District Judge

2

AO 85 (Rev. 8/98) Notice, Consent, and Order of Reference — Exercise of Jurisdiction by a United States Magistrate Judge

# UNITED STATES DISTRICT COURT

District of _Delaware_

|  |  |
|---|---|
| Plaintiff | NOTICE, CONSENT, AND ORDER OF REFERENCE — EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE |
| V. |  |
| Defendant | Case Number: _06-538-8LR_ |

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c), and Fed.R.Civ.P. 73, you are notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

| Party Represented | Signatures | Date |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## ORDER OF REFERENCE

IT IS ORDERED that this case be referred to _____
United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.

_____          _____
Date                                   United States District Judge

NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED <u>ON THIS FORM</u> TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOURDEAN LORAH,              )
                             )
            Plaintiff,       )
                             )
       v.                    )   Civ. No. 06-538 SLR
                             )
TETRA TECH INC.,             )
                             )
            Defendant.       )

**O R D E R**

At Wilmington this $6th$ day of September, 2006,
the Court having considered the application to proceed without
prepayment of fees under 28 U.S.C. § 1915;

IT IS ORDERED that the application is GRANTED.


United States District Judge

(Del. Rev. 12/98)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOURDEAN LORAH
_____

_____
(Name of Plaintiff or Plaintiffs)

v.

TETRA TECH INC.
_____

_____
(Name of Defendant or Defendants)

CIVIL ACTION No. 0 6 - 5 3 8 _____

2006 AUG 31 PM 3:12

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## _COMPLAINT UNDER TITLE VII_

## _OF THE CIVIL RIGHTS ACT OF 1964_

1.    This action is brought pursuant to _Title VII of the Civil Rights Act of 1964_, as amended, for employment discrimination. Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2.    Plaintiff resides at 114 WALLS AVE.
                                            (Street Address)
WILMINGTON (NEW CASTLE) DE. 19805
(City)         (County)         (State)         (Zip Code)
(302) 225-0540
(Area Code) (Phone Number)

3.    Defendant resides at, or its business is located at 56 WEST MAIN ST.
                                                                                    (Street Address)
CHRISTIANA                    DE.          19720
(City)         (County)         (State)         (Zip Code)

4.    The discriminatory conduct occurred in connection with plaintiff's employment at, or application to be employed at, defendant's TETRA TECH INC. (SURVEY DEPT.) place of business
                                                            (Defendant's Name)
located at 56 WEST MAIN ST.
                    (Street Address)
CHRISTIANA                    DE.          19720
(City)         (County)         (State)         (Zip Code)

5.  The alleged discriminatory acts occurred on FROM MARCH '05 - JUNE '05
    _____ , _____ , _____
    (Day)               (Month)            (Year)

6.  The alleged discriminatory practice  ○ is  ✓ is not continuing.

7.  Plaintiff filed charges with the Department of Labor of the State of Delaware,
    21 SOUTH 5TH ST PHILADELPHIA, PA.     EEOC
    (Agency)    (Street Address)    (City)

    _____ , regarding
    (County)        (State)              (Zip Code)

    defendant's alleged discriminatory conduct on FROM MARCH '05, - JUNE '05
    _____ , _____ , _____
    (Day)               (Month)            (Year)

8.  Plaintiff filed charges with the Equal Employment opportunity Commission of the United States
    regarding defendant's alleged discriminatory conduct on: OCT. 25, 2005
    _____ , _____ , _____
    (Day)               (Month)            (Year)

9.  The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter
    which was received by plaintiff on: ON OR AROUND 23RD, JUNE, '06
    _____ , _____ , _____
    (Day)               (Month)            (Year)

## (NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)

10. The alleged discriminatory acts, in this suit, concern:

    A.  ○✓ Failure to employ plaintiff.
    B.  ○ Termination of plaintiff's employment.
    C.  ○✓ Failure to promote plaintiff.
    D.  ○✓ Other acts (please specify below)

    _____

    EMPLOYER DISCRIMINATED BY WAY OF AGE, GENDER

    & DISABILITY. YOUNGER EMPLOYEES WERE

    HIRED BEFORE AND AFTER ME. I WAS DENIED

    MY TRAINING.

    _____

11.    Defendant's conduct is discriminatory with respect to the following:

A.    ○ Plaintiff's race

B.    ○ Plaintiff's color

C.    ● Plaintiff's sex        AGE & DISABILITY

D.    ○ Plaintiff's religion

E.    ○ Plaintiff's national origin

12.    A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13.    If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 Civil Rights Act, as amended.

14.    Plaintiff's has no adequate remedy at law to redress the wrongs described above.

**THEREFORE**, Plaintiff prays as follows: (Check appropriate letter(s))

A.    ● That all fees, cost or security attendant to this litigation be hereby waived.

B.    ● That the Court appoint legal counsel.

C.    ● That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: Aug. 31, '06

_____
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

## U.S. Equal Employment Opportunity Commission

EEOC Form 161-B (10-96)

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Ms. Jourdean Lorah
114 Walls Avenue
Wilmington, DE 19805

From: Equal Employment Opportunity Commission
Philadelphia District Office
21 South Fifth Street
Philadelphia, PA 19106-2515

[    ]    *On behalf of person(s) aggrieved whose identity is*
         *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2005-02819 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]    More than 180 days have passed since the filing of this charge.

[    ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ X ]    The EEOC is terminating its processing of this charge.

[    ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ X ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[    ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____            June 21, 2006
Marie M. Tomasso, District Director              *(Date Mailed)*

Enclosure(s)

cc:    Ms. Amy Clark (for Respondent)

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA  ☒ EEOC | 170-2005-02819 |

| Delaware Department of Labor | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Jourdean S. Lorah | (302) 225-0540 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 114 Walls Avenue, Wilmington, DE 19805 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, | Phone No. (Include Area Cod |
|---|---|---|
| TETRA TECH INC. | 101 - 200 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 56 West Main Street,  Christiana, DE 19720 | | |

| Name | No. Employees, | Phone No. (Include Area Cod |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 06/14/2005 | 06/14/2005 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.  I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, In (the "Respondent") beginning in or about March 2005.  After I began my employment, I never received the on-the-job training that was promised.  Younger employees recieved this training including a younger female w ho was hired by the Respondent.  On or about June 14, 2005, Respondent had my employer terminate my contract.  I was replaced by a younger male.

II.  I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").  During my interview, a Respondent supervisor asked me if I had a disability.  After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| OCTOBER 25, '05 _____ Date     Jourdean S. Lorah _____ Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

TT0146

Equal Employment Opportunity Commission
PHILADELPHIA DISTRICT OFFICE
21 SOUTH 5TH STREET, SUITE 400
Philadelphia, PA 19106-2515



PHILADELPHIA PA 191

21 JUN 2006

Ms. Jourdean Lorah
114 Walls Avenue
Wilmington, DE 19805

## Health Care Associates, P.A.

Jane Govatos. MSN, FNP-C
*Family Nurse Practitioner*

Paul E. Gorrin, M.D.
*Internal Medicine*
*Allergy*

Margaret C. Gatti, MSN, FNP-C
*Family Nurse Practitioner*

January 21, 2004

To Whom It May Concern,

Jourdean Lorah has allergic rhinitis and asthma. She is medically stable. She does not have an infectious illness and consequently is not a risk for any other person.

Thank you for your cooperation in this matter.

Sincerely,

Paul E. Gorrin, M.D.



6901 Loisdale Court
Springfield, Virginia 22150
703. 922. 1000

KAISER PERMANENTE
Medical Center
Springfield

---

## MEDICAL STATEMENT

### JUNE 15, 2000

Patient:       Jourdean Lorah
Diagnosis:     Allergic Rhino conjunctivitis
               Wheezing, sporadic

Specific allergies include cat dander, dust mites, and pollen. The patient is on allergy injections as well as Flonase nasal inhaler, Allegra/Chlortrimeton for congestion, and Entex LA for stuffiness.

The patient also has a history of two brief wheezing episodes during the six-weeks prior to her initial Kaiser allergy evaluation on 3/31/00. There is no history of chronic asthma. Her lungs were clear and her peak flow was normal on 3/31/00. She was provided with a Ventolin inhaler to use only as necessary in the event of a wheezing episode.

John R. Vroom, M.D.
Allergist

Mid-Atlantic Permanente Medical Group, P.C.
Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.

**Survey Assistant – Office**

Survey Assistant Field

Quality Control / Quality Assurance
(includes: transmittals, spelling, basic standards, consistency, proofreading, etc.)

Proposal Preparation

Clerical work includes organizing folders, filing, deliveries, etc.

CAD Drafting/Training

Assist Survey Manager (call clients, expense reports, letters, A/R, etc.)



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

| | |
|---|---|
| Invoice No.: | **114671** |
| Invoice Date: | 6/20/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Ref#:    4,247

RECEIVED

JUN 2 7 2005

TETRA TECH, INC.
DE LOCATION

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 40.000 | D0889C | | 6/19/2005 | Reg | $ 41.89 | $ 1,675.60 |
| 40.000 | D0889C | | 6/19/2005 | Reg | $ 31.20 | $ 1,248.00 |
| 5.000 | D0889C | | 6/19/2005 | OT | $ 43.68 | $ 218.40 |
| 16.000 | D0889C | Lorah, Jourdean S | 6/19/2005 | Reg | $ 25.00 | $ 400.00 |
| 33.000 | D0889C | | 6/19/2005 | Reg | $ 38.46 | $ 1,269.18 |

*Approved for payment 7/5/05 See attached breakdown*

**Terms of Invoice**
**Net Due 15 Days**

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER, CIVIL ENGINEERING
AND SURVEYING

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $4,811.18 |
| Total Due: | $4,811.18 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 129.00 | $4,592.78 |
| Overtime | 5.00 | $218.40 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

| Synerfac Use Only: | | Timesheet: | **CC** |
|---|---|---|---|
| | | Special: | |
| | | Branch: | **NC** |

TT0151



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

| | |
|---|---|
| Invoice No.: | 11407/1 |
| Invoice Date: | 6/20/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Reff#: 4,247

RECEIVED
JUN 27 2005
TETRA TECH, INC.
DE LOCATION

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 40.000 | D0889C | | 6/19/2005 | Reg | $ 41.89 | $ 1,675.60 |
| 40.000 | D0889C | | 6/19/2005 | Reg | $ 31.20 | $ 1,248.00 |
| 5.000 | D0889C | | 6/19/2005 | OT | $ 43.68 | $ 218.40 |
| 16.000 | D0889C | Lorah, Jourdean S | 6/19/2005 | Reg | $ 25.00 | $ 400.00 |
| 33.000 | D0889C | | 6/19/2005 | Reg | $ 38.46 | $ 1,269.18 |

6810. REN. 0. OSS. TEMP          125.00
6810. REN. 0. OS. TRAINING          12.50
1133. REN. T13885.01. OSS          25.00
1133. REN. 0. OS. Marketing          62.50
1133. REV. T147119.0141. OSS          25.00
1133. REV. T15741.01. OSS          50.00
1133. REN. 0 OS. TEMP          100.00
                                                    $ 400.00

**Terms of Invoice**
Net Due 15 Days

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER, CIVIL ENGINEERING
AND SURVEYING

6/29/05

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $4,811.18 |
| Total Due: | $4,811.18 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 129.00 | $4,592.78 |
| Overtime | 5.00 | $218.40 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | CC |
| Special: | |
| Branch: | NC |

TT0152



6/19/05  Time Card
Lorah Jourdean

TT0153

Lorah, Jourdean  6/19/05

Jourdean S. Lorah

**Synerfac    Time and Material Invoicing Worksheet**

Week Ending (Friday)                6/17/2005  → Start here and type in the Friday end date, save as

Tetra Tech Week Ending: 6/17/2005      Straight Rate: $25.00
Synerfac Week Ending: 6/19/2005        Overtime Rate: $35.00

**LABOR**

| Date | Tetra Tech RCN (Job Code) | Job Name | Description | Hours | Overtime | Amount | Project Manager | Comments |
|---|---|---|---|---|---|---|---|---|
| Monday, June 13, 2005 | 6810.REN.0.OS.TEMP | Admin | | 5.0 | | $ 125.00 | John Traynor | Work logs, QA-Job numbers |
| Monday, June 13, 2005 | 6810.REN.0.OS.TRAINING | Training | | 0.5 | | $ 12.50 | John Traynor | Trained Bob to do trans. etc. |
| Monday, June 13, 2005 | 1133.REV.T15741.01.OSS | Avignon | | 2.0 | | $ 50.00 | Harish Mital | Document Control |
| Monday, June 13, 2005 | 1133.REN.T13885.01.OSS | Allied Chemical | | 1.0 | | $ 25.00 | John Traynor | Transmittal, mail etc.. |
| Tuesday, June 14, 2005 | 1133.REN.0.OS.TEMP | Admin | | 4.0 | | $ 100.00 | John Traynor | Work logs, QA, Job Numbers |
| Tuesday, June 14, 2005 | 1133.REN.0.OS.Marketing | Marketing | | 2.5 | | $ 62.50 | John Traynor | Bound Tetra Tech Services |
| Tuesday, June 14, 2005 | 1133.REV.T47119.0141.OSS | Haverton | | 1.0 | | $ 25.00 | Harish Mital | Document Control |
| Tuesday, June 14, 2005 | | | | | | $ - | | |
| Tuesday, June 14, 2005 | | | | | | $ - | | |
| Tuesday, June 14, 2005 | | | | | | $ - | | |
| Wednesday, June 15, 2005 | | | | | | $ - | | |
| Wednesday, June 15, 2005 | | | | | | $ - | | |
| Wednesday, June 15, 2005 | | | | | | $ - | | |
| Wednesday, June 15, 2005 | | | | | | $ - | | |
| Wednesday, June 15, 2005 | | | | | | $ - | | |
| Wednesday, June 15, 2005 | | | | | | $ - | | |
| Thursday, June 16, 2005 | | | | | | $ - | | |
| Thursday, June 16, 2005 | | | | | | $ - | | |
| Thursday, June 16, 2005 | | | | | | $ - | | |
| Thursday, June 16, 2005 | | | | | | $ - | | |
| Thursday, June 16, 2005 | | | | | | $ - | | |
| Thursday, June 16, 2005 | | | | | | $ - | | |
| Friday, June 17, 2005 | | | | | | $ - | | |
| Friday, June 17, 2005 | | | | | | $ - | | |
| Friday, June 17, 2005 | | | | | | $ - | | |
| Friday, June 17, 2005 | | | | | | $ - | | |
| Friday, June 17, 2005 | | | | | | $ - | | |
| Friday, June 17, 2005 | | | | | | $ - | | |

Totals                              16.0      0.0  $ 400.00

**Other Direct Costs**

| Date | Tetra Tech RCN | Job Name | | Miles | Rate/Mile | Cost |
|---|---|---|---|---|---|---|
| | | | | 0 | 0 | $ - |

Totals                                               $ 400.00

Total Charges this week                              $ 400.00

**Breakdown for Tetra Tech Pasadena A/P:**

| | Total Hours: | (# of instances) |
|---|---|---|
| 6810.REN.0.OS.TEMP | $ 125.00 | 5 | 1 |
| 6810.REN.0.OS.TRAINING | $ 12.50 | 0.5 | 1 |
| 1133.REV.T15741.01.OSS | $ 50.00 | 2 | 1 |
| 1133.REN.T13885.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.0.OS.TEMP | $ 100.00 | 4 | 1 |
| 1133.REN.0.OS.Marketing | $ 62.50 | 2.5 | 1 |
| 1133.REV.T47119.0141.OSS | $ 25.00 | 1 | 1 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |

Totals  $ 400.00                                   16      7

N:\Module\adder\Synerfac\copular\Synerfac\Gridsheet\Xcost - 06-17-05.xls



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

RECEIVED
JUN 2 0 2005
TETRA TECH, INC
DE LOCATION

| | |
|---|---|
| Invoice No.: | 114388 |
| Invoice Date: | 6/13/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Ref#: 4,247

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 33.500 | D0889C | | 6/5/2005 | Reg | $ 28.78 | $ 964.13 |
| 40.000 | D0889C | | 6/12/2005 | Reg | $ 41.89 | $ 1,675.60 |
| 3.000 | D0889C | | 6/12/2005 | OT | $ 43.68 | $ 131.04 |
| 40.000 | D0889C | | 6/12/2005 | Reg | $ 31.20 | $ 1,248.00 |
| 40.000 | D0889C | Lorah, Jourdean S | 6/12/2005 | Reg | $ 25.00 | $ 1,000.00 |
| 1.000 | D0889C | Lorah, Jourdean S | 6/12/2005 | OT | $ 35.00 | $ 35.00 |
| 24.000 | D0889C | | 6/12/2005 | Reg | $ 38.46 | $ 923.04 |

Approved for Payment
7/5/05
see attached
breakdown
6/27/05

**Terms of Invoice**
Net Due 15 Days

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER, CIVIL ENGINEERING
AND SURVEYING

| | |
|---|---|
| Total Taxable: | |
| Tax: | |
| Total Non-Taxable: | |
| Total Due: | Continue |

### Current Billing Analysis

| | | |
|---|---|---|
| Regular | 177.50 | $5,810.77 |
| Overtime | 4.00 | $166.04 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

| Synerfac Use Only: | | |
|---|---|---|
| | Timesheet: | CC |
| | Special: | |
| | Branch: | NC |

TT0155



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

| | |
|---|---|
| Invoice No.: | 114358 |
| Invoice Date: | 6/13/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Ref#:  4,247

RECEIVED
JUN 2 0 2005
TETRA TECH INC.
DE LOCATION

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 33.500 | D0889C | | 6/5/2005 | Reg | $ 28.78 | $ 964.13 |
| 40.000 | D0889C | | 6/12/2005 | Reg | $ 41.89 | $ 1,675.60 |
| 3.000 | D0889C | | 6/12/2005 | OT | $ 43.68 | $ 131.04 |
| 40.000 | D0889C | | 6/12/2005 | Reg | $ 31.20 | $ 1,248.00 |
| 40.000 | D0889C | Lorah, Jourdean S | 6/12/2005 | Reg | $ 25.00 | $ 1,000.00 |
| 1.000 | D0889C | Lorah, Jourdean S | 6/12/2005 | OT | $ 35.00 | $ 35.00 |
| 24.000 | D0889C | | 6/12/2005 | Reg | $ 38.46 | $ 923.04 |

*See Breakdown on Next Page*

**Terms of Invoice**
Net Due 15 Days

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER, CIVIL ENGINEERING
AND SURVEYING

Current Billing Analysis

| | | |
|---|---|---|
| Regular | 177.50 | $5,810.77 |
| Overtime | 4.00 | $166.04 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

| | |
|---|---|
| Total Taxable: | |
| Tax: | |
| Total Non-Taxable: | |
| Total Due: | Continue |

6/29/05

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | CC |
| Special: | |
| Branch: | NC |

TT0156

# SYNERFAC
### TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

| | |
|---|---|
| Invoice No.: | **114358** |
| Invoice Date: | 6/13/2005 |
| Page | 2 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | Ref#: 4,247 |

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

*Breakdown*

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|-------|-----------|---------------------|-----------|------|-----------|--------|
| | D0889X | Lorah, Joerdean S | 6/12/05 | | | |

6810. REN. 0.05. TEMP            637.50
1133. RAR. T15847. 10. 055        17.50
1133. REN. R 1347.00.055         37.50
1133. REN. R 3212.00.055         25.00
1133. REN. T 15295.01.055        25.00
1133. REN. T15735.01.055         25.00
1133. REN. T 16219.01.055        12.50
1133. REN. R0963.00.055          25.00
1133. REN. T 16221.01.055        55.00
1133. REN. T16220.01.055         25.00
1133. REN.T14992.01.055          25.00
1133. REN. R 3212.326.055        12.50
1133. REV. R0543.49.055          12.50
1133. REN. R0807.00.055          12.50
1133. REN. T 15860.01.055        62.50
1133. REN. T16228.01.055         25.00
1133. REN. T14660.01.055         12.50

1,035.50

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $5,976.81 |
| Total Due: | $5,976.81 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 177.50 | $5,810.77 |
| Overtime | 4.00 | $166.04 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | CC |
| Special: | |
| Branch: | NC |



Jourdean S. Lorah

Week Ending (Friday)

## Synerfac — Time and Material Invoicing Worksheet

| 6/10/2005 | ← Start here and type in the Friday end date, save as |
|---|---|

Tetra Tech Week Ending: 6/10/2005    Straight Rate: $25.00
Synerfac Week Ending: 6/12/2005    Overtime Rate: $35.00

### LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name | Description | Hours | Overtime | Overtime Amount | Project Manage | Comments |
|---|---|---|---|---|---|---|---|---|
| Monday, June 06, 2005 | 6810.REN.0.OS.TEMP | Admin | | 4.0 | | $ 100.00 | John Traynor | Work logs, expense rpt.etc. |
| Monday, June 06, 2005 | 1133.RAR.T16847.10.OSS | Smyrna Middle School | | 1.0 | 0.5 | $ 17.50 | John Traynor | Document Control |
| Monday, June 06, 2005 | 1133.REN.R1347.00.OSS | Inniscrone | | 1.0 | | $ 25.00 | Lonnie Webb | Document Control |
| Saturday, January 00, 1900 | 1133.REN.R3212.00.OSS | New Castle Holcomb La. | | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Monday, June 06, 2005 | 1133.REN.T15295.01.OSS | St. Andrews Aka | | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Monday, June 06, 2005 | 1133.REN.T15735.01.OSS | Hercules | | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Tuesday, June 07, 2005 | 6810.REN.0.OS.TEMP | Admin | | 7.0 | | $ 175.00 | John Traynor | Work logs, Invoice etc. |
| Tuesday, June 07, 2005 | 1133.REN.T16219.01.OSS | University Village | | 0.5 | | $ 12.50 | John Traynor | Document Control |
| Tuesday, June 07, 2005 | 1133.REN.R0963.00.OSS | St. Andrews | | 0.5 | | $ 12.50 | John Traynor | Document Control |
| Wednesday, June 08, 2005 | 6810.REN.0.OS.TEMP | Admin | | 4.5 | | $ 112.50 | John Traynor | Work logs, Invoice etc. |
| Wednesday, June 08, 2005 | 1133.REN.T16221.01.OSS | UoD Pencader Bridge | | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Wednesday, June 08, 2005 | 1133.REN.T16220.01.OSS | Pencader Plaza | | 1.0 | 0.5 | $ 42.50 | John Traynor | Folded plats, mailed etc. |
| Wednesday, June 08, 2005 | 1133.REN.T14992.01.OSS | Port Penn Firehouse | | 1.0 | | $ 25.00 | T.Haskins | Document Control |
| Wednesday, June 08, 2005 | 1133.REN.R3212.326.OSS | Wilmington Billboards | | 0.5 | | $ 12.50 | John Traynor | Printed plats |
| Thursday, June 09, 2005 | 6810.REN.0.OS.TEMP | Admin | | 4.0 | | $ 100.00 | John Traynor | Work logs, expense rpts. Etc. |
| Thursday, June 09, 2005 | 1133.REN.T16220.01.OSS | Pencader Plaza | | 0.5 | | $ 12.50 | John Traynor | Plats, overnight mail |
| Thursday, June 09, 2005 | 1133.REV.R0943.49.OSS | City Parks | | 0.5 | | $ 12.50 | R.Bodeker | Aerial Photos |
| Thursday, June 09, 2005 | 1133.REN.R0807.00.OSS | Cherry Island | | 0.5 | | $ 12.50 | John Traynor | Aerial Photos |
| Thursday, June 09, 2005 | 1133.REN.T15860.01.OSS | Barksdale Rd. Bramhall | | 2.5 | | $ 62.50 | T.Haskins | Document Control |
| Friday, June 10, 2005 | 6810.REN.0.OS.TEMP | Admin | | 6.0 | | $ 150.00 | John Traynor | Work logs, Invoice etc. |
| Friday, June 10, 2005 | 1133.REN.T16228.01.OSS | Church St. | | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Friday, June 10, 2005 | 1133.REN.R1347.00.OSS | Inniscrone | | 0.5 | | $ 12.50 | Lonnie Webb | Document Control |
| Friday, June 10, 2005 | 1133.REN.T14560.01.OSS | Belvedere | | 0.5 | | $ 12.50 | John Traynor | Document Control |
| **Totals** | | | | 40.0 | 1.0 | $ 1,035.00 | | |

### Other Direct Costs

| Date | Tetra Tech RCN | Job Name | | Miles | Rate/Mile Cost |
|---|---|---|---|---|---|
| **Totals** | | | | 0 | $  |

Total Charges this week    $ 1,035.00

| Breakdown for Tetra Tech Pasadena A/P: | | Total Hours: | (# of Instances) |
|---|---|---|---|
| 6810.REN.0.OS.TEMP | $ 637.50 | 25.5 | 5 |
| 1133.RAR.T15847.10.OSS | $ 17.50 | 0.5 | 1 |
| 1133.REN.R1347.00.OSS | $ 37.50 | 1.5 | 2 |
| 1133.REN.R3212.00.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T15295.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T15735.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T16219.01.OSS | $ 12.50 | 0.5 | 1 |
| 1133.REN.R0963.00.OSS | $ 12.50 | 0.5 | 1 |
| 1133.REN.T16221.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T16220.01.OSS | $ 55.00 | 2 | 2 |
| 1133.REN.T14992.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.R3212.326.OSS | $ 12.50 | 0.5 | 1 |
| 1133.REV.R0943.49.OSS | $ 12.50 | 0.5 | 1 |
| 1133.REN.R0807.00.OSS | $ 12.50 | 0.5 | 1 |
| 1133.REN.T15860.01.OSS | $ 62.50 | 2.5 | 1 |
| 1133.REN.T16228.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T14560.01.OSS | $ 12.50 | 0.5 | 1 |

K:\Administration\Surveyor\Accounting\Payrolls\Timesheet\Lorah_06-10-05.xls

Jourdean S. Lorah

Week Ending (Friday)

## Synerfac — Time and Material Invoicing Worksheet

6/17/2005  ← Start here and type in the Friday end date, save as

Straight Rate: $25.00
Overtime Rate: $35.00

Tetra Tech Week Ending: 6/17/2005
Synerfac Week Ending: 6/19/2005

### LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name | Description | Hours | Overtime | Amount | | Project Manager | Comments |
|------|---------------------------|----------|-------------|-------|----------|--------|--|-----------------|----------|
| Monday, June 13, 2005 | 6810.REN.0.OS.TEMP | Admin | | 5.0 | | $ | 125.00 | John Traynor | Work logs, QA-job numbers |
| Monday, June 13, 2005 | 6810.REN.0.OS.TRAINING | Training | | 0.5 | | $ | 12.50 | John Traynor | Trained Bob to do trans.etc. |
| Monday, June 13, 2005 | 1133.REV.T15741.01.OSS | Avignon | | 2.0 | | $ | 50.00 | Harish Mital | Document Control |
| Monday, June 13, 2005 | 1133.REN.T13885.01.OSS | Allied Chemical | | 1.0 | | $ | 25.00 | John Traynor | Transmittal, mail etc. |
| Tuesday, June 14, 2005 | 1133.REN.0.OS.TEMP | Admin | | 4.0 | | $ | 100.00 | John Traynor | Work logs, QA Job Numbers |
| Tuesday, June 14, 2005 | 1133.REN.0.OS.Marketing | Marketing | | 2.5 | | $ | 62.50 | John Traynor | Bound Tetra Tech Services |
| Tuesday, June 14, 2005 | 1133.REV.T47119.0141.OSS | Haverton | | 1.0 | | $ | 25.00 | Harish Mital | Document Control |
| Tuesday, June 14, 2005 | | | | | | $ | - | | |
| Tuesday, June 14, 2005 | | | | | | $ | - | | |
| Tuesday, June 14, 2005 | | | | | | $ | - | | |
| Wednesday, June 15, 2005 | | | | | | $ | - | | |
| Wednesday, June 15, 2005 | | | | | | $ | - | | |
| Wednesday, June 15, 2005 | | | | | | $ | - | | |
| Wednesday, June 15, 2005 | | | | | | $ | - | | |
| Wednesday, June 15, 2005 | | | | | | $ | - | | |
| Wednesday, June 15, 2005 | | | | | | $ | - | | |
| Thursday, June 16, 2005 | | | | | | $ | - | | |
| Thursday, June 16, 2005 | | | | | | $ | - | | |
| Thursday, June 16, 2005 | | | | | | $ | - | | |
| Thursday, June 16, 2005 | | | | | | $ | - | | |
| Thursday, June 16, 2005 | | | | | | $ | - | | |
| Thursday, June 16, 2005 | | | | | | $ | - | | |
| Friday, June 17, 2005 | | | | | | $ | - | | |
| Friday, June 17, 2005 | | | | | | $ | - | | |
| Friday, June 17, 2005 | | | | | | $ | - | | |
| Friday, June 17, 2005 | | | | | | $ | - | | |
| Friday, June 17, 2005 | | | | | | $ | - | | |
| Friday, June 17, 2005 | | | | | | $ | - | | |

**Totals**    16.0    0.0    $ 400.00

### Other Direct Costs

| Date | Tetra Tech RCN | Job Name | Miles | Rate/Mile | Cost | | |
|------|----------------|----------|-------|-----------|------|--|--|
| | | | 0 | | $ | - | |

**Totals**    0    $ - 

**Total Charges this week**    $ 400.00

### Breakdown for Tetra Tech Pasadena A/P:

| | | Total Hours: | (# of instances) |
|--|--|------|--|
| 6810.REN.0.OS.TEMP | $ 125.00 | 5 | 1 |
| 6810.REN.0.OS.TRAINING | $ 12.50 | 0.5 | 1 |
| 1133.REV.T15741.01.OSS | $ 50.00 | 2 | 1 |
| 1133.REN.T13885.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.0.OS.TEMP | $ 100.00 | 4 | 1 |
| 1133.REN.0.OS.Marketing | $ 62.50 | 2.5 | 1 |
| 1133.REV.T47119.0141.OSS | $ 25.00 | 1 | 1 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |
| | $ - | 0 | 0 |

**Totals**    $ 400.00    16    7



Case 1:06-cv-00358-SLR    Document 35-6    Filed 04/16/2008    Page 12 of 50



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
**(302) 324-1200**
**(302) 324-9285 Fax**
accounting@synerfac.com

RECEIVED

JUN 1 0 2005

TETRA TECH, INC
DE LOCATION

| | |
|---|---|
| Invoice No.: | 11,392 |
| Invoice Date: | 6/6/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job No: | 2,732 |
| PO #: | |

Ref#:  4,247

Bill To:

Tetra Tech, Inc.
Attn:  John Traynor
56 West Main Street
Christiana, DE  19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 24.000 | D0889C | | 6/5/2005 | Reg | $ 41.89 | $ 1,005.36 |
| 0.000 | EXPENG | Lorah, Jourdean S<br>refund - Synerfac picking up health insurance | 6/5/2005 | Other | $ 0.00 | $ 0.00 |
| 39.500 | D0889C | Lorah, Jourdean S | 6/5/2005 | Reg | $ 25.00 | $ 987.50 |

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER, CIVIL ENGINEERING
AND SURVEYING

6810. REN. 0.04. TEMP           733.08
1133. REN. T15093.01.044         20.95
1133. REN. R1347.00.044         251.34
6810. REN. 0.04. TEMP           337.50
1133. REV. R0151.10.044          25.00
1133. REN. T15331.01.044         12.50
1133. REN. T16220.01.044         87.50
1133. REN. T16213.01.044         50.00

1133. REN. T16228.01.044         50.00
1133. REN. T16219.01.044         25.00
1133. REN. T15740.01.044         50.00
1133. REN. R0543.00.044          25.00
1133. REN. T13885.01.044         12.50
1133. REV. T47112.01.044         50.00
1133. REN. T15987.01.044         25.00
1133. REN. R1321.00.044          25.00
1133. REN. T14560.01.044         12.50
HOLIDAY                         200.00
                    TOTAL     1,992.86

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $1,992.86 |
| Total Due: | $1,992.86 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 63.50 | $1,992.86 |
| Overtime | 0.00 | $0.00 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | CC |
| Special: | |
| Branch: | NC |

TT0162



Jourdean S. Lorah

Week Ending (Friday)

**Synerfac    Time and Material Invoicing Worksheet**

6/3/2005 ← Start here and type in the Friday end date, save as

| | | Straight Rate: | $25.00 |
Tetra Tech Week Ending: 6/3/2005
Synerfac Week Ending: 6/5/2005    Overtime Rate:

**LABOR**

| Date | Tetra Tech RCN (Job Code) | Job Name Description | Hours | Overtime | Amount | Project Manager | Comments |
|---|---|---|---|---|---|---|---|
| Monday, May 30, 2005 | 6810.REN.0.OS.TEMP | Holiday | 8.0 | | $ 200.00 | John Traynor | Holiday |
| Tuesday, May 31, 2005 | 1133.REV.R0150.10.OSS | Army Creek | 3.5 | 1.0 | $ 87.50 | John Traynor | Work logs, invoices etc. |
| Tuesday, May 31, 2005 | 1133.REN.T15331.01.OSS | Bohemia Bay Yacht Club | 1.0 | 1.0 | $ 25.00 | John Traynor | Document Control |
| Tuesday, May 31, 2005 | 1133.REN.T16220.01.OSS | Pencader Plaza | 0.5 | 1.0 | $ 12.50 | John Traynor | Document control |
| Tuesday, May 31, 2005 | 1133.REN.T16218.01.OSS | Wellington Arms | 1.0 | 1.0 | $ 25.00 | John Traynor | Document Control |
| Tuesday, May 31, 2005 | 1133.REN.T16228.01.OSS | Church Street | 1.0 | 1.0 | $ 25.00 | JohnTraynor | Document Control |
| | | | | | $ 25.00 | John Traynor | Document Control |
| Wednesday, June 01, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.5 | 1.0 | $ 87.50 | John Traynor | Work logs, invoices etc. |
| Wednesday, June 01, 2005 | 1133.REN.T16218.01.OSS | Wellington Arms | 1.0 | 1.0 | $ 25.00 | John Traynor | Document Control |
| Wednesday, June 01, 2005 | 1133.REN.T16219.01.OSS | University Village | 1.0 | 1.0 | $ 25.00 | John Traynor | Document Control |
| Wednesday, June 01, 2005 | 1133.REN.T15740.01.OSS | Highlands of Middletown | 1.0 | 1.0 | $ 25.00 | John Traynor | Document Control |
| Wednesday, June 01, 2005 | 1133.REV.R0543.00.OSS | City Parks | 1.0 | 0.5 | $ 25.00 | R.Boedecker | Document Control |
| Wednesday, June 01, 2005 | 1133.REN.T13885.01.OSS | Allied Chem/ Honeywell. | 0.5 | | $ 12.50 | John Traynor | Document Control |
| Thursday, June 02, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.5 | 1.0 | $ 87.50 | John Traynor | Work logs, invoices etc. |
| Thursday, June 02, 2005 | 1133.REV.T47112.01.OSS | Havertown | 2.0 | 0.5 | $ 50.00 | Harish Mittal | Document Control |
| Thursday, June 02, 2005 | 1133.REN.T16220.01.OSS | Pencader Plaza | 0.5 | 1.0 | $ 12.50 | John Traynor | Document Control |
| Thursday, June 02, 2005 | 1133.REN.T15987.01.OSS | UofD Middletown Farms | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Thursday, June 02, 2005 | 1133.REN.T1321.00.OSS | Meridian Crossing | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Friday, June 03, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.0 | 1.0 | $ 75.00 | John Traynor | Work logs, invoices etc. |
| Friday, June 03, 2005 | 1133.REN.T16228.01.OSS | Church Street | 1.0 | 2.0 | $ 25.00 | John Traynor | Document Control |
| Friday, June 03, 2005 | 1133.REN.T16220.01.OSS | Pencader Plaza | 2.0 | 1.0 | $ 50.00 | John Traynor | Measured building- |
| Friday, June 03, 2005 | 1133.REN.T15740.01.OSS | Highlands of Middletown | 1.0 | 0.5 | $ 25.00 | John Traynor | Document Control |
| Friday, June 03, 2005 | 1133.REN.T14560.01.OSS | Belvedere | 0.5 | | $ 12.50 | John Traynor | Document Control |
| **Totals** | | | **39.5** | **0.0** | **$ 987.50** | | |

| Breakdown for Tetra Tech Pasadena A/P: | | Total Hours: | (# of Instances) |
|---|---|---|---|
| 6810.REN.0.OS.TEMP | $ 337.50 | 13.5 | 4 |
| 1133.REV.R0150.10.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T15331.01.OSS | $ 12.50 | 0.5 | 1 |
| 1133.REN.T16220.01.OSS | $ 87.50 | 3.5 | 3 |
| 1133.REN.T16218.01.OSS | $ 50.00 | 2 | 2 |
| 1133.REN.T16228.01.OSS | $ 50.00 | 2 | 2 |
| 1133.REN.T16219.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T15740.01.OSS | $ 50.00 | 2 | 2 |
| 1133.REV.R0543.00.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T13885.01.OSS | $ 12.50 | 0.5 | 1 |
| 1133.REV.T47112.01.OSS | $ 50.00 | 2 | 1 |
| 1133.REN.T15987.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.R1321.00.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T14560.01.OSS | $ 12.50 | 0.5 | 1 |
| Holiday | $ 200.00 | 8 | 1 |
| **Totals** | **$ 987.50** | **39.5** | **23** |

N:\Administration\Survey\Accounting\US.method\Jourdean s lorah_06-03-05.xls

TT0164



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

RECEIVED

JUN 0 6 2005

TETRA TECH, INC.
DE LOCATION

| | |
|---|---|
| Invoice No.: | **113651** |
| Invoice Date: | 5/30/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Reff#: 4,247

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 39.500 | D0889C | Lorah, Jourdean S | 5/29/2005 | Reg | $ 25.00 | $ 987.50 |

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER SURVEYING

5/7/05

TOTAL

| **Terms of Invoice** | | |
|---|---|---|
| **Net Due 15 Days** | Total Taxable: | $0.00 |
| | Tax: | $0.00 |
| | Total Non-Taxable: | $987.50 |
| | Total Due: | $987.50 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 39.50 | $987.50 |
| Overtime | 0.00 | $0.00 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | CC |
| Special: | |
| Branch: | NC |

TT0165

**Breakdown for Tetra Tech Pasadena A/P:**

| | | |
|---|---|---|
| 1133.REN.T16199.01.OSS | $ | 25.00 |
| 6810.REN.0.OS.TEMP | $ | 412.50 |
| 1133.REN.T15860.01.OSS | $ | 37.50 |
| 1133.REV.R0151.10.OSS | $ | 137.50 |
| 1133.REN.T15984.01.OSS | $ | 50.00 |
| 1133.REN.T15986.01.OSS | $ | 25.00 |
| 1133.REV.R0543.49.OSS | $ | 12.50 |
| 1133.RAR.T15927.10.OSS | $ | 37.50 |
| 1133.REN.T14369.01.OSS | $ | 25.00 |
| 1133.REN.T15987.01.OSS | $ | 25.00 |
| 1133.REN.T15939.01.OSS | $ | 12.50 |
| 1133.REN.T16228.01.OSS | $ | 50.00 |
| 1133.REN.T16220.01.OSS | $ | 50.00 |
| 1133.REN.T16218.01.OSS | $ | 25.00 |
| 1133.RAR.T15560.10.OSS | $ | 12.50 |
| 1133.REN.T16221.01.OSS | $ | 37.50 |
| 1133.REN.R0807.00.OSS | $ | 12.50 |
| Totals | $ | 987.50 |

TT0166



TT0167

Jourdean S. Lorah

### Synerfac    Time and Material Invoicing Worksheet

Week Ending (Friday)                    5/27/2005 ← Start here and type in the
                                                   Friday end date, save as

Tetra Tech Week Ending: 5/27/2005       Straight Rate:  $25.00
Synerfac Week Ending: 5/29/2005         Overtime Rate:  $35.00

LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name Description | Hours | Overtime | Amount | Project Manager | Comments |
|---|---|---|---|---|---|---|---|
| Monday, May 23, 2005 | 1133.REN.T16199.01.OSS | Cherry Island | 1.0 | | $ 25.00 | John Traynor | Preparation for a new job. |
| Monday, May 23, 2005 | 6810.REN.0.OS.TEMP | Admin. | 1.5 | | $ 37.50 | John Traynor | Invoices, Proposals etc. |
| Monday, May 23, 2005 | 1133.REN.T15860.01.OSS | Barksdale Road | 1.0 | | $ 25.00 | T.Haskins | Documents filing/ reorganize |
| Monday, May 23, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 1.5 | | $ 37.50 | Carl Hsu | Documents/storage |
| Tuesday, May 24, 2005 | 6810.REN.0.OS.TEMP | Admin | 4.0 | | $ 100.00 | John Traynor | Work logs, invoices faxes etc. |
| Tuesday, May 24, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 0.5 | | $ 12.50 | John Traynor | Document filing/storage |
| Tuesday, May 24, 2005 | 1133.REN.T15984.01.OSS | Willow Groves | 1.0 | | $ 25.00 | John Traynor | Documents filed |
| Tuesday, May 24, 2005 | 1133.REN.T15986.01.OSS | YMCA Western Branch | 1.0 | | $ 25.00 | John Traynor | Documents filed/invoices |
| Tuesday, May 24, 2005 | 1133.REV.R0543.49.OSS | City Parks | 0.5 | | $ 12.50 | R. Boedecker | Documents,Invoices filed |
| Tuesday, May 24, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elementary | 0.5 | | $ 12.50 | W.Clendaniel | Documents filed |
| Tuesday, May 24, 2005 | 1133.REN.T15860.01.OSS | Barksdale Road | 0.5 | | $ 12.50 | T.Haskins | Made copies of plat |
| Tuesday, May 24, 2005 | 1133.REN.R0807.00.OSS | Cherry Island | 0.5 | | $ 12.50 | John Traynor | Documents filed |
| Wednesday, May 25, 2005 | 6810.REN.0.OS.TEMP | Admin. | 4.0 | | $ 100.00 | John Traynor | Work logs, proposals, etc. |
| Wednesday, May 25, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 2.0 | | $ 50.00 | Carl Hsu | Document Filing/Storage |
| Wednesday, May 25, 2005 | 1133.REN.T14369.01.OSS | U of D Pencader | 1.0 | | $ 25.00 | John Traynor | Filed Documents |
| Wednesday, May 25, 2005 | 1133.REN.T15987.01.OSS | UofD Middletown Farms | 1.0 | | $ 25.00 | John Traynor | Filed Documents |
| Wednesday, May 25, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elementary | 0.5 | | $ 12.50 | W.Clendaniel | Invoice, filed documents |
| Thursday, May 26, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.5 | | $ 87.50 | John Traynor | Work logs, proposals, etc/ |
| Thursday, May 26, 2005 | 1133.REN.T15939.01.OSS | Rhodes Properties | 0.5 | | $ 12.50 | John Traynor | Discussed revisions |
| Thursday, May 26, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 1.5 | | $ 37.50 | Carl Hsu | Documents filed/Storage |
| Thursday, May 26, 2005 | 1133.REN.T16228.01.OSS | Church Street | 1.0 | | $ 25.00 | John Traynor | Proposal, invoices etc. |
| Thursday, May 26, 2005 | 1133.REN.T16220.01.OSS | Pencader Plaza | 1.0 | | $ 25.00 | John Traynor | Proposal, editing,invoice etc. |
| Thursday, May 26, 2005 | 1133.REN.T15984.01.OSS | Willow Groves Mill | 1.0 | | $ 25.00 | John Traynor | Proposal, invoice, etc. |
| Friday, May 27, 2005 | 1133.REN.T16220.01.OSS | Pencader Plaza | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Friday, May 27, 2005 | 1133.REN.T16228.01.OSS | Church St. | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Friday, May 27, 2005 | 1133.REN.T16218.01.OSS | Wellington Arms | 1.0 | | $ 25.00 | John Traynor | Document Control |
| Friday, May 27, 2005 | 1133.REN.T16221.01.OSS | UofD Penc.Ped.Bridge | 1.5 | | $ 37.50 | John Traynor | Document Control |
| Friday, May 27, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elemementary | 0.5 | | $ 12.50 | W.Clendaniel | Document Control |
| Friday, May 27, 2005 | 6810.REN.0.OS.TEMP | Admin. | 3.5 | | $ 87.50 | John Traynor | Work logs, invoices etc. |
| Friday, May 27, 2005 | 1133.RAR.T15560.10.OSS | DE.Children's Feasibility | 0.5 | | $ 12.50 | Maureen Page | Document Control |
| Totals | | | 39.5 | 0.0 | $ 987.50 | | |

Total Charges this week            $ 987.50

Breakdown for Tetra Tech Pasadena A/P:          Total Hours:    (# of Instances)

| | | Total Hours: | (# of Instances) |
|---|---|---|---|
| 1133.REN.T16199.01.OSS | $ 25.00 | 1 | 1 |
| 6810.REN.0.OS.TEMP | $ 412.50 | 16.5 | 5 |
| 1133.REN.T15860.01.OSS | $ 37.50 | 1.5 | 2 |
| 1133.REV.R0151.10.OSS | $ 137.50 | 5.5 | 4 |
| 1133.REN.T15984.01.OSS | $ 50.00 | 2 | 2 |
| 1133.REN.T15986.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REV.R0543.49.OSS | $ 12.50 | 0.5 | 1 |
| 1133.RAR.T15927.10.OSS | $ 37.50 | 1.5 | 3 |
| 1133.REN.T14369.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T15987.01.OSS | $ 25.00 | 1 | 1 |
| 1133.REN.T15939.01.OSS | $ 12.50 | 0.5 | 1 |
| 1133.REN.T16228.01.OSS | $ 50.00 | 2 | 2 |
| 1133.REN.T16220.01.OSS | $ 50.00 | 2 | 2 |
| 1133.REN.T16218.01.OSS | $ 25.00 | 1 | 1 |
| 1133.RAR.T15560.10.OSS | $ 12.50 | 0 | 0 |
| 1133.REN.T16221.01.OSS | $ 37.50 | 1.5 | 1 |
| 1133.REN.R0807.00.OSS | $ 12.50 | 0.5 | 1 |
| Totals | $ 987.50 | 39 | 29 |

N:\Administration\Survey\Accounting\Synerfac\GrabowskiLorah_06-27-05.xls



TT0169



2 Read's Way | Suite 209
New Castle | DE 19720

302 | 324-9400
fax: 302 | 324-9404

www.synerfac.com

A division of SYNERFAC, Inc.

May 27, 2005

John Traynor
Tetra Tech Inc.
56 West Main Street
Christiana, DE 19702

Re: Revised Jourdean Lorah Contract Proposal

Dear John,

We feel our contract-to-hire program is an excellent vehicle to evaluate job performance before making a hiring decision so you always get the right people.

We are pleased to represent Jourdean Lorah as an Administrative Assistant to work onsite at your facility as a specialty contractor. The hourly billing rate for these services will be:

| Name | Position | Standard Bill Rate | O.T. Bill Rate |
|---|---|---|---|
| Jourdean Lorah | Administrative Assistant | $25.00 | $35.00 |

Billings will be generated weekly based on time cards, which we will provide to Jourdean and which must be signed each week by you or an authorized company representative. This signed time card shall operate as confirmation of the actual number of hours worked by our employee that week. Payment is due to us within 30 days of receipt of invoice. Synerfac will pay Jourdean weekly.

If a Synerfac, Inc. contract employee has been assigned to Tetra Tech Inc. for 1040 hours, about 6 Months, then there is no fee to convert them to Tetra Tech Inc. employee. Prior to 1040 hours, Synerfac, Inc. will prorate the applicable placement fee for the number of hours worked.

All invoices for contract services must be paid in full prior to our employee converting to your payroll. In addition, the conversion fee, if any, must be paid in full before our employee is converted to your payroll.

TT0170



2 Read's Way | Suite 209
New Castle | DE 19720

302 | 324-9400
fax: 302 | 324-9404

www.synerfac.com

A division of SYNERFAC, Inc.

Tetra Tech Inc. is responsible for reasonable attorney's fees and other collection expenses for any contract or direct invoices not paid within ninety (90) days from the invoice date.

It's always satisfying to help good companies find the right technical personnel and I'm glad I had the chance to work with you on this placement. If we can help you with any other requirements, please do not hesitate to call.

To confirm these rates for May 29, 2005 for Jourdean please return this back to me via fax @ 302-324-9404 dated and with your signature.

I look forward to speaking to you again and to a continued rewarding business partnership between Synerfac Technical Staffing and Tetra Tech Inc.

Thanks again,

Sincerely,                                                   Client Authorization:

Gregory W. Porter                                           Name
Branch Manager                                              Title
gporter@synerfac.com                                        Date:



SYNERFAC
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

RECEIVED
MAY 2 7 2005
TETRA TECH, INC.
DE LOCATION

| | |
|---|---|
| Invoice No.: | 113308 |
| Invoice Date: | 5/23/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732    Ref#: 4,247 |
| PO #: | |

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|-------|-----------|---------------------|-----------|------|-----------|--------|
| 40.000 | D0889C | Lorah, Jourdean S | 5/22/2005 | Reg | $ 21.28 | $ 851.20 |
| 1.000 | D0889C | Lorah, Jourdean S | 5/22/2005 | OT | $ 29.79 | $ 29.79 |
| 40.000 | D0949B | | 5/22/2005 | Reg | $ 38.85 | $ 1,554.00 |
| 4.000 | D0949B | | 5/22/2005 | OT | $ 58.28 | $ 233.12 |

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER SURVEYING

5/31/05

*(handwritten notes)*
6810. REN. 0.05. TEMP        38.85
1133. REN. TI5939.01.055     38.85
1133. REN. TI5740.01.055     1631.72
1133. REN. R0963.01.055      77.70
1133. RAR. TI5927.10.055     25.40
1133. REN. TI5984.01.055     31.92
1133. REV. R0543.49.055      10.64
1133. REV. R0151.10.055      202.16
6810. REN.0.05. TEMP         383.17

ATTACHED    TOTAL

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $2,668.11 |
| Total Due: | $2,668.11 |

**Terms of Invoice**
**Net Due 15 Days**

### Current Billing Analysis

| | | |
|---|---|---|
| Regular | 80.00 | $2,405.20 |
| Overtime | 5.00 | $262.91 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | CC |
| Special: | |
| Branch: | NC |

TT0172

| | |
|---|---|
| 1133.REN.T14066.01.OSS | $ 36.18 |
| 1133.REN.T15740.01.OSS | $ 117.04 |
| 1133.REN.T14569.01.OSS | $ 31.92 |
| 1133.REN.T15860.01.OSS | $ 21.28 |
| 1133.REN.T14992.01.OSS | $ 21.28 |

TOTAL 2,668.11

TT0173

May. 23. 2005  7:17AM                                                    No.8797   P. 1/1.

SYNERFAC
a division of SYNERFAC, Inc.
2 Read's Way 1 Suite 209
New Castle Corporate Commons
New Castle 1 DE 19720

| EMPLOYEE NO. | EMPLOYEE NAME | CLIENT NAME | | | | WEEK ENDING | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | JOURDEAN LORAH | TETRA TECH | | | | 5 20 05 | | | |
| PROJECT NO. & NAME | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
| TETRA TECH | ST | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | | | 40.0 |
| | OT | | 0.5 | | | 0.5 | | | 1.0 |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | TOTAL | 8.0 | 8.0 0.5 | 8.0 | 8.0 | 8.0 0.5 | | | 40.0 1.0 |

EMPLOYEE SIGNATURE __Jourdean Lorah__

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactory, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

CLIENT

STRAIGHT TIME

OVERTIME:

TT0174

Jourdean S. Lorah

Week Ending (Friday)

## Synerfac — Time and Material Invoicing Worksheet

5/20/2005 → Start here and type in the Friday end date, save as

Tetra Tech Week Ending: 5/20/2005     Straight Rate: $21.28
Synerfac Week Ending: 5/22/2005     Overtime Rate: $29.79

### LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name Description | Hours | Overtime | Amount | Project Manage | Comments |
|---|---|---|---|---|---|---|---|
| Monday, May 16, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elementary | 0.5 | | $10.64 | W.Clendaniel | Filed Documents |
| Monday, May 16, 2005 | 1133.REN.T15984.01.OSS | Willow Groves | 0.5 | | $10.64 | John Traynor | Filed Documents |
| Monday, May 16, 2005 | 1133.REV.R0543.49.OSS | City Parks | 0.5 | | $10.64 | John Traynor | Reorganized files/project |
| Monday, May 16, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 3.5 | | $74.48 | Carl Hsu | Filed documents into storage |
| Monday, May 16, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.0 | | $63.84 | John Traynor | Work logs, xerox, resumes |
| Tuesday, May 17, 2005 | 6810.REN.0.OS.TEMP | Admin | 4.5 | | $95.76 | John Traynor | Work logs, proposals etc. |
| Tuesday, May 17, 2005 | 1133.REN.T14066.01.OSS | CFS | 1.0 | 0.5 | $38.18 | Lonnie Webb | Delivered drawings |
| Tuesday, May 17, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 2.5 | | $53.20 | Carl Hsu | Filed documents |
| Wednesday, May 18, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.5 | | $74.48 | John Traynor | Work logs, proposals etc. |
| Wednesday, May 18, 2005 | 1133.REN.T16740.01.OSS | Highlands of Middletown | 4.5 | | $95.76 | John Traynor | Located points in the field. |
| Thursday, May 19, 2005 | 1133.REN.T14569.01.OSS | CFA | 1.5 | | $31.92 | Lonnie Webb | Delivered a drawing/check |
| Thursday, May 19, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 3.5 | | $74.48 | Carl Hsu | Filed documents for storage |
| Thursday, May 19, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.0 | | $63.84 | John Traynor | Work logs, expense prts. etc |
| Friday, May 20, 2005 | 6810.REN.0.OS.TEMP | Admin | 4.0 | | $85.12 | John Traynor | Work logs, invoices etc. |
| Friday, May 20, 2005 | 1133.REN.T15984.01.OSS | Willow Groves | 1.0 | | $21.28 | John Traynor | Invoices,filing, -reorganized |
| Friday, May 20, 2005 | 1133.REN.T15860.01.OSS | Barksdale Road | 1.0 | | $21.28 | T.Haskins | Reorganizing drawings/doc. |
| Friday, May 20, 2005 | 1133.REN.T14892.01.OSS | Port Penn Firehouse | 1.0 | | $21.28 | T.Haskins | Reorganizing drawings/doc. |
| Friday, May 20, 2005 | 1133.REN.T16740.01.OSS | Highlands at Middletown | 1.0 | 0.5 | $21.28 | John Traynor | Aerial mapping manual |
| Friday, May 20, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elementary | | | $14.80 | W.Clendaniel | Invoices |
| **Totals** | | | **40.0** | **1.0** | **$ 880.99** | | |

### Other Direct Costs

| Date | Tetra Tech RCN | Job Name | Miles | Rate/Mile | Cost |
|---|---|---|---|---|---|
| 5/17/2005 | T14066.10 | CFS | 21 | 0.405 | $8.50 |
| 5/18/2005 | T16740.01 | Highlands of Middletown | 47 | | $19.35 |
| 5/19/2005 | T14569.01 | CFA-Whiting Turner | 18 | | $7.29 |
| 6 | | Total Charges this week | 86 | | $ 35.14 |

**Totals** $ 916.13

### Breakdown for Tetra Tech Pasadena A/P:

| | | Total Hours: | (# of Instances) |
|---|---|---|---|
| 1133.RAR.T15927.10.OSS | $25.54 | 1 | 2 |
| 1133.REN.T15927.01.OSS | $31.92 | 1.5 | 2 |
| 1133.REV.R0543.49.OSS | $10.64 | 0.5 | 1 |
| 1133.REV.R0151.10.OSS | $202.16 | 9.5 | 3 |
| 6810.REN.0.OS.TEMP | $383.04 | 18 | 5 |
| 1133.REN.T14066.01.OSS | $36.18 | 1.5 | 2 |
| 1133.REN.T16740.01.OSS | $117.04 | 1.5 | 2 |
| 1133.REN.T14569.01.OSS | $31.92 | 5.5 | 2 |
| 1133.REN.T15860.01.OSS | $21.28 | 1.5 | 1 |
| 1133.REN.T14892.01.OSS | $21.28 | 1 | 1 |
| **Totals** | **$ 880.99** | **41** | **19** |

N:\Administration\Survey\Accounting\Synerfac\Jourdean\Lorah_05-20-05.xls

TT0175

**First timesheet (rotated, left):**

EMPLOYEE NO. | EMPLOYEE NAME LOURDEAU LORAH | CLIENT NAME TETRA TECH | WEEK ENDING MAY 27, 05

PROJECT NO. & NAME: TETRA TECH

| | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | ST | 5.0 | 8.5 | 8.5 | 8.5 | 9.0 | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| TOTAL | | 5 | 8.5 | 8.5 | 8.5 | 9.0 | | | 39.5 |

By signing below, authorized representative of the client agrees that all hours on this timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet. ( ) Check here if you would like a sales representative or recruiter to contact you regarding open position.

CLIENT APPROVAL:

STRAIGHT TIME: _____

OVERTIME: _____

EMPLOYEE SIGNATURE: 

Employee Signature, I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

SYNERFAC
TECHNICAL STAFFING
2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720
a division of SYNERFAC, Inc.

**Second timesheet (rotated, right):**

EMPLOYEE NO. | EMPLOYEE NAME LOURDEAU LORAH | CLIENT NAME TETRA TECH | WEEK ENDING MAY 27, 05

PROJECT NO. & NAME: TETRA TECH

| | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | ST | 5.0 | 8.5 | 8.5 | 8.5 | 9.0 | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| TOTAL | | 5 | 8.5 | 8.5 | 8.5 | 9.0 | | | 39.5 |

By signing below, authorized representative of the client agrees that all hours on this timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet. ( ) Check here if you would like a sales representative or recruiter to contact you regarding open position.

CLIENT APPROVAL:

STRAIGHT TIME: _____

OVERTIME: _____

EMPLOYEE SIGNATURE:

Employee Signature, I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

SYNERFAC
TECHNICAL STAFFING
2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720
a division of SYNERFAC, Inc.

TT0176



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

RECEIVED

MAY 2 3 2005

TETRA TECH, INC.
DE LOCATION

| | |
|---|---|
| Invoice No.: | **112960** |
| Invoice Date: | 5/16/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Ref#:   4,247

Bill To:

Tetra Tech, Inc.
Attn:  John Traynor
56 West Main Street
Christiana, DE  19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 40.000 | D0889C | Lorah, Jourdean S | 5/15/2005 | Reg | $ 21.28 | $ 851.20 |
| 2.500 | D0889C | Lorah, Jourdean S | 5/15/2005 | OT | $ 29.79 | $ 74.48 |
| 35.000 | D0949B | | 5/15/2005 | Reg | $ 38.85 | $ 1,359.75 |

1133. REN. T15986.01.055        31.92
1133. REN. T15984.01.055        40.43
6810. REN. 0.05. TEMP        434.11
1133. REV. RD151.10.055        244.72
1133. REN. T15702.01.055        42.56
1133. REN. T15987.01.055        21.28
1133. REN. R8116.00.055        42.56
1133. REN. R1342.00.055        21.28
1133. REN. R1347.00. 055        10.64
1133. REV. T15560.10.055        14.90
1133. REV. RD543.49.055        21.28

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER, CIVIL ENGINEERING
AND SURVEYING

SEE ATTACHED COPY ⟶ (TOTAL)

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $2,285.43 |
| Total Due: | $2,285.43 |

### Current Billing Analysis

| | | |
|---|---|---|
| Regular | 75.00 | $2,210.95 |
| Overtime | 2.50 | $74.48 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

| **Synerfac Use Only:** | | |
|---|---|---|
| | Timesheet: | **CC** |
| | Special: | |
| | Branch: | **NC** |

TT0177

| | | |
|---|---|---|
| **6810.REN.0.OS.TEMP** | $ | 932.40 |
| **1133.REN.T15939.01.OSS** | $ | 271.95 |
| **1133.REN.T15531.01.OSS** | $ | 155.40 |

2 285.43    TOTAL

May.16. 2005  8:02AM

No.8735   P. 1/1

**SYNERFAC**
a division of SYNERFAC, Inc.

2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

| EMPLOYEE NO. | EMPLOYEE NAME Lourdean Lorah | CLIENT NAME Tetra Tech | | WEEK ENDING May 13, 2005 | | | | |
|---|---|---|---|---|---|---|---|---|
| PROJECT NO. & NAME | | | MON. | TUE. | WED. | THUR | FRI. | SAT. | SUN. | TOTAL |
| Tetra Tech | ST | 8.5 | 8.5 | 8.0 | 9.0 | 8.5 | | | 40.5 |
| | OT | | | | | | | | 2.5 |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | TOTAL | 8.5 | 8.5 | 8.0 | 9.0 | 8.5 | | | 40 |
| | | | | | | | | | 2.5 |

EMPLOYEE SIGNATURE _Lourdean Lorah_

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet. ( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL

STRAIGHT TIME:

OVERTIME:

TT0179

Jourdean S. Lorah

Week Ending (Friday)    5/14/2005

## Synerfac — Time and Material Invoicing Worksheet

Tetra Tech Week Ending: 5/14/2005  
Synerfac Week Ending: 5/16/2005  

Straight Rate: $21.28  
Overtime Rate: $29.79

### LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name Description | Hours | Overtim | Amount | Project Manager | Comments |
|---|---|---|---|---|---|---|---|
| Monday, May 9, 2005 | 1133.REN.T15986.01.OSS | Western Branch YMCA | 0.5 | | $ 10.64 | John Traynor | Spot Aerial Photo |
| Monday, May 9, 2005 | 1133.REN.T15984.01.OSS | Willow Groves | 0.5 | | $ 10.64 | John Traynor | Spot Aerial Photo |
| Monday, May 9, 2005 | 6810.REN.0.OS.TEMP | Admin. | 4.0 | 0.5 | $ 100.02 | John Traynor | Work logs, QA, invoices etc. |
| Monday, May 9, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 3.0 | | $ 63.84 | Carl Hsu | Documents filed |
| | | | | | | | |
| Tuesday, May 10, 2005 | 6810.REN.0.OS.TEMP | Admin | 4.0 | 0.5 | $ 100.02 | John Traynor | Work logs, Applicant list, etc. |
| Tuesday, May 10, 2005 | 1133.REN.T15702.01.OSS | Brandywine Towers | 1.0 | | $ 21.28 | John Traynor | Folded plats |
| Tuesday, May 10, 2005 | 1133.REN.T15987.01.OSS | UofD Middletown Farms | 1.0 | | $ 21.28 | John Traynor | Archives filing |
| Tuesday, May 10, 2005 | 1133.REN.R8116.00.OSS | DuPont Experimental | 1.0 | | $ 21.28 | John Traynor | Prepared Transmittal |
| Tuesday, May 10, 2005 | 1133.REN.R1342.00.OSS | Cherry Island | 1.0 | | $ 21.28 | John Traynor | Archives filing |
| | | | | | | | |
| Wednesday, May 11, 2005 | 6810.REN.0.OS.TEMP | Admin. | 4.0 | | $ 85.12 | John Traynor | Work logs, QA, Applicant list |
| Wednesday, May 11, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 2.0 | | $ 42.56 | Carl Hsu | Document filing, Data list. |
| Wednesday, May 11, 2005 | 1133.REN.R1347.00.OSS | Inniscrone | 0.5 | | $ 10.64 | Lonnie Webb | Made copies of plats. |
| Wednesday, May 11, 2005 | 1133.REN.R8116.00.OSS | DuPont Experimental | 1.0 | | $ 21.28 | R. Boedecker | Prepared Transmittal |
| Wednesday, May 11, 2005 | 1133.REN.T15986.01.OSS | Western Branch-YMCA | 0.5 | | $ 10.64 | John Traynor | Documents filed |
| | | | | | | | |
| Thursday, May 12, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.5 | | $ 74.48 | John Traynor | Work logs, invoices etc. |
| Thursday, May 12, 2005 | 1133.REN.T15984.01.OSS | Willow Groves | | 1.0 | $ 29.79 | John Traynor | Archives filing |
| Thursday, May 12, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 4.5 | | $ 95.76 | Carl Hsu | Document filing for storage |
| | | | | | | | |
| Friday, May 13, 2005 | 6810.REN.0.OS.TEMP | Admin | 3.5 | | $ 74.48 | John Traynor | Work logs, expense reports |
| Friday, May 13, 2005 | 1133.REV.R0151.10.OSS | Army Creek | 2.0 | | $ 42.56 | Carl Hsu | Document filing |
| Friday, May 13, 2005 | 1133.REN.T15986.01.OSS | Western Branch -YMCA | 0.5 | | $ 10.64 | John Traynor | Aerial manual, transmittal |
| Friday, May 13, 2005 | 1133.REN.T15702.01.OSS | Brandywine Towers | 1.0 | | $ 21.28 | John Traynor | Sealed, folded plats |
| Friday, May 13, 2005 | 1133.REV.T15560.10.OSS | DE Children's Feasibility | | 0.5 | $ 14.90 | Maureen Page | Documents filing |
| Friday, May 13, 2005 | 1133.REV.R0543.49.OSS | City Parks | 1.0 | | $ 21.28 | R. Boedecker | Aerial manual, reorganized |
| | | | | | | | |
| Totals | | | 40.0 | 2.5 | $ 925.68 | | |
| | | | | | $ 925.68 | | |

Total Charges this week

### Breakdown for Tetra Tech Pasadena A/P:

| Job Code | Amount | Total Hours | (# of Instances) |
|---|---|---|---|
| 1133.REN.T15986.01.OSS | $ 31.92 | 1.5 | 3 |
| 1133.REN.T15984.01.OSS | $ 40.43 | 1.5 | 2 |
| 6810.REN.0.OS.TEMP | $ 434.11 | 20 | 5 |
| 1133.REV.R0151.10.OSS | $ 244.72 | 11.5 | 4 |
| 1133.REN.T15702.01.OSS | $ 42.56 | 2 | 2 |
| 1133.REN.T15987.01.OSS | $ 21.28 | 1 | 1 |
| 1133.REN.R8116.00.OSS | $ 42.56 | 2 | 2 |
| 1133.REN.R1342.00.OSS | $ 21.28 | 1 | 1 |
| 1133.REN.R1347.00.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REV.T15560.10.OSS | $ 14.90 | 0.5 | 1 |
| 1133.REV.R0543.49.OSS | $ 21.28 | 1 | 1 |
| | $ 925.68 | 42.5 | 23 |

N:\Administration\Survey\Accounting\Synerfac\Subcontract\Lorah_05-14-05.xls



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

RECEIVED
MAY 1 6 2005
TETRA TECH, INC.
DE LOCATION

| | |
|---|---|
| Invoice No.: | **112628** |
| Invoice Date: | 5/9/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732    Ref#: 4,247 |
| PO #: | |

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 40.000 | D0889C | Lorah, Jourdean S | 5/8/2005 | Reg | $ 21.28 | $ 851.20 |
| 1.500 | D0889C | Lorah, Jourdean S | 5/8/2005 | OT | $ 29.79 | $ 44.69 |
| 40.000 | D0949C | | 5/8/2005 | Reg | $ 30.85 | $ 1,234.00 |
| 1.000 | D0949C | | 5/8/2005 | OT | $ 43.19 | $ 43.19 |

1133. REN. T15792.01.055    382.54
6810. REN.0.05.TEMP    894.65
1133. REN. R1321.00.055    21.28
1133. REN. T14560.01.055    10.64
1133. REN. T15740.01.055    63.84
1133. REN. T15984.01.055    63.84
6810. REN.0.05.TEMP    449.01
1133. REN. T15986.01.055    42.56
1133. REN. T14369.01.055    10.64
1133. REN. R1342.00.055    21.28

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER, CIVIL ENGINEERING
AND SURVEYING

SEE ATTACHED COPY ——→ (TOTAL)

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $2,173.08 |
| Total Due: | $2,173.08 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 80.00 | $2,085.20 |
| Overtime | 2.50 | $87.88 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | **CC** |
| Special: | |
| Branch: | **NC** |

| | | |
|---|---|---|
| 1133.REN.T15702.01.OSS | $ | 21.28 |
| 1133.REN.T15987.01.OSS | $ | 31.92 |
| 1133.REN.T14463.01.OSS | $ | 21.28 |
| 1133.RAR.T15927.10.OSS | $ | 10.64 |
| 1133.REV.R0151.10.OSS | $ | 127.68 |

2173.08    TOTAL

TT0182



TT0183

May, 9. 2005  7:33AM

Jourdean S. Lorah

**Synerfac**   **Time and Material Invoicing Worksheet**

Week Ending (Friday)   5/6/2005   ← Start here and type in the Friday end date, save as

Tetra Tech Week Ending: 5/6/2005
Synerfac Week Ending: 5/8/2005

Straight Rates: $21.28
Overtime Rate: $29.79

## LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name | Description | Hours | Overtime | Amount | Project Manage | Comments |
|---|---|---|---|---|---|---|---|---|
| Monday, May 02, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 6.0 | 0.5 | $ 142.58 | John Traynor | Work logs, campus, ads etc.. |
| Monday, May 02, 2005 | 1133.REN.T16740.01.OSS | Highlands of Middletown | | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Monday, May 02, 2005 | 1133.REN.T14369.01.OSS | U of D Pencader | | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Monday, May 02, 2005 | 1133.REN.R1342.00.OSS | Cherry Island | | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Tuesday, May 03, 2005 | 1133.REN.T14560.01.OSS | Belvedere | | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Tuesday, May 03, 2005 | 1133.REN.T16740.01.OSS | Highlands of Middletown | | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Tuesday, May 03, 2005 | 1133.REN.T16984.01.OSS | Willow Groves | | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Tuesday, May 03, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 4.0 | | $ 85.12 | John Traynor | Work logs, QA-Projects,etc. |
| Wednesday, May 04, 2005 | 1133.REN.R1321.00.OSS | Meridian Crossing | | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Wednesday, May 04, 2005 | 1133.REN.T16986.01.OSS | YMCA | | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Wednesday, May 04, 2005 | 1133.REN.T16984.01.OSS | Willow Groves | | 1.5 | | $ 31.92 | John Traynor | Document Control |
| Wednesday, May 04, 2005 | 1133.REN.T16702.01.OSS | Brandywine Apartments | | 1.0 | | $ 21.28 | John Traynor | Sealed folded plats, mail etc. |
| Wednesday, May 04, 2005 | 1133.REN.T16987.01.OSS | UofD Middletown Farms | | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Wednesday, May 04, 2005 | 1133.REN.T16740.01.OSS | Highlands of Middletown | | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Wednesday, May 04, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 2.5 | 1.0 | $ 82.99 | John Traynor | Work logs, transmittals etc. |
| Thursday, May 05, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 4.5 | | $ 95.76 | John Traynor | Work logs, QA projects, etc. |
| Thursday, May 05, 2005 | 1133.REN.T14463.01.OSS | Fairwinds | | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Thursday, May 05, 2005 | 1133.RAR.T16927.10.OSS | Smyrna Elementary | | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Thursday, May 05, 2005 | 1133.REN.T16984.01.OSS | Willow Groves Mills | | 0.5 | | $ 10.64 | John Traynor | Spot Aerial Photo |
| Thursday, May 05, 2005 | 1133.REN.T16986.01.OSS | YMCA-Wester Branch | | 1.0 | | $ 21.28 | John Traynor | Spot Aerial Photo |
| Thursday, May 05, 2005 | 1133.REN.T16987.01.OSS | UofD Middletown Farms | | 1.0 | | $ 21.28 | John Traynor | Spot Aerial Photo |
| Friday, May 06, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 2.0 | | $ 42.56 | John Traynor | Survey work logs, filing, QA, |
| Friday, May 06, 2005 | 1133.REV.R0151.10.OSS | Army Creek | | 6.0 | | $ 127.68 | Carl Hsu | Documents filed |
| **Totals** | | | | **40.0** | **1.5** | **$ 895.89** | | |

### Breakdown for Tetra Tech Pasadena A/P:

| | Amount | Total Hours: | (# of Instances) |
|---|---|---|---|
| 1133.REN.R1321.00.OSS | $ 21.28 | 1 | 1 |
| 1133.REN.T14560.01.OSS | $ 63.84 | 0.5 | 1 |
| 1133.REN.T15740.01.OSS | $ 63.84 | 3 | 3 |
| 1133.REN.T15984.01.OSS | $ 63.84 | 3 | 3 |
| 6810.REN.0.OS.TEMP | $ 449.01 | 20.5 | 5 |
| 1133.REN.T15986.01.OSS | $ 42.56 | 2 | 2 |
| 1133.REN.T14369.01.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REN.R1342.00.OSS | $ 21.28 | 1 | 1 |
| 1133.REN.T15702.01.OSS | $ 21.28 | 1 | 1 |
| 1133.REN.T15987.01.OSS | $ 31.92 | 1.5 | 2 |
| 1133.REN.T14463.01.OSS | $ 21.28 | 1 | 1 |
| 1133.RAR.T15927.10.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REV.R0151.10.OSS | $ 127.68 | 6 | 1 |
| **Totals** | **$ 895.89** | **41.5** | **23** |

H:\Administration\Survey\Accounting\Synterfac\Jourdean\Lorah_05-06-05.xls

# SYNERFAC
TECHNICAL STAFFING

a division of SYNERFAC, Inc.

2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

**CLIENT NAME** TETRA TECH

**WEEK ENDING** 5/20/05

| | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|
| ST | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | | | 40.0 |
| OT | | 0.5 | | | 0.5 | | | 1.0 |
| ST | | | | | | | | |
| OT | | | | | | | | |
| ST | | | | | | | | |
| OT | | | | | | | | |
| ST | | | | | | | | |
| OT | | | | | | | | |
| TOTAL | 8.0 | 8.0 / 0.5 | 8.0 | 8.0 | 8.0 / 0.5 | | | 40.0 / 1.0 |

**EMPLOYEE NO.**

**EMPLOYEE NAME** TETRA TECH

**PROJECT NO. & NAME**

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

**L TO SYNERFAC**
**Y - CLIENT**
**EMPLOYEE**

CLIENT APPROVAL

STRAIGHT TIME:

OVERTIME:

---

**EMPLOYEE SIGNATURE**

Employee Signature: I certify I worked the hours noted above during the period noted above, and the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

**PROJECT NO. & NAME** INTEGRAL LICEAN

**EMPLOYEE NAME** TETRA TECH

| | | MON | TUE | WED | THUR | FRI | SAT | SUN | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | ST | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | | | 40.0 |
| | OT | | 0.5 | | | 0.5 | | | 1.0 |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| TOTAL | | | | | | | | | |

**CLIENT NAME** TETRA TECH

**WEEK ENDING** 5/20/05

By signing below, authorized representative of the client agrees all hours on this timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL

STRAIGHT TIME:

OVERTIME:

TT0185

SYNERFAC
a division of SYNERFAC, Inc.

2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

| PROJECT NO. & NAME | | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Tetra Tech | ST | | 8.5 | 8.5 | 8.0 | 9.0 | 8.5 | | | 40.5 |
| | OT | | | | | | | | | 2.5 |
| | ST | | | | | | | | | |
| | OT | | | | | | | | | |
| | ST | | | | | | | | | |
| | OT | | | | | | | | | |
| | ST | | | | | | | | | |
| | OT | | | | | | | | | |
| | TOTAL | | 8.5 | 8.5 | 8.0 | 9.0 | 8.5 | | | 40 / 2.5 |

EMPLOYEE SIGNATURE

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

**WHITE - MAIL TO SYNERFAC**
**CANARY - CLIENT**
**PINK - EMPLOYEE**

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL

STRAIGHT TIME:

OVERTIME:

EMPLOYEE SIGNATURE

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

**WHITE - MAIL TO SYNERFAC**
**CANARY - CLIENT**
**PINK - EMPLOYEE**

paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

STRAIGHT TIME:

OVERTIME:

TT0186



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

| | |
|---|---|
| Invoice No.: | **112308** |
| Invoice Date: | 5/2/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Ref#: 4,247

RECEIVED
MAY 9 2005
TETRA TECH, INC
DE LOCATION

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 40.000 | D0889C | Lorah, Jourdean S | 5/1/2005 | Reg | $ 21.28 | $ 851.20 |
| 0.500 | D0889C | Lorah, Jourdean S | 5/1/2005 | OT | $ 29.79 | $ 14.90 |
| 40.000 | D0949C | | 5/1/2005 | Reg | $ 30.85 | $ 1,234.00 |

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER SURVEYING

6810. REN.0.06.TEMP                340.48
1133.REN.T15531.01.055            148.96
1133.REN.T15574.01.055             10.64
1133.REN.T15987.01.055             10.64
1133.REN.T13885.01.055             10.64
1133.REN.R0807.00.055              21.28
1133.REN.T15560.10.055             31.92
1133.REN.T15690.01.055             10.64
1133.REN.R0807.00.055              21.28
1133.REN.T15690.01.055             10.63

5/13/05

SEE ATTACHED BREAKDOWN P2

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $2,100.10 |
| Total Due: | $2,100.10 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 80.00 | $2,085.20 |
| Overtime | 0.50 | $14.90 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | CC |
| Special: | |
| Branch: | NC |

TT0187

# Jourdean S. Lorah
Week Ending (Friday)

## Synerfac — Time and Material Invoicing Worksheet

4/29/2005 ← Start here and type in the Friday end date.

Straight Rate: $21.28
Overtime Rate: $28.79

Tetra Tech Week Ending: 4/29/2005
Synerfac Week Ending: 5/1/2005

## LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name Description | Hours | Overtime | Amount | Project Manager | Comments |
|---|---|---|---|---|---|---|---|
| Monday, April 25, 2005 | 6810.REN.0.OS.TEMP | Admin. | 3.5 | | $ 74.48 | John Traynor | Work logs, invoices etc. |
| Monday, April 25, 2005 | 1133.REN.T16531.01.OSS | Bohemia Bay Yacht Club | 2.5 | | $ 53.20 | Shiva Kumar | County courthouse-research. |
| Monday, April 25, 2005 | 1133.REN.T16574.01.OSS | Dover Air Force Base | 0.5 | | $ 10.64 | John Traynor | Prepared plats |
| Monday, April 25, 2005 | 1133.REN.T16987.01.OSS | U of D Middletown Farms | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Monday, April 25, 2005 | 1133.REN.T13885.01.OSS | Easement addition | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Monday, April 25, 2005 | 1133.REN.R0807.00.OSS | Cherry Island | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Monday, April 25, 2005 | 1133.REN.T15560.10.OSS | Cherry Island | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Monday, April 25, 2005 | 1133.REN.T16560.01.OSS | De Children's Feasibility | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Monday, April 25, 2005 | 1133.REN.T16880.01.OSS | Wye Parish | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Tuesday, April 26, 2005 | 6810.REN.0.OS.TEMP | Admin. | 4.0 | | $ 85.12 | John Traynor | County courthouse research. |
| Tuesday, April 26, 2005 | 1133.REN.T16531.01.OSS | Bohemia Bay Yacht Club | 3.5 | | $ 74.48 | Shiva Kumar | County courthouse research. |
| Tuesday, April 26, 2005 | 1133.REN.R0807.00.OSS | Cherry Island | 0.5 | | $ 10.64 | John Traynor | Document Control/Photos |
| Wednesday, April 27, 2005 | 6810.REN.0.OS.TEMP | Admin. | 3.5 | | $ 74.48 | John Traynor | Work logs, invoices etc.. |
| Wednesday, April 27, 2005 | 1133.REN.T16531.01.OSS | Bohemia Bay Yacht Club | 1.0 | | $ 21.28 | Shiva Kumar | Document Control |
| Wednesday, April 27, 2005 | 1133.RAR.T16927.10.OSS | Sunnyside Elementary | 1.0 | | $ 21.28 | W.Glendaniel | Document Control |
| Wednesday, April 27, 2005 | 1133.REN.T16740.01.OSS | Highlands of Middletown | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Wednesday, April 27, 2005 | 1133.REN.T16295.01.OSS | St. Andrews/Alta | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Wednesday, April 27, 2005 | 1133.REN.T15560.10.OSS | DE Children's Feasibility | 1.0 | | $ 21.28 | M.Page | Document Control |
| Thursday, April 28, 2005 | 6810.REN.0.OS.TEMP | Admin. | 3.5 | | $ 74.48 | John Traynor | Work logs, drafting, QA etc. |
| Thursday, April 28, 2005 | 1133.REN.T16984.01.OSS | Highlands of Middletown | 1.0 | | $ 21.28 | John Traynor | New Castle County research. |
| Thursday, April 28, 2005 | 1133.REN.R1347.00.OSS | Innilcone | 1.5 | | $ 31.92 | Lonnie Webb | Document Control |
| Thursday, April 28, 2005 | 1133.REN.T16295.01.OSS | St. Andrews | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Thursday, April 28, 2005 | 1133.REN.T14660.01 | Belvedere | 1.0 | | $ 21.28 | John Traynor | Document Control |
| Friday, April 29, 2005 | 1133.REN.T14369.01.OSS | U of D Pencader | | | $ 14.90 | John Traynor | Document Control |
| Friday, April 29, 2005 | 1133.REN.T16740.01.OSS | Highlands of Middletown | 1.5 | | $ 31.92 | John Traynor | Document Control |
| Friday, April 29, 2005 | 6810.REN.0.OS.TEMP | Admin. | 5.0 | 0.5 | $ 106.40 | John Traynor | Document Control |
| **Totals** | | | **40.0** | **0.5** | **$ 866.10** | | |

**Total Charges this week** | **$ 866.10**

## Breakdown for Tetra Tech Pasadena A/P:

| Job Code | Amount | Total Hours | (# of instances) |
|---|---|---|---|
| 6810.REN.0.OS.TEMP | $ 340.48 | 16 | 4 |
| 1133.REN.T16531.01.OSS | $ 148.96 | 7 | 3 |
| 1133.REN.T16574.01.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REN.T16987.01.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REN.T13885.01.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REN.R0807.00.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REN.T15560.10.OSS | $ 31.92 | 1.5 | 2 |
| 1133.REN.T16560.01.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REN.R0807.00.OSS | $ 21.28 | 1 | 2 |
| 1133.REN.T16987.01.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REN.T15987.01.OSS | $ 10.64 | 0.5 | 1 |
| 1133.REN.T15740.01.OSS | $ 53.20 | 2.5 | 2 |
| 1133.RAR.T16927.10.OSS | $ 21.28 | 1 | 1 |
| 1133.REN.T16295.01.OSS | $ 42.56 | 2 | 2 |
| 1133.REN.T16984.01.OSS | $ 21.28 | 1 | 1 |
| 1133.REN.R1347.00.OSS | $ 31.92 | 1.5 | 1 |
| 1133.REN.T16295.01.OSS | $ 42.56 | 2 | 2 |
| 1133.REN.T14369.01.OSS | $ 14.90 | 0.5 | 1 |
| **Total** | **$ 866.10** | **40.5** | **30** |

TT0188

# SYNERFAC
TECHNICAL STAFFING

a division of SYNERFAC, Inc.

2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

| EMPLOYEE NO. | | | | | | CLIENT NAME | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EMPLOYEE NAME | | | | | | Tetra Tech | | | | | | | | |
| LOURDEAN LORAH | | | | | | WEEK ENDING April 29, 09 | | | | | | | | |
| PROJECT NO. & NAME | | | ST | 9 | 8 | 8.5 | 8 | 8 | | | 40.5 |
| Tetra Tech | | | OT | | | | | | | | |
| | | | ST | | | | | | | | |
| | | | OT | | | | | | | | |
| | | | ST | | | | | | | | |
| | | | OT | | | | | | | | |
| | | TOTAL | | 9 | 8 | 8.5 | 8 | 8 | | | 40.5 |

EMPLOYEE SIGNATURE: Employee Signature: I certify I worked the hours noted above during the indicated week and the the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

By signing below, authorized representative of the client agrees at hours on this timesheet will be paid to at the previously agreed upon billing rate. If work was performed satisfactorily, and if the Terra tech line invoice able of this timesheet. ( ) Check here if you would like a sales representative to contact you regarding open position.

STRAIGHT TIME: _____  OVERTIME: _____

TT0189

# SYN-RFAC
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0296
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

| | |
|---|---|
| Invoice No.: | **111975** |
| Invoice Date: | 4/25/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Ref#:  4,247

Bill To:

Tetra Tech, Inc.
Attn:  John Traynor
56 West Main Street
Christiana, DE  19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|-------|-----------|--------------------|-----------|------|-----------|--------|
| 40.000 | D0889C | Lorah, Jourdean S | 4/24/2005 | Reg | $ 21.28 | $ 851.20 |
| 40.000 | D0949C | | 4/24/2005 | Reg | $ 30.85 | $ 1,234.00 |
| 3.000 | D09496 | | 4/24/2005 | OT | $ 43.19 | $ 129.57 |

*(handwritten notes)*

1133.REN.T15574.01.055-123.40
6810.REN.0.05.TEMP-* 185.10
1133.RAR.T15847.10.055-1,055.07
6810.REN.0.05.TEMP. 266.00
1133.REN.R0963.0.055-42.56
1133.REN.T13885.01.055-42.56
1133.REN.T15531.01.055-42.56
1133.REN.T15986.01.055.53.20
1133.REN.T15740.01.055-74.48
1133.RAR.T15927.10.055.95.76

1133.RAR.T15847.10.055 - 42.56
1133.REN.T15987.01.055 - 95.76
1133.REN.T15702.01.055 - 63.84
1133.REN.T15860.01.055 - 31.92

TOTAL * 2,214.77

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $2,214.77 |
| Total Due: | $2,214.77 |

## Current Billing Analysis

| | | |
|-----------|-------|-----------|
| Regular | 80.00 | $2,085.20 |
| Overtime | 3.00 | $129.57 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

| Synerfac Use Only: | | |
|---|---|---|
| | Timesheet: | CC |
| | Special: | |
| | Branch: | NC |

TT0190

# Jourdean S. Lorah

**Synerfac    Time and Material Invoicing Worksheet**

Week Ending (Friday)

4/22/2005 ← Start here and type in the Friday end date

Tetra Tech Week Ending: 4/22/2005    Straight Rate: $21.28
Synerfac Week Ending: 4/24/2005      Overtime Rate: $29.79

## LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name Description (Job Code) | Hours | Overtime | Amount | Project Manage | Comments |
|---|---|---|---|---|---|---|---|
| Monday, April 18, 2005 | 6810.REN.0.OS.TEMP | CAD Training | 1.0 | | $ 21.28 | John Traynor | CAD training. |
| Monday, April 18, 2005 | 6810.REN.0.OS.TEMP | Admin. | 1.0 | | $ 21.28 | John Traynor | Work logs, invoices, and filing. |
| Monday, April 18, 2005 | 1133.REN.R0963.0.OSS | St. Andrews | 2.0 | | $ 42.56 | John Traynor | Document Control |
| Monday, April 18, 2005 | 1133.REN.T13865.01.OSS | Easement Addition | 2.0 | | $ 42.56 | John Traynor | Document Control |
| Monday, April 18, 2005 | 1133.REN.T15531.01.OSS | Bohemia B.Yacht Club | 2.0 | | $ 42.56 | Shiva Kumar | Document Control |
| Tuesday, April 19, 2005 | 6810.REN.0.OS.TEMP | Admin. | 4.0 | | $ 85.12 | John Traynor | Work logs, invoices, letter etc. |
| Tuesday, April 19, 2005 | 1133.REN.T15986.01.OSS | YMCA | 2.5 | | $ 53.20 | John Traynor | Document Control |
| Tuesday, April 19, 2005 | 1133.REN.T15740.01.OSS | Highlands at Middletown | 0.5 | | $ 10.64 | John Traynor | Document Control |
| Tuesday, April 19, 2005 | 6810.REN.0.OS.TEMP | Admin. | 1.0 | | $ 21.28 | John Traynor | CAD training |
| Wednesday, April 20, 2005 | 6810.REN.0.OS.TEMP | Admin. | 3.0 | | $ 63.84 | John Traynor | Work logs, letter, xeroxing etc. |
| Wednesday, April 20, 2005 | 6810.REN.0.OS.TEMP | Training | 1.0 | | $ 21.28 | John Traynor | Project name,formating cells. |
| Wednesday, April 20, 2005 | 1133.RAR.T15927.10.OSS | Symma Elementary | 2.0 | | $ 42.56 | W. Clendaniel | Document Control |
| Wednesday, April 20, 2005 | 1133.REN.T15847.10.OSS | Symma Middle School | 2.0 | | $ 42.56 | Jerry Rozanski | Document Control. |
| Thursday, April 21, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elementary | 2.5 | | $ 53.20 | W. Clendaniel | Document Control |
| Thursday, April 21, 2005 | 1133.REN.T15987.01.OSS | UofD Middleton Farms | 2.5 | | $ 53.20 | John Traynor | Document Control |
| Thursday, April 21, 2005 | 1133.REN.T15702.01.OSS | Brandywine Towers | 1.5 | | $ 31.92 | John Traynor | Document Control |
| Thursday, April 21, 2005 | 1133.REN.T15660.01.OSS | Barksdale Rd. Bramhall | 1.5 | | $ 31.92 | Terry Haskins | Document Control |
| Friday, April 22, 2005 | 1133.REN.T15740.01.OSS | Highlands at Middletown | 3.0 | | $ 63.84 | John Traynor | Document Control |
| Friday, April 22, 2005 | 1133.REN.T15987.01.OSS | U of D Middletown Farms | 2.0 | | $ 42.56 | John Traynor | Document Control |
| Friday, April 22, 2005 | 1133.REN.T15702.01.OSS | Brandywine Towers | 1.5 | | $ 31.92 | John Traynor | Document Control |
| Friday, April 22, 2005 | 6810.REN.0.OS.TEMP | Admin. | 1.5 | | $ 31.92 | John Traynor | Work logs,xeroxing,Wawa. |
| **Totals** | | | **40.0** | **0.0** | **$ 851.20** | | |

**Total Charges this week**    **$ 851.20**

| Breakdown for Tetra Tech Pasadena A/P: | | Total Hours: | (# of Instances) |
|---|---|---|---|
| 6810.REN.0.OS.TEMP | $ 266.00 | 12.5 | 7 |
| 1133.REN.R0963.0.OSS | $ 42.56 | 2 | 1 |
| 1133.REN.T13865.01.OSS | $ 42.56 | 2 | 1 |
| 1133.REN.T15531.01.OSS | $ 42.56 | 2 | 1 |
| 1133.REN.T15986.01.OSS | $ 53.20 | 2.5 | 1 |
| 1133.RAR.T15927.10.OSS | $ 74.48 | 3.5 | 2 |
| 1133.REN.T15740.01.OSS | $ 95.76 | 4.5 | 2 |
| 1133.RAR.T15847.10.OSS | $ 42.56 | 2 | 1 |
| 1133.REN.T15987.01.OSS | $ 95.76 | 4.5 | 2 |
| 1133.REN.T15702.01.OSS | $ 63.84 | 3 | 2 |

K:\Administration\Survey\Accounting\Synerfac\Breakcost\Lorah_04-22-05.xls





TT0192



t Report(MemoryTX) ( May. 9. 2005 7:55AM ) * * *

|       | Pg(s) | Result | Page Not Sent |
|-------|-------|--------|---------------|
|       | P. 1  | OK     |               |

E.2) Busy
E.4) No facsimile connection

TT0193



**SYNERFAC**
TECHNICAL STAFFING

RECEIVED
APR 2 2 2005
TETRA TECH, INC.
DE LOCATION

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

| | |
|---|---|
| Invoice No.: | **111660** |
| Invoice Date: | 4/18/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Reff#:  4,247

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

# REDACTED

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 40.000 | D0889C | Lorah, Jourdean S | 4/17/2005 | Reg | $ 21.28 | $ 851.20 |
| 8.000 | D0889C | | 4/17/2005 | Reg | $ 30.85 | $ 246.80 |

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER SURVEYING
4/27/05

| | |
|---|---|
| 1133. REN. T14560.01.055 | 92.55 |
| 6810. REN. 0.05. TEMP. | 154.25 |
| 6810. REN. 0.05. TEMP. | 223.44 |
| 1138. REN. T15574.01.055 | 117.04 |
| 1133. REN. R0529.00.055 | 21.28 |
| 1133. RAR. T15927.10.055 | 148.96 |
| 1133. REN. T15295.01.055 | 138.32 |
| 1133. REN. T13885.01.055 | 127.68 |
| 1133. REN. T15986.01.055 | 21.28 |
| 1133. REN. T15984.01.055 | 31.92 |
| 1133. REN. T15987.01.055 | 21.28 |
| | 1098.00  TOTAL |

**Terms of Invoice**
Net Due 15 Days

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $1,098.00 |
| Total Due: | $1,098.00 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 48.00 | $1,098.00 |
| Overtime | 0.00 | $0.00 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

| Synerfac Use Only: | | |
|---|---|---|
| | Timesheet: | CC |
| | Special: | |
| | Branch: | NC |

TT0194

# Jourdean S. Lorah — Synerfac — Time and Material Invoicing Worksheet

Week Ending (Friday): 4/15/2005

| | |
|---|---|
| Tetra Tech Week Ending: 4/15/2005 | Straight Rate: $21.28 |
| Synerfac Week Ending: 4/17/2005 | Overtime Rate: $29.79 |

## LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name | Description | Hours | Overtime Hours | Overtime Amount | Project Manager | Comments |
|---|---|---|---|---|---|---|---|---|
| Monday, April 11, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 1.5 | | $31.92 | John Traynor | Document control, Invoices, plott |
| Monday, April 11, 2005 | 1133.REN.R0529.00.OSS | YMCA | | 1.0 | | $21.28 | John Traynor | Archives Filing |
| Monday, April 11, 2005 | 1133.REN.T15574.01.OSS | DAFB | | 5.5 | | $117.04 | John Traynor | Calculated the inverts for the sa |
| Tuesday, April 12, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 1.5 | | $31.92 | John Traynor | Work Logs, Synerfac worksheet |
| Tuesday, April 12, 2005 | 1133.REN.T13885.01.OSS | Allied Chemical | | 2.0 | | $42.56 | John Traynor | Plan Review Checklist |
| Tuesday, April 12, 2005 | 1133.REN.T15295.01.OSS | St. Andrews | | 2.0 | | $42.56 | John Traynor | Plan Review Checklist |
| Tuesday, April 12, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elem. | | 2.5 | | $53.20 | G. Rozanski | Plan Review Checklist |
| Wednesday, April 13, 2005 | 1133.REN.T13885.01.OSS | Allied Chemical | | 1.5 | | $31.92 | John Traynor | Survey Work Logs, Synerfac wor |
| Wednesday, April 13, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 1.5 | | $31.92 | John Traynor | Delivery to Home Depot. |
| Wednesday, April 13, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elem. | | 2.0 | | $42.56 | G. Rozanski | Plan Review Check List |
| Wednesday, April 13, 2005 | 1133.REN.T15295.01.OSS | St. Andrews | | 2.0 | | $42.56 | John Traynor | Plan Review Check List |
| Wednesday, April 13, 2005 | 1133.REN.T13885.01.OSS | Allied Chemical | | 1.0 | | $21.28 | John Traynor | Q.A.–Discussed schedule B with |
| Thursday, April 14, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 1.5 | | $31.92 | John Traynor | Work logs, Synerfac worksheet, l |
| Thursday, April 14, 2005 | 1133.RAR.T15927.10.OSS | Smyrna Elem. | | 2.5 | | $53.20 | G. Rozanski | Plan review check list. |
| Thursday, April 14, 2005 | 1133.REN.T15295.01.OSS | St. Andrews | | 2.5 | | $53.20 | John Traynor | Xeroxing, filing and proposals. |
| Thursday, April 14, 2005 | 1133.REN.T13885.01.OSS | Allied Chemical | | 1.5 | | $31.92 | John Traynor | Xeroxed documents for proposa |
| Friday, April 15, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 4.5 | | $95.76 | John Traynor | Work Logs, Synerfac worksheet |
| Friday, April 15, 2005 | 1133.REN.T15986.01.OSS | U. of D. | | 1.0 | | $21.28 | John Traynor | Document Control |
| Friday, April 15, 2005 | 1133.REN.T15987.01.OSS | YMCA-Western Branch | | 1.0 | | $21.28 | John Traynor | Document Control |
| Friday, April 15, 2005 | 1133.REN.T15984.01.OSS | Willow Grove Mills | | 1.5 | | $31.92 | John Traynor | Document Control |
| **Totals** | | | | **40.0** | **0.0** | **$851.20** | | |

| | Tetra Tech RCN | Job Name | Miles | Rate/Mile | Mile Cost |
|---|---|---|---|---|---|
| Other Direct Costs | | | 0 | | $   - |
| **Totals** | | | **40.0** | | **$   -   $851.20** |

Total Charges this week: $851.20

## Breakdown for Tetra Tech Pasadena A/P:

| Code | Amount | Total Hours: | (# of Instances) |
|---|---|---|---|
| 6810.REN.0.OS.TEMP | $223.44 | 10.5 | 5 |
| 1133.REN.T15574.01.OSS | $117.04 | 5.5 | 1 |
| 1133.REN.R0529.00.OSS | $21.28 | 1 | 1 |
| 1133.REN.T15927.10.OSS | $148.96 | 7 | 3 |
| 1133.REN.T15295.01.OSS | $138.32 | 6.5 | 3 |
| 1133.REN.T13885.01.OSS | $127.68 | 6 | 4 |
| 1133.REN.T15986.01.OSS | $21.28 | 1 | 1 |
| 1133.REN.T15984.01.OSS | $31.92 | 1.5 | 1 |
| 1133.REN.T15987.01.OSS | $21.28 | 1 | 1 |
| **Total** | **$851.20** | **40** | **20** |

N:\...\Survey\Accounting\Synerfac\Invoices\Lorah_04-15-05.xls

| EMPLOYEE NO. | EMPLOYEE NAME | | CLIENT NAME | | | | WEEK ENDING | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Lourdean Lorah | | Tetra Tech | | | | 4/18/05 | | | |

| PROJECT NO. & NAME | | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Tetra Tech | | ST | 8 | 8 | 8 | 8 | 8 | | | 40 |
| | | OT | | | | | | | | |
| | | ST | | | | | | | | |
| | | OT | | | | | | | | |
| | | ST | | | | | | | | |
| | | OT | | | | | | | | |
| | | ST | | | | | | | | |
| | | OT | | | | | | | | |
| | | TOTAL | 8 | 8 | 8 | 8 | 8 | | | 40 |

EMPLOYEE SIGNATURE  Lourdean Lorah

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

**WHITE - MAIL TO SYNERFAC**
**CANARY - CLIENT**
**PINK - EMPLOYEE**

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL

STRAIGHT TIME:

OVERTIME:

SYN-RFAC
a division of SYNERFAC, Inc.
2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

EMPLOYEE NO. | EMPLOYEE NAME: JOURDIAN LORAH | CLIENT NAME: TETRA TECH | WEEK ENDING: 4/8/05

| PROJECT NO. & NAME | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| TETRA TECH | ST | 8 | 8 | 8 | 8 | 8 | | | 40 |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| DV | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | TOTAL | 8 | 8 | 8 | 8 | 8 | | | 40 |

EMPLOYEE SIGNATURE Jourdian Lorah

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL

STRAIGHT TIME:

OVERTIME:

SYNERFAC
TECHNICAL STAFFING
a division of SYNERFAC, Inc.
2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

TT0197

# SYN-FAC
**TECHNICAL STAFFING**

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

RECEIVED
APR 1 5 2005

TETRA TECH, INC.
DE LOCATION

| | | |
|---|---|---|
| Invoice Date: | 4/11/2005 | |
| Page | 1 | |
| Client No.: | TET200 | |
| Our Job #: | 2,732 | Ref#: 4,247 |
| PO #: | | |

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 24.000 | D0889C | Lorah, Jourdean S | 4/10/2005 | Reg | $ 21.28 | $ 510.72 |

MANAGER SURVEYING

*Approved for payment*

6810 · REN · 0 · 05 · TEMP        202.16
1133 · REN · T15295 · 01 · 055      212.80
1133 · REN · R0963 · 00 · 055       42.56
1133 · REN · T15574 · 01 · 055      53.20
                                    ─────────
                                    510.72

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $510.72 |
| Total Due: | $510.72 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 24.00 | $510.72 |
| Overtime | 0.00 | $0.00 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

| Synerfac Use Only: | | |
|---|---|---|
| | Timesheet: | CC |
| | Special: | |
| | Branch: | NC |

TT0198

Apr. 11. 2005 8:58AM

| | | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| EMPLOYEE NAME: *LOURDEAN LORAH* | CLIENT NAME: *TETRA TECH* | | | | | | | | | *APRIL 10, 2005* |
| PROJECT NO. & NAME | | | | | | | | | | 24 |
| *TETRA TECH* | ST | 7.5 | 8 | — | — | 8.5 | | | 24 |
| | OT | | | | | | | | |
| *TETRA TECH* | ST | | | | | | | | |
| | OT | | | | | | | | |
| *TETRA TECH* | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | TOTAL | 7.5 | 8 | | | 8.5 | | | 24 |

EMPLOYEE SIGNATURE  *Lourdean Lorah*

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and is the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position.

CLIENT APPROVAL

STRAIGHT TIME:

OVERTIME:

SYNERFAC
2 Read's Way i Suite 209
New Castle Corporate Commo
New Castle i DE 19720

a division of SYNERFAC, Inc.

TT0199

**Week Ending (Friday)**

4/8/2005

Tetra Tech Week Ending: 4/8/2005    Straight Rate: $21.28
Synerfac Week Ending: 4/10/2005    Overtime Rate: $29.79

**LABOR**

| Date | Tetra Tech RCN (Job Code) | Job Name Description | Hours | Overtime | Amount | Project Manager | Comments |
|---|---|---|---|---|---|---|---|
| Monday, April 04, 2005 | 6810.REN.0.OS.TEMP | Admin. | 3.5 | | $ 74.48 | John Traynor | Mail merges, survey work logs. |
| Monday, April 04, 2005 | 6810.REN.0.OS.TEMP | Admin. | 0.5 | | $ 10.64 | John Traynor | Archives filing. |
| Monday, April 04, 2005 | 1133.REN.T15295.01.OSS | St. Andrews ALTA | 3.5 | | $ 74.48 | John Traynor | Redline check list. |
| Tuesday, April 05, 2005 | 1133.REN.T15295.01.OSS | St. Andrews ALTA | 4.5 | | $ 95.76 | John Traynor | Cleaned up drawing/revisions. |
| Tuesday, April 05, 2005 | 6810.REN.0.OS.TEMP | Admin. | 3.5 | | $ 74.48 | John Traynor | Survey work logs.scanning and plotting. |
| Wednesday, April 06, 2005 | | Called out sick | | | $ - | | |
| Thursday, April 07, 2005 | | Called out sick | | | $ - | | |
| Friday, April 08, 2005 | 1133.REN.R0963.00.OSS | St. Andrews | 2.0 | | $ 42.56 | John Traynor | Document Control |
| Friday, April 08, 2005 | 1133.REN.T15295.01.OSS | St. Andrews ALTA | 2.0 | | $ 42.56 | John Traynor | Document Control |
| Friday, April 08, 2005 | 6810.REN.0.OS.TEMP | Admin | 2.0 | | $ 42.56 | John Traynor | Document Control |
| Friday, April 08, 2005 | 1133.REN.T15574.01.OSS | DAFB Towers | 2.5 | | $ 53.20 | John Traynor | Document Control |
| **Totals** | | | 24.0 | 0.0 | $ 510.72 | | |

Total Charges this week    $   **510.72**

**Breakdown for Tetra Tech Pasadena A/P:**

| | Total Hours: | (# of Instances) |
|---|---|---|
| 6810.REN.0.OS.TEMP $ 202.16 | 9.5 | 4 |
| 1133.REN.T15295.01.OSS $ 212.80 | 10 | 3 |
| 1133.REN.R0963.00.OSS $ 42.56 | 2 | 1 |
| 1133.REN.T15574.01.OSS $ 53.20 | 2.5 | 1 |
| **Total $ 510.72** | 24 | 9 |

N:\Administration\Survey\Accounting\Synerfac\Grabowski\Leah_04-08-05.xls

**TT0200**

| PROJECT NO. & NAME | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| TETRA TECH | ST | 8.75 | 8 | | | 3.5 | | | |
| | OT | 2.0 | | | | | | | |
| Tetra Tech | ST | | | | | | | | |
| | OT | | | | | | | | |
| Tetra Tech | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | TOTAL | 7.5 | 8 | | | 8.5 | | | 24 |

EMPLOYEE NO.   EMPLOYEE NAME   CLIENT NAME   WEEK ENDING

EMPLOYEE SIGNATURE

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

**WHITE - MAIL TO SYNERFAC**
**CANARY - CLIENT**
**PINK - EMPLOYEE**

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL
STRAIGHT TIME:
OVERTIME:

**SYNERFAC** TECHNICAL STAFFING
a division of SYNERFAC, Inc.
2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

**TT0201**



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

RECEIVED
APR 07 2005
TETRA TECH, INC.
DE LOCATION

| | | |
|---|---|---|
| Invoice No.: | **111007** | |
| Invoice Date: | 4/4/2005 | |
| Page | 1 | |
| Client No.: | TET200 | |
| Our Job #: | 2,732 | Ref#: 4,247 |
| PO #: | | |

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 40.000 | D0889C | Lorah, Jourdean S | 4/3/2005 | Reg | $ 21.28 | $ 851.20 |
| 1.000 | D0889C | Lorah, Jourdean S | 4/3/2005 | OT | $ 29.79 | $ 29.79 |

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER SURVEYING

*[signature]* 4/10/05

6810. REN. 0. 05. TEMP.          266.00
1133. REN. T15295.01.055        276.64
1133. REN. T14463.01.055        138.32
1133. REN. T15574.01.055        200.03
                                880.99

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $880.99 |
| Total Due: | $880.99 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 40.00 | $851.20 |
| Overtime | 1.00 | $29.79 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | **CC** |
| Special: | |
| Branch: | **NC** |

TT0202

# Jourdean S. Lorah

## Synerfac    Time and Material Invoicing Worksheet

### Week Ending (Friday)    4/1/2005

Tetra Tech Week Ending: 4/1/2005  
Synerfac Week Ending: 4/3/2005

Straight Rate: $21.28  
Overtime Rate: $29.79

## LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name | Description | Hours | Overtime | Amount | Project Manage | Comments |
|---|---|---|---|---|---|---|---|---|
| Monday, March 28, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 1.5 | | $ 31.92 | John Traynor | Archives-Filing, Survey Logs |
| Monday, March 28, 2005 | 1133.REN.T15295.01.OSS | St. Andrews | | 6.5 | | $ 138.32 | John Traynor | Changes-Lots 24-29, 30-36, 31-: |
| Tuesday, March 29, 2005 | 1133.REN.T15295.01.OSS | St. Andrews | | 6.5 | | $ 138.32 | John Traynor | Cleaned up drawing. |
| Tuesday, March 29, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 1.5 | | $ 31.92 | John Traynor | Daily logs, typed and Xeroxing |
| Wednesday, March 30, 2005 | 1133.REN T14463.01.OSS | Falwinds | | 6.5 | | $ 138.32 | John Traynor | Checked Resubdivision plan. |
| Wednesday, March 30, 2005 | 6810.REN.0.OS.TEMP | Admin | | 1.5 | | $ 31.92 | John Traynor | Work logs and edited letter. |
| | | | | | | $  - | | |
| Thursday, March 31, 2005 | 1133.REN.T15574.01.OSS | DAFB Towers | | 8.0 | | $ 170.24 | John Traynor | Cleaned up drawing. |
| Thursday, March 31, 2005 | 1133.REN.T15574.01.OSS | DAFB Towers | | | 1.0 | $ 29.79 | John Traynor | Redline -plat (prorated per JJT) |
| | | | | | | $  - | | |
| Friday, April 01, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 6.0 | | $ 127.68 | John Traynor | Survey work logs and training. |
| Friday, April 01, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 1.0 | | $ 21.28 | John Traynor | New Castle County-Delivery |
| Friday, April 01, 2005 | 6810.REN.0.OS.TEMP | Admin. | | 1.0 | | $ 21.28 | John Traynor | Training-Outlook |

**Totals**     40.0    1.0   $   1.0 $ 880.99

**Total Charges this week**     $ 880.99

### Breakdown for Tetra Tech Pasadena A/P:

| | Total Hours: | (# of Instances) |
|---|---|---|
| 6810.REN.0.OS.TEMP | $ 266.00 | 12.5 | 6 |
| 1133.REN.T15295.01.OSS | $ 276.64 | 13 | 2 |
| 1133.REN.T14463.01.OSS | $ 138.32 | 6.5 | 1 |
| 1133.REN.T15574.01.OSS | $ 200.03 | 9 | 2 |
| Total | $ 880.99 | 41 | 11 |

N:\Administration\Survey\Accounting\Synerfac\Grabowski\Lorah_04-01-05.xls

TT0203

SYNERFAC
TECHNICAL STAFFING
a division of SYNERFAC, Inc.

2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720 -

EMPLOYEE NAME: LOURDEAN LORA

CLIENT NAME: Tetra Tech

WEEK ENDING

| PROJECT NO. & NAME | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Tetra Tech | ST | 8 | 8 | 8 | 8 | 8 | | | |
| | OT | | | | 1 | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | TOTAL | 8 | 8 | 8 | 8 | 8 | | | |

EMPLOYEE SIGNATURE

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL

STRAIGHT TIME:

OVERTIME:

TT0204

Case 1:05-cv-00538-SLR Document 88-7 Filed 04/16/2008 Page 5 of 50



**SYNERFAC**
TECHNICAL STAFFING

P.O. Box 8538-235
Philadelphia, PA 19171-0235
(302) 324-1200
(302) 324-9285 Fax
accounting@synerfac.com

RECEIVED
APR 05 2005
TETRA TECH INC
DE DIVISION

| | |
|---|---|
| Invoice No.: | **110718** |
| Invoice Date: | 3/28/2005 |
| Page | 1 |
| Client No.: | TET200 |
| Our Job #: | 2,732 |
| PO #: | |

Ref#: 4,247

Bill To:

Tetra Tech, Inc.
Attn: John Traynor
56 West Main Street
Christiana, DE 19702

| Hours | Work Code | Name or Description | Work Date | Type | Bill Rate | Amount |
|---|---|---|---|---|---|---|
| 32.000 | D0889C | Lorah, Jourdean S | 3/27/2005 | Reg | $ 21.28 | $ 680.96 |

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER SURVEYING

4/10/05

JOHN J. TRAYNOR III, P.E., P.L.S.
MANAGER SURVEYING

6810 . REN . 0 . 05 . TEMP.        402.32
1133 . REN . R3212 . 00 . 055       31.92
1133 . REN . T15702.01 . 055        42.56
1133 . REN . T15295.00 . 055       202.16
                                    680.96

**Terms of Invoice**
**Net Due 15 Days**

| | |
|---|---|
| Total Taxable: | $0.00 |
| Tax: | $0.00 |
| Total Non-Taxable: | $680.96 |
| Total Due: | $680.96 |

**Current Billing Analysis**

| | | |
|---|---|---|
| Regular | 32.00 | $680.96 |
| Overtime | 0.00 | $0.00 |
| Double Time | 0.00 | $0.00 |
| Other | | $0.00 |
| Sales Tax | | $0.00 |

**Synerfac Use Only:**

| | |
|---|---|
| Timesheet: | **CC** |
| Special: | |
| Branch: | **NC** |

TT0205

# Jourdean S. Lorah

## Synerfac — Time and Material Invoicing Worksheet

**Week Ending (Friday)** 3/25/2005

Tetra Tech Week Ending: 3/25/2005
Synerfac Week Ending: 3/27/2005

Straight Rate: $21.28
Overtime Rate: $29.79

### LABOR

| Date | Tetra Tech RCN (Job Code) | Job Name | Description | Hours | Overtime | Amount | Project Manager | Comments |
|---|---|---|---|---|---|---|---|---|
| Tuesday, March 22, 2005 | 6810.REN.0.OS.TEMP | | Admin. | 6.5 | | $ 138.32 | John Traynor | Set up workstation. CAD training |
| Tuesday, March 22, 2005 | 1133.REN.R3212.00.OSS | | Tyson Survey | 1.5 | | $ 31.92 | John Traynor | (322) Plotting, Delivery |
| Wednesday, March 23, 2005 | 1133.REN.T15295.01.OSS | | St. Andrews | 6.5 | | $ 138.32 | John Traynor | AutoCAD |
| Wednesday, March 23, 2005 | 1133.REN.T16702.01.OSS | | Brandywine Apartments | 0.5 | | $ 10.64 | John Traynor | Redline plat and transmittal |
| Wednesday, March 23, 2005 | 6810.REN.0.OS.TEMP | | Admin. | 1.0 | | $ 21.28 | John Traynor | Expense Reports |
| Thursday, March 24, 2005 | 6810.REN.0.OS.TEMP | | Training | 1.0 | | $ 21.28 | John Traynor | Accounts receivable. |
| Thursday, March 24, 2005 | 1133.REN.T16702.01.OSS | | Brandywine Apartments | 1.5 | | $ 31.92 | John Traynor | Redline and transmittal |
| Thursday, March 24, 2005 | 6810.REN.0.OS.TEMP | | Admin. | 5.5 | | $ 117.04 | John Traynor | Training in AutoCAD. |
| Friday, March 25, 2005 | 6810.REN.0.OS.TEMP | | Admin. | 5.0 | | $ 106.40 | John Traynor | Survey work logs and Xeroxing. |
| Friday, March 25, 2005 | 1133.REN.T15295.01.OSS | | St. Andrews | 3.0 | | $ 63.84 | John Traynor | Cleaned up drawing. |
| **Totals** | | | | **32.0** | 0.0 | $ 680.96 | | |

### Other Direct Costs

| Date | Tetra Tech RCN | Job Name | Miles | Rate/Mile | Cost | | |
|---|---|---|---|---|---|---|---|
| Tuesday, March 22, 2005 | 1133.REN.R3212.00.OSS | Tyson Madison Street | 60 | 0.405 | $ 24.30 | Traynor reimbursed me | |
| **Totals** | | | **60** | | $ 24.30 | | |

**Total Charges this week** $ 705.26

### Breakdown for Tetra Tech Pasadena A/P:

| | Total Hours: | (# of Instances) |
|---|---|---|
| 6810.REN.0.OS.TEMP | 19 $ 404.32 | 5 |
| 1133.REN.R3212.00.OSS | 1.5 $ 31.92 | 1 |
| 1133.REN.T16702.01.OSS | 2 $ 42.56 | 2 |
| 1133.REN.T15295.01.OSS | 9.5 $ 202.16 | 2 |
| **Total** | **32** $ 680.96 | **10** |

K:\Administration\Survey\Accounting\Synerfac\Grabowski\Lorah_03-26-05.xls



# CERTIFICATE TO RETURN TO WORK OR SCHOOL

Mr
Mrs
Ms_____ Jourdean Lorah

was under my care from __4/7/05__ to __4/7/05__

and will be able to return to work/school on __4/8/05__

Remarks ____ Asthma & Allergic Rhinitis

Dr ____ Richard Kim ____ Phone __995-2952__

Address __1941 Limestone__ Date __4/7/05__
__Wilmington, De 19899__

©1998 Glaxo Wellcome Inc. All rights reserved. Printed in USA. CF2677R2 August 1999

**GlaxoWellcome**

SYNERFAC
a division of SYNERFAC, Inc.

2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

EMPLOYEE NO.   EMPLOYEE NAME   CLIENT NAME   WEEK ENDING

LOURDEAN LORAH   TETRA TECH   APRIL 1, '05

| PROJECT NO. & NAME | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Tetra Tech | ST | 8 | 8 | 8 | 8 | 8 | | | |
| | OT | | | | 1 | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | TOTAL | 8 | 8 | 8 | 8 | 8 | | | |
| | | | | | 1 | | | | |

EMPLOYEE SIGNATURE _____

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL

STRAIGHT TIME: _____

OVERTIME: _____

TT0209

SYNERFAC
TECHNICAL STAFFING
a division of SYNERFAC, Inc.

2 Read's Way | Suite 209
New Castle Corporate Commons
New Castle | DE 19720

| PROJECT NO. & NAME | | MON. | TUE. | WED. | THUR. | FRI. | SAT. | SUN. | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| EMPLOYEE NO. | EMPLOYEE NAME Lourdeau S. Lorah | CLIENT NAME Tetra Tech | | | WEEK ENDING March 26, '05 | | | | |
| Tetra Tech | ST | | 8 | 8 | 8 | 8 | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | ST | | | | | | | | |
| | OT | | | | | | | | |
| | TOTAL | | 8 | 8 | 8 | 8 | | | 32 |

EMPLOYEE SIGNATURE _Lourdean Lorah_

Employee Signature: I certify I worked the hours noted above during the indicated week and the hours were verified by an authorized representative of the client.

**WHITE - MAIL TO SYNERFAC
CANARY - CLIENT
PINK - EMPLOYEE**

By signing below, authorized representative of the client agrees all hours on the timesheet will be paid for at the previously agreed upon billing rate, all work was performed satisfactorily, and to the terms on the reverse side of this timesheet.
( ) Check here if you would like a sales representative or recruiter to contact you regarding open position

CLIENT APPROVAL

STRAIGHT TIME: _____

OVERTIME: _____

TT0210

## Clark, Amy -- Tt, Inc.

| | |
|---|---|
| **From:** | Brewer, Susan -- Tt, Inc. |
| **Sent:** | Tuesday, June 14, 2005 2:04 PM |
| **To:** | Clark, Amy -- Tt, Inc. |
| **Subject:** | FW: Notes- Jourdean Lorah |

Amy:
Attached are notes received from Synerfac regarding today's the previous conversation with Jourdean Lorah. Today's conversation took place when she was communicating to Jourdean that her assignment here was over.

(She did avoid returning Melissa's call and approached John Traynor prior to reporting to Synerfac). Numbers 2,3 & 4 are news to me.  John did tell me what he and Jourdean discussed prior to her departure from Tt and Melissa's account is the same as John's!$#!(_++!)!$M???!_!+!

I am leaving now but, we can talk tomorrow if you feel it is necessary.

Susan

---

**From:** Melissa Palese [mailto:mpalese@synerfac.com]
**Sent:** Tuesday, June 14, 2005 4:51 PM
**To:** Susan.Brewer@tetratech.com
**Cc:** Adam Heagy; Greg Porter
**Subject:** Notes- Jourdean Lorah

Susan,

I have attached the notes regarding my meetings with Jourdean Lorah.  Please let me know if you need additional information.

Sincerely,

**Melissa K. Palese**
**Recruiting Manager- Wilmington Branch**
**Synerfac Technical Staffing**
2 Read's Way, Suite 209
New Castle, DE 19720
P 302.324.9400
F 302.324.9404
Toll Free 800.562.7040

Please visit our website at www.synerfac.com <http://www.synerfac.com>

*Atlanta, GA - Baltimore, MD - Bridgewater, NJ - Cherry Hill, NJ - Columbus, OH - Cincinnati, OH - Langhorne, PA*
*Orlando, FL - Philadelphia, PA - Pittsburgh, PA - Raleigh, NC - Washington, D.C. - Wilmington, DE*

6/14/2005

Meeting with Jourdean Lorah 6/6/05

Jourdean verbally gave me a list of concerns:

1. Need a better workspace currently sharing with another employee
2. Training- Never received proper training that was promised during conversations with John Traynor
3. Overheard John Traynor calling her unintelligent
4. Casey Grabowski spread a rumor about her regarding spreading a bacterial infection throughout the office
5. Erin told Jourdean she was part of a brothel
6. Jourdean feels she is discriminated against because of her age and that she does not receive equal pay claiming title 7 concerns

Meeting with Jourdean Lorah 6/14/05

I address Jourdean's concerns again and this is a list of responses from her:

1. Regarding the workspace- an Intern that has been there for 3-4 weeks has her own workspace and Jourdean feels this is unfair. A woman in marketing said to Jourdean, "I see your point, you have so many documents to deal with."
2. Regarding Casey Grabowski- Bob George said to Jourdean, "Casey is trying to fire you". I asked Jourdean who was around when this comment was made and she said, " no one, he said it in a quiet whisper".
3. Erin approached Jourdean and made a comment that she is trying to solicit parents and children involved in "math counts".
4. Jeanie of the third floor said to Doug, "they are going to terminate her". When I asked her whom was Jeanie referring to Jourdean said Jeanie did not identify "they" but "her" meant Jourdean.
5. When Jourdean approached John Traynor about a possible termination this afternoon he said, "there was nothing at all concerning performance", I have absolutely no complaints at all, it is up to management."

**Clark, Amy -- Tt, Inc.**

| | |
|---|---|
| **From:** | Brewer, Susan -- Tt, Inc. |
| **Sent:** | Thursday, June 09, 2005 5:00 PM |
| **To:** | Clark, Amy -- Tt, Inc. |
| **Subject:** | Jourdean Lorah |

Amy:
Here is a draft of notes. You can also refer to the email on this topic that I sent to you on 516. Call me tomorrow at
302.598.0906 and we can discuss.  I am going home now  it is 8 PM and I am tired.  ☺



Lorah_Jourdean_N
OTES.doc (38 K...

*Susan F. Brewer*
Manager, General Services and Administration
Tetra Tech, Inc.
(302) 738-7551
800-462-0910
(302) 454-5980  Fax
susan.brewer@tetratech.com < mailto:susan.brewer@tetratech.com>
www.tetratech.com < http://www.tetratech.com>
www.tetratech-de.com < http://www.tetratech-de.com>

1

TT0213

NOTES:

Jourdean S. Lorah – Office Assistant for the Survey Department - Synerfac – Hired March 22, 2005
$14/per hour.

On May 11, Joudean telephoned me and requested a meeting w/me. Would not tell me what the meeting was about when asking to schedule it. Meeting: She wanted to post a notice in the Survey Dept regarding individuals discussing personal issues that may harm the reputation or morale of others. She spoke to her supervisor, John Traynor on 4/29. John referred her to me.

- Thursday, May 12, Jourdean informed me that on April 25 another employee, Erin Moran, made a comment to her accusing Jourdean of being in a brothel. Also, indicated that Erin talked about this topic to other employees. This all took place during a visit to the County Planning Department. She said that another temporary employee, Mat Mercado also made a comment to Jourdean regarding being in a brothel.

  Jourdean also mentioned Title 7 and the fact that she was older than Erin and the other people she is working with.

  She spoke to her supervisor, John Traynor on 4/29. John referred her to me.

  On Thursday, May 12, I called a meeting w/Erin and Jourdean to discuss the problem openly with both parties.

  Erin denied the accusations that Jourdean made and stated that Jourdean was lying. Jourdean left in a huff.

  I suggested that all parties needed to resolve personality differences and their goal should be to be productive and to strive for a positive work environment. Personal differences needed to remain after hours and outside of this office, etc. They agreed.

  Same date, I also called a meeting w/Jourdean and Mat. Mat did not know what the word meant either and also denied having said any such thing. Gave the same speech about positive work environment and personality issues. Jourdean seemed satisfied.

- Monday, May 16 – I called Erin and Jourdean individually to inquire as to how things were going. Both stated that everything was going well. (Jourdean said that she would let me know if they weren't).

  I also called Greg Porter of Synerfac to inform the agency that there were some problems. Greg was not surprised. Also said that Jourdean struck him as "unique". Reminded me that Synerfac was acting as a payroll service only. (a client, Mike Early of Merestone referred Jourdean to John and John asked her to sign up w/the agency to act as a payroll service because this was a new position being tested by him).

- Thursday, June 2 – I asked Jourdean how things were going and she stated, "great, fine." (with a smile on her face).

  Same date, George Foxwell (Snyerfac employee) came to me concerned that Jourdean was claiming some kind of harassment by him asking her to lunch. I assured him that she did not. However, she did mention the lunch request and her denial because George is a married man. (George said that he only invited her because he didn't want to leave her out from the invitation because he invited the rest of the group).

- Tuesday, June 7 – Melissa Police from Synerfac called me to report that Jourdean had requested a meeting w/her the day before. Melissa said that Jourdean told her the story about Erin and the

brothel comment but, indicated that she thought that was resolved now.  Jourdean also requested Melissa to help her regarding the following issues:

√ No work space
√ Low pay scale
  Title 7
√ Training promise – not given.  JJT does the work and Jourdean watches.
  Casey Grabowski (DIV employ) spreading rumors about Jourdean and a bacterial infection
  Stated that she has a "Corporate double who stole Jourdean's identity"
  John had asked her to attend an Engineering Dinner Meeting which she denied.

When John was questioned,  he stated:

    Jourdean was trained how to use excel, word and windows (which she had no skill in previously).  He has provided more than adequate training.  Even though he expected to have to train someone regarding his expectations and Tt requirements, he also trained her in routine computer skills which she did not possess previously.

    Her work space was changed at the end of last week (6/3) to accommodate additional employees being hired (both outside temp agencies and DIV).  She is now sharing a work station and equipment w/a DIV emply who works in the field as a survey asst., which she is not happy about.

TT0215

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

# TETRA TECH, INC. AND SUBSIDIARIES
# Computer Use Policy

## Introduction

This Computer Use Policy (herein called Policy) establishes guidelines and policies for employees of Tetra Tech, Inc. and its subsidiaries (herein collectively referred to as Tetra Tech or Company) regarding the use of hardware, printers, facsimile machines, voice-mail, software, messaging: email, chat room, and Instant Messaging (IM), Internet and Intranet access collectively called "Information Technology," network facilities and other computing resources provided by the Company in support of its mission. Tetra Tech is committed to providing the proper tools for its employees to perform their job functions based on applicable business needs while striving to maintain a business environment free of harassment of any kind.

Each subsidiary within the Company is required to designate a clearly-defined information technology support group (herein referred to as the "Information Technology Review & Authorization Committee (ITRAC)") who is held responsible for enforcing the mandates of this Policy and should address any questions they have about this Policy to the Enterprise Information Services (EIS) department in the Company's corporate office. The management-approved members of this group serve as the primary points of contact for any employee questions or issues pertaining to use or misuse of Company-owned computers, software, computer network facilities or other information technology resources.

Employees must immediately report any known or suspected violations of this Policy to their immediate supervisor, to ITRAC, or for anonymity, to their local Human Resources representative, the Legal Department in Corporate Administration at (626) 470-2481, or the Tetra Tech Hotline at (800) 886-2577 so that the Company can take appropriate corrective action.

Any employee who is found to be in violation of this Policy may be subject to disciplinary actions up to and including termination of employment. Additionally, the Company may take appropriate legal actions against the employee as well as report misuse to appropriate local, state, and/or federal authorities.

## Policy Purpose

The Company grants each employee appropriate access to and use of confidential, proprietary and critical information and company-wide computing resources accessible internally and externally. The use of the Company's Information Technology, network facilities and other computing resources in connection with company business and limited personal use is a privilege but not a right, extended to various company employees. Each employee is expected to act responsibly in utilizing this privilege, to respect the privileges of other employees and other authorized users, to respect and protect the integrity of Company information and computing resources, to observe all pertinent regulations and contractual obligations, to comply with applicable country, county, federal, state, and local laws and to refrain from engaging in any activity that would subject the company to any liability.

TT0216

**TETRA TECH, INC. AND SUBSIDIARIES**
Computer Use Policy

Tetra Tech reserves the right to amend this Policy and practices at any time without prior notice and to take such further actions as may be necessary or appropriate to comply with applicable federal, state, and local laws.

Tetra Tech reserves the right, without notice, to limit or restrict any individual's use, and to inspect, copy, or remove files, or system resources that may undermine the authorized use of any computing facilities or that is used in violation of Company rules or policies in order to protect the integrity of Tetra Tech's computing facilities and its users against unauthorized or improper use of those facilities, and to investigate possible use of those facilities in violation of Company rules and policies.

Company computing systems are provided as tools for business and all information created, accessed, or stored using these systems are the property of the Company and subject to monitoring, auditing, or review. Tetra Tech reserves the right to access and monitor the contents of any system resource utilized at its facilities. The Company also reserves the right to periodically examine any system and other usage and authorization history as necessary to protect its computing facilities.

Tetra Tech disclaims any responsibility for loss of data or interference with files resulting from its efforts to maintain the privacy and security of those computing facilities or from system malfunction or any other cause.

This Computer Use Policy affirms the Company's right to review employee use of company computer assets, to explain how these computer assets should and should not be used, and forewarns employees of penalties for misuse. Additionally, this Policy informs employees that the tools and information created and accessed from a company's computer system are the property of the Company and employees have no expectation of privacy on their Company-owned and Company-administered systems.

# Scope

This Policy applies to all Tetra Tech employees worldwide and to all employees of Tetra Tech's subsidiaries and affiliated companies. It is the responsibility of all operating units to ensure that this Policy is clearly communicated, understood, and followed.

This Policy also applies to contractors, and vendors/suppliers providing services to Tetra Tech that bring them into contact with Tetra Tech's Information Technology infrastructure (herein collectively called "Users.") The Tetra Tech employee who contracts for these services is responsible for providing the contractor/vendor/supplier with a copy of this Policy before any access is given.

This Policy covers the usage of all of the Company's Information Technology and communication resources including, but not limited to:

- All computer-related equipment, including desktop personal computers (PCs), portable PCs, terminals, workstations, Personal Digital Assistants (PDAs), wireless computing devices, telecom equipment, networks, databases, printers, servers and shared computers, and all network and hardware to which this equipment is connected.

©2004 Tetra Tech Executive Services *April 2005*

TT0217

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

- All electronic communications networks and resources

- All intellectual property and other data stored on Company equipment.

- All of the above are included whether they are owned or leased by the Company or are under the Company's possession, custody, or control.

- This Policy also applies to all users, whether on Company property, connected from remote via any networked connection, or using Company equipment.

## Responsibility

It is the employees' responsibility to understand the Company's definitions of inappropriate use and to know that the information and communications processed through their accounts are subject to review, monitoring, and recording at any time without notice or permission. It is the employees' responsibility to understand the consequences for violating company computer policies and standards.

It is the responsibility of the Human Resources (HR) department to ensure that newly-hired employees and/or contractors are made aware of this Computer Use Policy.

It is the hiring managers' responsibility to ensure that contractors and temporary workers have a signed contract, a Confidentiality Statement, and this Computer Use Policy.

## Policy Statement

By accepting and/or using any Company computing systems or network account, the users understand and acknowledge their responsibility to adhere to the Policy and agree specifically to the following:

I.   Users are responsible for all use of computers and network accounts provided to them by the Company or its clients, including approved data backup and password maintenance.

   a.  Responsible use includes choosing passwords that are not easily deduced by others.

   b.  Users who suspect that their Company-provided computers or network accounts have been accessed without their permission are expected to change their passwords and are expected to report the suspected activity to the ITRAC.

   c.  Company-provided computers and network accounts may only be used by the user to whom they are assigned unless otherwise authorized by the Company. Access to such computers and network accounts for maintenance / service purposes by persons responsible for departmental computing and local LAN supervisors is considered authorized.

II.  The Company will seek to maintain system security, but users should not assume that information in their accounts or on Company-owned or Company –

TT0218

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

administered computers they use, is private. Authorized Company personnel may obtain access to computing and networking resources as necessary to service the computing system, retrieve or modify Company work, and to investigate suspected violations of this Policy, including unlawful activity. Files will be disclosed to third parties as required by law. Users will be notified of access when notification is required by law and/or Company policy.

  a. The Company cannot and does not guarantee the confidentiality of electronic information. In addition to accidental and intentional breaches of security, the Company may be compelled to disclose electronic information as required by law.

  b. As part of its necessary routine operations, the Company occasionally gains access to network accounts and other computing services it makes directly or indirectly available to the user community. Suspected policy violations discovered during such routine operations will be reported to the ITRAC and the CIO.

  c. The Company will report suspected criminal activity to law enforcement authorities.

  d. Unless otherwise prohibited by law, and subject to legal requirements, the Company and law enforcement personnel may access computers, network accounts or other electronic information or technology necessary to investigate suspected violation of this Policy or unlawful activity.

  e. For accounts granted to Company employees, and Company-owned or Company-administered computers they use:

      i. Access to files can be granted on request of the department manager.

      ii. Termination of accounts can be requested by the department manager.

      iii. Department managers are responsible for moving needed files off terminated employees' accounts and Company-owned or Company-administered computers within one month of termination.

III. Users agree not to violate system security; interfere with system performance or another user's use of the system; or access network accounts, files or passwords intentionally and without authorization.

  a. Users may not intentionally send email or develop other electronic information inaccurately attributed to another person.

  b. To safeguard network security and performance, no device or network service, such as computers, printers, scanners, routers, hubs, sniffers, web-cams, and wireless access points, may be placed on the network without approval from the Enterprise Information Services.

©2004 Tetra Tech Executive Services *April 2005*

TT0219

**TETRA TECH, INC. AND SUBSIDIARIES**
Computer Use Policy

IV.  Users agree to use the computers and network accounts only for lawful purposes that are consistent with Company policies and procedures.

It is against this Policy to access, download, or post material that is inappropriate, fraudulent, harassing, embarrassing, profane, obscene, intimidating, defamatory, unethical, abusive, indecent or otherwise unlawful.

    a.  Unlawful use of computers or network accounts includes, but is not limited to, defamation; obscenity; discrimination; violation of copyrights, trademarks and/or licenses; and/or violation of other rights arising under the law.

    b.  Viewing or communicating materials of an obscene, hateful, discriminatory, or harassing nature is strictly prohibited.

    c.  Any messages or data that defame; abuse, harass, or violate the legal rights of others constitute inappropriate use and are strictly prohibited.

V.  Users are responsible for safeguarding all proprietary information they access, make available, or distribute using the computer / network account.

VI.  Users may use their computers and network accounts for non-Company matters except as otherwise prohibited by this or other Company policy or where such use unreasonably interferes with corporate uses, job performance, or system performance/operations.  Such use is subject to the terms of this Policy; including, without limitation, terms regarding access to information on Company computers and accounts.

    a.  Any and all information maintained on Company-owned computers / network accounts, whether Company-related or not, is accessible by the Company.

    b.  Employees are strongly encouraged to remove any "personal" information they may have stored on their computers/network accounts prior to ending their relationship with the Company.

VII.  Users understand that violation of this Policy may result in suspension or termination of computer, network account and other access and, depending upon the circumstances, may result in disciplinary action including, but not limited to, employment termination.  If the activity is also unlawful, it may result in criminal prosecution.

    a.  The Company may suspend a user's computing privileges for security or other administrative reasons.

VIII.  Users agree to read and abide by this Policy and its Administrative Interpretation as they may be amended from time to time.  The ITRAC is responsible for providing administrative interpretation, which will be modified periodically in light of experience gained and legal and administrative developments.  Users are responsible for reviewing this Policy and its Administrative Interpretation on a routine basis.

**TT0220**

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

# Standards

## I.  Employee Privacy in the Workplace

The Company respects the privacy of each employee as may be applicable in the workplace.  However, the Company cannot, and does not, guarantee the employee privacy as it applies to the use of Company computing resources.  The Company will neither distinguish nor treat differently personal information stored by employee from all other information stored in Company computers.  In the ordinary course of business, the Company will need to access and screen all information stored in its computing resources, as well as incoming and outgoing information.

The Company may at any time, and without prior notice, access any or all information stored in its computing resources and/or monitor the computing activities by individual employees or group of employees.  Employee should be continuously aware of this fact.  Therefore, employees are strongly discouraged from storing personal information in Company computing resources and engaging in activities that are not business-related when utilizing Company computing resources.

The Company needs to protect its computing resources from virus attacks and computer hacking.  Additionally, the Company needs to protect its employees and other authorized users from objectionable and forbidden email contents.  Therefore, the Company may scan and filter all inbound and outbound email contents and other Internet activities for possible virus content, possible computer hacking activities, as well as for objectionable and forbidden content.  Affected emails and attachments will be quarantined and analyzed for possible violations of this Standard.  Quarantined emails and attachments may not be delivered to intended recipients.

Acceptance of Company-assigned login computer access account(s) and the use of Company computing systems constitute an agreement on behalf of the employee to abide and to be bound by the provisions of this Standard, to consent to computer use monitoring, and to consent to email filtering.  Employees are advised that if such monitoring and filtering reveal possible evidence of criminal activity, the Company may provide that evidence to law enforcement officials.  Similarly, if such monitoring reveals any indication of unauthorized or unacceptable Company activity, such information may be provided to appropriate Company management for further investigation and possible disciplinary action.

In the course of utilizing the Company computing resources and facilities, employees will have access to a myriad of information through email, Internet, Intranet, FTP, Chat Rooms and the like, from both internal and external sources.  For the most part, employees solicit or elicit the receipt of information from various sources.  The Company cannot effectively regulate all of the information received by employees.  However, the Company will make an effort to filter for objectionable and forbidden content.  The Company takes no responsibility for the information received by employees, other than for information that the Company itself, and those acting on its behalf generates.

                    ©2004 Tetra Tech Executive Services *April 2005*

TT0221

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

## II. Computing Facilities

Only authorized Company personnel can establish connections and/or provide network hubs and other access points to Company computing resources. Unauthorized employees are explicitly prohibited from connecting any network device to any of the Company's computing facilities. This restriction includes but is not limited to Wireless Access Points, other wired or wireless type devices, and web-cams.

## III. Personal Use of Company Computing Resources

Personal use is permitted so long as such use conforms to this Standard; does not hinder, interfere nor disrupt Company operations; and does not negatively affect the employee's job performance of duties and responsibilities.

    A. Personal use of Company equipment and other resources for educational purposes is allowed with prior management approval. Such usage must be confined to non-working hours.

    B. Unless with prior management and ITRAC approval, employees are not permitted to attach employee-owned equipment (e.g., Personal Digital Assistant, digital camera, modem, Wireless Access Points, USB harddrives, flash cards, storage devices, etc.) to the Company's computing resources.

    C. Employees are strongly discouraged from receiving and storing personal information in Company computing resources. The Company cannot and does not guarantee employee privacy in the workplace as it applies to the use of Company computing resources.

## IV. Use of Employee-owned Equipment

Only with prior management and the ITRAC approval may an employee bring an employee-owned computer into the office for approved business use. The Company reserves the right to inspect any employee-owned computer for its contents before its use on Company premises, as well as prior to leaving Company premises.

The Company reserves the right to delete from any employee-owned equipment that has been attached to Company computing resources any information that may have been obtained from Company computing resources. The unauthorized downloading or copying of information or computer programs (software) from Company computing resources to an employee-owned computer is a violation of this Standard.

TT0222

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

## V.      Purchasing

Acquisition of all Company-owned equipment and software is coordinated by Tetra Tech Executive Services, Inc., each ITRAC, and each management organization.  The ITRAC sets the standards for all computer-related activities of the entity and is responsible for keeping adequate computer supplies and arranging for repairs.  All purchases must be made within the purchasing standards of each entity.  **Note:** This includes downloading of "free" software from Internet sites.

## VI. Using Information and Software from Third Parties

Employees are prohibited from transferring confidential or proprietary information or software belonging to former employers, or obtained from other third party sources onto any Company computing resource.  Employees are expected to respect and abide by other companies' or parties' applicable confidential, proprietary, and copyright restrictions.  Employees must not utilize information and/or software that the Company does not have the right to utilize.

## VII.  Software

The following points are to be followed to comply with software license agreements:

A. Subject to management approval, software procured from legitimate sources will be provided to employees whose job responsibilities require use of it.

B. All software used by the Company will be properly purchased through the appropriate procurement procedures.

C. The Company and its employees will use all software in accordance with the terms of the corresponding license agreements.  Tetra Tech will not tolerate the use of any unauthorized copies of software.  Any person illegally reproducing software may be subject to civil and criminal penalties including fines and imprisonment.  Reproduction of software is permitted for backup and archival purposes as long as the specific software license agreement provides for these actions.  Any unauthorized duplication of copyrighted computer software violates the law and is contrary to Tetra Tech's Code of Business Conduct.  The Company does not condone illegal copying of software under any circumstance.

D. Each office shall have a local information technology representative, assigned by the ITRAC, who is responsible for procuring and tracking the appropriate software licenses in the office. The office information technology representative must approve all installations of software onto Company computers prior to installation.  In addition, all software installations must be performed in accordance with the procedures of the ITRAC of that entity.

E. Employees shall not give software to anyone outside of the Company including clients, customers, and others.  One exception: if the software has been developed by Tetra Tech employees for a client and such delivery is a

                    ©2004 Tetra Tech Executive Services *April 2005*

TT0223

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

part of a related contract or work assignment, employees may deliver this
software to the client.

F.  Software purchased by the Company shall not be installed on employee-
owned or other third party computers unless those installations are
authorized by Company management, and then only after the appropriate
licenses are procured.  The Company requires prior approval of all software
installations to ensure that the appropriate licenses are obtained and that
computer systems are protected from software viruses.

G.  Any employee who duplicates, acquires, distributes, or uses unauthorized
copies of computer software is in violation of this Standard.

## VIII.  Computer Viruses

All files on floppy disks, downloaded files, and email attachments received from outside
sources must be checked for viruses before they are copied to a computer's hard drive
or a network hard drive.  All electronic files shall be scanned and cleaned of computer
viruses prior to submission to clients or other parties.

## IX.  Computer Security

A secure system is one that is reliable, consistent, and safe.  It is essential that a secure
computing environment be established and maintained within the Company in order to
protect the information created by employees and the Company's intellectual property
and trade secrets.

A.  Employee passwords to any Company computing resource must not be
revealed to anyone.

B.  Employees must lock the computers they are working on before leaving their
computers unattended.  Employees must log-off the computers they worked
on before leaving for the day.

C.  Unless installed and authorized by the ITRAC, employees are prohibited from
running any program that would facilitate the "hosting" of a remote terminal
session that would allow a remote computer to take control of the "hosting"
Company computer.

D.  Non-employees may not access Company-operated computing systems
unless specifically authorized to do so by the ITRAC and management
organization.

E.  Each employee is given appropriate access to network and other computing
resources. Employees are restricted to using only those computing resources
and facilities to which they have permissions for.  Employees are prohibited
from scanning the networks to discover unadvertised computing resources or
other network vulnerabilities.

TT0224

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

    F.  Any employee terminating employment, for reasons voluntary or otherwise, agrees not to attempt access to any Company computing resource.

## X.  Internet Use

This Standard establishes rules and guidelines for using the Internet.  All activities pertaining to the use of the Internet must have prior management approval.

    A.  The Internet should be used to conduct Company business only.  Internet web sites and Relay Chat channels must not be used unless for business purposes.

    B.  Employees are responsible for the content of all text, audio, video, or images that they place, send, or receive over the Internet.

    C.  Incidental and occasional personal use of the Internet is permitted pursuant to Section III *Personal use of Company Computing Resources*.  The downloading of streaming audio and video puts a strain on Company computing resources, particularly network bandwidth and data storage.  Therefore, the downloading of streaming audio and video for personal use is a violation of this Standard.

    D.  In an ongoing attempt to evaluate and improve the Company's use of the Internet, the Company will monitor transmissions to and from the Internet.  While the goal of such monitoring is to evaluate and determine the best use of the Internet, monitoring will also be used to determine violations of this Standard.

    E.  Employees must use the Internet access that is normally provided by the Company. Any employee who has modem access provided by the Company for other business purposes may not use the modem to access the Internet.  Exceptions may be granted during emergency situations (e.g., the Company-provided Internet connection is down), but use requires permission from management and ITRAC.

    F.  Employees are specifically and strictly prohibited from using Company computing resources to initiate any kind of malicious and/or illegal actions against internal (Company) and external (other third parties) systems.

## XI.  Electronic Messaging (Email, Chat Room, and Instant Messaging)

Employees are permitted to sign up for email subscriptions in business-related topics that are relevant to their work.  Employees are permitted to participate in "Chat Room" discussions to gain business information.  However, employees must act responsibly and professionally when participating in such discussions since all communications adhere to legal regulations.

When using Company computing resources, employees must abide by the following guidelines:

©2004 Tetra Tech Executive Services *April 2005*

**TT0225**

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

    A.  The Company's electronic messaging system is the official and approved messaging medium for all business-related communications and should be used for business purposes exclusively.

    B.  IM[1] and any other form of electronic communications may be used for informal and non-business communications; however, it should not be used for official business purposes.

    C.  Participating in Chat Room discussions is subject to the restrictions concerning Company representation (see Section XII below).

    D.  Although employees are able to participate "anonymously" in Chat Rooms or other Electronic Bulletin Board Services, employees are not permitted to "bash" or express negative or disparaging remarks against the Company, its employees, its competitors, and other third parties.

## XII. Representing or Defending the Company

Your email address identifies you as an employee of Tetra Tech. However, only certain designated employees or other representatives are authorized to speak on behalf of the Company. Unless you are specifically authorized to speak to the press or comment publicly, you are not allowed to represent the Company through communications on the Internet or through the Company email account. Representing yourself as speaking on behalf of the Company, or giving the impression that you are representing the Company, without authorization, is a violation of this Standard.

Employees who witness what they believe may be a trademark violation or a defamatory, disparaging, or otherwise damaging statement about the Company on the Internet should immediately report the incident to the Legal Department in Corporate Administration at (626) 470-2481. It is helpful to include the context, the Internet site or newsgroup in which it appeared, and, if possible, a copy of the offending message or language.

Although employees may receive direct calls requesting participation in "marketing surveys," they are not to participate in any outside survey without prior permission from management and without proper verification and authentication of the outside soliciting party. Information provided is restricted to those that deter and prevent unauthorized external parties to breach Company computer security access.

## XIII. Electronic Messaging Usage

This Standard establishes the rules and guidelines for employee access to and use of the Company's electronic messaging (email, fax, instant messaging) services.

    A.  The Company email system has been installed to facilitate business communications. Although each employee is provided with an exclusive login identification and password to access this system, where applicable, all

---

[1] IM is a computer application that allows instant text communication between two or more people through a network such as the Internet. Instant messaging differs from email in that conversation happens in realtime.

TT0226

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

of the contents of email communications are property of the Company and accessible at all times by the Company in the ordinary course of business.

B.  The Company respects the individual privacy of its employees. However, employee privacy does not extend to work-related conduct or to the use of Company-provided equipment or supplies that are intended for business use. Employees are strongly discouraged from sending, receiving and storing personal email and attachments that contain information the employee would otherwise prefer to keep confidential.

C.  Email documents and Internet messages, like other correspondence employees create in the course of their jobs, are not private and may be read by others at Tetra Tech or outside Tetra Tech under appropriate or certain circumstances. All employees should be aware that others might read such messages in some instances.

D.  Caution should always be taken when sending Company confidential information via email or the Internet where the message could be intercepted. Always consider the possibility that recipients of your emails may have no control over where they might be eventually posted or forwarded, or that recipients may eventually post or forward your emails, which may be contrary to your intention.

E.  It is the responsibility of the email sender to determine whether the intended recipient is authorized to receive the data enclosed. Particularly when sending confidential information, employee should include the following language:

**NOTICE OF CONFIDENTIALITY**
This electronic message and its attachments (if any) are intended solely for the use of the addressees hereof. In addition, this message and the attachments (if any) may contain information that is confidential, proprietary and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. If you have received this message in error, please promptly notify the sender by reply Email and immediately delete this message from your system.

F.  An employee who responds to personal email using the Company's email services must act responsibly because the name of the Company is part of the employee's email address. The recipient(s) of employee's response may misconstrue that employee may be responding on behalf of the Company.

G.  Email broadcasting to many users (also known as "spamming"), especially of material of a non-business related nature is not permitted. Internal or Internet email broadcasts should only be done with management permission and only when the message would be important to a majority of the email addressees.

H.  Copyrighted materials belonging to entities other than Tetra Tech may not be transmitted on the Internet. Employees are not permitted to copy, transfer, rename, add, or delete information without proper authorization.

    ©2004 Tetra Tech Executive Services *April 2005*

TT0227

**TETRA TECH, INC. AND SUBSIDIARIES**
Computer Use Policy

I.  Incidental and occasional personal use of the Company email system is permitted.  Please see Section III *Personal use of Company Computing Resources*.  However, all inbound and outbound email, messages and attachments received and sent by the employee, whether business or personal, will be treated the same as other Company email messages.  All emails are subject to content filtering in the ordinary course of business. Any email message or attachment may be quarantined.  No quarantined in-bound or out-bound email message or attachment will be delivered to its intended recipients.

J.  You may not use the Company email system or the Internet in any way that may be seen as insulting, disruptive, or offensive by other persons, or harmful to the morale of a reasonable individual, office or Tetra Tech.  Examples of forbidden transmissions include: sexually explicit messages, cartoons, or jokes; propositions or love letters; chain letters; ethnic or racial slurs or jokes; messages that can be construed as harassment or disparagement of others based on sex, race, sexual orientation, age, mental or physical disability, medical condition, national origin, or religious or political beliefs; any other messages that violate local, state or federal law; or messages in violation of Tetra Tech's Code of Employee Conduct or Equal Employment Opportunity Standards.

K.  Email users are required to follow the Tetra Tech Code of Business Conduct, especially the provisions entitled *Dealing with Each Other*, **Non-Discrimination**, and *Sexual Harassment*.

L.  Although email does foster a conversational style of communication, "venting" messages are not appropriate. Users should be just as courteous communicating via email as they would be in any other form of business communication.

M.  Should an employee need to have another employee review incoming email messages in the event of a planned absence, the following procedure should be followed.

  i.  Obtain prior approval from management.

  ii.  If using Microsoft Outlook, use the "Delegate" function to allow for an authorized person to access your email folders.

  iii.  Set-up the function so that the "Delegate" can not use your email address for responses.  If a response is required, the "Delegate" should only be able to respond on your behalf by using his/her own email address.  **Note:** Please read the Microsoft Outlook Help facility on how to set-up the "Delegate" functions.

N.  In the event of a termination of employment by an employee, for any reason, the following guideline should be followed:

  i.  Management is to inform email administrator as to the disposition of terminated employee's mailbox, to either:

TT0228

TETRA TECH, INC. AND SUBSIDIARIES
Computer Use Policy

        1.  Delete the mailbox (disable email account from sending or receiving emails), or

        2.  Keep the mailbox active (to receive emails) but to disable the account (prevent from sending regular emails.)

  ii.  If the terminated employee's email account is to remain active:

        1.  Management assumes responsibility for terminated employee's mailbox (e.g. reviewing, responding and forwarding emails as may be appropriate.)

        2.  Management is to make its best effort to set-up an "autoreply" email response to inform email senders that the employee is no longer working for the Company.

        3.  If forwarding information for terminated employee is available, and appropriate, and if terminated employee had expressed desire for management to do so, management may, and without obligation, forward pertinent, non-business related emails to terminated employee.  It is the responsibility of the terminated employee to inform personal email correspondents of terminated employee's new email address.

        4.  Management is responsible for notifying email administrator as to when to finally delete the terminated employee's mailbox.

## XIV. Intranet

The same standards of decorum, respect, and professionalism that guide us in the office environment apply to the use of the Intranet.  Important confidential, proprietary, and copyrighted information is stored in the Intranet.  Only Company personnel are allowed access to the Intranet.  Others may be granted access to the Intranet with written authorization from management.

All Company Standards apply to the use of the Intranet.  The following activities are strictly prohibited, without management authorization:

    A.  Installation of a web site, page, or any other information

    B.  Installation of unauthorized software

    C.  Posting of copyrighted documents without proper permission from copyright holder

    D.  Posting of proprietary software for others to use and/or share in violation of licensing agreement

    E.  Assisting unauthorized parties in obtaining access to the Intranet

    F.  Making unauthorized changes to the Intranet hardware or software

## XV.  File Transfer Protocol (FTP)

©2004 Tetra Tech Executive Services *April 2005*

TT0229

**TETRA TECH, INC. AND SUBSIDIARIES**
Computer Use Policy

The Company FTP sites may either be secured or unsecured. The following activities are strictly prohibited without proper authorization:

    A.  Installation of individual FTP sites

    B.  Posting of copyrighted documents

    C.  Posting of proprietary software for others to use, download, and/or share

    D.  Posting of confidential, sensitive or proprietary information in an unsecured FTP site

    E.  Assisting unauthorized parties in obtaining access to a Company FTP site

## XVI. Ownership and Confidentiality of Information

The Company is the sole owner and custodian of all information stored in all of its computing resources. Furthermore, the Company is the sole owner of the intellectual property produced by employees. This includes but is not limited to electronic files, email messages, voicemail messages, databases, and computer software. All information accessed through the Company information resources are considered confidential unless the employee has received permission to use it. Accessing or attempting to access confidential data is strictly prohibited.

Confidential information should only be used for its intended purpose. Use of confidential information for anything other than its intended use is prohibited and is a violation of this Standard.

## XVII. Copyright and Copyright Infringement

The Company uses software that it owns. However, the Company also uses proprietary software that it does not own but has obtained the license to use. Accordingly, software may only be installed, reproduced, or redistributed by authorized personnel in accordance with the terms of the applicable licensing agreement. Unauthorized copying, redistributing, or republishing copyrighted or proprietary software and documents are strictly prohibited. Copyright infringement is a serious matter, and the Company strictly prohibits any such infringement activity.

## Examples of Misuse and Violation of these Standards

The following are examples of possible misuse and violation of these Standards. This list is in no way intended to be an exhaustive list of examples. The examples are provided for additional clarification and guidance of these Standards.

    A.  Using another employee's user login and password to gain unauthorized access to any computing resources and information

    B.  Masking one's real electronic identity

TT0230

**TETRA TECH, INC. AND SUBSIDIARIES**
Computer Use Policy

C. Attempting to scan Company networks to discover and explore unadvertised computing resources and other vulnerabilities

D. Performing an act that will disrupt and/or interfere with the normal operations of Company computing resources

E. Circumventing security access controls to Company computing resources and information

F. Violating applicable software licensing agreements or copyright laws

G. Using proprietary information or software that the Company does not have the right to use

H. Deliberately wasting Company computing resources (e.g., initiating and propagating chain letters or email jokes; excessive Internet surfing; playing Internet games; Internet gambling; downloading streaming audio, video, or other Internet content for personal use, etc.)

I. Connecting unauthorized equipment to Company computing resources

J. Utilizing Company computing resources for commercial and personal benefit

K. Using Company email to harass or threaten others or sending messages that in any way may be seen as insulting, disruptive, or offensive by other persons, or harmful to the morale of an individual, office, or the Company (specific examples are included in Section XIII-J of this Standards)

L. Modifying or removing Company computing resources without proper authorization

M. Launching a computer worm, virus, or other unauthorized computer programs

N. Initiating unauthorized access to third-party computer systems using Company's computer resources

O. Launching malicious computer actions against third-party computer systems

P. Destroying, stealing, altering or performing any other form of sabotage of Company computers, files, or information

Q. Sharing passwords (your own or another employee's password)

R. Unauthorized sharing (e.g., forwarding, transmitting, showing, posting, etc.) of Company proprietary information with other employees, or third parties

S. Unauthorized sharing (e.g., forwarding, transmitting, showing, posting, etc.) of third-party proprietary information using Company computing resources

T. Installing unauthorized software on Company computers

    ©2004 Tetra Tech Executive Services *April 2005*

**TT0231**

**TETRA TECH, INC. AND SUBSIDIARIES**
Computer Use Policy

    U.  Helping unauthorized parties to gain access to Company computing resources

    V.  Using Chat Rooms or other Electronic Bulletin Board Services to express negative or other disparaging remarks against Tetra Tech, Tetra Tech employees, Tetra Tech's competitors or other third parties

**EFFECTIVE DATE:** April 2005

**TT0232**

# TETRA TECH, INC. AND SUBSIDIARIES
# Code of Business Conduct

## I.    INTRODUCTION

As a matter of principle, Tetra Tech, Inc. and its subsidiaries (herein referred to as Tetra Tech or the Company) conduct its business on the bases of the quality of its services and products and the integrity of its association with its customers and others.  Tetra Tech maintains business practice standards that will command the respect of everyone with whom the Company conducts business.  These standards are intended to protect the Company's reputation, the quality of its products and services and the best interests of its customers, owners, and employees.

The dedication by Tetra Tech and all of its employees to this Code of Business Conduct demonstrates our commitment to ascribe to the highest standards of ethical conduct in the pursuit of Tetra Tech's business.  This Code of Business Conduct articulates Tetra Tech's basic policy that all of its employees and non-employee directors will conduct the Company's business throughout the world in accordance with such principles.

## II.    STANDARDS - THE EMPLOYMENT RELATIONSHIP WITH TETRA TECH

### A.  Dealing With Each Other

Tetra Tech understands that effective relationships are based on the recognition of the value and worth of each individual, and the necessity to provide a working climate conducive to the success and well-being of all employees.

We work to create an atmosphere of mutual trust and respect by being honest, fair and consistent.  We will treat all employees fairly and impartially, and we will consistently follow employee policies and procedures.

We listen to one another and foster open and honest communications.  We value the opinion of employees and respect their diverse backgrounds.  We encourage communication among employees and solicit ideas and suggestions about the Company.

### B.  Employee Development

Employee initiative is the primary driver of  career development.  Tetra Tech will offer opportunities for training and development that may include tuition assistance for continuing education.  It is our policy to conduct performance and development assessments and to support the career development of our employees.

### C.  Non-Discrimination and Sexual Harassment

We are committed to the policy and practice of non-discrimination.  No employee or applicant for employment will be discriminated against because of age, race, religion, sex, national origin, disability, veteran status, or sexual orientation.

It is also the policy of the Company to provide a workplace free of sexual harassment.  Verbal or physical harassment or behavior that creates a hostile work environment will not be tolerated.

TT0233

TETRA TECH, INC. AND SUBSIDIARIES
Code of Business Conduct

**Non-Discrimination and Sexual Harassment (continued)**
Tetra Tech and its subsidiaries have internal complaint processes available to any employee who believes he or she has been discriminated against or sexually harassed. Please refer to the Tetra Tech Code of Employee Conduct for additional procedures concerning sexual harassment and discrimination.

## D. Health and Safety
It is the policy of Tetra Tech to provide and maintain a workplace free of recognized safety and health hazards. The protection of employee health and the prevention of work-related injuries and illnesses are a vital and integral part of Company operations. Tetra Tech has developed a comprehensive health and safety program to provide for the safety of its employees and ensure compliance with applicable regulations.

It is the responsibility of all employees to abide by established rules and regulations and to report any injury, illness or unsafe condition to their supervisor. Specific safety programs and procedures are available within each office and on the Company intranet site. Questions regarding health and safety should be directed to your entity's health and safety representative or Corporate Administration in Pasadena at (626) 470-2542.

## E. Conflict of Interest
Employees should avoid situations where their private interests or that of the members of their family conflict with the interests of the Company. Employees may not solicit or accept salaries, fees, commissions or any other thing of value from contractors, suppliers, customers, consultants, or other persons and organizations doing business with the Company. Gifts, meals, and entertainment of nominal value are excluded from this requirement. Please see the Gifts, Meals, and Entertainment section beginning on page 4 of this Code.

Employees will be reminded of their responsibility to disclose any potential conflict by receiving the Company's Conflict of Interest Plan and signing an associated acknowledgement form.

In an instance where an employee's relationship with another person or organization might conflict with job performance or the Company's interests, the employee must disclose the potential conflict to his or her manager. It will be reviewed by Legal in Corporate Administration and management and the employee will be notified if the relationship poses a conflict of interest.

## F. Confidential and Proprietary Information
Employees must maintain the confidentiality of the Company's trade secrets and proprietary information. Examples of proprietary information include bid data, employee charge rates, proprietary software, customer lists, planning materials, marketing plans, and much of the technical information that the Company generates or uses in its business.

TT0234

### G.  Media Contact and Public Discussion

News media contact and responses such as press releases, and public discussion of Company business, should be made only through Investor Relations at (626) 470-2477.  Employees should immediately refer all such contacts to that Department.

### H.  Insider Trading

Employees have a responsibility to ensure that inside information is not misused. Federal law prohibits employees from buying or selling securities of Tetra Tech based on information not publicly available that could affect the price of the securities.

Employees may not buy or sell securities when they have inside information of a material nature, but may buy or sell when that information becomes publicly available. Inside information that might be material includes dividend changes, earnings estimates, pending awards, expansion or curtailment of operations, sales or purchase of substantial assets, or other significant business developments. Employees may not give this information to family, friends, or anyone outside the Company so that they can trade on the basis of inside information.  Questions regarding insider information should be directed to our General Counsel in Corporate Legal at (626) 470-2481.  Please refer to the Tetra Tech Insider Trading Policy for additional guidelines concerning this issue.

## III.  STANDARDS - CONDUCTING TETRA TECH'S BUSINESS

### A.  Dealing With Customers

Serving customers is the focal point of our business.  Satisfying customers is the best way to ensure business success.  We will accurately represent our products, services, and prices in our marketing, advertising, and sales efforts.

### B.  Dealing With Suppliers

We are committed to the fair treatment of suppliers.  We will select suppliers who provide the best value for our customers and Tetra Tech.  They will have the opportunity to compete fairly for our business.

### C.  Proprietary Information of Others

The Company regularly receives third party proprietary information.  The wrongful possession or use of any proprietary information of any supplier, customer, business partner, or competitor is prohibited.  Employees must obtain such proprietary information under the terms of a written confidentiality agreement containing the terms and conditions for the use and protection of the information.  If an employee is offered, or comes into, unauthorized possession of third part proprietary information, the employee must immediately consult his or her local human resources representative or Legal in Corporate Administration at (626) 470-2481.

TT0235

TETRA TECH, INC. AND SUBSIDIARIES
Code of Business Conduct

### D. Gifts, Meals, and Entertainment

Business-related social contacts can be in the best interest of the Company when properly conducted on a limited basis. Employees should make every effort to ensure that there is not reason for a third party to view these contacts as improper. Giving and receiving business gifts of nominal value is permissible, provided they are associated with a business purpose and are reasonable in cost. Giving or receiving gifts of significant value is strictly prohibited. Customary business entertainment is proper; impropriety results when the frequency, nature or value of the entertainment is such that it could be interpreted as affecting or intending to affect an otherwise objective business decision.

Under no circumstances may a gift of money be given or received. Employees will decline or return any kind of significant gift, favor, or offer of excessive entertainment that violates these guidelines and inform the offeror of our policy.

As outlined later in this Code, the United States Government, and certain other government entities, have specific prohibitions concerning gratuities or entertainment provided to their employees.

### E. Improper Payments

No payment will be made by, or anything of value given, on behalf of the Company either directly or indirectly to government officials, political candidates, or officers or employees of customers, suppliers or competitors which violates applicable laws or is designed to secure favored treatment for the Company.

### F. Accurate Records and Reporting

Company records must reflect an accurate, complete and verifiable record of all transactions. No false or misleading entries may be made for any reason; and no employee may assist any other person in making such entries.

### G. Political Contributions

Federal law prohibits a corporation from making a contribution in connection with federal elections. In addition, many of the fifty states and foreign countries have similar laws prohibiting corporate political contributions in connection with elections.

### H. Legal Compliance

Our policy is to comply with all laws and regulations that are applicable to our business both in the United States and in other countries. To that end, the use of any Company funds or resources for an unlawful or improper purpose is strictly prohibited.

Employees must become familiar with and comply with the laws and regulations which govern their areas of responsibility. Whenever there is doubt as to the application of laws or regulations, Company decisions must be made with the advice of Legal in Corporate Administration at (626) 470-2481. Employees are not authorized to take any action which constitutes a violation of law.

TT0236

### I.   Antitrust Laws

Our policy is to comply with all federal, state and local antitrust laws.  Antitrust laws are intended to preserve competition by prohibiting actions that could unreasonably restrain the functioning of a free marketplace.

Activities in restraint of trade including price-fixing or bid-rigging, and arrangements with competitors to divide or allocate markets or customers or exclude others from a market, are absolutely prohibited.  We will only participate with trade associations or other business cooperative organizations that comply with antitrust laws.

All employees with management or marketing responsibilities are expected to have a working knowledge of the antitrust laws and prohibited activities related to their work.  Employees must seek advice from Legal in Corporate Administration at (626) 470-2481 whenever a question or doubt in this area arises.

### J.  Export Laws

Many types of commercial data, products, software, and associated technical data may not be exported without prior written approval from the federal government.  The Company is responsible for obtaining assurances from the customer that items delivered overseas, or delivered to a foreign customer in the United States, are not diverted to restricted countries.

Conversations of a technical nature with a citizen of another country may be considered an export even when the foreign citizen is in the United States.  When foreign visitors tour our facilities, what they see can be considered an export.  Questions about application of the export regulations for a particular transaction should be directed to Legal in Corporate Administration at (626) 470-2481.

## IV.     STANDARDS - BUSINESS WITH THE UNITED STATES GOVERNMENT

### A.  Special Nature of Government Business

The Federal Acquisition Regulation (FAR), and related laws and regulations, govern the Company's business with U.S. government agencies.  The Company will comply with all applicable rules regarding socioeconomic considerations, e.g., affirmative action, contracts with small and small disadvantaged businesses, and labor standard requirements.

### B.  Procurement Integrity

The Procurement Integrity Act prohibits a competitor from seeking or obtaining proprietary information related to competitors or government source selection information.  The Act also restricts the hiring by the Company of former government procurement officials.  All employees are obligated to report suspected violations to their local human resources representative or Legal in Corporate Administration at (626) 470-2481.

TT0237

TETRA TECH, INC. AND SUBSIDIARIES
Code of Business Conduct

### C. Contract Negotiation and Pricing

Pursuant to the Truth in Negotiations Act, the FAR requires the Company to certify in writing that its cost and pricing data are current, complete and accurate up through the date of the agreement on contract price with the government. A claim of defective pricing, which could result in financial penalties and possible criminal charges against the Company and the individuals involved, may arise from a failure to comply with the Act. Extra care should be taken in the preparation of cost or pricing data before submitting it to the person responsible for submitting the proposal to the government. Changes affecting the cost or pricing data must be reported immediately to your Finance or Accounting Department, or Legal in Corporate Administration at (626) 470-2481.

### D. Contract Performance

It is essential that the terms and conditions of each contract with the government be complied with particularly in the areas of key personnel, personnel qualification, deliverable products and testing. The prior written approval of an authorized government representative must be obtained before substitutions or changes can be made in such areas. Only a written contract modification can change a contract requirement.

### E. Subcontracting

Special procedures must be followed when purchasing materials and services from other companies for use in government contracts. Many government contract requirements must be passed down to the Company's subcontractors and suppliers. Employees should make sure that all these required provisions are incorporated in our subcontracts.

### F. Consultant Services

In retaining consultants to work on behalf of the Company, care should be taken to ensure that no conflict of interest exists. Employees overseeing such retained consultants must document and closely monitor the conformance of consultant services to the FAR both as to cost and scope of work.

### G. Recording and Charging of Costs

Employees must ensure that their work is accurately recorded on their time sheet as it was performed and that it is charged to the right account number. Intentional mischarging of costs is a criminal offense and a violation of Company policy. Employees must ensure that all costs are charged to the appropriate account. An employee must document and have approved any necessary change of records or transfer of costs for accounting purposes. Guidance on how to complete time sheets and labor correction forms is found in reference documents applying to your organization, e.g., in Company policies, as they apply to your organization. Your Accounting and Human Resources Departments can also provide guidance. An employee is required to sign his or her own time sheet, and an employee's signature certifies the accuracy of the information on the sheet. The signature of a Manager or Approver on an employee's time sheet represents a review and verification process. Electronic signatures may be acceptable.

TT0238

**Recording and Charging of Costs (continued)**
No one is authorized to permit or require an employee to deviate from correct charging practices. Employees must report any deviations from proper charging practices to their manager, local human resources representative, Legal in Corporate Administration, or call the Tetra Tech Hotline at 1-800-886-2577.

**H. Gifts, Meals or Gratuities**
Employees may not provide or pay for meals, refreshments, travel or lodging expenses, or give anything of value to, federal government employees, except as specifically permitted by federal law and regulations then in effect. The Company and its employees must also comply with state, local and foreign government rules governing the acceptance of business courtesies.

**I. Kickbacks**
The Anti-Kickback Act forbids prime and subcontractors to offer, solicit, provide or accept any gift, money, or other thing of value for the purpose of improperly obtaining or rewarding favorable treatment in connection with United States government prime contracts and subcontracts. The law also requires the Company to report violations to the government where there are reasonable grounds to believe that a violation exists. Your local human resources representative or Legal in Corporate Administration is to be consulted prior to reporting suspected violations to the government.

**V.     COMPLIANCE AND ASSISTANCE**

**A.  Reporting Violations of the Code**
An employee who becomes aware of a violation of this Code or believes that a violation may take place in the future must report the matter. Ordinarily, the report should be made to the employee's immediate supervisor or manager who, in turn, must report it to Legal in Corporate Administration at (626) 470-2481. If no action is taken by the supervisor or the employee feels that it would be appropriate to report to a person in higher authority, the employee should bring the matter to the attention of his or her local human resources representative, Legal in Corporate Administration, or call the Tetra Tech Hotline at 1-800-886-2577. To ensure that a reporting employee is protected from reprisal, requests for anonymity will be respected to the extent this does not result in the violation of the rights of another employee. Any attempt at reprisal against the reporting employee will be punished severely.

**B. Reporting Violations of the Law**
In addition to reporting violations of this Code of Business Conduct, it is Company policy to comply with all applicable laws that protect employees against unlawful discrimination or retaliation by their employer as a result of their lawfully reporting information regarding, or their participating in, investigations involving corporate fraud or other violations by the Company or its agents of federal or state law.

TT0239

TETRA TECH, INC. AND SUBSIDIARIES
Code of Business Conduct

---

**Reporting Violations of the Law (continued)**

Specifically, Company policy prevents any employee from being subject to disciplinary or retaliatory action by the Company or any of its employees or agents as a result of the employee's:

- disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation or possible violation of federal or state law or regulation; or

- providing information, causing information to be provided, filing, causing to be filed, testifying, participating in a proceeding filed or about to be filed (with any knowledge of the employer), or otherwise assisting in an investigation or proceeding regarding any conduct that the employee reasonably believes involves a violation of:
    - o federal criminal law relating to securities fraud, mail fraud, bank fraud, or wire, radio and television fraud, or
    - o any rule or regulation of the Securities and Exchange Commission, or
    - o any provision of federal law relating to fraud against shareholders, where, with respect to investigations, such information or assistance is provided to or the investigation is being conducted by a federal regulatory agency, a member of Congress, or a person at the Company with supervisory or similar authority over the employee.

To report violations of the law, employees should follow the complaint procedures as outlined under Section V.A. Reporting Violations of the Code. However, employees may also contact the Company's Compliance Officer directly due to the sensitive nature of the complaint. For information regarding the Compliance Officer, see Paragraph C below.

**C. Compliance Responsibilities**

This Code is to be strictly followed at all times and under all circumstances. Any violation will subject an employee, without regard to position or tenure with the Company, to disciplinary action, up to and including termination.

To protect our employees and other stakeholders, the Company has designated an individual who is responsible for administering and overseeing the compliance and reporting process of this Code. This person is referred to as the "Compliance Officer." The Company's Compliance Officer is responsible for tracking the hotline calls. Incoming calls will be documented in writing as to the date of the call, and the nature of the call. The Compliance Officer may refer the matter to the Human Resource representative as appropriate, but in no event shall the nondisclosure requirements be waived by this action. The Compliance Officer is responsible for ensuring that all hotline calls are addressed, and will follow through to the resolution of the issues raised in the call. The final actions taken in regard to the call will be documented and held in confidence to the extent possible.

---

TT0240

**Compliance Responsibilities (continued)**

The Compliance Officer will refer complaints submitted, as he or she determines to be appropriate or as required under the directives of the Board of Directors, to the Board or an appropriate Committee of the Board.

In addition, the Compliance Officer will report directly to the Audit Committee of the Company's Board of Directors on matters arising under this description of Compliance Responsibilities.

Other Compliance Officer responsibilities include:

- Administering, implementing and overseeing ongoing compliance under this Code of Business Conduct and the policies contained herein.

- Establishing and administering procedures to assure that employee complaints will be collected, reviewed promptly, resolved in an appropriate manner, and retained.

- Making himself or herself available to discuss with employees any complaints raised or reports filed.

- With respect to complaints from employees or non-employees received by the Company relating to its accounting, auditing, and internal auditing controls and disclosure practices, establishing and administering procedures to assure that such complaints will be collected, reviewed promptly, treated or resolved in an appropriate manner, and retained. The Compliance Officer will present any such complaints received by the Company to the Audit Committee of the Board of Directors.

- With respect to employee complaints relating to the Company's accounting, auditing, and internal auditing controls and disclosure practices, establishing and administering procedures that enable employees to submit complaints and concerns in a confidential and anonymous manner. The Compliance Officer will present any such complaints received by the Company to the Audit Committee of the Board of Directors.

- Administering and overseeing the Company's training and educational programs designed to ensure that Company employees with supervisory authority with respect to other employees, or who are otherwise involved in the administration of Company policies, are aware of this Code of Business Conduct and the policies contained herein, know to involve the Compliance Officer in any matters involving this Code that arise (including informing the Compliance Officer of every complaint that arises), and are trained in the proper handling of employee complaints covered by this Code.

- Presenting a copy or a summary of each complaint received to those responsible for preparing and reviewing the Company's public filings and other public disclosures so that they are made aware of complaints involving the Company's accounting, auditing, and internal auditing controls or disclosure practices made by employees or by others.

TETRA TECH, INC. AND SUBSIDIARIES
Code of Business Conduct

### D.  False Reporting

Employees who file reports or provide evidence which they know to be false or without a reasonable belief in the truth and accuracy of such information will not be protected by the above policy statement and may be subject to disciplinary action, including termination of their employment.  In addition, except to the extent required by law, the Company does not intend this Policy to protect employees who violate the confidentiality of any applicable lawyer-client privilege to which the Company or its agents may be entitled under statute or common law principles, or to protect employees who violate their confidentiality obligations with regard to the Company's trade secret information.  Employees considering providing information that may violate these privileges or reveal Company trade secrets are advised to consult an attorney before doing so.

### E.  Individual Judgment

In summary, this Code of Business Conduct has been developed to help us better understand the proper conduct of the Company's business.  The standards it contains are in the best interest of our employees, shareholders, customers, and the public at large.  Ultimately, it is up to each of us to act consistent with this Code, and to maintain professional pride in our Company and ourselves.

TT0242

## TETRA TECH, INC. AND SUBSIDIARIES
# Organizational Conflict of Interest Plan

### I.     POLICY STATEMENT

Tetra Tech, Inc. (Tetra Tech) and each member of its staff are committed to comply fully with the requirements set forth in Subpart 9.5 of the Federal Acquisition Regulations (FAR) regarding COI for all work Tetra Tech performs for the federal government and other clients.  This subpart defines COI as follows:

Because of activities performed or relationship established with other persons, either (1) a person is unable to render impartial assistance or advice to a client, (2) a person's objectivity in performing work for a client is or might be impeded, or (3) a person has an unfair competitive advantage.

Tetra Tech, its employees, and all subcontractors are required to fully comply with all contract-specific COI requirements.

### II.     CORPORATE STRUCTURE

Tetra Tech is incorporated in the state of Delaware.  Tetra Tech owns numerous subsidiaries.

Most wholly-owned subsidiaries and divisions of Tetra Tech operate in the resource management and infrastructure business areas.  These subsidiaries provide services to both government and non-government clients.  Tetra Tech Executive Services provides corporate support to all of Tetra Tech's subsidiaries.  Tetra Tech and its subsidiaries as a collective group are referred to as "Tetra Tech companies" in this document.

### III.     COI SCREENING PROCESS

Tetra Tech conducts a COI search screening process prior to accepting any new work, including new work under existing contracts, and prior to submitting any bid or proposal. The screening encompasses (1) work related to all sites and all clients for whom Tetra Tech performed work over the past 3 years, (2) all current Tetra Tech work, and (3) any future Tetra Tech work reflected in ongoing marketing proposals.

Tetra Tech identifies potential COI by performing the following screenings:
- Client database screening
- Site and facility database screening

Each screening must be documented in a summary form that is signed by the screener. A copy of this form is given to the appropriate Tetra Tech manager for the prospective work.  Any actual or potential COI discovered as a result of the screening process must be reported to the appropriate Tetra Tech manager.  If the COI involves another Tetra Tech company, the information must also be reported to the appropriate manager of that Tetra Tech company.  The screenings are discussed in more detail below.

TT0243

TETRA TECH, INC. AND SUBSIDIARIES
Conflict of Interest Plan

### A. Client Database Screening

Tetra Tech maintains a comprehensive database of past, current, and prospective clients, including the general nature of the work involved. Tetra Tech searches this database prior to accepting new work or submitting a proposal to determine whether the contemplated work is related to other work Tetra Tech has performed, is performing, or may perform in the future. Tetra Tech can then determine if a actual or potential COI situation exists and can promptly disclose this information to the client, along with measures that can be taken to avoid, mitigate, or neutralize the potential COI situation. Information in each summary form is entered into the database to keep it up to date.

### B. Site and Facility Database Screening

Tetra Tech maintains a database of sites and facilities where Tetra Tech has worked, is currently working, or may work in the future. This database is the same database as the client database. Tetra Tech searches this database prior to accepting new work or submitting a proposal to determine whether the contemplated work is similar to other site or facility work Tetra Tech has performed, is performing, or may perform in the future under any client. Tetra Tech can then determine if a actual or potential organizational COI situation exists and can promptly disclose this information to the client, along with measures that can be taken to avoid, mitigate, or neutralize the potential COI situation.

### IV.    PROCEDURES TO AVOID, MITIGATE, OR NEUTRALIZE POTENTIAL COI

Possible procedures Tetra Tech may use to avoid, mitigate, or neutralize potential COI situations are discussed below. All procedures are subject to client approval and contract modification, if necessary, before implementation.

### A. Possible Procedures to Avoid Potential COI

One or more of the following procedures can be used to avoid potential COI situations.

1.    If past work conflicts with contemplated work, avoid the COI by ceasing work for the current client.

2.    If future work conflicts with contemplated work, avoid the COI by turning down either the contemplated or future work.

3.    If a personal conflict arises the employee's supervisor will be notified. The employee in question will be permanently reassigned to other work.

TT0244

### B.  Possible Procedures to Mitigate Potential COI

One or more of the following procedures can be used to mitigate potential COI situations.

1.  If past work conflicts with contemplated work, mitigate the COI by restricting Tetra Tech's involvement in client-sensitive activities on the project.

2.  If a personal conflict arises, reduce the person in question's involvement to a non-decision making role.

### C.  Possible Procedures to Neutralize Potential COI

One or more of the following procedures can be used to neutralize potential COI situations.

1.  If past work conflicts with contemplated work, neutralize the COI by having Tetra Tech's president sign a declaration that Tetra Tech will not represent its past client in any current or future dealings with the current client.

2.  If an organizational conflict arises, neutralize the COI by reassigning the work to a subcontractor with the stipulation that Tetra Tech not review the subcontractor's work product.

3.  If a personal conflict arises, neutralize the COI by requiring the person in question to sign a declaration that he/she will protect the confidentiality of data obtained from the client.  The employee's supervisor will be notified.

## V.    CERTIFICATIONS

Personal, work assignment, and annual certifications required by Tetra Tech related to COI are discussed below.

### A.  Personal Certifications

Tetra Tech currently has a corporate policy that requires Tetra Tech employees to immediately disclose to cognizant managers and contract program managers any pervious, current, or potential future relationship with another person or organization that might constitute a COI situation.  Tetra Tech has distributed this COI plan to all of its employees.  Each employee is required to sign a certification stating that (1) the employee has read and understands the COI plan and (2) the employee will report to cognizant managers and contract program managers any past, present, or future relationship that may result in an actual or potential COI.

TT0245

TETRA TECH, INC. AND SUBSIDIARIES
Conflict of Interest Plan

## B. Work Assignment Certifications

Tetra Tech screens each work assignment, technical direction document, or delivery order for organizational COI. If no organizational COI is identified during screening and no personal COI is disclosed by any staff member Tetra Tech plans to use for the contemplated work, Tetra Tech includes the following certification in all work plans associated with the work:

Tetra Tech and its subcontractors, if any, have screened the work described in this work plan for organizational conflict of interest. Tetra Tech has determined to the best of its knowledge that no actual or potential, organizational conflict of interest exists. Tetra Tech will screen any future work for other clients to ensure that the future work will not create an organizational conflict of interest with the work described in the work plan.

Tetra Tech employees and subcontractors are required to disclose to their cognizant manager any previous, current, or future relationship that might conflict with their job performance. To the best of Tetra Tech's knowledge, the staff assigned to the work do not have any actual, or potential personal conflict of interest.

Tetra Tech and its employees and subcontractors are aware of their obligation to identify and report any actual or potential conflict of interest arising during performance of this work assignment.

If an organizational COI is identified during screening, Tetra Tech immediately discloses to the client the nature of any actual or potential organizational COI, as well as any measures to avoid, mitigate, or neutralize the conflict. Upon disclosure, work will not be initiated or rejected until Tetra Tech has received client approval.

If a personal COI is identified for a staff member Tetra Tech plans to use for the work, Tetra Tech will remove the staff member from all participation in the work and disclose to the client the personal COI and the measures taken to avoid, mitigate, or neutralize the personal COI. Upon disclosure, the staff member will not be allowed to participate in the work until Tetra Tech has received client approval.

## C. Annual Certification

Pursuant to the EPAAR 1552.209-75 for those specific contracts that require submission of an Annual COI Certification, Tetra Tech will submit to the client an annual certification (within 45 days after the anniversary of contract award) regarding COI. This certification will be signed by either the president or vice president of Tetra Tech. The certification will state the following:

TT0246

**Annual Certification (continued)**
To the best of Tetra Tech's knowledge, Tetra Tech and its subcontractors have reported to the client all actual or potential conflicts of interest, whether organizational or personal, and has sought consent from the client for all future contracting efforts related in any way to the work being performed under this contract.

## VI.    RESPONSIBILITIES

This section designates the Tetra Tech responsibilities for conducting COI determinations, performing client disclosure procedures, and maintaining COI screening documentation.

### A.  COI Determinations
The COI Coordinator is primarily responsible for making COI determinations for COI situations involving more than one Tetra Tech company.  These responsibilities may be delegated to other personnel, including, ultimately, the President of Tetra Tech, Inc., to the extent necessary to carry out the procedures and processes necessary to make COI determinations.

### B.  Client Disclosure Procedures
Tetra Tech will disclose to the client any and all actual or potential organizational or personal COI situations immediately upon identification.  The written disclosure will contain a detailed discussion of measures Tetra Tech has taken or will take to avoid, mitigate, or neutralize the COI.  This disclosure will be signed by the appropriate Tetra Tech manager, and copies will be provided to corporate management, including, at minimum, the COI Coordinator.  Work will not proceed after such disclosure until Tetra Tech receives written approval from the client.

### C.  COI Screening Documentation
Tetra Tech will maintain documentation of all COI screening efforts.  A summary form signed by the screener is provided to the appropriate managers.  A copy of this form is also placed in the contract file and work assignment file, as appropriate.

## VII.    TRAINING

Tetra Tech provides training to employees on how to identify, actual, or potential organizational and personal COI situations and when and how to disclose such information.  In addition, each new employee receives a copy of this COI plan along with orientation materials.  Tetra Tech also periodically disseminates information concerning COI issues to its employees through "brown bag" seminars, interoffice conference calls, and memoranda.  In addition, Tetra Tech conducts COI awareness training for employees that includes review of certification language and of any changes that may have occurred in Tetra Tech's COI plan.  This training is conducted as part of Tetra Tech's "Code of Business Conduct" awareness training and certification program.

**TETRA TECH, INC. AND SUBSIDIARIES**
Conflict of Interest Plan

**TRAINING (continued)**

Certification that all employees have read and understand the contents of the current code and plan are retained by Tetra Tech.

**VIII.    SUBCONTRACTOR COI IDENTIFICATION**

Tetra Tech will place the required COI flow-down clauses in each subcontract document. If requested by the client, each subcontractor must prepare and follow an appropriate COI plan. Tetra Tech will require that each subcontractor certify that it has prepared and is following its COI plan. Each subcontractor will verbally notify Tetra Tech of any actual or potential COI within 2 working days of receipt of a new work assignment or task order. In addition, each subcontractor must disclose specific COI circumstances to the client.

TT0248

# TETRA TECH, INC. AND SUBSIDIARIES
# Conflict of Interest Policy Statement

The Company ("Company" includes Tetra Tech, Inc. and all subsidiaries) respects the privacy of all employees. However, it is the policy of the Company that no employee engage in conduct that results in a conflict of interest (COI). COI is defined as follows:

> Because of activities performed or relationships with other persons, either (1) a person is unable to render impartial assistance or advice to a client, (2) a person's objectivity in performing work for a client is or might be impeded, or (3) a person has an unfair competitive advantage.

Each employee agrees to follow the procedures listed in the document entitled "Organizational Conflict of Interest Plan" dated January 2004, which is incorporated into this policy statement by reference. Furthermore, each employee agrees to report to the appropriate person any past, present, or future relationship that may result in an actual or potential COI. Any violation of this policy will result in disciplinary action up to and including termination.

Without limiting the general scope of the foregoing policy, the following relationships and courses of conduct will be deemed to involve a conflict of interest that violates such policy except in special circumstances that may be specifically approved by the chief operating officer.

1.  Concurrent employment by the Company and by any other firm if such employment encroaches materially on time or attention that should be devoted to the Company's affairs.

2.  Concurrent employment by the Company and by any other firm or person that is a present or potential competitor, subcontractor, supplier of material or services, or customer of the Company.

3.  Holding by an employee or any member of the employee's immediate family of a financial interest in any competitor, supplier of material or services, or customers of the Company to the extent that the employee's responsibilities include direct dealings with the competitor, supplier, or customer in his/her capacity as an employer of Tetra Tech, Inc. The term "financial interest" refers to any possible form of ownership or partial ownership..

4.  Acceptance by an employee or his or her immediate family of membership on the board of directors of any competitor, supplier of material or services, customer of the Company or as a consultant or advisor to any such board of directors or to the management of such firm or person.

5.  Lending money, guaranteeing debts, borrowing, or accepting gifts or favors so as to place an employee or his or her immediate family under obligation to a present or potential competitor, supplier of material or services, or customer of the Company.

TT0249

**TETRA TECH, INC. AND SUBSIDIARIES**
Conflict of Interest Policy Statement

6. Participation by an employee in any voluntary organization, whether civic, professional, or otherwise, in which the employee may be expected to divulge privileged or confidential information or trade secrets of the Company or take any other action which may subvert the Company's interest, reputation, or goodwill.

7. Speculative dealing by an employee or his or her immediate family in Company securities or the acquisition of an interest in a firm with which the Company, to the employee's and/or his or her immediate family's knowledge, is negotiating or contemplating negotiation for a merger or acquisition.

8. Any misuse of confidential information available to or gained by an employee by reason of the employee's employment with the company. Confidential information includes information pertained to in nondisclosure agreements the Company may sign from time to time with its clients. This includes the following confidentiality agreement with the U.S. Environmental Protection Agency (EPA):

> Employees agree not to disclose in whole or in part to any source outside of EPA, the U.S. Department of Justice or the EPA prime contractor for a particular project, any technical data provided by the U.S. government, EPA prime contractor, or generated by the company; any site-specific cost information; or any enforcement strategy without first obtaining the permission of the U.S. government and the EPA prime contractor. This agreement is effective upon the employee's hire date, and shall remain effective until 10 years from the date of the latest contractual agreement in which EPA is the ultimate client. For purposes of this agreement, the term "latest contractual agreement" shall mean the latest contractual agreement in existence while a person is a Company employee.

TT0250

# TETRA TECH, INC. AND SUBSIDIARIES
# Corporate EEO Statement

It is and will continue to be the policy of Tetra Tech, Inc., all its office locations and subsidiaries, to practice equal opportunity in all aspects of employment. All persons will be treated on the basis of qualifications, competence, and merit without regard to race, color, religion, gender, national origin, ancestry, age, disability, veteran status, or other categories as required by law.

Decisions concerning employment have and will continue to be based on those considerations which further the principle of equal employment opportunity. All other personnel actions such as compensation, benefits, transfers, layoffs, returns from layoff, company-sponsored training, education and tuition assistance, and social programs are and will continue to be administered in accordance with the Company's EEO policy. Every member of management is held responsible for assuring non-discrimination equal employment opportunity within his or her assigned area of responsibility.

Any questions or situations arising regarding equal opportunity should be directed to the Human Resources Department.

# TETRA TECH, INC. AND SUBSIDIARIES
# Code of Employee Conduct

## I.     POLICY STATEMENT

The Company is committed to maintaining a work environment that is free of harassment of any kind, including sexual harassment, harassment based upon race, color, sex, religion, sexual orientation, age, national origin, ancestry, citizenship status, marital status, disability, handicap, veteran status or any other reason prohibited by law. The Company will take prompt, appropriate corrective action if violations of this policy are discovered. Such action may include discipline up to and including termination of employment of the offending employee or employees. This policy applies to all Tetra Tech employees at all divisions.

## II.    DEFINITIONS

Harassment includes verbal, physical, and visual conduct that creates an intimidating, offensive, or hostile working environment or that interferes with work performance. Some examples include racial slurs or other offensive remarks; ethnic jokes; posting of offensive statements, posters or cartoons; or other similar verbal, graphic, or physical conduct, including inappropriate language.

Sexual harassment may include any unwelcome action that is sexual in content or implication. This includes but is not limited to:

- Verbal abuse of a sexual or suggestive nature including verbal sexual advances, propositions or requests;

- Unwelcome physical contact or sexual advances;

- Visual conduct, such as leering, making sexual gestures, displaying of sexually suggestive objects or pictures, cartoons or posters;

- Suggestive or obscene letters, notes or invitations; or

- The conditioning of employment benefits or employment conditions on sexual favors, including implied or overt threats concerning an individual's employment status, or implied or overt promises of preferential treatment in employment matters.

Sexual harassment also includes conduct of a sexual nature that interferes with an employee's work performance or creates an intimidating, hostile or offensive work environment. For example, sexual harassment may include such actions as sex-oriented kidding, teasing or jokes; repeated offensive sexual flirtation; or unwelcome display of posters, pictures, cartoons or drawings that are sexual in nature.

If you have any question regarding what may be considered sexual harassment, please contact your supervisor or manager, local human resources representative, or contact Corporate Human Resources in Pasadena at (626) 470-2489.

TT0252

**TETRA TECH, INC. AND SUBSIDIARIES**
Code of Employee Conduct

---

### III.    REPORTING PROCESS

An employee who has an allegation regarding harassment should immediately bring it to the Company's attention. The employee should promptly contact his/her immediate supervisor (or manager) or, if the employee feels uncomfortable discussing the matter with that supervisor, with any of the following: the next highest level supervisor in the regular chain of command, his or her human resources representative, Corporate Human Resources in Pasadena at (626) 470-2489, or the Tetra Tech Hotline at 1-800-886-2577. Similarly, any employee who observes conduct that he/she believes may indicate that harassment has occurred or is occurring should bring this to the attention of his/her manager or Corporate Human Resources. Employees may be assured that they will not be penalized in any way for reporting a harassment problem.

An allegation will be promptly and thoroughly investigated. If the allegation is found to be meritorious, corrective action will be taken including appropriate disciplinary action up to and including termination.

Reports of harassment will be kept confidential and anonymous, except to the extent that some disclosure may be necessary for purposes of investigation or corrective action.

Harassment of employees in connection with their work by non-employees may also be a violation of this policy. Any employee who experiences harassment by a non-employee, or who observes harassment of an employee by a non-employee should report such harassment to his or her supervisor or to Corporate Human Resources. Appropriate action will be taken against violation of this policy by a non-employee.

Harassment of Tetra Tech's customers or employees or our customers, vendors, or suppliers by our employees is also strictly prohibited. Any such harassment will subject an employee to disciplinary action, up to and including termination.

Employee notification of the problem is essential to this Employee Code of Conduct. Tetra Tech cannot help resolve a harassment problem unless it is reported. It is the responsibility of each Tetra Tech employee to report those kind of problems so the Company can take whatever steps are necessary to correct the problem.

### IV.    PERSONAL APPEARANCE AND BEHAVIOR

In addition to our policy against harassment included in this Employee Code of Conduct, Tetra Tech maintains a Personal Appearance and Behavior policy. This policy is directed toward conduct that may not otherwise fall within the legal definition of harassment, but nonetheless projects image problems for the Company.

Tetra Tech does not have a company-wide formal dress policy. The Company relies on every employee's good judgment to dress appropriately for Tetra Tech's business and the job he or she is performing. Please avoid extremes in dress and appearance, however. Flashy, skimpy or revealing outfits and other non-business-like clothing are unacceptable.

---

TT0253

**PERSONAL APPEARANCE AND BEHAVIOR (continued)**
Employees who report to work in unacceptable attire may be requested to leave work and return in acceptable attire.  Such time off from work will generally be without pay.

Likewise, unprofessional behavior in the workplace, such as sexually related conversations, inappropriate touching (i.e. kissing, hugging, massaging, sitting on laps) of another employee, and any other behavior of a sexual nature is prohibited.  Employees who fail to observe these standards will be subject to disciplinary action, up to and including termination.

### V.    NON-FRATERNIZATION
The Company desires to avoid misunderstandings, actual or potential conflicts of interest, complaints of favoritism, possible claims of sexual harassment, and the employee morale and dissension problems that can potentially result from romantic relationships between managerial and supervisory employees and subordinate employees.

Accordingly, managers and supervisors are prohibited from fraternizing or becoming romantically or sexually involved with their subordinate employees of the Company.  Managers and supervisors are also prohibited from fraternizing or becoming romantically or sexually involved with any employee where the manager or supervisor has possible influence in employment decisions or actions relating to that employee.  Additionally, all employees, both managerial and non-managerial, are prohibited from fraternizing or becoming romantically or sexually involved with other employees when, in the opinion of the Company, their personal relationships may create a conflict of interest, cause disruption, create a negative or unprofessional work environment, or present concerns regarding supervision, safety, security, or morale.

An employee who is presently romantically or sexually involved with another employee, and such relationship could be considered to violate the policy described above, shall immediately and fully disclose the relevant circumstances to any of the following:  the next highest level supervisor in the regular chain of command, his or her human resources representative, Corporate Human Resources in Pasadena at (626) 470-2489, or the Tetra Tech Hotline at 1-800-886-2577.  The circumstances should then be relayed to the Senior Vice President of Administration so that a determination can be made as to whether the relationship violates this policy.  If a violation is found, the Company shall take appropriate action according to the circumstances, up to and including transfer or termination.  Failure to fully disclose facts about a relationship between employees may lead to disciplinary action, up to and including termination.

### VI.    MANAGEMENT RESPONSIBILITIES
Supervisors (or managers) are responsible for creating and maintaining a positive and productive work environment.  Supervisors are required to:

- Notify their human resources representative or Corporate Human Resources immediately of any allegations or evidence of harassment;

TT0254

**TETRA TECH, INC. AND SUBSIDIARIES**
Code of Employee Conduct

---

**MANAGEMENT RESPONSIBILITIES (continued)**

- Bring this policy to the attention of their subordinate supervisors and employees;

- Take all steps possible to eliminate any harassment they become aware of;

- Initiate corrective action in consultation with Corporate Human Resources whenever it appears a violation of this policy has occurred.

As representatives of the Company, supervisors and other members of Company management understand that they may be held personally liable and responsible for acts of harassment that they commit, condone, tolerate or fail to investigate. Therefore, if any member of management knows of or has reason to know of any act of harassment or the existence of a hostile, intimidating or offensive work environment in the workplace and fails to report it to higher management or fails to take immediate and appropriate corrective action, that member of management places themselves and the Company in serious jeopardy.

Members of management may not date (see Non-Fraternization above), engage in any sexual activity with, or make sexual advances, welcome or unwelcome, toward any subordinate employee. In addition, members of management are strictly prohibited from offering an employment benefit (such as a raise or promotion or assistance with one's career) in exchange for sexual favors, or threatening an employment detriment (such as termination, demotion, or disciplinary action) for an employee's failure to engage in sexual activity.

The Company requires all members of management to cooperate completely in the investigation of any claims of harassment and to refrain from penalizing any person for making a complaint of harassment.

Finally, if any member of management violates any aspect of this policy, they will be subject to disciplinary action, up to and including termination, and additionally, can be sued and held personally liable for their acts or omissions.

**VII.    FALSE INFORMATION**
The Company recognizes that false accusations of unlawful harassment can be made, can be difficult to refute, and can have serious effects on innocent individuals. Any employee who knowingly makes a false accusation of unlawful harassment or provides false information in connection with such an accusation is also subject to appropriate disciplinary action, up to and including termination. We expect that all employees will act responsibly to establish a pleasant working environment free from unlawful harassment.

**VIII.    ENFORCEMENT**
The Company will vigorously enforce this Employee Code of Conduct policy consistent with all applicable federal, state, and local laws.

---

TT0255

## TETRA TECH, INC. AND SUBSIDIARIES
# Insider Trading Policy

**I.    THE NEED FOR A POLICY STATEMENT**

Federal securities laws prohibit the purchase or sale of securities by a person who is aware of material nonpublic information, and the disclosure of material nonpublic information to others who then trade in a company's securities.  Insider trading violations are pursued vigorously by the Securities and Exchange Commission (SEC) and are punished severely.  While the regulatory authorities concentrate their efforts on the individuals who trade, or who tip inside information to others who trade, the federal securities laws also impose potential liability on companies and other "controlling persons" if they fail to take reasonable steps to prevent insider trading by company personnel.

Tetra Tech's Board of Directors has adopted this Policy Statement both to satisfy our obligation to prevent insider trading and to help our personnel avoid the severe consequences associated with violations of the insider trading laws.  The Policy Statement also is intended to prevent even the appearance of improper conduct on the part of anyone employed by Tetra Tech (not just so-called insiders).  We have all worked hard over the years to establish a reputation for integrity and ethical conduct, and we cannot afford to have that reputation damaged.

**II.    THE CONSEQUENCES**

The consequences of an insider trading violation can be severe:

**A. Traders and Tippers**

1.  Company personnel (or their tippees) who trade on inside information are subject to the following penalties:
    a)  A civil penalty of up to three times the profit gained or loss avoided;
    b)  A criminal fine of up to $1,000,000 (no matter how small the profit); and
    c)  A jail term of up to ten years.

2.  An employee who tips information to a person who then trades is subject to the same penalties as the tippee, even if the employee did not trade and did not profit from the tippee's trading.

**B.  Control Persons**

1.  The Company and its supervisory personnel, if they fail to take appropriate steps to prevent illegal trading, are subject to the following penalties:

    a)  A civil penalty of up to $1,000,000 or, if greater, three times the profit gained or loss avoided as a result of the violation; and
    b)  A criminal penalty of up to $2,500,000.

TT0256

TETRA TECH, INC. AND SUBSIDIARIES
Insider Trading Policy

---

C.    **Company-Imposed Sanctions**

An employee's failure to comply with our insider trading policy may subject the employee to Company-imposed sanctions, including dismissal for cause, whether or not the employee's failure to comply results in a violation of law.  Needless to say, a violation of law, or even an SEC investigation that does not result in prosecution, can tarnish one's reputation and irreparably damage a career.

III.    **STATEMENT OF POLICY**

It is Tetra Tech's policy that no director, officer or other employee who is aware of material nonpublic information relating to the Company may, directly or through family members or other persons or entities, (a) buy or sell securities of the Company (other than pursuant to a pre-approved trading plan that complies with SEC Rule 10b5-1), or engage in any other action to take personal advantage of that information, or (b) pass that information on to others outside the Company, including family and friends.  In addition, it is Tetra Tech's policy that no director, officer or other employee who, in the course working for the Company, learns of material nonpublic information about a company with which Tetra Tech does business, may trade in that company's securities until the information becomes public or is no longer material.

Transactions that may be necessary or justifiable for independent reasons (such as the need to raise money for an expenditure) are not exempt from the policy.  The securities laws do not recognize such mitigating circumstances, and, in any event, even the appearance of an improper transaction must be avoided to preserve our reputation for adhering to the standards of conduct.

A.    **Disclosure of Information to Others**

Tetra Tech is required under Regulation FD of the federal securities laws to avoid selective disclosure of material nonpublic information.  We have established procedures for releasing material information in a manner that is designed to achieve broad public dissemination of the information immediately upon its release.  You may not, therefore, disclose information to anyone outside the Company, including family members and friends, other than in accordance with those procedures.  You also may not discuss Tetra Tech or its business in an internet "chat room" or similar internet-based forum.

B.    **Material Information**

Material information is any information that a reasonable investor would consider important in making a decision to buy, hold or sell securities.  Any information that could be expected to affect Tetra Tech's stock price, whether it is positive or negative, should be considered material.  Some examples of information that ordinarily would be regarded as material are:

TT0257

**Material Information (continued)**

1. Projections of future earnings or losses, or other earnings guidance;
2. Earnings that are inconsistent with the consensus expectations of the investment community;
3. A pending or proposed merger, acquisition or tender offer;
4. A pending or proposed acquisition or disposition of a significant asset;
5. A change in dividend policy, the declaration of a stock split, or an offering of additional securities;
6. A change in management;
7. A client's impending bankruptcy or the existence of severe liquidity problems; and
8. The gain or loss of a significant customer.

## C.    Twenty-Twenty Hindsight

Remember, anyone scrutinizing your transactions will be doing so after the fact, with the benefit of hindsight. As a practical matter, before engaging in any transaction, you should carefully consider how enforcement authorities or others might view the transaction in hindsight.

## D.    When Information is "Public"

If you are aware of material nonpublic information, you may not trade until the information has been disclosed broadly to the marketplace (such as by press release or an SEC filing) and the investing public has had time to consider the information fully. To avoid the appearance of impropriety, as a general rule, information should not be considered fully absorbed by the marketplace until after the second business day after the information is released. If, for example, Tetra Tech were to make an announcement on a Monday, you should not trade in our stock until Wednesday. If an announcement were made on a Friday, Tuesday generally would be the first eligible trading day.

## E.    Transactions by Family Members

The insider trading policy also applies to your family members who reside with you, anyone else who lives in your household, and any family members who do not live in your household but whose transactions in Company securities are directed by you or are subject to your influence or control (such as parents or children who consult with you before they trade in company securities). You are responsible for the transactions of these other persons and therefore should make them aware of the need to confer with you before they trade in our stock.

TT0258

**TETRA TECH, INC. AND SUBSIDIARIES**
Insider Trading Policy

### F.  Transactions Under Tetra Tech Plans

1. <u>Stock Option Exercises</u>
Tetra Tech's insider trading policy does not apply to the exercise of an employee stock option, or to the exercise of a tax withholding right pursuant to which you elect to have us withhold shares subject to an option to satisfy tax withholding requirements.  The policy does apply, however, to any sale of stock as part of a broker-assisted cashless exercise of an option, or any other market sale for the purpose of generating the cash needed to pay the exercise price of an option.

2. <u>Employee Stock Purchase Plan</u>
Tetra Tech's insider trading policy does not apply to purchases of our stock in the employee stock purchase plan resulting from your periodic contribution of money to the plan pursuant to the election you made at the time of your enrollment in the plan.  The policy also does not apply to purchases of our stock resulting from lump sum contributions to the plan, provided that you elected to participate by lump-sum payment at the beginning of the applicable enrollment period.  The policy does apply to your election to participate in the plan for any enrollment period, and to your sales of Tetra Tech stock purchased pursuant to the plan.

### G.  Additional Prohibited Transactions

Tetra Tech considers it improper and inappropriate for any director, officer or other employee to engage in short-term or speculative transactions in our stock. Accordingly, it is Tetra Tech's policy that directors, officers and other employees may not engage in any of the following transactions:

1. <u>Short-term Trading</u>
An employee's short-term trading of our stock may be distracting to you and may cause you to unduly focus on our short-term stock market performance instead of our long-term business objectives.  For these reasons, any director, officer or other employee with material non-public information who purchases our stock in the open market may not sell any Tetra Tech stock during the six months following the purchase.  This prohibition applies only to purchases made in the open market, and does not apply to stock option exercises or other employee benefit plan acquisitions.

2. <u>Short Sales</u>
Short sales of our stock evidence an expectation on the part of the seller that the securities will decline in value, and therefore signal to the market that the seller has no confidence in Tetra Tech or its short-term prospects.  In addition, short sales may reduce the seller's incentive to improve the Company's performance. For these reasons, short sales of our stock are prohibited by this Policy Statement.  In addition, Section 16(c) of the Exchange Act prohibits officers and directors from engaging in short sales.

TT0259

3.  <u>Hedging Transactions</u>

Certain forms of hedging or monetization transactions, such as zero-cost collars and forward sale contracts, allow an employee to lock in much of the value of his or her stock holdings, often in exchange for all or part of the potential for upside appreciation in the stock.  These transactions allow the director or employee to continue to own the covered securities, but without the full risks and rewards of ownership.  When that occurs, the director or employee may no longer have the same objectives as other shareholders.  Therefore, Tetra Tech strongly discourages you from engaging in such transactions.  Any person wishing to enter into such an arrangement must first pre-clear the proposed transaction with our General Counsel, and any request for pre-clearance must be submitted at least one week prior to the proposed execution of documents evidencing the proposed transaction.

4.  <u>Margin Accounts and Pledges</u>

Securities held in a margin account may be sold by the broker without the customer's consent if the customer fails to meet a margin call.  Similarly, securities pledged (or hypothecated) as collateral for a loan may be sold in foreclosure if the borrower defaults on the loan.  Because a margin sale or foreclosure sale may occur at a time when the pledgor is aware of material nonpublic information or otherwise is not permitted to trade in Tetra Tech stock, directors, officers and other employees are prohibited from holding our stock in a margin account or pledging our stock as collateral for a loan.  An exception to this prohibition may be granted where a person wishes to pledge Tetra Tech stock as collateral for a loan (including margin debt) and clearly demonstrates the financial capacity to repay the loan without resort to the pledged stock.  Any person who wishes to pledge our stock as collateral for a loan must submit a request for approval to our General Counsel at least one week prior to the proposed execution of documents evidencing the proposed pledge.

5.  <u>Post-Termination Transactions</u>

The Policy Statement continues to apply to your transactions in Tetra Tech stock even after you have terminated employment.  If you are in possession of material nonpublic information when your employment terminates, you may not trade in our stock until that information has become public or is no longer material.

IV.    **COMPANY ASSISTANCE**

Any person who has a question about this Policy Statement or its application to any proposed transaction may obtain additional guidance from our General Counsel in Pasadena at (626) 351-4664.  Ultimately, however, the responsibility for adhering to this Policy Statement and avoiding unlawful transactions rests with the individual employee.

TT0260

**TETRA TECH, INC. AND SUBSIDIARIES**
**Insider Trading Policy**

V.    **CERTIFICATION**

All employees must certify their understanding of and intent to comply with this Policy Statement. The certification that employees (other than executive officers) must sign is included as part of the Company's Acknowledgment form. Directors, executive officers and members are subject to additional restrictions on their transactions in Tetra Tech stock, which are described in a separate memorandum. Directors, executive officers of the finance organization should sign the certification attached to that memorandum.

TT0261

# TETRA TECH, INC. AND SUBSIDIARIES
# Substance Abuse Policy Statement

## I.    INTRODUCTION

Tetra Tech, Inc. and its subsidiaries (herein referred to as Tetra Tech or the Company) are committed to providing employees with a safe and healthy work environment, free from the effects of drug and alcohol abuse.  To demonstrate our commitment to that goal, Tetra Tech has implemented a substance abuse policy.

## II.    POLICY STATEMENT

This policy prohibits the unlawful manufacture, distribution, dispensation, possession, or use of controlled substances on any Company-owned or leased space, client facility or work site.  The policy further states that employees shall not use alcohol or drugs on or off Company property where its usage affects their ability to perform their jobs.

In order to enforce this policy, the Company may investigate potential violations and require personnel to undergo drug/alcohol screening, including urinalysis, blood tests or other appropriate tests.  The Company may also conduct searches of all areas of the Company premises, including, but not limited to work areas, rest rooms, break areas, personal articles, employee's clothes, desks, work stations, lockers, and personal and Company-owned vehicles.

Violation of this policy or any of its provisions may result in disciplinary action up to and including termination of employment.  Employees may be subject to discipline up to and including termination for refusing to cooperate with searches or investigations, refusing to submit to screening, or failing to execute consent forms when required by supervisors.

Employees who are convicted of any criminal drug statute for a violation occurring in the workplace are required to notify their human resources representative no later than five days after the conviction.  It shall also be the responsibility of each employee who observes or has knowledge of another employee in a condition which impairs the employee to perform his or her job duties or who presents a hazard to the safety and welfare of others to promptly report that fact to his or her immediate supervisor.

## III.    EMPLOYEE ASSISTANCE PROGRAMS

Employees who are experiencing problems with drug and/or alcohol abuse are urged to participate in a Company-sponsored Employee Assistance Program (EAP) where available.   Volunteering to participate in an EAP to address substance abuse problems does not relieve an employee of the obligation to satisfy the Company's standards regarding an employee's performance, and participation will not prevent the Company from administering discipline for violation of its policies.

TT0262

**TETRA TECH, INC. AND SUBSIDIARIES**
Substance Abuse Policy Statement

**EMPLOYEE ASSISTANCE PROGRAMS (continued)**

It is the responsibility of the employee to seek and accept assistance before drug and alcohol problems lead to disciplinary action. Confidentiality of records and information will be maintained in accordance with all local, state, and federal laws.

## IV.    TESTING

Tetra Tech shall conduct drug or alcohol tests in the following circumstances:

A. Where there is reasonable suspicion that an employee may have violated the rules set forth in this policy. Reasonable suspicion may arise from, among other factors, supervisory observation, co-worker reports or complaints, performance decline, attendance or behavioral changes, results of drug searches or other detection methods or involvement in a workplace or vehicular accident indicating a possible error in judgment or negligence.

B. Prior to employment as required by any Tetra Tech entity which has implemented a pre-employment drug screening program. All offers of employment for those entities will be contingent upon the results of the drug test. Job applicants must submit to a drug test. Refusal to submit or a positive confirmed drug test may be used as a basis for refusal to hire the applicant.

C. The Company shall subject applicants and current employees to pre-employment drug testing and/or random drug testing when required through specific project contracts. Affected employees will be notified of such drug testing requirements and will be included in project specific drug testing programs in accordance with applicable federal, state or local regulations.

D. Drug testing may also be conducted as part of or as follow up to a prescribed treatment program for substance abuse.

Note: Some Tetra Tech entities have a supplemental Substance Abuse Policy with additional guidelines that are required due to the Drug Free Workplace Act or contractual requirements. Copies of these policies are available for review from your Human Resources Department.

**TT0263**

# TETRA TECH, INC. AND SUBSIDIARIES
# Worker's Compensation Program

Worker's compensation is a state-mandated insurance program that provides medical and disability benefits to employees who become disabled due to job related injury or illness. Tetra Tech, Inc. and its subsidiaries (Tetra Tech or Company) pay premiums on behalf of their employees. This program is based on a no-fault system, and benefits are provided as an exclusive remedy to the injured employee regardless of fault. The type of injuries or illnesses covered and the amount of benefits paid are regulated by the state worker's compensation boards and vary from state to state.

Corporate Administration in Pasadena is responsible for administering the Company's worker's compensation program. The following is a general explanation of worker's compensation provided in the event that you become injured or develop an illness as a result of your employment with Tetra Tech or any of its subsidiaries. Please be aware that the term used for worker's compensation varies from state to state.

## WHO IS COVERED
All employees of Tetra Tech, whether they are on a full-time, part-time or temporary status, working in an office or in the field, are entitled to worker's compensation benefits from the first day of work. If you are working out-of-state and away from your home office, you are still eligible for worker's compensation benefits. Consultants, independent contractors, employees of subcontractors and employees from temporary employment agencies are not covered by Tetra Tech's plan.

## WHAT IS COVERED
If you are injured or develop an illness caused by your employment, worker's compensation benefits are available to you subject to the laws of the state in which you work. Injuries do not have to be serious; even injuries treated by first aid practices are covered.

## WHAT YOU SHOULD DO IF YOU ARE INJURED OR DEVELOP AN ILLNESS AS A RESULT OF YOUR EMPLOYMENT
- If you are injured, stop work as needed to ensure no further harm is done.
- If injury or illness is minor, obtain first aid treatment if necessary.
- If injury or illness is severe or life threatening, obtain professional medical treatment at the nearest facility. Check with your office location or project health and safety plan for specific instructions.
- Immediately report any injury or illness to your supervisor, office manager or project site safety coordinator. In addition, you should contact your local human resources representative and subsidiary health and safety representative within 24 hours of the injury.
- You will be required to complete a Tetra Tech Accident and Illness Investigation Report (Form AR-1). This form is available on the intranet or from your subsidiary health and safety representative or HR representative.
- Your subsidiary health and safety representative may request that you participate in a more detailed investigation of the incident.

TT0264

**TETRA TECH, INC. AND SUBSIDIARIES**
**Worker's Compensation Program**

---

### CALIFORNIA EMPLOYESS
Contact your local human resources representative regarding physician pre-designation, state pamphlets and an employee claim form.

### CONTACTS
If you have any additional questions regarding the worker's compensation program, please contact your local human resources or health and safety representative. The Corporate Administration office in Pasadena, California can be contacted at (626) 470-2542.

---

TT0265

# TETRA TECH, INC. AND SUBSIDIARIES
# Employee Handbook Purpose

This employee handbook is intended only as a general guide to various personnel policies and employee benefits of Tetra Tech, Inc. and its participating subsidiaries (Company). It does not set forth any express or implied contractual obligations on the part of the Company. The Company retains the right to add, change or delete any of the handbook's provisions, or any other policies reflected therein, in management's sole judgment, at any time as circumstances may warrant without obtaining another person's consent or agreement.

In addition, nothing in this handbook creates or is intended to create a promise or representation of continued employment. Employment at the Company is employment at-will and may be terminated at the will of either the Company or the employee. You have the right to terminate your employment at any time, with or without cause or notice, and the Company has a similar right. Your status as an "at-will" employee may not be changed except in writing signed by the President or Chief Executive Officer of Tetra Tech, Inc. Employment at-will is the sole and entire agreement between the Company and you concerning the duration of your employment and the circumstances under which your employment may be terminated. This handbook shall supersede any and all prior handbooks, written documents or oral representations, issued by the Company, that contradict the at-will nature of your employment.

TT0266