**Medical Documentation - Includes letters from** ████████████████████

REDACTED

EEOC-D-0055

**Health Care Associates, P.A.**

Jane Govatos. MSN, FNP-C
*Family Nurse Practitioner*

Paul E. Gorrin, M.D.
*Internal Medicine*
*Allergy*

Margaret C. Gatti, MSN, FNP-
*Family Nurse Practitioner*

January 21, 2004

REDACTED

To Whom It May Concern,



Thank you for your cooperation in this matter.

Sincerely,

Paul E. Gorrin, M.D.

EEOC-D-0056

**CERTIFICATE TO RETURN TO WORK OR SCHOOL**

Mr
Mrs
Ms ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

was under my care from 4|7|05 to 4|7|05

and will be able to return to work/school on 4|8|05

Remarks ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Dr _Richard Kim_     Phone ▓▓▓▓▓▓▓
Address _1941 Limestone_     Date 4|7|05
_Wilmington De 19899_

©1996 Glaxo Wellcome Inc. All rights reserved. Printed in USA. CF267RR2 August 1996    *GlaxoWellcome*

REDACTED

Receipt For Services
---------------------

RICHARD KIM
ASTHMA & ALLERGY CARE OF DE
1941 LIMESTONE ROAD
WILMINGTON        DE 19808
Phone: ████████
Tax I.D. No ████████

REDACTED

JOURDEAN LORAH
114 WALLS AVENUE

WILMINGTON        DE  19805

Date:  06/14/05
Bill No.:889785
Patient No.: 053463-00

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 06/14/05 | DOCTOR'S OFFICE | ████ | ████████ | 1 | 96.00 |
| 06/14/05 |  |  | PYMNT:324 ████████ |  | 23.00- |
| 06/14/05 | DOCTOR'S OFFICE | ████ | ████████ | 1 | 23.00 |

Check No/CC:

Balance:        96.00

Diagnosis  1. ████████  4.
           2. ████████  5.
           3. ████████  6.

| current | 30 - 60 | 60 - 90 | 90 - 120 | 120 + |
|---------|---------|---------|----------|-------|
| 46.00 | 0.00 | 0.00 | 0.00 | 0.00 |

EEOC-D-0058

```
                        Receipt For Services
                        --------------------
    RICHARD  KIM
    ASTHMA & ALLERGY CARE OF DE
    1941 LIMESTONE ROAD
    WILMINGTON        DE 19808
    Phone:
```





```
                                    Date:  05/17/05
                                    Bill No.:882020
                                    Patient No.: 053463-00
```

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 05/17/05 | DOCTOR'S OFFICE | | ▓▓▓▓▓> 1 | 1 | 23.00 |
| 05/17/05 | | | PAYMENT:264 | | 23.00- |



REDACTED

```
        Check No/CC:
                                        Balance:        0.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Diagnosis  1.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   4.
           2.                          5.
           3.                          6.
```

```
current      30 - 60    60 - 90   90 - 120  120 +
   0.00        0.00       0.00       0.00    0.00
```

EEOC-D-0059

Receipt For Services
--------------------

RICHARD KIM
ASTHMA & ALLERGY CARE OF DE
1941 LIMESTONE ROAD
WILMINGTON          DE 19808
Phone: 302-995-2952

REDACTED



Date:  05/23/05
Bill No.:883391
Patient No.: 053463-00

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 05/23/05 | DOCTOR'S OFFICE | | | 1 | 60.00 |
| 05/23/05 | | | PAYMENT:282 | | 30.00- |
| 05/23/05 | DOCTOR'S OFFICE | | | 7 | 196.00 |
| 05/23/05 | DOCTOR'S OFFICE | | | 1 | 24.00 |

Check No/CC:

Balance:    250.00

Diagnosis  1.                    VE 4.
           2.                       5.
           3.                       6.

| current | 30 - 60 | 60 - 90 | 90 - 120 | 120 + |
|---------|---------|---------|----------|-------|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

EEOC-D-0060

Receipt For Services
--------------------

RICHARD KIM
ASTHMA & ALLERGY CARE OF DE
1941 LIMESTONE ROAD
WILMINGTON          DE 19808
██████████████████



JOURDEAN LORAH
██████████████
██████████████████████

Date:  05/31/05
Bill No.:885714
Patient No.: 053463-00

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 05/31/05 | DOCTOR'S OFFICE | ████████ | ████████ 1 | 1 | 23.00 |
| 05/31/05 | | | PAYMENT:292 | | 23.00- |

Check No/CC:                                    Balance:     0.00

---------------------------------------------------------------------
Diagnosis ██████████████████   4.
          2.                    5.
          3.                    6.

| current | 30 - 60 | 60 - 90 | 90 - 120 | 120 + |
|---------|---------|---------|----------|-------|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

EEOC-D-0061

```
                        Receipt For Services
                        --------------------
   ·RICHARD  KIM
   ASTHMA & ALLERGY CARE OF DE
   1941 LIMESTONE ROAD
   WILMINGTON      DE 19808
```




```
                                        Date:  06/14/05
                                        Bill No.:887964
                                        Patient No.: 053463-00
```

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 06/07/05 | DOCTOR'S OFFICE | | | 1 | 96.00 |
| 06/07/05 | | | PAYMENT:311 | | 23.00- |
| 06/07/05 | DOCTOR'S OFFICE | | | 1 | 23.00 |

```
        Check No/CC:
                                        Balance:      96.00
--------------------------------------------------------------------
Diagnosis  1.                                          4.
           2.                                          5.
           3.                                          6.
====================================================================

current    30 - 60    60 - 90    90 - 120    120 +
  46.00       0.00       0.00        0.00      0.00
```

EEOC-D-0062



Springfield, Virginia 22150
703. 922. 1000

KAISER PERMANENTE
Medical Center
Springfield

REDACTED

## MEDICAL STATEMENT

### JUNE 15, 2000

Patient:
Diagnosis:

The patient is

The patient also has a history of                                There is no history                    Her

She was

John R. Vroom, M.D.
Allergist

Mid-Atlantic Permanente Medical Group, P.C.
Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.

EEOC-D-0063

REDACTED

ORTHOPEDIC SPECIALISTS, P.A.
ANDREW J. GELMAN, D.O.
MOHAMMAD KAMALI, M.D.
JOSEPH MESA, M.D.
DOUGLAS PALMA, M.D.
J. DOUGLAS PATTERSON, M.D.
MICHAEL DOWD, PA-C
CRAIG KATZ, PA-C
1096 OLD CHURCHMANS ROAD
NEWARK, DE 19713-2102

(302) 655-9494

DEA #
LIC. #

NAME Lorah Gordon                    AGE
                                      DATE 4/30/05
ADDRESS

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞

Refill            times
Substitution Permitted

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, THE
PRESCRIBER MUST HAND WRITE "BRAND NECESSARY" OR "BRAND
MEDICALLY NECESSARY" IN THE SPACE BELOW.

SGQS02908GE

REDACTED

**FAX:**  (215)-440-2604

**TO:**  EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

      ATTENTION: GEORGE MARINUCCI

**FROM:** JOURDEAN LORAH

&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

**DATE:** APRIL 12, 2006

CHARGE NUMBER 170-2005-02819

**NUMBER OF PAGES INCLUDING COVER PAGE:** ____

**COMMENTS:** My last unemployment check will be received by April 14, 2006. There is no more money in the account. I am still unemployed and I am unable to find a job. The doors are closed and John Traynor —manager of Tetra Tech Inc. is the problem. Recently, I have been harassed in various places where I attend, such as; exercise class, grocery store, the park where I walk, the library etc. Apparently, Mr. John Traynor is involved with many people in the community. His name is mentioned often related to job interviews, court proceedings and my right to enjoyment. Mr. John Traynor and my exercise instructor does not want me to be involved with any activities of enjoyment or to become employed. I have notified the Human Relations Board and the Consumer Regulatory Board regarding my rights and my intellectual property (art work). I have reason to believe that Mr. Traynor is restricting me thus while I am isolated and in adult poverty (welfare). I want all of those people involved to be charged and fined. The last

EEOC-D-0071

2.

deputy ruling was not in the employer's favor. The ruling

states that there was no misconduct found on my behalf. I have

enclosed a copy of the ruling. It is consistent with all

three rulings in the last two years. I am also including

a copy of the police report which proves that Mr. Traynor has

violated my rights concerning an old police report that has been

expunged (over eighteen years ago). I am a witness and I am

tired of Mr. Traynor's greed and his discriminating manner.

I will be proceeding in court to address my rights which have

been violated and my intellectual property regarding my

background (Martin Luther King Library). I need to be

employed full time so that I may take care of my mother who

is now taking care of me financially. It is a burden on her

and she has to borrow money while I seek charity to pay the

bills.

Sincerely,

Jourdean Lorah

Jourdean Lorah      4|13|06

EEOC-D-0072

04/13/2006  12:09  30276165'  DEPTOFLABOR  PAGE 03

**DISTRICT COURT OF MARYLAND FOR**

410 - 486 - 3101

LOCATED AT (COURT ADDRESS)

Dist Ct Bethesda, Bethesda, MD

PIKESVILLE, MD
HEADQUARTERS

REDACTED

022017D2

LORAH, Jourdean Sarah    possesion of CDS

022017D2    022017D2    LOCAL POLICE  022017D2

TFC K George, Kyle D    Trooper    LORAH, Jourdean Sarah

MSP    63-15    1308

N 2179    Brown

301  424-2101    301  424-2101    703  620 6412    703  6206412

901 W Mont. Ave

Rockville, MD    20850    01/ 22051

022017D2

## STATEMENT OF CHARGES

THE DEFENDANT HAS BEEN ARRESTED UPON THE FOLLOWING INFORMATION OR OBSERVATION: (MAKE A PLAIN, CONCISE AND DEFINITIVE STATEMENT OF ESSENTIAL FACTS CONSTITUTING THE OFFENSE CHARGED)

The Def was involved in an accident westbound I 495 at Rt 185 on 1/7/87 at 0226hrs.

During a search incident to arrest a small tin foil container

was found in the purse of the def it contained suspected CDS to wit PCP Also found in

plain view on the inside of the chevy she were burnt ends of rolled cigarette, suspected

CDS to wit Marijuana.  OF DRUGS  IDthrough training with the state police.

IT IS FORMALLY CHARGED THAT THE DEFENDANT    (CONTINUED ON ATTACHED SHEET CR701A OR CC/CR1A)

MDCCSS    AR    ON OR ABOUT (DATE)    AT (PLACE)

1  4-3550    541116    on 1/7/87 at 0226 hrs at westbound L495 at Rt 185 in Mont Co, MD

;;.... did possess a CDS of schedule I and 3  to wit PCP and Marijuana

*20 YEARS AGO*

*ALL LAB REPORTS*

*ARE CLEAN*

*0 BLOOD*

*0 ALCOHOL*

IN VIOLATION OF:
MD ANN. CODE, ART.  27

*MIRANDA RIGHTS*

COMAR OR AGENCY CODE NO.

*PASSENGER PLACED*

PUB. LOCAL LAW, ART.    SEC.

AGAINST THE PEACE,
GOVERNMENT AND
DIGNITY OF THE STATE.

CONTINUED ON ATTACHED SHEET C

*CIGARETTE ON MY DASH*

EOOC-D-0073

I SOLEMNLY AFFIRM UNDER THE P
MATTERS AND FACTS SET FORTH IN
TRUE TO THE BEST OF MY KNOWLEDGE

*& SUBSTANCE IN MY PURSE.*

EMENT OF CHARGES AND HAVE DETERMINED THAT
I TO DETAIN THE DEFENDANT

USE TO DETAIN THE DEFENDANT AND I HAVE
HIM ON HIS OWN RECOGNIZANCE

DATE  1/7/87    ARRESTING OFFICER    11-7-87    OFFICER    COMMISSIONER ID NO.  6081

04/13/2006  12:09  30276165    DEPTOFLABOR                              PAGE  04

**DISTRICT COURT OF MARYLAND FOR**

LOCATED AT (COURT ADDRESS)
Bethesda Dist.CT, Ber    ,MD

| STATE OF MARYLAND - VS - | DEFENDANT LORAH, Jourdean Sarah | DOB 01/27/87 | TRACKING NUMBER 022017D2 |
|---|---|---|---|

## STATEMENT OF CHARGES (CONTINUED)

UPON THE FACTS CONTAINED IN THE SWORN APPLICATION OF (NAME AND ADDRESS OF APPLICANT)
TFC Kyle D George  901 W. Mont Ave, Rockville,MD

IT IS FORMALLY CHARGED THAT THE DEFENDANT

MDCCS    AR    ON OR ABOUT (DATE)    AT (PLACE)
4-3550  541116  on 1/7/87 at 0026 hrs at westbound I 495 at Rt 185 in Mont Co,md

....did possess a CDS schedule II  to wit PCP

IN VIOLATION OF:
[X] MD ANN. CODE, ART. 27    SEC. 287    [ ] COMMON LAW OF MD:    [ ] PUB. LOCAL LAW, ART.    SEC.
                                                                              AGAINST THE PEACE,
                                                                              GOVERNMENT AND
                                                                              DIGNITY OF THE STATE.
[ ] COMAR OR AGENCY CODE NO.    [ ] ORDINANCE NO.
MDCCS    AR    ON OR ABOUT (DATE)    AT (PLACE)

IN VIOLATION OF:
[ ] MD ANN. CODE, ART.    SEC.    [ ] COMMON LAW OF MD:    [ ] PUB. LOCAL LAW, ART.    SEC.
                                                                              AGAINST THE PEACE,
                                                                              GOVERNMENT AND
                                                                              DIGNITY OF THE STATE.
[ ] COMAR OR AGENCY CODE NO.    [ ] ORDINANCE NO.
MDCCS    AR    ON OR ABOUT (DATE)    AT (PLACE)

IN VIOLATION OF:
[ ] MD ANN. CODE, ART.    SEC.    [ ] COMMON LAW OF MD:    [ ] PUB. LOCAL LAW, ART.    SEC.
                                                                              AGAINST THE PEACE,
                                                                              GOVERNMENT AND
                                                                              DIGNITY OF THE STATE.
[ ] COMAR OR AGENCY CODE NO.    [ ] ORDINANCE NO.
MDCCS    AR    ON OR ABOUT (DATE)    AT (PLACE)

IN VIOLATION OF:
[ ] MD ANN. CODE, ART.    SEC.    [ ] COMMON LAW OF MD:    [ ] PUB. LOCAL LAW, ART.    SEC.
                                                                              AGAINST THE PEACE,
                                                                              GOVERNMENT AND
                                                                              DIGNITY OF THE STATE
[ ] COMAR OR AGENCY CODE NO.    [ ] ORDINANCE NO.

[ ] CONTINUED ON ATTACHED SHEET (FORM DC/CR 2A)                    EEOC-D-0074

| DATE 1/7/87 | TIME 0500hrs | JUDICIAL OFFICER/ARRESTING OFFICER TFC Kyle D George 1308 |
|---|---|---|

04/13/2006  12:09   30276165          DEPTOFLABOR                    PAGE  05

## STATE OF MARYLAND

## OFFICIAL COPY – RESULTS OF CHEMICAL TEST

Case No. 87-008

Citation No. D665972

NAME OF PERSON ARRESTED  Jourdean Shrah Lorah

DATE OF ARREST  1-01-81        TIME OF ARREST  0226 hr

DATE SPECIMEN COLLECTED  1-01-87    TIME SPECIMEN COLLECTED  0354 hr

TYPE OF SPECIMEN COLLECTED:  BLOOD _____    BREATH  ✓

    This is to certify that the above specimen was obtained using equipment approved by The Toxicologist under the Post Mortem Examiner's Commission from the above named person at the direction of the arresting officer.

    The specimen was tested for alcohol with equipment approved by The Toxicologist under the Post Mortem Examiner's Commission at the direction of the arresting officer.  The serial number of the test equipment is  6522 _____.

    Said specimen was found to contain ___.00___ % ethyl alcohol by weight.

    The above named defendant is hereby notified that the results of the chemical test will be presented as evidence at the criminal trial without the presence or testimony of the technician or analyst who performed the test unless the defendant or defense attorney notifies the State's Attorney and the court in writing no later than ten (10) days before trial that the defendant desires the technician or analyst to be present in court.

    I, the undersigned technician or analyst, am a "qualified person" as defined in Section 10-304 of the Courts and Judicial Proceedings Article, and I certify that the result of the test is as stated above

Cpt. Earl S. Page  4216 _____    MSP Bk N Rockville
Chemical Test Technician or Analyst and No.          Police Agency – Station/Barracks

_____ 1305        MSO  Bk n Rockville
Arresting Officer and No.                    Police Agency – Station/Barracks

_____    _____
Defendant Signature (Breath Test Only)      Date and Time Defendant Received Copy

Distribution:  Original-Arresting Officer for Court
             1st copy-State's Attorney's Office
             2nd copy-Defendant

EEOC-D-0075

MSP Form #33 (7-84)

04/13/2006  12:09   30276165          DEPTOFLABOR                    PAGE  05

REDACTED

# STATE OF DELAWARE
## DRIVING RECORD

DATE 06/20/02

PAGE NO. 1

| NAME AND RESIDENTIAL ADDRESS | | LICENSE NUMBER | LICENSE CLASS | | ENDORSEMENTS | |
|---|---|---|---|---|---|---|
| LORAH JOURDEAN SARAH | | 1406630 | CLASS D | | | |
| | | DATE OF BIRTH | SEX | EYES | HEIGHT | WEIGHT |
| MAILING ADDRESS | | | | | | |

| LICENSE STATUS | | ORIGINAL ISSUE DATE | CURR. LIC. ISSUED | LICENSE EXPIRES | RESTRICTIONS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PVT-VALID   CDL- | | 06/04/2002 | 06/04/2002 | 01/27/2007 | | | | | | |
| VIOLATION / DEPARTMENTAL ACTION | | DATE ACTION/ VIOLATION | REFERENCE NUMBER | COURT NO. | CMV | HAZ MAT | ACC | POINTS |
| LIC SURR/VA-212241460 | | 06/04/02 | | | | | | |
| | | | | | | | | 000 |
| TOTAL POINTS | | | | | | | | |
| 2002062030205507LSD 0000400LD 1406630 | | | | | | | | |

EEOC-D-0076

I, the undersigned, an officer of the Division of Motor Vehicles for the State of Delaware, in whose charge the above records are, DO HEREBY CERTIFY that the above is a true and correct copy of the driving record of the above

MOTOR VEHICLE DIVISION

**Medical Documentation – Includes letters** ███████████████ **reatment**

REDACTED

REDACTED

EEOC-D-0115

**Health Care Associates, P.A.**

Jane Govatos. MSN, FNP-C
*Family Nurse Practitioner*

Paul E. Gorrin, M.D.
*Internal Medicine*
*Allergy*

Margaret C. Gatti, MSN, FNP-
*Family Nurse Practitioner*

January 21, 2004



To Whom It May Concern,

Jourdean Lorah has 

Thank you for your cooperation in this matter.

Sincerely,

Paul E. Gorrin, M.D.

EEOC-D-0116

REDACTED

## CERTIFICATE TO RETURN TO WORK OR SCHOOL

Mr
Mrs
Ms  Jourdean Lorah

was under my care from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

and will be able to return to work/school on ▓▓▓▓▓▓▓▓▓▓

Remarks ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Dr  Richard Kim          Phone 695-2952

Address 1941 Limestone          Date 4/7/05

Wilmington De 19899

©1998 Glaxo Wellcome Inc. All rights reserved. Printed in USA. CF2627R2 August 1998          *GlaxoWellcome*

EEOC-D-0117

Receipt For Services
--------------------

RICHARD KIM
ASTHMA & ALLERGY CARE OF DE
1941 LIMESTONE ROAD
WILMINGTON    DE 19808
Phone: 302-995-2952



REDACTED

JOURDEAN LORAH



Date:  06/14/05
Bill No.:889785
Patient No.: 053463-00

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 06/14/05 | DOCTOR'S OFFICE | | 5 SINGLE S... | 1 | 96.00 |
| 06/14/05 | | | PAYMENT:324 | | 23.00- |
| 06/14/05 | DOCTOR'S OFFICE | | ...1 | 1 | 23.00 |

Check No/CC:

Balance:    96.00

Diagnosis   1.                    4.
            2.                    5.
            3.                    6.

| current | 30 - 60 | 60 - 90 | 90 - 120 | 120 + |
|---------|---------|---------|----------|-------|
| 46.00 | 0.00 | 0.00 | 0.00 | 0.00 |

EEOC-D-0118

```
                         Receipt For Services
                         --------------------
        RICHARD  KIM
        ASTHMA & ALLERGY CARE OF DE                          REDACTED
        1941 LIMESTONE ROAD
        WILMINGTON          DE 19808
        Phone: 302-995-2952
```



```
        JOURDEAN  LORAH


                                             Date:  05/17/05
                                             Bill No.:882020
                                             Patient No.: 053463-00
```

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 05/17/05 | | | > 1 | 1 | 23.00 |
| 05/17/05 | | | PAYMENT:264 | | 23.00- |

```
        Check No/CC:
                                             Balance:     0.00
    ------------------------------------------------------------------------
    Diagnosis  1.                          4.
               2.                          5.
               3.                          6.

    current   30 - 60   60 - 90   90 - 120  120 +
      0.00       0.00      0.00       0.00    0.00
```

EEOC-D-0119

Receipt For Services
--------------------

RICHARD KIM
ASTHMA & ALLERGY CARE OF DE
1941 LIMESTONE ROAD
WILMINGTON      DE 19808
Phone: 302-995-2952

█████████████████

JOURDEAN LORAH
████████████████████
████████████████████

Date:  05/23/05
Bill No.:883391
Patient No.: 053463-00

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 05/23/05 | ████████ | ████ | ████████ | 1 | 60.00 |
| 05/23/05 | | | PAYMENT:282 ████████ | | 30.00- |
| 05/23/05 | ████████ | ████ | ████████ | 7 | 196.00 |
| 05/23/05 | | | ████████ | 1 | 24.00 |

Check No/CC:

Balance:      250.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Diagnosis  1. ████████████████ E 4.
           2. ████████          5.
           3.                   6.

| current | 30 - 60 | 60 - 90 | 90 - 120 | 120 + |
|---------|---------|---------|----------|-------|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

EEOC-D-0120

## Receipt For Services



RICHARD KIM
ASTHMA & ALLERGY CARE OF DE
1941 LIMESTONE ROAD
WILMINGTON      DE 19808
Phone: 302-995-2952

JOURDEAN LORAH



Date: 05/31/05
Bill No.:885714
Patient No.: 053463-00

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 05/31/05 | | | | 1 | 23.00 |
| 05/31/05 | | | PAYMENT:292 | | 23.00- |



Check No/CC:                    Balance:     0.00

Diagnosis   1.                    4.
             2.                    5.
             3.                    6.

| current | 30 - 60 | 60 - 90 | 90 - 120 | 120 + |
|---------|---------|---------|----------|-------|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

EEOC-D-0121

Receipt For Services
--------------------

RICHARD KIM
ASTHMA & ALLERGY CARE OF DE
1941 LIMESTONE ROAD
WILMINGTON    DE 19808
Phone: 302-995-2952



JOURDEAN LORAH



Date:  06/14/05
Bill No.:887964
Patient No.: 053463-00

| Date | Place of Service | Proc Code | Procedure | Units | Charge |
|------|------------------|-----------|-----------|-------|--------|
| 06/07/05 | | | | 1 | 96.00 |
| 06/07/05 | | | PAYMENT:311 | | 23.00- |
| 06/07/05 | | | | 1 | 23.00 |

Check No/CC:

Balance:    96.00

Diagnosis  1.                    4.
           2.                    5.
           3.                    6.

| current | 30 - 60 | 60 - 90 | 90 - 120 | 120 + |
|---------|---------|---------|----------|-------|
| 46.00 | 0.00 | 0.00 | 0.00 | 0.00 |

EEOC-D-0122



Springfield, ▪aginia 22150
703 . 922 . 1000

REDACTED

**KAISER PERMANENTE**
Medical Center
Springfield

## MEDICAL STATEMENT

### JUNE 15, 2000

Patient:  Jourdean Lorah
Diagnosis:

The patient also has a history ██████████████████

*John R. Vroom, M.D.*
John R. Vroom, M.D.
Allergist

Mid-Atlantic Permanente Medical Group, P.C.
Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.

EEOC-D-0123



ORTHOPEDIC SPECIALISTS, P.A.
ANDREW J. GELMAN, D.O.
MOHAMMAD KAMALI, M.D.
JOSEPH MESA, M.D.
DOUGLAS PALMA, M.D.
J. DOUGLAS PATTERSON, M.D.
MICHAEL DOWD, PA-C
CRAIG KATZ, PA-C
1096 OLD CHURCHMAN'S ROAD
NEWARK, DE 19713-2102

(302) 655-9494                                    DEA #

                                                  DC #

NAME _____   AGE _____
                                        DATE 4/30/05
ADDRESS _____

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞

Refill _____ times

Substitution Permitted

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED, THE
PRESCRIBER MUST HANDWRITE "BRAND NECESSARY" OR "BRAND
MEDICALLY NECESSARY" IN THE SPACE BELOW.

5GQGS029086E

EEOC-D-0124

grievance/complaint, Respondent's response to the grievance and/or complaint, and a copy of the resulting findings or order, if any.

Tetra Tech is unaware if Ms. Lorah has raised any or all of the allegations contained in this charge with any other internal or external source or agency.

11. **State whether this matter has been resolved, and if not, how the matter might be resolved and your proposal for resolution.**

This matter has not yet been resolved. Tetra Tech believes there is no basis for Ms. Lorah's allegation of discrimination on the basis of retaliation, gender, age or disability and therefore wishes to have this charge dismissed.

EEOC-D-0212

ATTACHMENT A

EEOC-D-0213

JOB DUTIES FOR SURVEY ASST.

**Survey Assistant – Office**

Survey Assistant Field

Quality Control / Quality Assurance
(includes: transmittals, spelling, basic standards, consistency, proofreading, etc.)

Proposal Preparation

Clerical work includes organizing folders, filing, deliveries, etc.

CAD Drafting/Training

Assist Survey Manager (call clients, expense reports, letters, A/R, etc.)

EEOC-D-0214

ATTACHMENT B

EEOC-D-0215

ERU' MORAN JOB DESCRIPTION



### TETRA TECH, INC.

### JOB DESCRIPTION – Civil Engineer L-1

**Requirements** – Minimum of BS degree in civil engineering. Excellent writing and communication skills required. Must be computer literate and have knowledge of AutoCAD 2000, Eaglepoint and or Land Development Desktop.

**Job Responsibilities** – Performs tasks requiring utilization of basic engineering and analytical techniques. Independently performs engineering surveying, civil design document preparation, construction monitoring, grading design, stormwater management design and erosion and sediment control design. Work is reviewed for application of sound professional judgment.

**Position Reports To** – Department Manager

**Physical Requirements** - The job will require, but not be limited to, the following physical requirements:

The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee is regularly required to talk or hear. The employee frequently is required to stand; walk; sit; use hands to finger, handle, or feel; and reach with hands and arms. The employee is occasionally required to climb or balance; stoop, kneel, crouch, or crawl; and taste or smell. The employee must regularly lift and/or move up 10 pounds, frequently lift and/or move up to 25 pounds. Specific vision abilities required by this job include close vision, distance vision, color vision, peripheral vision, depth perception, and ability to adjust focus.

**Work Environment** – The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee may be expected to visit job sites, where he or she may be exposed to moving mechanical parts and outside weather conditions. The employee is occasionally exposed to wet and/or humid conditions, fumes and airborne particles, toxic or caustic chemicals, and vibration. The noise level in the work environment is usually moderate.

**Language Skills** – Ability to read and interpret documents such as engineering drawings and specifications, safety rules, operating and maintenance instructions, and procedure manuals.



**JOB DESCRIPTION – Civil Engineer L-1**

Page 2

Ability to write routine reports and correspondence.  Ability to speak effectively before groups of customer or employees of organization.

**Mathematical Skills** – Ability to calculate figures and amounts such as commissions, proportions, percentages, area, circumference, and volume.  Ability to apply concepts of algebra, geometry, trigonometry and basic calculus.

**Reasoning Ability** – Ability to apply common sense understanding to carry out instructions furnished in written, oral, or diagram form.   Ability to deal with problems involving several concrete variables in standardized situations.

*I understand the requirements of the position:*

_____         _____

*Signature of applicant or employee required*                              *Date*

H:\RECRUITM\Engineer - Civil-L-1.doc

EEOC-D-0217

ATTACHMENT C

EEOC-D-0218

DEC. 20. 2005 3:36PM    TETRA-TECH-INC.                    NO. 7836    P. 2/8



February 22, 2005

TetraTech
Attention-John Traynor
56 W. Main Street  Suite 400
Christiana, Delaware  19702



Dear John Traynor,

    The following letter is concerning a full time position as a civil designer or draftsman. Other positions related to various projects would be considered. Recently, I spoke with you about the various possibilities for a position as a civil designer.

    Presently, I have six years of experience working as a designer among architects and engineers on both residential and commercial projects. All projects have consisted of marketing for future and potential clients, space planning, drafting of floor plans, elevations, renderings and the selection of materials and finishes. Other related positions have included surveying of residential lots and working with a field crew to obtain field coordinates.

    My educational background includes; The Maryland College of Art & Design, The International Institute of Interior Design and Northern Virginia Community College. Currently, my credentials are a degree in Science. Other areas of interest include art, marketing and teaching. Your consideration to review my credentials for future opportunity would be most appreciated.

Sincerely,

Jourdean Lorah



EEOC-D-0219

DEC. 20. 2005ᵗ 3:37PMᴹᴹ    TETRA-TECH-INC.                    NO. 7836    P. 3/8

# jourdean sarah lorah

### Vital Statistics





### Objective

To work full time as a civil designer or draftsman among architects, engineers or designers on various commercial and residential projects.

### Highlights

- Marketing for future potential clients regarding expansions, merges and consolidations.
- Creative planning for visual presentations.
- Teaching all academies to special education or children who have learning disabilities.
- Planning creative projects for recreational positions during the summer.
- Drafting plans or deeds for architecture or surveying.
- Drawing and illustrating for visual communication.

### Technical Skills

- Drafting of architectural plans, elevations and renderings.
- Surveying and engineering for residential land lots.
- Working with a field crew to obtain coordinates for surveying a residential land lot.
- Designing commercial and residential interiors for architectural and aesthetic needs.
- Drawing and illustrating visuals to meet the aesthetic need of the client.
- Marketing fine art work to future clients for various projects.
- Drawing and painting for production.

### Work Related Experience

- Engineering – Drafting residential land lots and working with a field crew to obtain the coordinates for the deeds.
- Designing – Commercial and residential interiors for various design firms.
- Architecture – Drafting of elevations and plans for commercial and residential projects.

EEOC-D-0220

Page Two

# jourdean sarah lorah

- **Classroom Teaching** - A creative and meaningful approach was taken to encourage the learning experience, participation and active involvement.
- **Marketing** - Contacting future prospective clients for consolidations, merges and expansions. Fine art work is also marketed to meet the client's aesthetic needs.

## Work History

- June '02 - Present - Dale Larsen -Sport's Historian -Marketing-De.
- May '03 - August '03 - Private Health Care - De.
- Sept. '02 - December '02 -Librarian -Ocean City Christian School - Md.
- Jan. '01 - June '01 - Substitute Teacher -Fairfax County Public Schools - Va.
- Sept. '99 - June '00 - Teacher - Fairfax Brewster School - Va.
- June '99 - Aug. '99 - Teacher - Adult Education/Fairfax County Public Schools - Va.
- Sept. '98 - June '99 - Teacher - Way of Faith Ministry -Va.
- Sept. '97 - June '98 - Teacher - Cloverlawn Academy -Va.
- Sept. '96 - June '97 - Teacher - Christian Fellowship School - Va.
- 1994-1996 - Attended College to complete my degree.
- 1993 - North American Network - Public Service Announcements - News Directors/Radio- Washington, D.C.

## Credentials and Education

The Maryland College of Art & Design - Silver Spring, Maryland
The International Institute of Interior Design - Washington, D.C. - G.P.A. - 3.35
Northern Virginia Community College -Manassas, Virginia - G.P.A. -3.25-3.45/Honors

Associates Degree in Science with a major in General Studies

## Other

Interests - Painting, drawing, pottery, jewelry design and winter sports.

EEOC-D-0221

Susan Brewer
NOTES:
Jourdean  S. Lorah – Office Assistant  for the Survey Department - Synerfac – Hired
March 22, 2005 $14/per hour.

On May 11, Joudean telephoned me and requested a meeting w/me. Would not tell me
what the meeting was about when asking to schedule it. Meeting: She wanted to post a
notice in the Survey Dept regarding individuals discussing personal issues that may harm
the reputation or morale of others.  She spoke to her supervisor, John Traynor on 4/29.
John referred her to me.

- Thursday, May 12, Meeting with Jourdean - she informed me that on April 25
  another employee, Erin Moran, made a comment to her accusing Jourdean of
  being in a brothel.  Also, indicated that Erin talked about this topic to other
  employees. This allegedly took place during a visit to the County Planning
  Department.  She said that another Synerfac Tt temporary employee, Mat
  Mercado also made a comment directly to Jourdean regarding being in a brothel.

  Jourdean also mentioned Title 7 and the fact that she was older than Erin and the
  other people she is working with.

  Joudean mentioned that George Foxwell (Snyerfac employee) had invited her to
  lunch but, she declined the invitation.  She didn't want to stir up more rumors
  about her reputation since George is married.

  When I asked Jourdean for details and what the exact issues were, she could not
  give a straight answer.  She changed subjects often and answered out of context.
  I suggested that she may not have heard Erin correctly or perhaps misunderstood
  Erin's comment.

  On the same date, I conducted a meeting w/Erin and Jourdean to discuss the
  problem openly with both parties.

  Erin denied the accusations that Jourdean made and stated that Jourdean was not
  telling the truth.

  I suggested that all parties needed to resolve personality differences and their goal
  should be to be productive and to strive for a positive work environment.
  Personal differences needed to remain after hours and outside of this office, etc.
  They agreed. However, Jourdean left my office in a huff.

  Same date, I also called a meeting w/Jourdean, Mat and myself.  Mat did not
  know what the word "brothel" meant either, and also denied having said any such
  thing.  I gave the same speech about positive work environment and personality
  issues. Jourdean seemed satisfied at the conclusion of this meeting.

EEOC-D-0222

- Monday, May 16 – I telephoned Erin and Jourdean individually to inquire as to how things were going. Both stated that everything was going well. (Jourdean said, "that she would let me know if they weren't").

  I also called Greg Porter of Synerfac to inform the agency that Jourdean was having some problems and how Tetra Tech was handling the issues.

- Thursday, June 2 – I asked Jourdean how things were going and she stated, "great, fine." (with a smile on her face).

  Same date, George Foxwell came to me concerned that Jourdean was claiming some kind of harassment against him because he asked her to lunch. I assured him that she did not. However, she did mention the lunch request and her denial because George is a married man. George said that he only invited her because he didn't want to leave her out from the invitation that he had extended to the rest of the group.

- Tuesday, June 7 – Melissa Palese from Synerfac called me to report that Jourdean had requested a meeting w/her the day before. Melissa said that Jourdean told her the story about Erin and the brothel comment but, indicated that she thought that was resolved now. Jourdean also requested Melissa to help her regarding the following issues:

      No work space
      Low pay scale
      Title 7
      Training promise – not given. John Traynor does the work and Jourdean watches.
      Casey Grabowski (DIV employ) spreading rumors about Jourdean and a bacterial infection.
      Stated to Melissa that she has a "Corporate double who stole Jourdean's identity"
      John had asked her to attend an Engineering Dinner Meeting that she declined due to her unavailability. (computer class that evening).

  When John was questioned by me, he stated:
      Jourdean was trained how to use excel, word and windows (which she had no ability in previously). He has provided more than adequate training. She has learned very basic excel, word and windows since coming to Tt. Even though he expected to have to train someone regarding his expectations and Tt requirements, he also trained her in basic computer skills which she did not possess previously.

      Her work space was changed at the end of last week (6/3) to accommodate additional employees being hired (both outside temp agencies and Tetra Tech). She is now sharing a work station and equipment with a Tetra

EEOC-D-0223

Tech employee who works in the field as a survey asst., which she is not happy about.

George Foxwell also appeared in my office today to inform me that Jourdean is angry about her shared work space and is spraying windex so much that the over spray caused another Tetra Tech employee, Dan Luther, to move from his work area to avoid being sprayed.

- Friday, June 10 – My telephone interview with Casey Grabowski –

I asked Casey if he has had any issues w/Jourdeen in the last week or so that would cause her to think that he was spreading rumors about her. He said, no.

I asked if he has ever made any comments to others about her physical attributes, her age, her sex or a medical condition. He responded emphatically, no to all.

He did tell me that he has expressed his dissatisfaction with her skills to her in the past, i.e. – John put her in charge of the daily logs for 10 people. After two weeks of this task, Jourdean was still not doing hers correctly. Casey stated to Jourdean, "This is insanity" and Jourdean interpreted that to mean that Casey accused her of being insane. Casey's opinion is that Jourdean interprets conversations with individuals differently than most. He says that she does not interact well with any of the group.

I instructed him that our conversation was to be held in the strictest confidence.

Signed:    Susan F. Brewer
Manager, General Services and Administration

EEOC-D-0224

**To all Survey Personnel:**

**As a reminder, there shall be no personal issues to be discussed on company time, particularly issues that may intentionally harm someone's reputation or harm their morale.**

**Business relationships grow over time as your colleagues will become more respectful.**

**This also makes the company look and be more professional.**

Notice that Jourdean) wanted
permission to part on 5/11/05.
(Which made me meet w/ her).

EEOC-D-0225

ATTACHMENT D

EEOC-D-0226

# TETRA TECH, INC. AND SUBSIDIARIES
## Corporate EEO Statement

It is and will continue to be the policy of Tetra Tech, Inc., all its office locations and subsidiaries, to practice equal opportunity in all aspects of employment. All persons will be treated on the basis of qualifications, competence, and merit without regard to race, color, religion, gender, national origin, ancestry, age, disability, veteran status, or other categories as required by law.

Decisions concerning employment have and will continue to be based on those considerations which further the principle of equal employment opportunity. All other personnel actions such as compensation, benefits, transfers, layoffs, returns from layoff, company-sponsored training, education and tuition assistance, and social programs are and will continue to be administered in accordance with the Company's EEO policy. Every member of management is held responsible for assuring non-discrimination equal employment opportunity within his or her assigned area of responsibility.

Any questions or situations arising regarding equal opportunity should be directed to the Human Resources Department.

# TETRA TECH, INC. AND SUBSIDIARIES
# Code of Employee Conduct

### I.     POLICY STATEMENT

The Company is committed to maintaining a work environment that is free of harassment of any kind, including sexual harassment, harassment based upon race, color, sex, religion, sexual orientation, age, national origin, ancestry, citizenship status, marital status, disability, handicap, veteran status or any other reason prohibited by law. The Company will take prompt, appropriate corrective action if violations of this policy are discovered. Such action may include discipline up to and including termination of employment of the offending employee or employees. This policy applies to all Tetra Tech employees at all divisions.

### II.     DEFINITIONS

Harassment includes verbal, physical, and visual conduct that creates an intimidating, offensive, or hostile working environment or that interferes with work performance. Some examples include racial slurs or other offensive remarks; ethnic jokes; posting of offensive statements, posters or cartoons; or other similar verbal, graphic, or physical conduct, including inappropriate language.

Sexual harassment may include any unwelcome action that is sexual in content or implication. This includes but is not limited to:

- Verbal abuse of a sexual or suggestive nature including verbal sexual advances, propositions or requests;

- Unwelcome physical contact or sexual advances;

- Visual conduct, such as leering, making sexual gestures, displaying of sexually suggestive objects or pictures, cartoons or posters;

- Suggestive or obscene letters, notes or invitations; or

- The conditioning of employment benefits or employment conditions on sexual favors, including implied or overt threats concerning an individual's employment status, or implied or overt promises of preferential treatment in employment matters.

Sexual harassment also includes conduct of a sexual nature that interferes with an employee's work performance or creates an intimidating, hostile or offensive work environment. For example, sexual harassment may include such actions as sex-oriented kidding, teasing or jokes; repeated offensive sexual flirtation; or unwelcome display of posters, pictures, cartoons or drawings that are sexual in nature.

If you have any question regarding what may be considered sexual harassment, please contact your supervisor or manager, local human resources representative, or contact Corporate Human Resources in Pasadena at (626) 470-2489.

**TETRA TECH, INC. AND SUBSIDIARIES**
**Code of Employee Conduct**

---

### III.     REPORTING PROCESS

An employee who has an allegation regarding harassment should immediately bring it to the Company's attention. The employee should promptly contact his/her immediate supervisor (or manager) or, if the employee feels uncomfortable discussing the matter with that supervisor, with any of the following: the next highest level supervisor in the regular chain of command, his or her human resources representative, Corporate Human Resources in Pasadena at (626) 470-2489, or the Tetra Tech Hotline at 1-800-886-2577. Similarly, any employee who observes conduct that he/she believes may indicate that harassment has occurred or is occurring should bring this to the attention of his/her manager or Corporate Human Resources. Employees may be assured that they will not be penalized in any way for reporting a harassment problem.

An allegation will be promptly and thoroughly investigated. If the allegation is found to be meritorious, corrective action will be taken including appropriate disciplinary action up to and including termination.

Reports of harassment will be kept confidential and anonymous, except to the extent that some disclosure may be necessary for purposes of investigation or corrective action.

Harassment of employees in connection with their work by non-employees may also be a violation of this policy. Any employee who experiences harassment by a non-employee, or who observes harassment of an employee by a non-employee should report such harassment to his or her supervisor or to Corporate Human Resources. Appropriate action will be taken against violation of this policy by a non-employee.

Harassment of Tetra Tech's customers or employees or our customers, vendors, or suppliers by our employees is also strictly prohibited. Any such harassment will subject an employee to disciplinary action, up to and including termination.

Employee notification of the problem is essential to this Employee Code of Conduct. Tetra Tech cannot help resolve a harassment problem unless it is reported. It is the responsibility of each Tetra Tech employee to report those kind of problems so the Company can take whatever steps are necessary to correct the problem.

### IV.     PERSONAL APPEARANCE AND BEHAVIOR

In addition to our policy against harassment included in this Employee Code of Conduct, Tetra Tech maintains a Personal Appearance and Behavior policy. This policy is directed toward conduct that may not otherwise fall within the legal definition of harassment, but nonetheless projects image problems for the Company.

Tetra Tech does not have a company-wide formal dress policy. The Company relies on every employee's good judgment to dress appropriately for Tetra Tech's business and the job he or she is performing. Please avoid extremes in dress and appearance, however. Flashy, skimpy or revealing outfits and other non-business-like clothing are unacceptable.

---

**PERSONAL APPEARANCE AND BEHAVIOR (continued)**

Employees who report to work in unacceptable attire may be requested to leave work and return in acceptable attire. Such time off from work will generally be without pay.

Likewise, unprofessional behavior in the workplace, such as sexually related conversations, inappropriate touching (i.e. kissing, hugging, massaging, sitting on laps) of another employee, and any other behavior of a sexual nature is prohibited. Employees who fail to observe these standards will be subject to disciplinary action, up to and including termination.

**V.    NON-FRATERNIZATION**

The Company desires to avoid misunderstandings, actual or potential conflicts of interest, complaints of favoritism, possible claims of sexual harassment, and the employee morale and dissension problems that can potentially result from romantic relationships between managerial and supervisory employees and subordinate employees.

Accordingly, managers and supervisors are prohibited from fraternizing or becoming romantically or sexually involved with their subordinate employees of the Company. Managers and supervisors are also prohibited from fraternizing or becoming romantically or sexually involved with any employee where the manager or supervisor has possible influence in employment decisions or actions relating to that employee. Additionally, all employees, both managerial and non-managerial, are prohibited from fraternizing or becoming romantically or sexually involved with other employees when, in the opinion of the Company, their personal relationships may create a conflict of interest, cause disruption, create a negative or unprofessional work environment, or present concerns regarding supervision, safety, security, or morale.

An employee who is presently romantically or sexually involved with another employee, and such relationship could be considered to violate the policy described above, shall immediately and fully disclose the relevant circumstances to any of the following: the next highest level supervisor in the regular chain of command, his or her human resources representative, Corporate Human Resources in Pasadena at (626) 470-2489, or the Tetra Tech Hotline at 1-800-886-2577. The circumstances should then be relayed to the Senior Vice President of Administration so that a determination can be made as to whether the relationship violates this policy. If a violation is found, the Company shall take appropriate action according to the circumstances, up to and including transfer or termination. Failure to fully disclose facts about a relationship between employees may lead to disciplinary action, up to and including termination.

**VI.    MANAGEMENT RESPONSIBILITIES**

Supervisors (or managers) are responsible for creating and maintaining a positive and productive work environment. Supervisors are required to:

- Notify their human resources representative or Corporate Human Resources immediately of any allegations or evidence of harassment;

**TETRA TECH, INC. AND SUBSIDIARIES**
**Code of Employee Conduct**

---

### MANAGEMENT RESPONSIBILITIES (continued)

- Bring this policy to the attention of their subordinate supervisors and employees;

- Take all steps possible to eliminate any harassment they become aware of;

- Initiate corrective action in consultation with Corporate Human Resources whenever it appears a violation of this policy has occurred.

As representatives of the Company, supervisors and other members of Company management understand that they may be held personally liable and responsible for acts of harassment that they commit, condone, tolerate or fail to investigate. Therefore, if any member of management knows of or has reason to know of any act of harassment or the existence of a hostile, intimidating or offensive work environment in the workplace and fails to report it to higher management or fails to take immediate and appropriate corrective action, that member of management places themselves and the Company in serious jeopardy.

Members of management may not date (see Non-Fraternization above), engage in any sexual activity with, or make sexual advances, welcome or unwelcome, toward any subordinate employee. In addition, members of management are strictly prohibited from offering an employment benefit (such as a raise or promotion or assistance with one's career) in exchange for sexual favors, or threatening an employment detriment (such as termination, demotion, or disciplinary action) for an employee's failure to engage in sexual activity.

The Company requires all members of management to cooperate completely in the investigation of any claims of harassment and to refrain from penalizing any person for making a complaint of harassment.

Finally, if any member of management violates any aspect of this policy, they will be subject to disciplinary action, up to and including termination, and additionally, can be sued and held personally liable for their acts or omissions.

### VII.    FALSE INFORMATION

The Company recognizes that false accusations of unlawful harassment can be made, can be difficult to refute, and can have serious effects on innocent individuals. Any employee who knowingly makes a false accusation of unlawful harassment or provides false information in connection with such an accusation is also subject to appropriate disciplinary action, up to and including termination. We expect that all employees will act responsibly to establish a pleasant working environment free from unlawful harassment.

### VIII.    ENFORCEMENT

The Company will vigorously enforce this Employee Code of Conduct policy consistent with all applicable federal, state, and local laws.

---

EEOC-D-0231

ATTACHMENT E

EEOC-D-0232

REDACTED

FAN MAHN - EMPLOYMENT APPLICATION (PAGE 4)

## References:
Please list three references who are not related to you and are familiar with your employment experience (preferably direct supervisor).

Name: _Joe Cardinali, P.E._
Title: _Mechanical Eng. (Senior) P.E._
Company: _Monroe County_
Address: _____
City/State/Zip _____
Daytime Telephone _____
☒ Prior Supervisor  ☐ Professional Contact
☐ Co-worker  ☐ Other _____

Name: _Tim Keef, P.E._
Title: _Town Engineer_
Company _____
Address: _____
City/State/Zi_ _____
Daytime Teleph_ _202__
☒ Prior Supervisor  ☐ Professional Contact
☐ Co-worker  ☐ Other _____

Name: _Robert Scuteri_
Title: _Head Coach RIT_
Company _____
Address: _____
City/State/Zi_ _____
Daytime Telephon_ _____
☐ Prior Supervisor  ☐ Professional Contact
☐ Co-worker  ☒ Other _NCAA Ice_
_Hockey Coach_

## Skills/Qualifications:
List special skills and qualifications, such as specialized technical skills within your field of expertise. List computer hardware and software packages with which you have experience.

_Surveying, Microstation, Auto CAD (13 yrs exp.), In Roads, SurvCAD, LDD, Excel, Word_
_Powerpoint, Drafting, Material Testing, Field Inspection of Bridges & High Rise Buildings_

## Comments:
(List any information that you may wish to add about your abilities.)

_I am very team-oriented and love working with & meeting new people. Very out-going_
_& a go-getter. Consistent & follow through with projects but also look for new_
_and more efficient ways to attack a project._

**Criminal History:** Have you ever pleaded "guilty" or "no contest" to, or been convicted of, a misdemeanor or felony; or have you been arrested for any matter for which you are out on bail or on your own recognizance pending trial? ☐ Yes ☒ No

If yes, please explain below. (Answering "yes" to these questions does not constitute an automatic bar for employment. Do not include minor traffic violations.)

I hereby certify that my answers to the foregoing questions and statements are true and correct to the best of my knowledge and I hereby authorize Tetra Tech, Inc. and its subsidiaries (hereafter called "The Company") to verify any of the information concerning my employment, education, credit, disciplinary or medical history with the appropriate individuals, companies, institutions, or agencies; and I authorize them to release such information without any obligation to give me notice of such disclosure. I hereby release the Company and all individuals from any liability for any damage whatsoever for issuing this information.

I understand that any misrepresentation or omission of material fact in this application will constitute sufficient grounds for immediate dismissal. I further understand the Company is an employer at will and employment is for no definite period, and my employment and compensation may be terminated at any time for any reason whatsoever, with or without good cause, at the option of either the Company or myself. No implied, oral, or written agreements contrary to the express language of the agreement are valid and no agent of the Company has the authority to override the presumption of at-will employment.

I understand and agree that I may be obligated to take medical examinations as directed by the Company if the Company believes that physical or mental conditions exist which may impair my performance or safety or the performance or safety of others. I further understand that the Company maintains a drug-free workplace, and I am subject to undergoing drug screening at the Company's expense. If hired, I will be required to read and sign consent to Tetra Tech's Substance Abuse Policy.

Employment is conditional upon the results of references, verification of eligibility for employment in the United States, and signing consent with Tetra Tech's Policies on Employee Conduct, Business Conduct, Conflict of Interest, and the Employee Confidentiality and Invention Agreement. I understand and agree that the terms and conditions of employment may be altered by Tetra Tech at any time with or without cause or notice.

Signature of Applicant _____    Date: _3/5/05_

This application is valid for 90 days. If you wish to be considered for employment after this time, you must reapply.

Rev. 01/09/01

EEOC-D-0233

ATTACHMENT F

EEOC-D-0234

12/21/2005 17:46 FAX 3024545953    TETRA TECH    @013



REDACTED

**LINDA B. WHITEFORD**

## ADMINISTRATIVE ASSISTANT SUPPORT PROFESSIONAL

**SUMMARY OF QUALIFICATIONS:**

Dedicated Administrative Assistant for Vice President, Project Managers, engineers and designers with more than 15 years experience. Eight of these years assisting Engineers. Word processing using Word, Excel, Access and PowerPoint. Excellent communication and marketing skills. Consistently solve problems. Dependable and hard working team player. Experienced using the following computer systems: Windows NT 4.0, Windows XP and 98. Advanced Computer software skills using the following programs: MS Word, Excel, Access, Act, PowerPoint, Lotus Notes, Outlook and Adobe. Maintain paper and electronic files. Manage office supplies and maintain equipment and call for repairs.

**PROFESSIONAL EXPERIENCE:**

**Sargent & Lundy**                    **Wilmington, DE**              **March 2002 - Jan 2005**
Power Delivery Project Support Administrative Assistant 4
Provide administrative support for S&L's T&D project team members who design substations, transformers, circuit breakers, cables, sag & tension and rigid bus calculations and distribution systems, as well as transmission line uprating, substation expansions, condition assessment, and many other related modifications and studies.   Working knowledge of electrical, structural and physical engineering terminology.  Maintain department calendar.  Set up AT&T telephone conferences with clients at different locations.  Scan documents and enter into access database for storage and retrieval.  AutoCad plot drawings and text editing.  Able to log onto ftp site to create file and add or copy down AutoCad, Microstation and other files on secure ftp site for clients and vendors.  Order office supplies.

Below is a list of projects that I have provided administrative support on:

Exelon/PECO Energy; A59/B30 Project - Assist in updating the drawing lists on the 8 existing substation's transmission lines voltage upgrades, circuit additions and structural modifications. Public Service Gas & Electric (PSE&G) Provided administrative support on the Marion and Hillsdale Substation projects.  Add drawing files into electronic document control system.  Responsible for receiving, logging, tracking, filing, and distributing all engineering and design documents and drawings. Burn CD files and create zip files as well as distribute hard copy to clients.

Baltimore Gas & Electric (BG&E) Various overhead and underground transmission lines uprgrades and open-air and gas-insulated substations, distribution networks and transmission system communication facilities.  Lead secretary for BG&E Harford, Dover, Pumphrey and Calvert Cliffs NPP projects. Prepare, copy and fold permitting packages stamped by licensed engineer. Assist with word processing of various documents such as engineering standards, scope of works, budgets, schedules, staff forecasts, specifications, calculations, transmittals, resumes, drawing & document list and proposals.

Conectiv; Standards Development - Responsible for the word processing of the consolidating the standards of the merged electrical power companies Delmarva, Atlantic Electric and Conectiv for all components of transmission lines and substations into one governing standard. Incorporated as directed by project manager new standards and edit existing standards, update references as instructed by engineers of all applicable industry standards and guidelines and incorporating best practices and practical operations.

Consolidated Edison; Grasslands 138-kV Feeders 4-mile, underground 138-kV solid dielectric transmission line project.  And the East River 69-kV Feeder Reroute ½-mile, single-circuit, underground 69-kV solid dielectric transmission line project in the streets of Manhattan, NY.  Support the Structural Engineer with calculations and prepare transmittal packages.

EEOC-D-0235

**Linda B. Whiteford**                                          Page 2 of 3

The National Grid; Nantucket and Barnstable project - Provide document control by scanning & copying various types of electrical, wiring, civil and structural documents and vendor drawings. Prepare correspondence for signature of approval as requested and type transmittals.

| | | |
|---|---|---|
| **Braceland /Cenveo** | **Philadelphia, PA** | **March 1997 - March 2002** |
| **Careers, U.S.A, Springfield, PA** | | **February 1996 - March 1997** |

Administrator Sales and Marketing Department - Provide administrative support for sales department. Manage networked sales database for trade and commercial account executives. Synchronize databases into one main database. Clean data, export, import groups create lookups and queries. Research Internet for sales leads; assign leads to sales reps and evaluate geographic areas. Coordinate 12 trade shows yearly. Track sales goals and budget, and prepare sales presentations. Arrange travel, hotel and shipping for trade shows exhibits. Type memos and create monthly, quarterly and year-end reports of sales figures. Calculate Sales Person of the Month and Year. Schedule sales meetings and conferences.

**Day and Zimmerman (D&Z)**        **Philadelphia, PA**    **February 1988 - November 1993**
Lead Project Secretary for Keebler, Anheuser Busch, Clorox and Pepperidge Farms clients. Provide administrative support for the CEO, Vice President of Marketing, Project Managers and the Engineering Department. Typed specification for chilled water expansion tank, chilled water air separator, and chiller, desiccant dryer, breathing air purifier, refrigerated dryer and rotary screw air compressor. Schedule meetings, order luncheons and made travel arrangements. Excellent communication skills with co-workers, clients, and vendors. Maintain project files. Provide back up reception desk coverage, answer 10-line phone, take messages and greet visitors.

**Provident Mutual Ins. Co.**       **Philadelphia PA**    **October 1983 - February 1987**
Greet all visitors to the Company. Answer all incoming phone calls; take accurate messages and transfer calls. Distribute mail to Human Resources and Public Relations Department. Provide administrative support to the Director of Human Resources and the Public Relations Departments.

**EDUCATION:**

| | | |
|---|---|---|
| **Upper Darby High School** | Drexel Hill, PA | Graduated: 1979 |
| High School Diploma | Major: Business Administration | |
| | | |
| Gordon Philips Cosmetology School | Upper Darby, PA | State License: 1982 |
| Cosmetologist, Hair Dressing and Beautician | | |
| | | |
| Graphic Arts School | Philadelphia, PA | Certificate: 1998 |
| Printing, Graphic Arts, Desktop Publishing, Page Layout and Proofreading | | |
| | | |
| New Horizons Computer | King of Prussia, PA | Certificates: 2000 |
| Microsoft Computer Programs: | | |

- Act 2000 Database
- MS Word 6.0
- Excel

EEOC-D-0236

12/21/2005 17:47 FAX 30245459      TETRA TECH      REDACTED      ☑015

**Linda B. Whiteford**                                                         Page 3 of 3

### TECHNICAL SKILLS:

- Word processing - Type 70 wpm accurately
- MS Word – format styles, create table of contents, templates and other documents
- Access – database, tables, address and lists
- Adobe Acrobat - Create PDF and tiffs using Acrobat Writer
- PowerPoint – create organizational charts, slide shows and proposals
- AutoCad - Plot drawings and edit text
- Database Administrator - Maintain networked database. Synchronize, merge, export and import data
- Excel - Create spreadsheets, produce quarterly and YTD reports, charts for overheads.
- MS Outlook and Lotus Notes – email to group members, use calendar and to-do lists
- General office administrative duties - Coordinate meetings, group travel and order office supplies, operate calculator, fax machine and copiers.
- Coordinate conference calls for project team meetings using AT&T service
- Take minutes of meetings and create Action Item list.

### REFERENCES:

- Rose Kiely, Financial Specialist, Nationwide Provident
- Helen Randall, Administrative Assistant of Sargent & Lundy
- Fred Ogden, Project Manager of Sargent & Lundy
- Kim Adams, Administrative Assistant of Sargent & Lundy
- Helen Haney, Accountant of Braceland/Cenveo

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**
**Legal Unit**

801 Market Street, Suite 1300
Philadelphia, PA 19107
Philadelphia Status Line: (866) 408-8075
Philadelphia Direct Dial: (215) 440-2828
TTY (215) 440-2610
FAX (215) 440-2848 or 2674

Fredricka B. Warren – Paralegal Specialist
fredricka.warren@eeoc.gov
Direct No. 215-440-2681 Fax No. 215-440-2848

June 4, 2008

Debora A. Rzepla-Auch
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia  PA  19103-7301

In Response Refer to: Lorah v Tetra Tech, Inc. et al
Charge No. 170200502819
FOIA No. A8-08-FOIA-0638
Legal Id No. 53020080762A

Dear Ms. Auch:

This letter is in response to your request under the Freedom of Information Act ("FOIA").

(X)    In your FOIA request, you requested the following:

A copy of the above-captioned case(s

(X)    Enclosed are the contents of the administrative file maintained in the above-captioned charge of discrimination.    This office is providing you all the documents legally disclosable under the Freedom of Information Act.

You may appeal the denial or partial denial of your request by writing within thirty (30) days of receipt of this letter to:

Assistant Legal Counsel/FOIA Programs
Office of Legal Counsel
U.S. Equal Employment Opportunity Commission
1801 L Street, N.W.
Washington DC  20507

**EEOC-D-0001**

You must include a copy of the Regional Attorney's determination with your appeal. Your appeal will be governed by 29 C.F.R. § 1601.11.

Thank you.

Fredricka B. Warren
Paralegal Specialist

EEOC-D-0002

| Lorah v Tetra Tech, Inc. et al | Charge No. 170200502819 |
| FOIA No. A8-08-FOIA-0638 | Legal Id No. 53020080762A |

**EXEMPTION 5**

The fifth exemption to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5) (1982), permits withholding documents that reflect the analyses and recommendations of EEOC personnel generated for the purpose of advising the agency of possible action. This exemption protects the agency's deliberative process, and allows nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption covers internal communications that are deliberative in nature. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975); *Hinckley* v. *United States*, 140 F.3d 277 (D.C. Cir. 1998); *Mace v. EEOC*, 37 F.Supp.2d 1144 (E.D. Mo. 1999). The purpose of the deliberative process privilege is to "allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." *Missouri ex. rel. Shorr v. United States Corps of Eng'rs.*, 147 F. 3d 708, 710 (8th Cir. 1998).

Records may be withheld under this exemption if they were prepared prior to an agency's decision, *Wolfe v. Department of Health and Human Services*, 839 F.2d 768, 775, 776 (D.C. Cir. 1988) (en banc) and for the purpose of assisting the agency decision maker. *First Eastern Corp. v. Mainwaring*, 21 F.3d 465,468 (D.C. Cir. 1994). 1065, 1068, 1069 (D. Colo. 1995). Records may also be withheld to the extent they reflect "selective facts" compiled by the agency to assist in the decision making process. *A. Michael's Piano, Inc. v. Federal Trade Commission*, 18 F.3d 138 (2d Cir. 1994). An agency may also withhold records to the extent that they contain factual information already obtained by a requester through prior disclosure. *See Mapother, Nevas, et al. v. Dept of Justice*, 3 F.3d 1533 (D.C. Cir. 1993).

**DOCUMENTS WITHHELD PURSUANT TO THE FIFTH EXEMPTION OF THE FOIA:**

**552 (b) (5) Exclusion:**

| | | |
|---|---|---|
| _2__ page(s) | ASSESSMENT FACTORS SHEET | NO DATE |
| _1__ page(s) | CHARGE DETAIL INQUIRY | 10/31/2005 |
| _1__ page(s) | INVESTIGATOR'S NOTES | NO DATE |
| _1__ page(s) | RECOMMENDATION FOR DISMISSAL/CLOSURE | 06/13/2006 |
| _13_ page(s) | INTAKE SCREENING PROCESSING NOTES | NO DATE |

**LIBERTY**

**QUICK PRINT**
2 Penn Center Concourse
Philadelphia, PA 19102
215-563-9773
FAX: 215-563-9775

**INVOICE** 7506

P.O. No. _____

Customer Acct. No. _____

EIN # 23 2727 723

Date Received _6/3/08_     Date Due _6/4/08_

CUSTOMER: _Reed Smith LLP_   _C/o Debora A Ryzepla Ansh_

_Chk# 170200502819_

| _____ Copies of _____ | 1-Sided ____ | # _____ x _____ = _____ |
| | 2-Sided ____ | # _____ x _____ = _____ |
| | | # _____ x _____ = _____ |
| Stock _____ Color _____ Size _____ | | # _____ x _____ = _____ |

| _____ Copies of _____ | 1-Sided ____ | # _____ x _____ = _____ |
| | 2-Sided ____ | # _____ x _____ = _____ |
| | | # _____ x _____ = _____ |
| Stock _____ Color _____ Size _____ | | # _____ x _____ = _____ |

| _1_ Copies of _Farah V Tetra Tech_ | # _____ x _____ = _____ |
| | # _____ x _____ = _____ |
| | # _____ x _____ = _____ |
| _227 copies_ | # _227_ x _14_ = _31.78_ |

| _____ Copies of _____ | # _____ x _____ = _____ |
| | # _____ x _____ = _____ |
| | # _____ x _____ = _____ |
| | # _____ x _____ = _____ |

Collated _____ Stapled _____

Drilled _____ Folded _____

Other _____

Received By _ELS MX 983243_

SubTotal _31.78_

Tax _2.23_

UPS/Del _____

**PLEASE PAY THIS AMOUNT**

TOTAL _34.01_

EEOC-D-0004



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

August 9, 2006

REDACTED

Ms. Jourdean Lorah

**Our Reference:**    EEOC Charge Numbers 170-2005-02819 & 170-2006-00048

Dear Ms. Lorah:

This letter responds to your August 4, 2006 request for a modification of the right-to-sue notices issued in the above referenced matters. According to advice you received from Attorney Jeffrey Martin, the right-to-sue notices needed to be modified to include both charge numbers and the names and addresses of each employer before you can proceed in court. Based on a review of those notices, it is our position that the notices were properly prepared and that you have all that you need to proceed in court. Specifically:

- A separate right-to-sue notice is prepared for each charge. We do not include multiple charges on any right-to-sue notice.

- The right-to-sue notice does not include the name of the employer. This information is indicated on the related charge with the same charge number as that listed on the right-to-sue notice.

You also noted that the year included in the charge number on the right-to-sue notices did not properly represent the year of your employment with the Respondent. Please be advised that the year indicated in the charge number and right-to-sue notice references when (in our fiscal year) information pertaining to a charge was initially received. The year included in our charge number and on the right-to-sue notice has nothing to do with your actual employment dates.

I trust that this clears up any concerns that you may have. Should you have further questions, please contact George Marinucci, the Investigator previously assigned to this case. His direct-dial number is 215-440-2636.

Very truly yours,

Alfred L. Harris
Enforcement Manager

EEOC-D-0005

## MAIL PROJECT CASE LOG

| Charge No. 170·2005·02819 | Respondent Tetra Tech | Charging Party Lorah |
|---|---|---|

| Date | Action | Entered By |
|---|---|---|
| 3-1-05 | DATE OF VIOLATION | Gm |
| 6-20-05 | Initial correspondence received by CR/TIU. | Gm |
| ? | Questionnaires/response mailed. | |
| ? | Questionnaires returned. | |
| ? | Letter of receipt to PCP. | |
| | Assigned to ISA/Investigator _____ to complete intake. | |
| 10·20·05 | Correspondence reviewed for completeness/completed as necessary.  Charge drafted. | Gm |
| 10·20·05 | Charge mailed for signature.  & several other times | Gm |
| 10·25·05 | Signed charge received.  chg not datestamped | Gm |
| 10·31·05 | Docketed. | Gm |
| 10·31·05 | (Check one)       EEO-1 Form Attached  ✓       No EEO-1 Form Available _____ | Gm |
| 10·31·05 NA | charge package sent to CR·TIU  GEK  Submitted for AOD review. | Jeg |
| NA | AOD reviewed. | |
| NOV 08 2005 | Charge package forwarded to OAA. | |
| 11/9/05 | Charge package processed by OAA. | Jane |
| NOV 09 2005 | Initial 131/131A sent to Respondent   with charge (Y) N / with ADR notice (Y) N / with RFI (Y) N | Jeg |
| | Additional 131/131A sent to Respondent with charge   with ADR notice  Y  N  /  with RFI  Y  N | |
| NOV 09 2005 | CP/CP Attorney letter forwarded. | Jeg |
| 1/14/06 | Sent to ADR. | |
| 1/24/06 | Returned from ADR. | |
| 1/26/06 | Forwarded to Enforcement Manager  Aut | |
| 1/27/06 | Forwarded to Supervisor  GEK | |
| 2/1/06 | Assigned to Investigator  G. Mammimi | |

EEOC Form 159 (rev.11/01)

EEOC-D-0006

## INVESTIGATION CASE LOG

| Charge No. | Respondent | Charging Party |
|---|---|---|

| Date | Action | Entered By |
|---|---|---|
| | Initial CP Contact (*check one*): _____ Telephone _____ Letter _____ Other | |
| | Initial Settlement Attempt (*check one*): _____ Before R response _____ After R response<br>By means of (*check one*): _____ Letter _____ Telephone _____ In person - FFC/on-site | |
| | Identify R contact and summarize settlement discussions: | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Initial Respondent response received | |
| | Received Request for Extension to RFI (*check one*): _____ Telephone _____ Letter/FAX | |
| | R given _____ additional days.  Confirmed by letter to R dated _____    letter from R dated _____ | |
| | R response overdue - pre subpoena letter sent:             New Due Date _____ | |
| | Subpoena Issued: | |
| | Initial R response analyzed (*check one*): _____ Case can be closed _____ Further action needed | |
| | R response communicated to CP/CP's Atty (*check one*): _____ Letter _____ Telephone _____ In person | |
| | Rebuttal to Position Statement (*check one*): _____ None received _____ Received but case to be closed<br>_____ Received (further action required) | |
| | Additional actions required in addition to or instead of RFI to R: (*check all appropriate*): _____ Send<br>follow-up RFI _____ Schedule FFC _____ Schedule on-site _____ Schedule witness interviews | |
| | Add other log entries as appropriate | |

EEOC Form 159– Page 2 (rev. 11/01)

EEOC-D-0007

FAX: (215) 440-2674

MR. GEORGE KING

TO: EEOC

PHILADELPHIA DISTRICT OFFICE

REDACTED

FROM: JOURDEAN LORAH

███████████

DATE: AUG. 4, '06

NUMBER OF PAGES INCLUDING COVER PAGE: 5

COMMENTS: RIGHT TO SUE - REQUESTING

PLEASE INCLUDE CHARGE NUMBERS OF BOTH OF

THE COMPANIES AND THEY MUST BE NAMED

AS DEFENDANTS ON THE RIGHT TO SUE

LETTER.

TETRA TECH INC.
56 WEST MAIN ST.
CHRISTIANA, DE. 19720

SYNERFAC
2 READS WAY SUITE 209
NEW CASTLE CORPORATE COMMONS
NEW CASTLE, DE.        19720

EEOC-D-0008



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

October 20, 2005

REDACTED

Ms. Jourdean Lorah

**Our Reference:**    EEOC Charge Number 170-2005-02819
Jourdean Lorah v. Tetra Tech, Inc.

and

EEOC Charge Number 170-2006-00048
Jourdean Lorah v. Synerfac Agency

Dear Ms. Lorah:

Enclosed are the two *revised* charges of discrimination (one against Tetra-Tech and one against Synerfac) drafted based upon information which you previously provided to the EEOC. Please review the charge and, if it is accurate, please sign and date the first page of all 4 copies at the bottom where highlighted. If you find that there are any errors or significant changes to be made, please contact me at once at (215) 440-2636. Return both forms to me using the enclosed stamped, self-addressed envelope. Once we receive your completed forms, we will return a copy of each form to you for your records.

Very truly yours,

George J. Marinucci
Investigator

EEOC-D-0009

AUG-04-06 11:12 PM  PAT LORAH                    302 539 0518              P.02

## U.S. Equal Employment Opportunity Commission

*EEOC Form 161-B (3/98)*

REDACTED

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Ms. Jourdenn Lorah 

From: Equal Employment Opportunity Commission
Philadelphia District Office
21 South Fifth Street ·
Philadelphia, PA 19106-2515

[    ]    *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2005-02819 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]    More than 180 days have passed since the filing of this charge.

[    ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ X ]    The EEOC is terminating its processing of this charge.

[    ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ X ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[    ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

· If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Marie M. Tomasso, District Director*                         June 21, 2006
                                                              *(Date Mailed)*

Enclosure(s)

cc:    Ms. Amy Clark (for Respondent)

EEOC-D-0010

AUG-04-06 11:13 PM  PAT LORAH                    302 539 0518              P.03

REDACTED

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 170-2005-02819 |

Delaware Department of Labor                                  and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Jourdean S. Lorah | ▓▓▓▓▓▓ | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| ▓▓▓▓▓▓▓▓▓▓ | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees | Phone No. (Include Area Code) |
|---|---|---|
| TETRA TECH INC. | 101 - 200 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 56 West Main Street, Christiana, DE 19720 | | |

| Name | No. Employees | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 06/14/2005    Latest: 06/14/2005
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees recieved this training including a younger female who was hired by the Respondent. On or about June 14, 2005, Respondent had my employer terminate my contract. I was replaced by a younger male.

II. I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). During my interview, a Respondent supervisor asked me if I had a disability. After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| October 25, '05    *Date*    *Jourdean S. Lorah*  Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)        EEOC-D-0011 |

AUG-04-06 11:14 PM PAT LORAH                    302 539 0518              P.04

REDACTED

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 170-2006-00048 |

Delaware Department of Labor                                    and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Ms. Jourdean S. Lorah** | | |

| Street Address | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, | Phone No. (Include Area Code) |
|---|---|---|
| **Synerfac Agency** | **101 - 200** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **2 Reads Way; New Castle Corporate Commons; New Castle, DE 19720** | |

| Name | No. Employees, | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest  06/14/2005    Latest  06/14/2005

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.  I was an employee of Synerfac (the "Respondent"), an employment agency, and was contracted to
work at Tetra-Tech, Inc. beginning in or about March 2005. After I began my employment, I never
received the on-the-job training that was promised. Younger employees recieved this training. On or
about June 14, 2005, Respondent terminated my employment. I was replaced by a younger male.

II.  I believe that I have been discriminated against because of my age, 46, in violation of the Age
Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of
Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in
violation of the Americans with Disabilities Act of 1990 ("ADA").

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| October 25, '05     *Jourdean S. Lorah* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |
| Date         Charging Party Signature | EEOC-D-0012 |

EEOC Form 161-B (10/96)

**U.S. Equal Employment Opportunity Commission**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: **Ms. Jourdean Lorah** 

From: Equal Employment Opportunity Commission
Philadelphia District Office
21 South Fifth Street
Philadelphia, PA 19106-2515

REDACTED

[    ]    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2005-02819 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[  X  ]    More than 180 days have passed since the filing of this charge.

[     ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[  X  ]    The EEOC is terminating its processing of this charge.

[     ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[  X  ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[     ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso, District Director

June 21, 2006

*(Date Mailed)*

Enclosure(s)

cc:    Ms. Amy Clark (for Respondent)

REDACTED

REDACTED

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 170-2005-02819 |

**Delaware Department of Labor** and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Jourdean S. Lorah** | [REDACTED] | |
| Street Address | City, State and ZIP Code | |
| [REDACTED] | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, | Phone No. *(Include Area Code)* |
|---|---|---|
| **TETRA TECH INC.** | **101 - 200** | |
| Street Address | City, State and ZIP Code | |
| **56 West Main Street,  Christiana, DE 19720** | | |
| Name | No. Employees, | Phone No. *(Include Area Code)* |
| | | |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest | Latest |
|---|---|---|
| ☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)* | **06/14/2005** | **06/14/2005** |
| | ☒ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. **I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005.  After I began my employment, I never received the on-the-job training that was promised.  Younger employees recieved this training including a younger female w ho was hired by the Respondent.  On or about June 14, 2005, Respondent had my employer terminate my contract.  I was replaced by a younger male.**

II. **I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").  During my interview, a Respondent supervisor asked me if I had a disability.  After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| | |
| *October 25, '05*          *Jourdean S. Lorah* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          *Charging Party Signature* | **EEOC-D-0014** |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office – Mediation Program**

The Bourse Building
21 S. Fifth Street, Suite 400
Philadelphia, PA 19106
(215) 440-2816
TTY (215) 440-2610
FAX (215) 440-2822


NOV 09 2005
10

## MEDIATION INVITATION RESPONSE FORM

**We appreciate your cooperation in responding to this invitation
by completing the appropriate option(s) below and returning
this form within seven (7) days from receipt of the charge.**

**170-2005-02819 – Jourdean S. Lorah  v.  Tetra Tech Inc.**

Charge Number & Case Name

You are hereby invited to participate in the Equal Employment Opportunity Commission's Mediation Program. As explained in the attached information sheet, we are making available this effective, neutral and confidential process to respondents and charging parties as a highly desirable alternative to the investigation and possible litigation of employment disputes. If you agree to participate in mediation, it is not necessary to respond to the charge and/or to any request for information at this time. The response will be suspended until the completion of mediation. If you choose not to take advantage of utilizing this highly popular process, you must respond to the charge and/or any request for information by the date specified in the Notice of Charge of Discrimination.

Please return this form to:          Phil A. Goldman, ADR Coordinator
                                     Philadelphia District Office
                                     Equal Employment Opportunity Commission
                                     21 S. Fifth Street, Suite 400
                                     Philadelphia, PA 19106-2515

                                     Fax:  215-440-2822

(  )    The Respondent would like to participate in the mediation program

        Provide 3 Proposed Dates (Within 21 Calendar Days):_____   _____   _____

        Name(s) of Attendees:_____

(  )    The Respondent declines to participate in the mediation program
        If you decline to participate in the mediation program, the ADR Coordinator would appreciate you stating the reason for declining. This information will be used for evaluative purposes only.

Comments:_____

_____

On behalf of Respondent  (Please Print Clearly):

Name:_____   Title:_____

Street Address:_____

City, State & Zip:_____

Telephone: _____   Fax: _____

E-mail: _____

EEOC-D-0015

EEOC FORM 131 (5/01)

# U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **Ms Janis Salin**<br>**Vice President & General Counsel**<br>**TETRA TECH, INC.**<br>**3475 East Foothill Boulevard**<br>**Pasadena, CA 91107** | **Jourdean S. Lorah** |
| | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**170-2005-02819** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [X] The Americans with Disabilities Act

[X] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by ~~09~~ 12-DEC-05 a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [X] Please respond fully by ~~09~~ 12-DEC-05 to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by ~~21~~ 22-NOV-05 to **Phil A. Goldman, ADR Coordinator, at (215) 440-2819** If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **George King, Jr.,**<br>**Supervisory Investigator** | **Philadelphia District Office**<br>**21 South 5th Street**<br>**Suite 400**<br>**Philadelphia, PA 19106** |
|---|---|
| *EEOC Representative*<br>*Telephone:* **(215) 440-2659** | |

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE    [ ] COLOR    [X] SEX    [ ] RELIGION    [ ] NATIONAL ORIGIN    [X] AGE    [X] DISABILITY    [ ] RETALIATION    [ ] OTHER

**See enclosed copy of charge of discrimination.**

EEOC-D-0016

| Date<br>Nov 09, 2005 | Name / Title of Authorized Official<br>**Marie M. Tomasso,**<br>**District Director** | Signature |
|---|---|---|



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5ᵗʰ Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2632 & 2805

## REQUEST FOR INFORMATION

Your organization is hereby requested to submit information and records relevant to the subject charge of discrimination. The Equal Employment Opportunity Commission (EEOC) is authorized by law to investigate charges filed with it and this request constitutes a part of the investigation. This request does not necessarily represent the entire body of evidence which we will need to obtain from your organization in order that a proper determination as to the merits of the charge can be made.

**Provide the name, position, address and telephone number of the person who prepares the response to this request for information.**

**Please note as well that the Commission requests statements below from persons involved in the decisionmaking process that affected the Charging Party.  <u>In addition to the statements from the decisionmakers</u>, please submit a formal position statement setting out your response(s) to the allegations or any other contentions or other information in addition to that requested by the Commission which you consider relevant to the disposition of this charge.**

Failure to follow the instructions contained herein. or providing an evasive or incomplete answer will constitute a failure to respond and shall subject the Respondent to the service of a Subpoena for the requested documents and information.

Please submit any additional evidence, along with the requested information, on or before the date specified on the enclosed EEOC Form 13 1, "Notice of Charge of Discrimination" . The information should be addressed to the EEOC Representative identified on the EEOC Form 13 1. If there are any questions concerning the Request for Information, you should contact the EEOC Representative at the phone number which is also indicated on the EEOC Form 13 1.

In addition, your attention is directed to the also enclosed "Notice of Settlement". That Notice provides information related to possibility of settlement of the charge as an alternative to a full Commission investigation of the allegations.

Thank you for your anticipated cooperation in this matter.

EEOC-D-0017



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5ᵗʰ Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2632 & 2805

### EEOC PHILADELPHIA DISTRICT OFFICE

### NOTICE OF SETTLEMENT

The above-referenced charge of employment discrimination has been received by the Equal Employment Opportunity Commission (EEOC) and assigned the above charge number. In most instances, this office initiates its investigation by sending the Respondent a Request for Information (RFI). This Notice of Settlement is being sent as an attachment to the initial RFI for this charge.

In addition, this office attempts to negotiate a settlement for each charge. For such settlements, the EEOC representative attempts to facilitate settlement discussions between the two parties in the hopes of obtaining an agreement mutually satisfactory to the parties and to EEOC. If such a settlement is negotiated, the Commission will prepare a Settlement Agreement to be signed by all parties, including EEOC.

Negotiated Settlement Agreements typically include the following:

a) a description of the relief to be provided to the Charging Party as a result of the Agreement;
b) means of monitoring to insure that the terms of relief are met;
c) a statement which expressly indicates that the Respondent is not acknowledging any violation of the statute(s) under which the charge was filed;
d) a clause prohibiting retaliation; and
e) a waiver by the Charging Party of his/her private suit rights under the applicable statutes administered by EEOC.

In addition, a Settlement Agreement concludes EEOC's investigation of the subject charge. Such EEOC closure would eliminate the need thereafter for Respondent to prepare statements, to respond to RFIs, to make witnesses available or to otherwise respond to the Commission's investigation for that charge.

Although Respondent will be contacted by an EEOC representative to discuss the possibility of settlement, this office's increasing inventory has resulted in some delay before such settlement efforts can be initiated. However, if Respondent at this time is interested in pursuing settlement, the Respondent representative is invited to contact this office directly as a means of insuring expedited settlement discussions. If that is Respondent's intent, please contact the EEOC representative identified in the Notice of Charge of Discrimination (EEOC Form 131).

**EEOC-D-0018**

# REQUEST FOR INFORMATION AND REQUEST FOR POSITION STATEMENT

## PART I - GENERAL INFORMATION

1.     State the correct name and address of the specific installation charged. If the mailing address is a box number, provide the street address of the charged installation.

2.     Briefly identify the primary function of the establishment charged (e.g., "automobile assembly," "retail sales of men's clothing," "banking services," etc.) and where incorporated.

3.     State the number of persons (including supervisors and managers and part-time employees) employed at the specific installation charged and by the organization as a whole on the most recent payroll date. If the total number of employees is over 50, approximations are acceptable.

## PART II - POSITION STATEMENT:

Provide a position statement responding to the facts and circumstances surrounding each alleged discriminatory act, and describe and explain your reasons for taking such actions, along with applicable supporting documentation.

## PART III - RESPONSE TO THE CHARGE:

In addition, for each applicable item below, if not already provided as an attachment to the position statement, provide the document(s) requested or, if no such document(s) exists, state so and provide a statement setting forth the requested information:

1.     Copies of all Respondent documents, correspondence or memoranda, whether initiated by Respondent, by Charging Party or by other sources, concerning the Charging Party insofar as they relate to the allegations contained in the charge (e.g., disciplinary records, layoff or termination notices, pay records, applications/resumes, etc.).

2.     Copies of the applicable policies or procedures relating to each and every one of the act(s) alleged to be discriminatory.

3.     A listing by name and job title of all officials who participated in or made decisions relative to the issues raised in the charge and what role was played by each named official. Provide statements from each such person in response to all allegations of discriminatory treatment for which that official was in any manner involved.

4.     For any person(s) who allegedly received more favorable treatment than Charging Party (as identified on the face of the charge or otherwise), provide documents which show how each person was treated and the reason(s) for such treatment.

(over)

EEOC-D-0019



**U.S. Equal Employment Opportunity Commission**
**Philadelphia District Office**

21 South 5th Street
Suite 400
Philadelphia, PA 19106
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2632
1-800-669-4000

Respondent: TETRA TECH INC.
EEOC Charge No.: 170-2005-02819
FEPA Charge No.:



/c
Nov. 09, 2005

Jourdean S. Lorah

Dear Ms. Lorah:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent.  Please use the "EEOC Charge No." listed above whenever you call us about this charge.  The information provided indicates that the charge is subject to:

[ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ X ]    The Age Discrimination in Employment Act (ADEA)

[ X ]    The Americans with Disabilities Act (ADA)

[ ]    The Equal Pay Act (EPA)

You need do nothing further at this time.  We will contact you when we need more information or assistance.  A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[ X ]    Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures.  If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official.  Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding.  To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case.  Otherwise, we will generally adopt the agency's finding as EEOC's.

Delaware Department of Labor
DDOL Labor Law Enforce
4425 Market Street
Wilmington, DE 19802

Please notify this office of any change in address or of any prolonged absence from home.  Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

George  King, Jr.
Supervisory Investigator
(215) 440-2659

EEOC-D-0020

EEOC Form 212-A (3/98)

# U.S. Equal Employment Opportunity Commission

TO: **Delaware Department of Labor**
**DDOL Labor Law Enforce**
**4425 Market Street**
**Wilmington, DE 19802**

Date **Nov 09, 2005**

EEOC Charge No.
**170-2005-02819**

FEPA Charge No.

CHARGE TRANSMITTAL

SUBJECT:

| **Jourdean S. Lorah** | v. | **TETRA TECH INC.** |
|---|---|---|
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC   ☐ _____   on **Oct 25, 2005**
                              *Name of FEPA*                   *Date of Receipt*

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

☐ EEOC requests a waiver          ☐ FEPA waives

☐ No waiver requested             ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

Typed Name of EEOC or FEPA Official
**Marie M. Tomasso, District Director**

Signature/Initials

| **Jourdean S. Lorah** | v. | **TETRA TECH INC.** |
|---|---|---|
| *Charging Party* | | *Respondent* |

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons:

Typed Name of EEOC or FEPA Official

Signature/Initials

Julie Cutler, Acting Administrator

TO: **Philadelphia District Office**
**21 South 5th Street**
**Suite 400**
**Philadelphia, PA 19106**

Date **Nov 09, 2005**

EEOC Charge No.
**170-2005-02819**

FEPA Charge No.          **EEOC-D-0021**

REDACTED

FAX:  215-440-2604

TO' EEOC

    ATTENTION: MR. GEORGE KING

    PHILADELPHIA DISTRICT OFFICE

FROM:  JOURDEAN LORAH

_____[REDACTED]_____

DATE:  JUNE 13, 2006

NUMBER OF PAGES INCLUDING COVER PAGE:  3

COMMENTS:  TITLE VII - RIGHT TO SUE

EEOC-D-0022

Jourdean Lorah



June 13, 2006

REDACTED

Equal Employment Opportunity Commission
Philadelphia District Office
Attention: Mr. King
21 South 5Th. Street  Suite 400
Philadelphia, Pennsylvania  19106-2515

Charge Number: 170-2005-02819

Dear Mr. King,

     Recently, ( dated June 5, 2006) I received a letter from Mr. George Marinucci regarding the above charge number. I disagree with Mr. Marinnuci's decision based on the following Title VII violations. At this time I am requesting my right to sue letter.

1. Age- I am a single ▓▓▓▓ year old female who is denied training. My former supervisor denied me the training that was set forth during our employment agreement (six months). Younger male employees were hired before me, by agencies that received their six month agreement and were later reemployed by Tetra Tech. After I was hired a younger female employee was hired and she received all of her training. This younger female employee was hired directly through Tetra Tech and was given an employment application. I was denied an employment application from my supervisor Mr. John Traynor.  Mr. John Traynor did not know my age when I began working for Synerfac (the hiring agency). I am presently unemployed with no income. The doors to employment are closed.

2. Disability-During my interview with Mr. John Traynor at Tetra Tech, Mr. Traynor asked me if I had any disabilities. I said, ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ Mr. Traynor then said, "I smoke cigarettes." I do not smoke cigarettes, but apparently this conflict is involving someone who smokes (read complaint/rebuttal). After I was hired through Synerfac agency I was harassed incessantly about a cold or someone who was contagiously ill. I am not contagiously ill. I was also harassed as if I was someone with a lower intelligence.  My disability is protected under ADA. The ADA states that anyone with a history of an illness is one who has a disability. Medical records prove that I have a history of ▓▓▓▓▓▓▓▓ Mr. Marinucci did not request my medical records ▓▓▓▓▓▓

EEOC-D-0023

EEOC-D-0024

JUN-13-06 07:49 PM  PAT  ORAH                    302 539 0518                P.03

EEOC
Philadelphia District Office
Attention: Mr. King

Page 2

3. Gender/Sex- My name is not Jordan Lorah. Jordan Lorah is an eighteen year old
man. Further research at the police department revealed that Jordan Lorah is a
female living in Sussex County, Delaware. I have a document that was sent to my
home regarding a man named Jordan Lorah. The document had my former address
with a man's identification.  The identification did not match my sex, age or social
security number. I think the document is a fraud. However I am harassed on the job
by my employer and my colleagues regarding Jordan Lorah.

Both younger and older males are hired and they receive their training, while I am
always denied.

Your consideration and patience regarding my right to sue letter is most
appreciated. Further documentation can be provided regarding my claim upon your
request.

Sincerely,

*Jourdean Lorah*

Jourdean Lorah

EEOC-D-0025



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5ᵗʰ Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

June 5, 2006

Ms. Jourdean Lorah                                        REDACTED
114 Walls Avenue
Wilmington, DE 19805

**Our Reference:**     .EEOC Charge Number 170-2005-02819
Jourdean Lorah v. Tetra Tech, Inc.

Dear Ms. Lorah:

As you know, your charge has been assigned to me for review and a determination as to what further actions, if any, should be taken by the Commission. After filing this charge, we obtained a response from the employer, sent a copy of that response to you for your review and obtained and reviewed your rebuttal to that response. Efforts were also made to resolve this matter through a negotiated settlement agreement however, they have been unsuccessful.

In your charge you alleged that you were discriminated against because of your sex, female, ██████ and disability ██████ ur investigation revealed the following facts. You claim that you were discriminated against because of an ADA disability. Based on all information provided, including doctors notes ██████ As a consequence, you are not covered under the ADA. You claim that you were discriminated against because of your age. You ████ when hired ███ when fired. If they fired you because you were ██ they would not have hired you ███ Lastly, you claim that you were discriminated against because of your sex. However, the evidence shows that the Respondent also fired a male employee. This is evidence that they treat male employees in the same manner as they do females.

Based on the above, it is our position that further investigation will not result in a finding in your favor. Consequently, this matter is being dismissed and a notice of your right to file a private lawsuit will be issued to you should you disagree with the EEOC's findings and desire to pursue this matter further. Once you receive that notice, you may write to the attention of the "FOIA Coordinator" (same address) and request a copy of your EEOC file. We appreciate the opportunity to have served you to the best of our ability based on the available evidence. Thank you.

Very truly yours,

George Marinucci
Investigator

EEOC-D-0026

Jourdean Lorah


January 17, 2006

Equal Employment Opportunity Commission
Attention: Alfred Harris
George King
21 South 5Th. Street  Suite  400
Philadelphia, Pennsylvania   19106-2515



Charge Number 170-2005-02819

Dear Mr. Marinucci,

    As requested,  the enclosed documentation concerning my rebuttal is regarding
the above charge number 170-2005-02819. Presently, I am unemployed and I am
receiving an unemployment check each week in the amount of $215.00.  I began
receiving my unemployment checks on or around the third week of October
2005.The total amount in unemployment compensation monthly is sixty dollars
more than the amount eligible for welfare benefits. Therefore, I  have no health
insurance and no benefits under the Department of Social Services. Each month my
bills exceed the amount I receive in unemployment compensation. There will be no
unemployment compensation after March 2006. Charity is sometimes needed and
often my mother is burdened with the bill.   Included with my documentation is a
list of various companies with contacts that I have sent resumes pertaining to
employment. There are no openings, as a result of the discrimination and the
conflict that is currently pending.  If you have any questions regarding my written
response please contact me at 302-225-0540.

Sincerely,
Jourdean Lorah
Jourdean Lorah

EEOC-D-0027

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 2

The following companies and contacts were sent a resume regarding a full time position. There are no openings and I have been told the doors are closed.

Merestone Consultants - John Ruan -

KCI Technology - Roy Zeigler -

Pennoni Associates- John Haupt/Grant Harrington

Landmark Engineering - Ted Williams/Troy Reese

Batta Ramesh Associates - Mike -

Vollmer - Jim Gade -

Van De Mark & Lynch - John Kelleher -

Zebley Associates - Jack Zebley -

Gilmore & Associates - Peter Bloodgood -

Mahaffy & Associates - Mary Waters

National Engineers Clearinghouse -

Robertson Howard - Ask Patel -

Kercher - Alan Kercher -

A-Del Construction - Human Resources -

Remington & Vernick - Tom Beach -

EEOC-D-0028

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 3

McBride & Zeigler - Mark Ziegler - ███████████

Morris Ritchie - Phil Tolliver - ███████
Karins - Mike Szymanski - █████████

Northern Virginia Community College Campus Bulletin Board - Synerfac posted an ad for several positions in surveying. I was never re-considered for any employment after my contract ended with Tetra Tech.

One of the ads that was posted stated the job description and the amount of hourly pay one could receive. The hourly rate was $24.50 -$27.00 per hour for assisting a field chief. No experience was necessary. When I called the company about the position posted, I was told that the position was filled in December. The ad remained on the bulletin board.

Enclosed with my written response is an outline of my employment/work related experience. I presently have sixteen years of experience in surveying, architecture, design, teaching and marketing. The accumulation of my experience along with my education has resulted in several portfolios which reflects in both residential and commercial work. My experience in surveying is one year combining both field experience with drafting the surveys. I have recently completed all of my CAD training. The grade I received was an A in advanced CAD. I am an artist. My intellectual property is hanging in the balance of the inequity of former employers and colleagues. Many of my drawings/paintings have been sold (Rehoboth Art League). See all documents that verify my written response.

Jourdean Lorah


January 17, 2005

Equal Employment Opportunity Commission
Attention: Alfred Harris
George King
George Marinucci

Charge Number
170-2005-02819

Page 4

Rebuttal

On March 14, 2005 at 4:40PM, I interviewed with Mr. John Traynor-Supervisor of the Survey Department at Tetra Tech Inc. located at 56 W. Main Street in Christiana, Delaware. During my interview with Mr. Traynor we discussed my work related experience and my education. Presently, I have a degree in Science and I lack only a couple of credits for my degree in Liberal Arts. I have sixteen years of work related experience in surveying, architecture, design, teaching, and marketing. At the time of my interview with Mr. Traynor I had six months of surveying experience in the field and drafting surveys. My portfolio contains several examples of those surveys that were drafted approximately seventeen years ago. Mr. Traynor knew that I had taken a previous CAD course when I was in college. However, I had no further training with CAD in any of the work related positions that I was under contract for. I never said during my interview that I had no knowledge of autoCAD. The position that Mr. Traynor had open was an administrative/survey position. We discussed the position that was available and I was honest about my CAD experience. Mr. Traynor said, "I will train you." During the interview Mr. Traynor asked me if I had a disability. I said, "Yes, I have asthma." Mr. Traynor said, "I am a smoker."

I was hired for this position on the day of my interview with an agreement of six months of training. Mr. Traynor did not give me an application from Tetra Tech to complete. John Traynor told me that Tetra Tech would not hire me as their employee. I was given the names of two agencies that I could contract under (Manpower and Synerfac). I called Synerfac and I scheduled an appointment with a recruiter named Greg (March 15, 2005). Greg gave me the necessary paperwork to complete and I began working for Tetra Tech on March 22, 2005.

During the first few weeks of my contract, Mr. Traynor and I further discussed

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 5

my responsibilities and my job description. I was given a list of all tasks that needed
to be completed daily as well as those tasks which I would be trained for during the
six month training period. Casey Grabowski is a Tetra Tech employee who has been
with the company for several years. Mr. Grabowski gave me a folder of self study
lessons as well as the illustrated guide for Windows 2000. I did not receive my six
months of training per agreement. On one particular day, Casey refused to work
with me or train me when my supervisor John Traynor asked him to explain and go
over one of the assigned projects. Mr. Casey Grabowski did give me a basic review,
but he refused to further train me. It was Casey who suggested I take a course in
CAD to help me with my compute skills. I immediately enrolled in the CAD class at
Delaware Tech. I was tested at the campus after the first two weeks. I received an A
at a score of 100 on my test. This score verifies that my level was way above
remedial level. My grade for the first CAD course was a B. I received an A in the
advanced class directly following the first course. I was often harassed at the
campus with the same type of conflict that was occurring at Tetra Tech. Mr. Casey
Grabowski' s name was mentioned by several students.

   Casey Grabowski often communicated comments that were defamatory,
violations of privacy or statements that were not true. On March 28, 2005 he said I
wasn't wearing a slip. Then he said, "You're not sexy." He also told another
colleague that I was ill and contagious as he discussed me cleaning my bedding. My
disability requires me to clean more often. (I am ████████████████████████
████████ was not contagious. Casey encouraged the chatting with other colleagues
and he was always involved with issues that were clearly none of his business.
Another employee told me that Casey was trying to fire me.

   Dan Sica was a Tetra Tech employee during the time of my employment contract.
Mr. Sica did not understand why no one was training me to do the surveys like he
was trained. Mr. Sica walked out on his job without any notice. He was very
knowledgeable with the computer and he answered several questions when I needed
help. Jim Nardo, another supervisor in the Survey Department was not very helpful.
He did not want to be bothered with someone who needed training. He referred me
back to Mr. Traynor. The computer training was just an excuse. Most of my
responsibilities concerning my position were entering data for the daily work logs,
filing, Xeroxing, editing, proof reading, deliveries, arranging the sponsorship with
MATHCOUNTS (dinner, awards, meetings), cleaning Mr. Traynor's office and
keeping the office organized.  I had knowledge of the computer when I was hired for
this position. Joe Winchess, was another employee who had no knowledge of the
program I was working on. He often couldn't answer my questions.

EEOC-D-0031

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 6

Several younger employees were hired after I was hired for my position as an administrative assistant. Erin Moran was hired approximately one month after I was hired as a Tetra Tech employee. Erin is younger than I am and she was paid more for her position. Erin received all of her training. Casey Grabowski spent seventy five percent of his time training Erin Moran. Both Casey and Erin became very good friends and they often discussed non employment issues. George, an employee of Tetra Tech told me that Tetra Tech gave Erin my position. I noticed that my job title changed often. Bob Campball and Mathew Mercado were hired under contract through Manpower before I was hired (both males are younger than I). Tetra Tech hired them as Tetra Tech employees after I was hired. Both Bob and Mathew received their six months of training.

On April 25, 2005, Mr. Traynor asked Erin and I to go to the Elkton County Courthouse to research a deed. Erin did not know where the tax number was to begin the research. I knew how to begin researching this project. It was on this day that Erin offended me with an odd gesture of her hand. I also heard Erin tell George (a Tetra Tech employee) that it is odd. On April 26, 2005, Erin and I went to the Elkton County Courthouse again when she referred to me as someone in a brothal. Directly following this statement (referred to as one from a brothel) George asked me to go to lunch with him. He also noticed that I was not married. He said, "We see that you are not on the hand" (No engagement ring). I had to tell George that I could not go to lunch with him because of the rumors that were circulating around the office. On April 29, 2005 I spoke with my supervisor John Traynor regarding Erin's misconduct. John and I drafted a letter that would warn the employees of defamatory communication. I was than informed by my supervisor to meet with Susan in Human Resources to get the letter approved for letter head. Susan disagreed with our approach using a letter. Instead, Susan arranged a mediation of confrontation with Erin and I. Before the mediation began Susan said to me "And "You are younger than Erin". I said, "No I am older than Erin". This mediation was only a remedy temporarily. As a result of the conflict and the discrimination regarding my age, disability, and gender I lost my job. The younger employee who clearly violated me along with other colleagues in the office kept their position. See documentation concerning all communication during my employment. During the mediation Susan agreed with me that I made the right decision concerning George and his invitation to lunch.

On May 19, 2005, my supervisor referred to me as someone who was not bright because I was writing with a pencil. Casey Grabowski often referred to me as

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 7

someone low in intelligence. This is very defamatory and not at all true. On one particular afternoon Mr. Traynor said, "You have a lot more on the ball than they do." Obviously, I am more intelligent then most of my colleagues. The gender/sex (I am a female) lowers my intelligence as if I am not worthy or not suitable for my position.

On June 6, 2005, my supervisor John Traynor asked me to get up from my computer work station/desk. Synerfac hired a younger male to fill my position. This person's name was "AJ". I do not know "AJ"'s sir name or birth name. "AJ" was given my computer workstation. His job title was similar to a CAD technician/draftsman. Mr. Traynor asked me to share a workstation with another employee named Steve. Steve worked in the filed all day until 3:00PM in the afternoon. He needed his computer in the morning at 7:00AM and at 3:00PM. George said to me, "It's insane, they should give you a cubicle upstairs and you would still be able to assist Mr. Traynor." George did not agree and he verbally communicated that the company does it all of the time. At 4:30PM I met with Melissa at Synerfac to discuss the conflict and the need for a workstation. On June 14, 2005, I received a call from Synerfac (Melissa) who wanted me to meet with her promptly. I had to ask for permission to leave my job to meet with Melissa at Synerfac.It was on this day of June 14, 2005, I was dismissed from my position with Tetra Tech.

All statements that I have provided are true and I have been honest about all of the questions regarding. My age, disability and gender. Mr. John Traynor did ask me if I had a disability during my interview. He also asked me If I had ever been married and if I had any children. On April 7, 2005 and April 8, 2005 I became ill. I went to my doctor for a check up. My doctor provided me with a note to return to work. This note was given to Mr. Traynor (note states allergies and asthma). I also gave Mr. Traynor a letter from my doctor which states that I have allergic rhinitis and asthma. This letter was given to me to verify my disability and that I am not contagious. See letters enclosed. Mr. Traynor was knew I had a disability.

I have also included several letters from the deputy which states the ruling concerning the violations. These letters are consistent with the continuing violation which is presently pending. Recently, I received another letter from the deputy (state agency) that during their investigation there was no misconduct on my part. Apparently, I am not suitable for my job. However, the company is wrong and the colleagues are not honest. They are going to have to prove that I am not suitable. I

EEOC-D-0033

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 8

am entitled to my training just as my colleagues are entitled to their training. I am
more skilled and more intelligent than most of my colleagues. My work related
experience and my portfolios are proof that I am most suitable for all of the
positions that I have applied for. Their form (colleagues and supervisors) of
entertainment concerning marriages, divorces, sickness, lowliness, and
discrimination has defrauded me and financially extorted me. Marie Tomasso now
has all of the documents regarding the fraud. All of the colleagues involved in this
matter should be fired or they should be denied their promotions. One should never
be allowed to use someone's event in a deceptive way which lowers the person's
dignity or value. Thus resulting in denying the individual that the event is intended
for.

Cases were filed in court several years ago. A negotiated settlement should be
considered. My colleagues are mostly involved with conflicts that do not have merit.
This is why I ignore most of the statements that are communicated. I have merit
regarding the discrimination and I now have my medical records which prove my
history of allergy/asthma. Medical records can be obtained upon request to further
verify medical history                          you have any questions, please
notify me at                        after February 1, 2006.

Sincerely,

Jourdean Lorah

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 9

Remedy

I need a full time job to pay my bills and to take care of my mother who is a senior.

Rent ...............................................................................$500.00(month)

Delmarva Power -Electric Bill.................................$350.00

Artesian -Water Bill ...............................................$97.00

Phone Bill - Cavalier ..............................................$45.00

Long Distance Carrier .............................................$25.00

AIG - Car Insurance ..............................................$550.00(month)

Econo Haul Trash....................................................$40.00 (3-months)

Groceries .................................................................$200.00 (month)

Gas ..........................................................................$200.00 (month)

Health Insurance .....................................................$350.00 (month)

Comcast ...................................................................$45.00 (month)

EEOC-D-0035

JOSEPH R. BIDEN, JR.
DELAWARE

1105 NORTH MARKET STREET
SUITE 2000
WILMINGTON, DELAWARE 19801-1233
(302) 573-6345

# United States Senate

JUDICIARY COMMITTEE

SUBCOMMITTEE ON
CRIME AND DRUGS
CHAIRMAN

FOREIGN RELATIONS COMMITTEE
CHAIRMAN

CAUCUS ON INTERNATIONAL
NARCOTICS CONTROL
CHAIRMAN

June 27, 2002

REDACTED

Ms. Jourdean Lorah



Dear Ms. Lorah:

Thank you for contacting me regarding employment discrimination. I apologize for the delay in responding to your letter. Due to increased security measures, mail delivery has been delayed to Congressional offices in Washington, D.C.

My staff has attempted to contact you for additional information about the matter. If you still require my assistance, please contact my staff member, Desiree' Burritt at (302) 424-8090.

Thanks again for taking the time to contact me. I appreciate the opportunity to be in touch.

Sincerely,

Joseph R. Biden, Jr.
United States Senator

**EEOC-D-0036**

24 NORTH WEST FRONT STREET
WINDSOR BUILDING, SUITE 101
MILFORD, DELAWARE 19963-1440

www.senate.gov/~biden

221 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510-0802
(202) 224-5042

As requested; the following educational background has been provided.

A copy of my degree has been enclosed. I attended the following colleges before my degree was obtained.

The Maryland College of Art & Design
The International Institute of Interior Design
Northern Virginia Community College

All other documents pertaining to education or training have also been provided.

EEOC-D-0037

As requested; the following historical information has been provided.

Washington, D.C.
The Martin Luther King Library

I am on the left at the age of seven.

EEOC-D-0038



BALMY DAY—Everybody was outdoors yesterday, drawn by the balmy 68-degree weather. Three scruvez, taken more or less at it about, were shot in the Northwest Washington vicinity of Glover-Archbold Park. Try leg to gain speed, and balance, at left is a 3-year-old named Jody. The reading couple at center the's reading "The King David Dr." might have had better made health, but they'd have missed the nice day. Winding up spring training at right are Neal Codd (left) and Bret Johnson, both 13. This week will be similarly warm, the Weather Bureau said, with springlike showers.

*(Associated Press by Geoffrey Gould)*

## What Goes on Here

### Business Support Expected

# Boycotters Head for 14th-st

The Free D. C. Movement, claiming victory on H-st. ae, shifts its home rule drive to the 14th-st ave area between U-st and Park Road this week.

Rev. William A. Wendt, president of the University Neighborhoods Council, who will head the drive in the new area, said today the first meeting to organize will be held tomorrow.

**MEETING**

The meeting tomorrow will call together representatives of area civic groups including the Upper Cardozo Men's Club, and the University Neighborhood Council.

"I think that quite a few of the merchants up here will line up with us, and against the opposition of the Board of Trade," Dr. Wendt said.

Dr. Wendt said that after organizational meetings are held this week he is hopeful that the drive will get underway "immediately." As was the case in the H-st ne area, people will be urged to shun storeowners who refuse to display a "Free D C" sticker.

George Freedman, president of the Columbia Heights Businessmen's Association, an organization of 30 merchants in the 14th-st area, said members of the Association hadn't been polled about the drive.

"I can only speak for myself," he said "I'm for it. I imagine many others will be, too."

The boycott of the H-st area wound up Saturday when 200 supporters of the Free D.C. Movement staged a "victory march" up H-st in Northeast at the 15-block area where the drive was centered.

Meanwhile, the Movement remains as leggerheads with the NAACP over the boycott.

Movement leader Marion Barry said it was unfortunate that the NAACP was not supporting the Freedom Movement and that "quite frankly I don't understand their reason. NAACP officials attended all of the early meetings of the movement and should have understood what the movement was doing."

**ANSWER**

Yesterday the NAACP's national director, Roy Wilkins, speaking at a membership drive at Metropolitan Baptist Church, claimed that the boycott was a futile effort

"It's an error to think if you make a corner merchant sign up, selling about home rule that Home rule is made in Congress," Mr. Wilkins said.

And D.C. Democratic Chairman Joseph L. Rauh told a Unitarian workshop for religious liberals that boycotting merchants who refuse to back home rule is a "terrible blunder," but Congress, he added, is to blame for creating the situation that brought it about.

"Whom are we to condemn?" he asked. "Those who wanted justice or those who have denied our aspirations?"

### Hearings Open on Colleges for D. C.

# 'The C Student Is More Important'

Sen. Wayne Morse (D., Ore.) struck a blow for the C student today as his District Education sub-committee opened hearings on legislation establishing public colleges here.

"I am not at all interested in supporting a higher education program in this city that is going to be limited to the so-called superior student," he told a standing-room-only audience in a 28-minute introductory statement.

"The C student is more important in the educational system because there are so many of them. Raising entrance requirements to college, in my judgment, is immoral because that is sacrificing human value."

**SCHOOLS**

His bill would establish a two-year public community college and a four-year public college of arts and sciences planned and operated by a higher Education Board.

Sen. Morse pointed out that by 1975, when present first graders are graduating from high school, "over 60 per cent of all employment opportunities will be in professional, managerial or skilled technical occupations" requiring higher education.

Sen. Margaret Chase Smith (R., Me.), in supporting the bill, said that only in the District are there no programs for strengthening public higher education.

Peter S. Muirhead, Associate Commissioner for higher education in the U. S. Office of Education, pledged help in developing the proposed public colleges.

### Integration Called Traffic Hazard

# Casto Raps School Board Head

"Arlington County Board member Harold J. Casto today accused the chairman of the County School Board of "deliberately deceiving" parents by withholding letters from police warning of traffic hazards to children if the chairman's plan for integrating six North Arlington elementary schools is carried thru.

Mr. Casto released two letters, dated March 4 and 10, from Police Chief William G. Fawver which said that three Glebe Road intersections are so dangerous that children should be "transported by bus" rather than cross them.

Mr. Casto said about 350 children would have to cross Glebe Road to reach Langston School under school Board Chairman John Reed Spicer's integration plan.

Mr. Casto said he was "shocked" that Mr. Spicer didn't show the March 4 letter to advisory committees from the six schools that met on March 8. He said he was releasing both of them so the public would have the information before the final school board meeting on the subject Thursday.

Mr. Casto said Mr. Spicer's letter calling the March 8 meeting said "county traffic officials are working out tentative plans to ensure the safety of any children who would cross Glebe Road to attend Langston."

He said this is "the type of deception we might expect at the school-boy level but totally unworthy of a school board chairman."

He charged Mr. Spicer with concealing the letters a second time in newspaper statements Saturday that his plan would require "substantially less busing" than two others "under consideration."

### D. C. Crime Up 13 Per Cent

The District had a total of 7714 serious crimes last month, 12.6 per cent increase over February, 1966, police reported today. It was the 16th month in a row that crime has risen here.

There were increases only in housebreakings and auto thefts of 8.5 and 12.9 per cent, respectively. Biggest increase was in petit larcenies, which jumped 23.6 cases or 46.1 per cent.

Murders were up 6 or 60 per cent; rapes 6 or 33 1/3 per cent; robberies 25 or 6.2 per cent; aggravated assaults 46 or 5.36 per cent; and grand larcenies 25 or 20.3 per cent. Police "clearances" of crimes was down from 34.5 per cent to February, 1966, to 32.7 per cent last month.

### ¶ Navy Yard for GPO?

The District Commissioners are considering a proposal to the National Capital Planning Commission that the Navy Yard, in Southeast Washington, be designated as the site for a new Government Printing Office. The Commissioners' delegate discussed earlier this month in an NCP note in reacted previous action placing GPO on the National Training School site, thus defeating the move.

### ¶ Crash Kills Md. Man

Joseph C. Boswell, 63, of 7615 Freeport st, Hyattsville, was fatally injured Saturday when his car hit a tree on Montrose ave in Hyattsville, Police said that this year in D C traffic last year the toll at this time was 13.

### ¶ Poverty War—"Fiddling Around?"

Civil rights organizer Bayard Rustin, speaking here at the Church of the Redeemer and the War on Poverty amounts to "fiddling around with little projects... 19 per cent of the Negroes have been done for about 300 years." He said 125 billions is needed. "You can't train any segment of the population unless there's a demand for work." He suggested massive federal public works projects.

### ¶ Brewster Raps FAA

Sen Daniel Brewster (D. Md.) charged that the Federal Aviation Agency is afraid to hold public hearings on allowing jets at National Airport. The fear of jets he added, would spoil the Watergate Concerts, the Sylvan Theater's Shakespeare program, the Cherry Blossom Festival and maybe even the Fourth of July fireworks at the Washington Monument.

### ¶ Hot Shoppes Robbed—Again

The Hot Shoppes restaurant at Fourth-st and Florida-ae ne was held up early yesterday for the second time in less than a week. Early last Monday a lone bandit got $6600. Yesterday two bandits walked in the back door, left open for trash removal, put a gun to the head of manager John Michael, 21, forcing him to open the safe, which yielded them $1700.

### Va. Assembly Stops Clock

RICHMOND, March 14 (UPI) — The 1966 session of the Virginia General Assembly was history today, but as Sept. 1 the action will become very evident.

On that date, a 1 per cent state sales tax will go into effect as will a 2 per cent motor vehicle excise tax. All present sales taxes will stop, but both counties and cities will be able to add a 1 per cent to the state levy.

The state sales tax, signed into law Saturday by Gov. Mills E. Godwin Jr., will jump to 3 per cent in 1968

The Assembly was forced to stop the clocks 15 minutes before the midnight deadline Saturday for the 60-day session, if and adjourned did not come until 12:15 a.m. Sunday in the Senate, one minute after House adjournment.

EEOC-D-0039



REDACTED

EEOC-D-0040

REDACTED



**DISTRICT OF COLUMBIA**
**DEPARTMENT OF HUMAN SERVICES**
WASHINGTON, D.C.

# CERTIFICATE OF BIRTH

This is to certify that the following information has been taken from the original record of birth.

Date of Birth
Name of Father
Maiden Name of Mother
Date Issued                    Date Recorded
DHS 1610 (3/83)

Certificate Number

ROSELLA M REID
REGISTRAR

EEOC-D-0041

As requested; the following vocational or work experience has been included.

Presently, I am an artist with the Rehoboth Art League in Rehoboth Beach, Delaware. My art work is often in an exhibit among other artists during certain times of the year. I have enclosed copies of bank notes which verify the sales of my art work when it has been in the gallery.

My background experience or work experience includes; Marketing, Civil Engineering-Land Surveying (residential land lots) Architecture (elevations and illustrations), Design - floor plans, space planning, drafting various commercial or residential projects, Theater, Teaching and Recreation.

Vocational training was obtained with Accent Media ( film documentaries and research.) (Internship only)-Northern Virginia Community College.

All other areas of work related experience has been obtained through training or specialized areas of work related skills. For example; Civil Engineering was a specialized area of training. I was trained to work in the field to obtain field coordinates using a surveying instrument. All drafting was drafted in the office after the field coordinates were obtained.

Teaching -I have five years of teaching experience in upper elementary and junior high school (Private sector)

Recreation - I have taught many recreational classes during the summer months with the county. Those classes have included; Life Skills, Art and Wildlife Extinction. I have also worked with adults who have special needs such as; autism, mental retardation, deaf, and physical handicaps.

Marketing - Product research for products that are just entering the market. Contacting various distributors and top business 100 companies for merges, consolidations and expansions.

Currently, I have several portfolios of my work which is often used during interviews.

I have written several short stories for children and a collection of poems which is currently at The Library Of Congress. I am not an author by title.

During the 1970's I received a certificate from a finishing school. (Includes photographs) I was also a majorette who competed in many individual competitions.

EEOC-D-0042

**Letter from Department of Social Services which verifies that I have no welfare benefits.**

EEOC-D-0043



**DELAWARE HEALTH
AND SOCIAL SERVICES**

JOURDEAN S LORAH                    12/23/2005

REDACTE

Notice to Disenroll from
Medicaid Managed Care Program

Diamond State Health Plan
Delaware Medicaid Health Benefits Manager

You are being disenrolled from the Diamond State Health Plan. You are no longer eligible for Medicaid's
Managed Care Program because you are no longer eligible for Medicaid.

The following people in your family are being disenrolled from the Managed Care Organization
(MCO)  and will no longer get health care services as a member of the MCO:

| Client ID | Client Name | MCO Name | End Date |
|---|---|---|---|
|  | JOURDEAN S LORAH | DIAMOND STATE PARTNERS | 12/31/2005 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

The rules and authority we used to take action is: 600 DMAP and 2-6 Diamond State Health Plan
Waivers.

If you do not agree with this action, you have a right to ask for a hearing. To ask for this hearing or
if you  have any questions, please call the health benefits manager at 1-800-996-9969.

¡Tenemos representantes hispanos listos para ayudarle con cualquier pregunta, por favor llamenos al
1-800-996-9969!

LCN   0003304867

EEOC-D-0044

REDACTED

| DELAWARE HEATH AND SOCIAL SERVICES DIVISION OF SOCIAL SERVICES | RESIDENCE AND HOUSEHOLD SIZE VERIFICATION FORM |
|---|---|

From: S. Cinphon

DSS Address: 1775 W. 14th St. Wilm. DE 19805

Re: Jourdean Lorah

Address: ▮▮▮▮▮▮

Pool Number: 110    Telephone: ▮▮▮▮

Case Number:

Fax Number: ▮▮▮▮    mail address: _____

Dear Landlord/Collateral Contact/Mortgagee:

The person listed above is applying for or receiving benefits from Social Services. To determine eligibility, we need to verify the person's address and shelter expenses, identify all household members and their relationship to each other. If the above address is incorrect, please list the address on record. _____

Please list all household members and the relationship to each other. (If you are the landlord, the leaseholder or mortgagee and live at the same address, please include your name and list your relationship to the other individuals.)

Jourdean Lorah          (DAUGHTER)

Patty J. Lorah          (MOTHER)

Total number of household members is __2__ * MY MOTHER DOES NOT ALWAYS LIVE AT THIS ADDRESS.

Shelter costs: Please check all that apply to the above person and list the amounts paid:

___ (a) There is no charge for rent.
___ (b) There is no charge for utilities.
_✓_ (c) Tenant pays rent. The charge is $ 500.00 monthly or $_____ weekly.
___ (d) Tenant pays for lot rent. The monthly lot rent is $_____
___ (e) Tenant pays for heat separate from rent.
        The type of heat is ___Electric ___Gas ___Oil ___Kerosene ___Wood ___Coal $____
___ (f) Tenant pays for air conditioning.
___ (g) Tenant pays separately for:  ✓Electric $105.00  ___Gas (nonheat) $____  Sewer $ #20.00
        ✓Trash $35.00  ___Water $87.11  ✓Other $35.00 PHONE BILL   LONG DISTANCE CARRIER IDT
___ (h) Tenant only pays for excess heat or cooling costs. The monthly excess amount is $_____
___ (i) Tenant shares the utility costs. The tenant's share of the utilities is $_____
___ (j) Tenant receives Section 8 subsidized housing and pays $_____ out of pocket each month.
___ (k) Tenant receives a HUD/WHA utility allowance each month. The amount of $_____ is □ applied to the rent or □ received by client
___ (l) Tenant moved in on _____ and started paying charges for month of _____

Check the eating arrangements for the person listed above if you, the landlord, live at the same address:

_✓_ (a) Tenant (and tenant's family) purchases and prepares meals separately from you.
___ (b) Tenant (and tenant's family) purchases and prepares meals with you.
___ (c) Tenant (and tenant's family) pays you for meals. If checked, what is the monthly amount $_____
___ (d) Meals are provided to the tenant at no charge.

I UNDERSTAND THAT STATE LAW PROVIDES CRIMINAL PENALTIES FOR INTENTIONALLY GIVING FALSE INFORMATION TO HELP SOMEONE GET CASH ASSISTANCE, FOOD STAMPS AND/OR MEDICAID.

_Patty J. Lorah_

SIGNATURE OF LANDLORD/COLLATERAL CONTACT/MORTGAGEE    PHONE NUMBER

ADDRESS

I hereby give permission for the release of the above information. _____

APPLICANT/REPRESENTATIVE SIGNATURE DATE

PLEASE DROP OFF, MAIL OR FAX THE FORM TO THE DSS ADDRESS OR FAX NUMBER LISTED ABOVE.
FORM 176 (REV. 09/2003)

350701-01-11-02

**Copies of bills each month that I am responsible for.**

EEOC-D-0046



**ECONO-HAUL**

P.O. BOX 5454
WILMINGTON, DE 19808
(302) 366-7630

ACCOUNT #

SERVICE    114 OATES AVE

| DESCRIPTION | AMOUNT |
|---|---|
| PRIOR BALANCE | 40.00 |
| PAYMENT (THANK YOU)    11/14 | (40.00) |
| RES TRSH CURB 1C 01/01-03/13 | 37.00 |
| ENV SURT SURCHG 01/01/06 | 3.00 |

**2005 HOLIDAY SCHEDULE ON BACK**

DUE 01/30/06    NET NOW DUE    40.00

PLEASE PAY THIS AMOUNT BY 1/30/06

KEEP THIS PORTION FOR YOUR RECORDS

** SEE BACK FOR
HOUSEHOLD HAZARDOUS
WASTE COLLECTION INFO

FIRST CLASS MAIL
U.S. POSTAGE PAID
WILMINGTON, DE
19808
PERMIT NO. 191

| CHECK NO. | AMOUNT PAID |
|---|---|
| | $ |

PATTY J LORAH

| ACCT NO. | AMOUNT DUE |
|---|---|
| 243447 | 40.00 |

**RETURN THIS STUB WITH PAYMENT**

REDACTED

EEOC-D-0047

## Billing Summary

*Keep this portion of the bill for your records.*

**Account Number:** ▓▓▓▓▓▓    Service Location: ▓▓▓▓▓▓

| | | |
|---|---|---|
| **Billing Period:** | | |
| from: | Nov 11, 2005 | |
| to: | Dec 13, 2005 | |

*Make Checks Payable To:*
Delmarva Power
PO Box 17000
Wilmington, DE 19886

*Customer Service Phone:*
§1-800-375-7117
*Emergency Phone 24hrs:*
§1-800-898-8042

47

| | | |
|---|---|---|
| Total Due  Electric Delivery | $ | 0.00 |
| Total Due  Gas Delivery | $ | 350.98 |
| ▶TOTAL PAYMENT DUE | $ | 350.98 |
| | Past due after Jan 03 | |

## Electric Delivery Summary

| | | |
|---|---|---|
| Previous Balance Last Bill | $ | 8.98- |
| Payment Dec 02, Thank You | $ | 50.00- |
| **Remaining Balance as of Dec 13** | $ | 58.98- |
| This Month's Budget Bill | $ | 55.00 |
| Deposit/Interest Applied | $ | 310.00- |
| Deposit Interest Applied | $ | 6.20- |
| ▶TOTAL CREDIT AMOUNT | $ | 320.18- |
| | No Payment Due | |

| | |
|---|---|
| **For Your Information** | For Gas Leaks and Emergencies call 454-0317 |
| | Find helpful energy information on our website www.delmarva.com |
| | Your current bill may reflect an increase due to temperatures which may have been lower than the same bill period last year. |


**delmarva power**

Please See Back For Further Details                    Printed On Recyclable Paper 



EEOC-D-0048



# Artesian Water Company, Inc.
### 664 Churchmans Road, Newark, DE 19702

REDACTED

Service Address:

Lorah, Patty

| Customer Class | Meter Size | Account Number | Property ID | Bill Date | Late Payment Applied After |
|---|---|---|---|---|---|
| Residential | 5/8" | | | 12/22/2005 | 1/16/2006 |

Mailing Address:


Lorah, Patty

**IMPORTANT NOTICE:** Customers with an outside reading device that displays a reading, should check to make sure inside and outside meter readings agree. Also, please verify that the phone number showing on your bill stub is correct. If a discrepancy exists with the meter readings or phone number, please call us at 453-6930. Thank You.

## Billing Detail
### (Please see back of bill for additional information)

| | |
|---|---|
| Account Balance as of 09/23/2005 ......................................................... | $121.04 |
| Payments and Adjustments as of 12/20/2005 ......................................... | -121.04 |
| Balance Forward: .................................................................................... | .00 |
| Current Charges: Water Charge Service Dates: 09/15/2005 through 12/13/2005 | |
| First 5 thousand gallons at $3.682 per thousand gallons ............................ | 18.41 |
| Next 7 thousand gallons at $3.925 per thousand gallons ............................. | 27.48 |
| Customer Charge: ................................................................................... | 28.35 |
| Public Fire Hydrant Ready to Serve Charge: ........................................... | 6.58 |
| Distribution System Improvement Charge....0.32....Regulatory Assessment Adjustment....0.27 .......... | .59 |
| Temporary Increase: ............................................................................... | 11.03 |
| **Total Amount Due - To Avoid Penalty, Please Pay This Amount By 01/16/2006** ......... | **$92.44** |

| Meter Readings (in 1,000 gallons) | | | | | | Consumption Comparison | | |
|---|---|---|---|---|---|---|---|---|
| **From** | | | **To** | | | **Period** | **Total** | **Daily** |
| Date | Type | Reading | Date | Type | Reading | | | |
| 09/15 | Actual | 33 | 12/13 | Actual | 45 | Current Period | 12,000 | 133 gallons |
| | | | | | | Previous Period | 18,000 | 184 gallons |
| | | | | | | Same Period 1 Year Ago | 10,000 | 105 gallons |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Detach stub and return with payment
Make checks payable to Artesian Water Company, Inc. (0010)                    Please allow 10 days for mailing

| Account Number | Property ID | Telephone Number | Amount Due Now | Late Payment Applied After |
|---|---|---|---|---|
| | | | $92.44 | 1/16/2006 |

Amount Paid:  $ _____    ❑ cash  ❑ check _____

Lorah, Patty
114 Walls Av
Wilmington DE 19805-1059

If paying by credit card, please complete the following:

❑ Visa          ❑ Master Card          ❑ Discover

R-5356101753

Card Number: _____ - _____ - _____ - _____

Signature: _____

0010000013491600000092445

Expiration Date: _____ /_____

EEOC-D-0049

**Cavalier**
TELEPHONE

P.O. Box 2950 Richmond, VA. 23228-0000
WWW.CAVALIERTELEPHONE.COM
Return Service Requested

**mittance Section**

| | |
|---|---|
| Statement Date: | 12/18/2005 |
| Account Number: | |
| Telephone Number: | |
| Due Date: | 01/15/2006 |
| Total Due: | $78.70 |
| Amount Enclosed: | $ |

   

To pay by credit card, please call 800.609.2799
or visit us online at www.cavtel.com

JOURDEAN S LOBAN
...INGTON DE 1980.

Cavalier Telephone
P.O. Box 37284
Baltimore, MD 21297-3284

1120302225054000000357200000078700000003170483200512184    **REDACTED**

*Please detach here and return above portion with payment*
*Make checks payable to Cavalier Telephone and note your phone number on your check.*

---

## Invoice Information

| | |
|---|---|
| Statement Date: | 12/18/2005 |
| Account Number: | |
| Telephone Number: | |



**Cavalier**
TELEPHONE

P.O. Box 2950 Richmond, VA. 23228-0000
WWW.CAVALIERTELEPHONE.COM

### Important Messages

**Cavalier Service Enhancement!**
Take a look. We've developed an amazing new web portal just for Cavalier customers. Setup a free account and create your own customized home page. Select what you want to display from over 40 different content groups including news, sports, movies, careers, photos, travel horoscopes and entertainment. See for yourself - www.cavtel.net

**Get a jump on 2006- Calendar Enclosed**
We designed our 2006 calendar so that you could use it practically anywhere. Post it on the fridge, hang it next to your computer or take it to work. It's the perfect size. Enjoy it with our compliments. We hope 2006 will be a happy and healthy year for you.

**Note: Service Change**
Effective with this Invoice-
National Directory Assistance calls are $1.95. (Local Directory Assistance will not change).

EEOC-D-0050

06659



520 BROAD STREET
NEWARK, NJ 07102

Page 1

Invoice Period 11/16/2005 To 12/15/2005
Account No.
Invoice No.    34690943



JOURDEAN LORAH
114

| | |
|---|---|
| Amount of Last Bill | $13.41 |
| Payments as of 12/15/2005 | $13.41 |
| Adjustments as of 12/15/2005 | $0.00 |
| Beginning Balance | $0.00 |
| Current Bill Total Charge | $19.26 |
| Total Amount Due | $19.26 |

Payment Due Date on 01/09/2006



# REDACTED

**GET $20 CASH BACK!**
**You will earn a $20 bill credit for every customer you get to switch to IDT!**
**The more you refer, the more you get!**
**Make sure your friend mentions your name when they sign up in order for us to**
**apply the credit to your account.Thank you for choosing IDT**

**FOR CUSTOMER SERVICE CALL 1-800-889-9126**
**For Online Account Management, visit www.idt.net/account**

EEOC-D-0051

**Unemployment Compensation - Stubs to verify the amount of compensation I receive each week beginning in October 2005 and the last check received. The checks come from the Division of Unemployment Insurance. I have also included the most recent letter from the deputy at the Division of Unemployment Insurance.**

EEOC-D-0052



**DELAWARE
DEPARTMENT OF
LABOR
KEEPING
DELAWARE FIRST**

**Division of Unemployment Insurance
P. O. Box 9955
Wilmington, DE 19809
(302) 368-6600**

REMINDER: YOU MAY NOW FILE YOUR WEEKLY CLAIM USING TELEBENEFITS,
CALL 1-800-794-3032.



J S LORAH

| DE Dept. of Labor Div. of Unemployment Insurance Benefit Payment Account |
|---|
| J S LORAH |

| Fund 10 C.W.E.D. | Lo. No. 02 AMT. |
|---|---|
| 10/22 | $215.00 |

| DATE OF CHECK | 10/25/05 |
|---|---|
| CHECK AMOUNT | $215.00 |

Receipt for your records

*PLEASE DETACH AND RETURN CLAIM FORM TO ADDRESS ABOVE *

---



**DELAWARE
DEPARTMENT OF
LABOR
KEEPING
DELAWARE FIRST**

**Division of Unemployment Insurance
P. O. Box 8099
Newark, DE 19714-8099
(302) 368-6600**

302

J S LORAH

| DE Dept. of Labor Div. of Unemployment Insurance Benefit Payment Account |
|---|
| J S LORAH |

| Fund 10 C.W.E.D. | Lo. No. 02 AMT. |
|---|---|
| 01/15 | $114.00 |

| DATE OF CHECK | 01/20/05 |
|---|---|
| CHECK AMOUNT | $114.00 |

Receipt for your records

*PLEASE DETACH AND RETURN CLAIM FORM TO ADDRESS ABOVE *

REDACTED

EEOC-D-0053

State of Delaware
Department of Labor
Division of Unemployment Insurance



Notice of
Determination
UC-409

| | |
|---|---|
| **Claimant** JOURDEAN S. LORAH | |
| **Address** | |

SS Number:
Local Office: 2
Fund Code: 10
Claim Date: 10/09/2005
Date of AC: / /
Case Number: 238636

Delivered by Mail
Redet: No
Count: Yes

**Findings of Fact:**
The claimant field for benefits and indicated she was permanently laid off with severance. She was paid accordingly. The employer submitted subsequent information indicating the claimant was discharged, "not suitable for position." However it was learned, in a phone interview with the employer, there was no misconduct on the claimant's part.

In a discharge case, the burden of proof is with the employer to prove the claimant was discharged with just cause. Just cause for discharge refers to a willful or wanton act in violation of either the employer's interest or of the employee's duties or of the employee's expected standard of conduct. The employer has not met this burden. The claimant is eligible as she was discharged without just cause in connection with the work.

**Title 19 of Delaware Code 3314(2)**
An individual shall be disqualified for benefits: For the week in which he was discharged from his work for just cause in connection with his work and for each week thereafter until he has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.



**Determination:**
You were discharged by your employer without just cause in connection with the work. Therefore, you are not disqualified from receiving unemployment insurance benefits pursuant to Section 3314(2), Title 19, Delaware Code and will be eligible to receive benefits for each week of unemployment insurance benefits claimed for which the division determines you meet the eligibility requirements of Section 3315, Title 19, Delaware Code. The division shall issue a determination for any week(s) of unemployment insurance benefits claimed for which you are subsequently deemed ineligible to receive benefits.

| | | |
|---|---|---|
| **Claims Deputy Signature:** |  | **Date:** 11/03/2005 |

If you disagree with this determination, you should ask the Claims Deputy for an explanation. If you are not satisfied with the explanation, you may file an appeal.

### Claimant and Employer Appeal Rights

This determination becomes final on    11/13/2005    unless a written appeal is filed. Your appeal must be received or postmarked on or before the date indicated. If the last date to file an appeal falls on a Saturday, Sunday or Legal Holiday, the appeal will be acceptable the next business day.
If you file an appeal and are still unemployed, you must continue to file weekly claim pay authorization forms with the local office, as instructed, until you receive a final decision.

| | |
|---|---|
| **Employer Name and Address** | HILLCREST ASSOCIATES ATTN: PERSONNELL 1760 FLINT HILL RD LANDENBERG, PA 19350 |

**Your employer account will not be charged on this claim benefit year, but may be subject to a charge in a subsequent claim benefit year.**    EEOC-D-0054

Intellectual Property-Art/Fine Art- Gallery

Bank Notes of my fine art work which often sells in the
gallery. One third of each work of art is deducted for
an outreach program.

EEOC-D-0065

**The Rehoboth Art League**
12 DODDS LANE
REHOBOTH BEACH, DE 19971
TEL 302-227-8408
FAX 302-227-4121
www.rehobothartleague.org

MKA

| CUSTOMER'S ORDER NO. | | PHONE | | DATE Aug 22, 04 |
|---|---|---|---|---|
| NAME | | | | |
| ADDRESS | | | | |

| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT. | MDSE. RETD. | PAID OUT |
|---|---|---|---|---|---|---|

| QTY. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| | Seeded | | 150 00 |
| | by | | |
| | Jourdean Corah | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | −30% | 105 00 |
| | | | |
| | | | |
| | | | |
| RECEIVED BY | | TAX | |
| | | TOTAL | |

All claims and returned goods MUST be accompanied by this bill.

12820

NEBS To Reorder:
800-225-6380 or nebs.com

**Thank You**

EEOC-D-0066

*The Rehoboth Art League*
12 DODDS LANE
REHOBOTH BEACH, DE 19971
TEL 302-227-8408
FAX 302-227-4121
www.rehobothartleague.org

MSG ✓
B.n

| CUSTOMER'S ORDER NO. | | PHONE | | DATE 6/15/02 | |
|---|---|---|---|---|---|
| NAME Carol Cobb | | | | | |
| ADDRESS Rt 3 Box 32 | | | | | |
| Shepherdstown, WV 25443 | | | | | |

| SOLD BY Jo | CASH ✓ | C.O.D. | CHARGE | ON ACCT. | MDSE. RET'D. | PAID OUT. | |
|---|---|---|---|---|---|---|---|

| QTY. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| | J. Lorah "Rooted Bulbs" | | 35 — |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | -30% | 24 50 |
| | | | |
| | | | |
| | | | |
| | | TAX | |
| RECEIVED BY | | TOTAL | |

All claims and returned goods MUST be accompanied by this bill.

9646

*NEBS* To Reorder:
800-225-6380 or nebs.com

*Thank You*

EEOC-D-0067

*The Rehoboth Art League*
12 DODDS LANE
REHOBOTH BEACH, DE 19971
TEL 302-227-8408
FAX 302-227-4121
www.rehobothartleague.org

MSG — B.W

| CUSTOMER'S ORDER NO. | PHONE | DATE 8/21/02 |
|---|---|---|

NAME   JUDITH L V KLEIN
ADDRESS  4008 INGERSOL DRIVE
SILVER SPRING MD 20902

| SOLD BY Lm | CASH | C.O.D. | CHARGE $215.63 | ON ACCT. | MDSE. RETD. | PAID OUT |
|---|---|---|---|---|---|---|

| QTY. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
|  | JOURDEAN LORAH | 35 | 8 |
|  | "BULBI OF GARLIC" |  |  |
|  |  |  |  |
|  |  | —30% | 24 5 |
|  |  |  |  |
|  |  | TAX |  |
| RECEIVED BY |  | TOTAL |  |

All claims and returned goods MUST be accompanied by this bill.

9857          To Reorder:          Thank
              300-225-6380 or nebs.com

EEOC-D-0068

Many of the corporations involved in discriminating have paired me with someone who looks similar in appearance (double). This is always an excuse when I have suffered for many years.

I have never been involved with prostitution, nor have I been arrested for this kind of an offense. The double seems to be rewarded as I remain in poverty.

My mother did not give birth to twins and I am the birth right. This situation defrauds me of my accomplishments and my identity.

EEOC-D-0069

EEOC-D-0070



# Guilty Pleas Expected Today in Prostitution Case

**By Mary Jordan**
Washington Post Staff Writer

A sheriff's deputy accused of soliciting politicians, physicians and lawyers to have sex with his wife for $150 an hour, is scheduled to plead guilty today in Fort Lauderdale, Fla., in a case that has prompted the former vice mayor and dozens of other men to try blocking release of notes she took after appointments.

Jeffrey Willets, 41, a Broward County deputy suspended without pay in July, will plead guilty to profiting from prostitution and to taping customers' telephone conversations illegally, Assistant State Attorney Joel Lazarus said.

Kathy Willets, 33, a self-proclaimed nymphomaniac whose newspaper personal ads tout her "turquoise eyes, great tan, [and] hot body," will plead guilty to a prostitution charge and an illegal wiretap charge, the prosecutor said.

But the plea may merely open the book on the case.

Kathy Willets's appointment book and accompanying comments, which rated customers' performance and mentioned whether her husband was watching from the closet, probably will become public record after sentencing, Lazarus and other lawyers said.

For dozens of John Does—or "John Doughs" as lawyers in the case have dubbed them because of their wealth and prominence—an intensified legal battle has begun.

"There is no reason whatsoever to release the names and notes except to satisfy the county's voyeurism," said Richard L. Rosenbaum, attorney for seven men on Willets's list. Single men are concerned that her commitments were too harsh, and married men about their marriages and practices of medicine and law, he said.

"I have one client who had a nervous breakdown on Friday and

checked into a psychiatric ward—I know it related to this—and another customer who got a bleeding ulcer," said Rosenbaum, adding that a third man has lost 30 pounds from worry.

Circuit Court Judge John Frusciante ruled last Wednesday that the client list must be made public by next Monday. The "John Does" immediately appealed.

Within hours after the Willetses were arrested July 23, Douglas Danziger, 50, resigned as vice mayor of Fort Lauderdale. "Frankly," said David Bogenschutz, Danziger's attorney, "the public's coarse curiosity is damaging peoples' lives."

Police sources said Danziger's name was leaked to the media because he was unpopular with some officers enforcing his crusade against topless dancing, vulgar bumper stickers and sale of pornographic magazines.

Ellis Rubin, who with his son Mark is representing the couple, had said

he planned to argue that taking the anti-depressant drug Prozac caused Kathy Willets to become a nymphomaniac and that Jeffrey Willets's alleged impotence prompted him to encourage her to have sex with many partners.

"If they were doing this as therapy, why did they charge $150 an hour?" asked Lazarus, who said he called the manufacturer of Prozac and was told that it has "no relevance to nymphomania."

"We feel confident in our defense," Mark Rubin said. "But the Willetses felt it was in their best interest to plead. . . . They could have gone to jail for a long time."

Lawyers close to the case said that Kathy Willets likely will be placed on probation and that her husband probably will be jailed for at least several months. "Neither has a prior criminal record, the lawyer said.

04/13/2006  12:09    30276165                DEPTOFLABOR                        PAGE  07

State of Delaware
Department of Labor
Division of Unemployment Insurance

**DELAWARE DEPARTMENT OF LABOR**

Notice of
Determination
UC-409

Delivered by Mail
Redet: No
Count: Yes

Claimant   JOURDEAN S. LORAH
Address

Local Office: 2
Fund Code: 10
Claim Date: 10/09/2005
Date of AC:  / /
Case Number: 238636

**Findings of Fact:**
The claimant field for benefits and indicated she was permanently laid off with severance. She was paid accordingly. The employer submitted subsequent information indicating the claimant was discharged, "not suitable for position." However it was learned, in a phone interview with the employer, there was no misconduct on the claimant's part.

In a discharge case, the burden of proof is with the employer to prove the claimant was discharged with just cause. Just cause for discharge refers to a willful or wanton act in violation of either the employer's interest or of the employee's duties or of the employee's expected standard of conduct. The employer has not met this burden. The claimant is eligible as she was discharged without just cause in connection with the work.

**Title 19 of Delaware Code 3314(2)**
An individual shall be disqualified for benefits: For the week in which he was discharged from his work for just cause in connection with his work and for each week thereafter until he has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

REDACTED

**Determination:**
You were discharged by your employer without just cause in connection with the work. Therefore, you are not disqualified from receiving unemployment insurance benefits pursuant to Section 3314(2), Title 19, Delaware Code and will be eligible to receive benefits for each week of unemployment insurance benefits claimed for which the division determines you meet the eligibility requirements of Section 3315, Title 19, Delaware Code. The division shall issue a determination for any week(s) of unemployment insurance benefits claimed for which you are subsequently deemed ineligible to receive benefits.

Date: 11/03/2005

**Claims Deputy Signature:**

If you disagree with this determination, you should ask the Claims Deputy for an explanation. If you are not satisfied with the explanation, you may file an appeal.

**Claimant and Employer Appeal Rights**

This determination becomes final on   11/13/2005    unless a written appeal is filed. Your appeal must be received or postmarked on or before the date indicated. If the last date to file an appeal falls on a Saturday, Sunday or Legal Holiday, the appeal will be acceptable the next business day.
If you file an appeal and are still unemployed, you must continue to file weekly claim pay authorization forms with the local office, as instructed, until you receive a final decision.

Employer   HILLCREST ASSOCIATES
Name and   ATTN: PERSONNELL
Address    1760 FLINT HILL RD

Your employer account will not be charged on this claim benefit year; but may be subject to a charge in a subsequent claim benefit year.

EEOC-D-0077

Jourdean Lorah

February 16, 2006

Equal Employment Opportunity Commission
Attention: Mr. Marinucci
21 South Fifth Street  Suite 400
Philadelphia, Pennsylvania



Charge # 170-2005-02819

Dear Mr. Marinucci,

    Enclosed with my letter is a copy of my birth certificate which proves my age of ▮▮▮nd my birth place. The names of those colleagues who are younger than I, have been provided in my rebuttal. I know I am older and I did not receive my training. Erin Moran was hired after me. She received her training and she harassed me regarding those issues as stated in my brief. With regards to gender, there were two younger males who were hired before me through Manpower. Tetra Tech hired them after I was hired. Both of these colleagues received their six months of training . "AJ" was hired after I was hired through Synerfac. My supervisor John Traynor asked me to get up from my desk/workstation for the new employee "AJ". The company is not being honest about "AJ". I do not know his first name, but I know he was hired through Synerfac right before I was terminated. "AJ" is also younger than I. Requirements/qualifications should be considered.  I was probably more qualified or as equal to my colleagues as far as job qualifications/requirements for applicants seeking a position in the surveying department. The qualifications were first aid, CPR, a physical and knowledge of the position one would be applying for. I am certified in first aid and CPR with the Red Cross. I currently have to take refresher course in CPR. A refresher course is necessary every year in CPR and every three years for first aid (see certificate enclosed). I have a degree in Science and I have knowledge from previous training in surveying. Presently, I have completed all of the required CAD computer courses necessary for a CAD technician position. You can verify all testing and work completed through my previous instructors Mr. Thorngate and Mr. Massinova at Delaware Technical College (see copy of grades). In addition to my qualifications in surveying , I am also trained in areas of architecture and design.

RECEIVED - EEOC
PHILADELPHIA,D.O.
06 FEB 22  PM 2:57

EEOC-D-0078

Equal Employment Opportunity Commission
Attention: Mr. Marinucci
21 South Fifth Street  Suite 400
Philadelphia, Pennsylvania

Page 2

   In addition to my claim which is pending, I object to my name (family name and birth name) as being separated. I am the same person with my achievements with my family name and my birth name. All of my lab reports are clean and they may also be requested.

   All medical records proving my disability ████████████████████ can be provided at your request.

   Sincerely,

   *Jourdean Lorah*

   Jourdean Lorah

   ████████████

EEOC-D-0079



DISTRICT OF COLUMBIA
DEPARTMENT OF HUMAN SERVICES
WASHINGTON, D.C.

# CERTIFICATE OF BIRTH

This is to certify that the following information has been taken from the original record of birth.

Name    JOURDEAN SARAH LORAH

Date of Birth

Name of Father

Maiden Name of Mother

Date Issued                    Date Recorded

Certificate Number

*Rosella M. Reid*
ROSELLA M. REID
REGISTRAR

DHS 1610 (3/83)

REDACTED

EEOC-D-0080



This recognizes that
**Jourdean Lorah**

has completed the requirements for
**Adult and Child CPR**

conducted by
**NATIONAL CAPITAL CHAPTER**

Date completed          **07/16/2001**

The American Red Cross recognizes this certificate
as valid for          year(s) from completion date.



This recognizes that
**Jourdean Lorah**

has completed the requirements for
**Standard First Aid**

conducted by
**NATIONAL CAPITAL CHAPTER**

Date completed          **07/16/2001**

The American Red Cross recognizes this certificate
as valid for          year(s) from completion date.

EEOC-D-0081







**American Red Cross**
*We'll be there.*

This recognizes that
**Jourdean Lorah**

has completed the requirements for
**Adult and Child CPR**

conducted by
**NATIONAL CAPITAL CHAPTER**

Date completed    **07/16/2001**

The American Red Cross recognizes this certificate as valid for ____ year(s) from completion date.



**American Red Cross**
*We'll be there.*

This recognizes that
**Jourdean Lorah**

has completed the requirements for
**Standard First Aid**

conducted by
**NATIONAL CAPITAL CHAPTER**

Date completed    **07/16/2001**

The American Red Cross recognizes this certificate as valid for ____ year(s) from completion date.

EEOC-D-0082



# DELAWARE TECH

**Student Grade Mailer**
**OFFICE OF THE REGISTRAR**
12/15/2005

| | |
|---|---|
| A — Outstanding | U — Withdrawal without approval of College |
| B — Above Average | *AE — Outstanding |
| C — Meets Objectives | *BE — Above Average |
| R — Recycle | *CE — Meets Objectives |
| W — Withdrawal | *SE — Continuing Satisfactory |
| L — Listener/Auditor | *RE — Recycle |
| O — Official Withdrawal | *UE — Withdrawal without approval of College |
| I — Incomplete | |

In order to become passing grades, incompletes must be fully satisfied by the end of the next semester.

(*Not included in GPA)

Contact your home campus for any Questions.

Student Name:  Jourdean S Lorah
Student ID#:
Major:  Architectural Engineeri
Term:  Fall 2005-2006
Home Campus:  STANTON

Jourdean S Lorah

| EDD | 271 | 551 | S. | Advanced Cad Using AutoCad | A | 3.000 | 3.00 | 3.00 | 12.00 |
|-----|-----|-----|-----|------------------------------|---|-------|------|------|-------|

Message 1: The student bears responsibility to contact the instructor regarding grade Issues.

| | Total | 3.00 | 3.00 | 12.00 | 4.00 |
|---|-------|------|------|-------|------|

**Academic - Good Standing**

**ELIGIBLE - Satisfactory Progress OK**

Message 2: Disregard your Financial Aid standing unless you have applied for Financial Aid

| | | 6.00 | 6.00 | 21.00 | 3.50 |
|---|---|------|------|-------|------|
| Owens | Wilmington | Stanton | | Terry | |

**REDACTED**

EEOC-D-0083

**Health Care Associates, P.A.**

Jane Govatos. MSN, FNP-C
*Family Nurse Practitioner*

Paul E. Gorrin, M.D.
*Internal Medicine*
*Allergy*

Margaret C. Gatti, MSN, FNP-C
*Family Nurse Practitioner*

January 21, 2004

To Whom It May Concern,

Jourdean Lorah has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Thank you for your cooperation in this matter.

Sincerely,

*[signature]*

Paul E. Gorrin, M.D.

REDACTED

EEOC-D-0084

LA RED CLINIC
**FABRICIO J. ALARCON, M.D.**
505-A WEST MARKET STREET
GEORGETOWN, DE 19947

(302) 855-1233                          DEA #  BA 6246931

NAME _Lorah Jourdean_                          AGE _____

ADDRESS _____          DATE _9/13/02_

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞

mrs Jourdean

Refill _____ times

DISPENSE AS WRITTEN

SUBSTITUTION PERMITTED

1JIM0206317

REDACTED

EEOC-D-0085



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5ᵗʰ Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

February 9, 2006

Ms. Jourdean Lorah



**Our Reference:**     EEOC Charge Number 170-2005-02819
                       Jourdean Lorah v. Tetra Tech, Inc.

Dear Ms. Lorah:

    Your charge has been assigned to me for review and a determination as to what further actions, if any, should be taken by the Commission. I am in possession of the Respondent's position statement and attachments as well as your rebuttal. I will need to review this information before I can determine how to proceed in this matter. I will contact you immediately after I have the opportunity to do so to advise you of my plans as to further processing of your charge.

Very truly yours,

George J. Marinucci
Investigator

REDACTED

EEOC-D-0086

Jourdean Lorah


January 17, 2006

Equal Employment Opportunity Commission
Attention: Alfred Harris
George King
21 South 5Th. Street  Suite  400
Philadelphia, Pennsylvania   19106-2515



Charge Number 170-2005-02819


Dear Mr. Harris,

    As requested,  the enclosed documentation concerning my rebuttal is regarding
the above charge number 170-2005-02819. Presently, I am unemployed and I am
receiving an unemployment check each week in the amount of $215.00.  I began
receiving my unemployment checks on or around the third week of October
2005.The total amount in unemployment compensation monthly is sixty dollars
more than the amount eligible for welfare benefits. Therefore, I  have no health
insurance and no benefits under the Department of Social Services. Each month my
bills exceed the amount I receive in unemployment compensation. There will be no
unemployment compensation after March 2006. Charity is sometimes needed and
often my mother is burdened with the bill.   Included with my documentation is a
list of various companies with contacts that I have sent resumes pertaining to
employment. There are no openings, as a result of the discrimination and the
conflict that is currently pending.  If you have any questions regarding my written
response please contact me at

Sincerely,
Jourdean Lorah
Jourdean Lorah

RECEIVED - EEOC
PHILADELPHIA, D.O.
06 JAN 19  PM 4: 23

EEOC-D-0087

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 2

The following companies and contacts were sent a resume regarding a full time
position. There are no openings and I have been told the doors are closed.

Merestone Consultants - John Ruan - ███████

KCI Technology – Roy Zeigler - ███████

Pennoni Associates- John Haupt/Grant Harrington ███████

Landmark Engineering - Ted Williams/Troy Reese ███████

Batta Ramesh Associates - Mike - ███████

Vollmer - Jim Gade ███████

Van De Mark & Lynch - John Kelleher ███████

Zebley Associates - Jack Zebley - ███████

Gilmore & Associates - Peter Bloodgood - ███████

Mahaffy & Associates - Mary Waters ███████

National Engineers Clearinghouse ███████

Robertson Howard – Ask Patel ███████

Kercher - Alan Kercher - ███████

A-Del Construction - Human Resources ███████

Remington & Vernick - Tom Beach – ███████

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 3

McBride & Zeigler - Mark Ziegler - ███████████

Morris Ritchie - Phil Tolliver - ███████ 
Karins - Mike Szymanski - ███████████

Northern Virginia Community College Campus Bulletin Board - Synerfac posted an ad for several positions in surveying. I was never re-considered for any employment after my contract ended with Tetra Tech.

One of the ads that was posted stated the job description and the amount of hourly pay one could receive. The hourly rate was $24.50 -$27.00 per hour for assisting a field chief. No experience was necessary. When I called the company about the position posted, I was told that the position was filled in December. The ad remained on the bulletin board.

Enclosed with my written response is an outline of my employment/work related experience. I presently have sixteen years of experience in surveying, architecture, design, teaching and marketing. The accumulation of my experience along with my education has resulted in several portfolios which reflects in both residential and commercial work. My experience in surveying is one year combining both field experience with drafting the surveys. I have recently completed all of my CAD training. The grade I received was an A in advanced CAD. I am an artist. My intellectual property is hanging in the balance of the inequity of former employers and colleagues. Many of my drawings/paintings have been sold (Rehoboth Art League). See all documents that verify my written response.

EEOC-D-0089

Jourdean Lorah


January 17, 2005

Equal Employment Opportunity Commission
Attention: Alfred Harris
George King
George Marinucci

Charge Number
170-2005-02819

Page 4

Rebuttal

On March 14, 2005 at 4:40PM,  I interviewed with Mr. John Traynor-Supervisor
of the Survey Department at Tetra Tech Inc. located at 56 W. Main Street in
Christiana, Delaware. During my interview with Mr. Traynor we discussed my
work related experience and my education. Presently, I have a degree in Science and
I lack only a couple of credits for my degree in Liberal Arts. I have sixteen years of
work related experience in surveying, architecture, design, teaching, and marketing.
At the time of my interview with Mr. Traynor I had six months of surveying
experience in the field and drafting surveys. My portfolio contains several examples
of those surveys that were drafted approximately seventeen years ago.  Mr. Traynor
knew that I had taken a previous CAD course when I was in college.  However, I
had no further training with CAD in any of the work related positions that I was
under contract for. I never said during my interview that I had no knowledge of
autoCAD. The position that Mr. Traynor had open was an administrative/survey
position. We discussed the position that was available and I was honest about my
CAD experience. Mr. Traynor said, "I will train you." During the interview Mr.
Traynor asked me if I had a disability. I said, "Yes, I have asthma." Mr. Traynor
said, "I am a smoker."

I was hired for this position on the day of my interview with an agreement of six
months of training. Mr. Traynor did not give me an application from Tetra Tech to
complete. John Traynor told me that Tetra Tech  would not hire me as their
employee. I was given the names of two agencies that I could contract under
(Manpower and Synerfac). I called Synerfac and I scheduled an appointment with a
recruiter named Greg (March 15, 2005). Greg gave me the necessary paperwork to
complete and I began working for Tetra Tech on  March 22, 2005.

During the first few weeks of my contract, Mr. Traynor and I further discussed

EEOC-D-0090

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 5

my responsibilities and my job description. I was given a list of all tasks that needed to be completed daily as well as those tasks which I would be trained for during the six month training period. Casey Grabowski is a Tetra Tech employee who has been with the company for several years. Mr. Grabowski gave me a folder of self study lessons as well as the illustrated guide for Windows 2000. I did not receive my six months of training per agreement. On one particular day, Casey refused to work with me or train me when my supervisor John Traynor asked him to explain and go over one of the assigned projects. Mr. Casey Grabowski did give me a basic review, but he refused to further train me. It was Casey who suggested I take a course in CAD to help me with my compute skills. I immediately enrolled in the CAD class at Delaware Tech. I was tested at the campus after the first two weeks. I received an A at a score of 100 on my test. This score verifies that my level was way above remedial level. My grade for the first CAD course was a B. I received an A in the advanced class directly following the first course. I was often harassed at the campus with the same type of conflict that was occurring at Tetra Tech. Mr. Casey Grabowski' s name was mentioned by several students.

Casey Grabowski often communicated comments that were defamatory, violations of privacy or statements that were not true. On March 28, 2005 he said I wasn't wearing a slip. Then he said, "You're not sexy." He also told another colleague that I was ill and contagious as he discussed me cleaning my bedding. My disability requires me to clean more often. (I am allergic to allergens inside of my home) I was not contagious. Casey encouraged the chatting with other colleagues and he was always involved with issues that were clearly none of his business. Another employee told me that Casey was trying to fire me.

Dan Sica was a Tetra Tech employee during the time of my employment contract. Mr. Sica did not understand why no one was training me to do the surveys like he was trained. Mr. Sica walked out on his job without any notice. He was very knowledgeable with the computer and he answered several questions when I needed help. Jim Nardo, another supervisor in the Survey Department was not very helpful. He did not want to be bothered with someone who needed training. He referred me back to Mr. Traynor. The computer training was just an excuse. Most of my responsibilities concerning my position were entering data for the daily work logs, filing, Xeroxing, editing, proof reading, deliveries, arranging the sponsorship with MATHCOUNTS (dinner, awards, meetings), cleaning Mr. Traynor's office and keeping the office organized. I had knowledge of the computer when I was hired for this position. Joe Winchess, was another employee who had no knowledge of the program I was working on. He often couldn't answer my questions.

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 6

Several younger employees were hired after I was hired for my position as an administrative assistant. Erin Moran was hired approximately one month after I was hired as a Tetra Tech employee. Erin is younger than I am and she was paid more for her position. Erin received all of her training. Casey Grabowski spent seventy five percent of his time training Erin Moran. Both Casey and Erin became very good friends and they often discussed non employment issues. George, an employee of Tetra Tech told me that Tetra Tech gave Erin my position. I noticed that my job title changed often.  Bob Campball and Mathew Mercado were hired under contract through Manpower before I was hired (both males are younger than I).  Tetra Tech hired them as Tetra Tech employees after I was hired. Both Bob and Mathew received their six months of training.

On  April 25, 2005, Mr. Traynor asked Erin and I to go to the Elkton County Courthouse to research a deed. Erin did not know where the tax number was to begin the research. I knew how to begin researching this project. It was on this day that Erin offended me with an odd gesture of her hand. I also heard Erin tell George (a Tetra Tech employee) that it is odd.  On April 26, 2005, Erin and I went to the Elkton County Courthouse again when she referred to me as someone in a brothal. Directly following this statement (referred to as one from a brothel) George asked me to go to lunch with him. He also noticed that I was not married. He said, "We see that you are not on the hand" (No engagement ring). I had to tell George that I could not go to lunch with him because of the rumors that were circulating around the office. On April 29, 2005 I spoke with my supervisor John Traynor regarding Erin's misconduct. John and I drafted a letter that would warn the employees of defamatory communication. I was than informed by my supervisor to meet with Susan in Human Resources to get the letter approved for letter head. Susan disagreed with our approach using a letter. Instead, Susan arranged a mediation of confrontation with Erin and I. Before the mediation began Susan said to me "And "You are younger than Erin". I said, "No I am older than Erin." This mediation was only a remedy temporarily. As a result of the conflict and the discrimination regarding my age, disability, and gender I lost my job. The younger employee who clearly violated me along with other colleagues in the office kept their position. See documentation concerning all communication during my employment.  During the mediation Susan agreed with me that I made the right decision concerning George and his invitation to lunch.

On May 19, 2005, my supervisor referred to me as someone who was not bright because I was writing with a pencil. Casey Grabowski often referred to me as

EEOC-D-0092

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 7

someone low in intelligence. This is very defamatory and not at all true. On one particular afternoon Mr. Traynor said, "You have a lot more on the ball than they do." Obviously, I am more intelligent then most of my colleagues. The gender/sex (I am a female)  lowers my intelligence as if I am not worthy or not suitable for my position.

   On June 6, 2005, my supervisor John Traynor asked me to get up from my computer work station/desk. Synerfac hired a younger male to fill my position. This person's name was "AJ". I do not know "AJ"'s sir name or birth name. "AJ" was given my computer workstation. His job title was similar to a CAD technician/draftsman. Mr. Traynor asked me to share a workstation with another employee named Steve. Steve worked in the filed all day until 3:00PM in the afternoon. He needed his computer in the morning at 7:00AM and at 3:00PM. George said to me, "It's insane, they should give you a cubicle upstairs and you would still be able to assist Mr. Traynor." George did not agree and he verbally communicated that the company does it all of the time.  At 4:30PM I met with Melissa at Synerfac to discuss the conflict and the need for a workstation. On June 14, 2005, I received a call from Synerfac (Melissa) who wanted me to meet with her promptly. I had to ask for permission to leave  my job to meet with Melissa at Synerfac.It was on this day of June 14, 2005, I was dismissed from my position with Tetra Tech.

   All statements that I have provided are true and I have been honest about all of the questions regarding. My age, disability and gender. Mr. John Traynor did ask me if I had a disability during my interview. He also asked me If I had ever been married and if I had any children. On April 7, 2005 and April 8, 2005 I became ill. I went to my doctor for a check up. My doctor provided me with a note to return to work.  This note was given to Mr. Traynor▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I also gave Mr. Traynor  a letter from my doctor which states that▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮This letter was given to me to verify my disability and▮▮▮▮▮ ▮▮▮▮▮▮▮▮See letters enclosed. Mr. Traynor was knew I had a disability.

   I have also included several letters from the deputy which states the ruling concerning the violations. These letters are consistent with the continuing violation which is presently pending. Recently, I received another letter from the deputy (state agency) that during their investigation there was no misconduct on my part. Apparently, I am not suitable for my job. However, the company is wrong and the colleagues are not honest. They are going to have to prove that I am not suitable. I

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 8

am entitled to my training just as my colleagues are entitled to their training. I am more skilled and more intelligent than most of my colleagues. My work related experience and my portfolios are proof that I am most suitable for all of the positions that I have applied for. Their form (colleagues and supervisors) of entertainment concerning marriages, divorces, sickness, lowliness, and discrimination has defrauded me and financially extorted me. Marie Tomasso now has all of the documents regarding the fraud. All of the colleagues involved in this matter should be fired or they should be denied their promotions. One should never be allowed to use someone's event in a deceptive way which lowers the person's dignity or value. Thus resulting in denying the individual that the event is intended for.

Cases were filed in court several years ago. A negotiated settlement should be considered. My colleagues are mostly involved with conflicts that do not have merit. This is why I ignore most of the statements that are communicated. I have merit regarding the discrimination and I now have my medical records which prove my history of allergy/asthma. Medical records can be obtained upon request to further verify medical history. If you have any questions, please notify me at 302-225-0540 after February 1, 2006.

Sincerely,

Jourdean Lorah

EEOC-D-0094

EEOC
Attention: Alfred Harris
George King
Mr. Marinucci

Page 9

Remedy

I need a full time job to pay my bills and to take care of my mother who is a senior.

Rent …………………………….........................................$500.00(month)

Delmarva Power -Electric Bill…………………………….$350.00

Artesian -Water Bill ……………………………........... $97.00

Phone Bill - Cavalier …………………………….......... $45.00

Long Distance Carrier ……………………………........$25.00

AIG - Car Insurance …………………………….............$550.00(month)

Econo Haul Trash…………………………….......... $40.00 (3-months)

Groceries ……………………………........................ $200.00 (month)

Gas ……………………………................................. $200.00 (month)

Health Insurance ……………………………................. $350.00 (month)

Comcast ……………………………........................ $45.00 (month)

EEOC-D-0095

JOSEPH R. BIDEN, JR.
DELAWARE

1105 North Market Street
Suite 2000
Wilmington, Delaware 19801-1233
(302) 573-6345

JUDICIARY COMMITTEE

Subcommittee on
Crime and Drugs
Chairman

FOREIGN RELATIONS COMMITTEE
Chairman

CAUCUS ON INTERNATIONAL
NARCOTICS CONTROL
Chairman

# United States Senate

June 27, 2002

Ms. Jourdean Lorah





Dear Ms. Lorah:

Thank you for contacting me regarding employment discrimination.  I apologize for the delay in responding to your letter.  Due to increased security measures, mail delivery has been delayed to Congressional offices in Washington, D.C.

My staff has attempted to contact you for additional information about the matter.  If you still require my assistance, please contact my staff member, Desiree' Burritt at (302) 424-8090.

Thanks again for taking the time to contact me.  I appreciate the opportunity to be in touch.

Sincerely,

Joseph R. Biden, Jr.
United States Senator

EEOC-D-0096

24 North West Front Street
Windsor Building, Suite 101
Milford, Delaware 15963-1440
(302) 424-8090

www.senate.gov/~biden

221 Russell Senate Office Building
Washington, DC 20510-0902
(202) 224-5042

Commonwealth of Virginia
State Board for Community Colleges

# Northern Virginia Community College



This is to certify that

## Jourdean Sarah Lorah

is awarded the

## Associate in Science Degree

with a major in

## General Studies

together with all of the rights and privileges appertaining thereto:

Given at Annandale, Virginia, this eleventh day of August, Nineteen hundred and ninety-five.

*Constance J. Breed*
Chair, State Board for Community Colleges

*Claiborne S. Richardson*
Chair, College Board

*Arnold R. Oliver*
Chancellor, Virginia Community College System

*Richard J. Ernst*
College President

CUM LAUDE

EEOC-D-0097

As requested; the following vocational or work experience has been included.

Presently, I am an artist with the Rehoboth Art League in Rehoboth Beach, Delaware. My art work is often in an exhibit among other artists during certain times of the year. I have enclosed copies of bank notes which verify the sales of my art work when it has been in the gallery.

My background experience or work experience includes; Marketing, Civil Engineering-Land Surveying (residential land lots) Architecture (elevations and illustrations), Design - floor plans, space planning, drafting various commercial or residential projects, Theater, Teaching and Recreation.

Vocational training was obtained with Accent Media ( film documentaries and research.) (Internship only)-Northern Virginia Community College.

All other areas of work related experience has been obtained through training or specialized areas of work related skills. For example; Civil Engineering was a specialized area of training. I was trained to work in the field to obtain field coordinates using a surveying instrument. All drafting was drafted in the office after the field coordinates were obtained.

Teaching –I have five years of teaching experience in upper elementary and junior high school (Private sector)

Recreation - I have taught many recreational classes during the summer months with the county. Those classes have included; Life Skills, Art and Wildlife Extinction. I have also worked with adults who have special needs such as; autism, mental retardation, deaf, and physical handicaps.

Marketing - Product research for products that are just entering the market. Contacting various distributors and top business 100 companies for merges, consolidations and expansions.

Currently, I have several portfolios of my work which is often used during interviews.

I have written several short stories for children and a collection of poems which is currently at The Library Of Congress. I am not an author by title.

During the 1970's I received a certificate from a finishing school. (Includes photographs) I was also a majorette who competed in many individual competitions.

EEOC-D-0098

As requested; the following historical information has been provided.

Washington, D.C.
The Martin Luther King Library

I am on the left at the age of seven.

EEOC-D-0099





**BALMY DAY**—Everybody was outdoors yesterday, drawn by the balmy 66-degree weather. These scenes, taken more or less at random, were shot in the Northwest Washington vicinity of Glover-Archbold Park. Try log to gain speed, and balance, at left is a 7-year-old named Jody. The trading couple at center (he's reading *The King Must Die*) might have had better make Inside, but they'd have missed the nice day. Winding up spring training at right are Neal Gold (left) and Bret Johnson, both 13. This week will be similarly warm, the Weather Bureau said, with springlike showers.

## Business Support Expected
# Boycotters Head for 14th-st

The Free D. C. Movement, claiming victory on 14-st, so, shifts its home rule drive to the 14th-st area between U-st and Park Road this week.

Rev. William A. Wendt, president of the Universay Neighborhoods Council, who will head the drive in the new area, said today the first meeting to organize will be held tomorrow.

### MEETING

The meeting tomorrow will call together representatives of area civic groups including the Upper Cardozo Men's Club, and the University Neighborhood Council.

"I think that quite a few of the merchants up here will line up with us, and against the opposition of the Board of Trade," Dr. Wendt said.

Dr. Wendt said that after organizational meetings are held this week he is hopeful that the drive will get underway "immediately." As was the case in the 14-st area, people will be urged to shun storeowners who refuse to display a "Free D. C." sticker.

George Freedman, president of the Columbia Heights Businessmen's Association, an organization of 30 merchants in the 14th-st area, said members of the Association hadn't been polled about the drive.

"I can only speak for myself," he said. "I'm for it. I imagine many others will be, too."

The boycott of the 14-st area wound up Saturday when 200 supporters of the Free D. C. Movement staged a "victory march" up 14-st in Northeast as the Uhlback area where the drive was centered.

Meanwhile, the Movement remains at loggerheads with the NAACP over the boycott.

Movement leader Marion Barry said a was selection rate that the NAACP was not supporting the Freedom Movement and that "quite frankly I don't understand their reason. NAACP officials attended all of the early meetings of the movement and should have understood what the movement was doing."

### ANSWER

Yesterday the NAACP's national director, Roy Wilkins, speaking at a membership drive at Metropolitan Baptist Church, claimed that the boycott was a futile effort.

"It's an error to think if you make a corner merchant sign up, it will bring about home rule. Home rule is made in Congress," Mr. Wilkins said.

And D. C. Democratic Chairman Joseph L. Rauh told a Unitarian workshop for religious liberals that boycotting merchants who refuse to back home rule is a "terrible blunder," but Congress, he added, is to blame for creating home rule as a problem that brought it about.

"Whom are we to condemn?" he asked. "Those who wanted justice or those who have denied our aspirations?"

## Hearings Open on Colleges for D. C.
# 'The C Student Is More Important'

Sen. Wayne Morse (D. Ore.) struck a blow for the C student today as his District Education sub-committee opened hearings on legislation establishing public colleges here.

"I am not at all interested in supporting a higher education program in this city that is going to be limited to the so-called superior student," he told a standing-room-only audience in a 38-minute introductory statement.

"The C student is more important in the educational system because there are so many of them. Raising entrance requirements to college, in my judgment, is immoral because that is sacrificing human value."

### SCHOOLS

His bill would establish a two-year public community college and a four-year public college of arts and sciences planned and operated by a Higher Education Board.

Sen. Morse pointed out that by 1970, when present first graders are graduating from high school, "over 60 per cent

... "in employment opportunities will be in professional, managerial or skilled technical occupations" requiring higher education.

Sen. Margaret Chase Smith (R. Me.), in supporting the bill, said that only in the District are there no programs for strengthening public higher education.

Peter S. Muirhean, Associate Commissioner for higher education in the U. S. Office of Education, pledged help in developing the proposed public colleges.

## Integration Called Traffic Hazard
# Casto Raps School Board Head

Arlington County Board member Harold J. Casto today accused the chairman of the County School Board of "deliberately deceiving" parents by withholding letters from police warning of traffic dangers to children if the chairman's plan for integrating six North Arlington elementary schools is carried thru.

Mr. Casto released two letters, dated March 4 and 10, from Police Chief William O. Fawver which said that three Globe Road intersections are so dangerous that children should be "transported by bus" rather than cross them.

Mr. Casto and about ten

children would have to cross Globe Road to reach Langston School under School Board Chairman John Reed Spicer's integration plan.

Mr. Casto said he was "shocked" that Mr. Spicer didn't show the March 4 letter to advisory committees from the six schools that met on March 8. He said he was releasing both of them so the public would have the information before the final school board meeting on the subject Thursday.

Mr. Casto said the March 2 meeting said "county traffic officials are working out tentative plans to assure the safety of any children who would cross Globe Road to attend Langston."

He said this is "the type of deception we might expect at the school-boy level but totally unworthy of a school board chairman."

He charged Mr. Spicer with concealing the letters' second time to newspaper statement Saturday that his plan would require "substantially less busing" than two others under consideration.

EEOC-D-0100

## What Goes on Here

### D. C. Crime Up 13 Per Cent

The District had a total of 1734 serious crimes last month, 12.6 per cent increase over February, 1965, police reported today. It was the 19th month in a row that crime has risen here.

There were increases only in housebreakings and auto thefts, of 6.5 and 12.3 per cent, respectively. Biggest increase was in petit larcenies, which jumped 328 cases or 49.3 per cent.

Murders were up 4 or 41 per cent; rapes 4 or 33 1/3 per and robberies 14 or 4.3 per cent; aggravated assaults 40 or 1.70 per cent; and grand larcenies 55 or 35.3 per cent. Police "clearance" of crimes was down from 34.3 per cent in February, 1965, to 30.1 per cent last month.

### ¶ Navy Yard for GPO?

The District Commissioners are considering a proposal to the National Capital Planning Commission that the Navy Yard, in Southeast Washington, be designated as the site for a new Government Printing Office. The Commissioners' delegate told earlier this month in an NCP vote to rescind previous action placing GPO on the National Training School site, thus defeating the move.

### ¶ Crash Kills Md. Man

James C. Boswell, 47, of 7915 Freeport-ct, Hyattsville was fatally injured Saturday when his car hit a tree on Monroade-av as he had death was the 21st this year in D C traffic last year the toll at this time was 22.

### ¶ Poverty War—'Fiddling Around?'

Civil rights preacher Bayard Rustin, speaking here at the Church of the Redeemer said the War on Poverty amounts to "diddling around with little graders— 75 per cent of which have been done for the last 200 years." He said job training is foolish "You can't train any segment of the population unless there's a demand for work." He suggested massive federal public works projects.

### ¶ Brewster Raps FAA

Sen. Daniel Brewster (D. Md.) charged that the Federal Aviation Agency is afraid to hold public hearings on allowing jets at National Airport. The fear of jets he added would spoil the Watergate Concerts, the Sylvan Theater's Shakespeare program the Cherry Blossom Festival and maybe even the Fourth of July fireworks at the Washington Monument.

### ¶ Hot Shoppes Robbed—Again

The Hot Shoppes restaurant at Fourteent and Florida-av ne was held up early yesterday for the second time in less than a week. Early last Monday a lone bandit got $2400. Yesterday two bandits walked in the back door, left open for trash removal, put a gun to the head of manager John Michael, 25, forcing him to open the safe, which yielded they $1700.

### Va. Assembly Stops Clock

RICHMOND, March 14 UPI— The 1966 session of the Virginia General Assembly was history today, but so late it was almost well become very evident.

On that date, a 2 per cent state sales tax will go into effect as will a 2 per cent motor vehicle excise tax. All present city sales taxes will stop, but both counties and cities will be able to add a 1 per cent tax to the state levy.

The state sales tax, signed into law Saturday by Gov. Mills E. Godwin Jr., will jump to 3 per cent in 1968.

The Assembly was forced to stop the clocks 15 minutes before the midnight deadline Saturday for the 60-day session. Final adjournment did not come until 4:15 a.m. Sunday in the Senate, one minute after House adjournment.



REDACTED

REDACTED



**DISTRICT OF COLUMBIA**
**DEPARTMENT OF HUMAN SERVICES**
WASHINGTON, D.C.

# CERTIFICATE OF BIRTH

This is to certify that the following information has been taken from the original record of birth.

Name  JOURDEAN SARAH LORAH

Certificate Number

Name of Father
Maiden Name of Mother

DHS-1610 (3/83)

ROSELLA M. REID
REGISTRAR

EEOC-D-0102

Copies of bills each month that I am responsible for.

EEOC-D-0103



## ECONO-HAUL
P.O. BOX 5454
WILMINGTON, DE 19808
(302) 366-7630

| ACCOUNT # |
| SERVICE |

| DESCRIPTION | AMOUNT |
| --- | --- |
| PRIOR BALANCE | 40.00 |
| PAYMENT (THANK YOU)    11/14 | (40.00) |
| RES TRSH CURB-16 01/01-02/28 | 37.00 |
| DISP FUEL SURCHG 01/01/06 | 3.00 |

### 2005 HOLIDAY SCHEDULE ON BACK

DUE 01/30/06    NET NOW DUE    40.00
$0.00 LATE FEE APPLIED 1/30/06

KEEP THIS PORTION FOR YOUR RECORDS

** SEE BACK FOR
HOUSEHOLD HAZARDOUS
WASTE COLLECTION INFO

FIRST CLASS MAIL
U.S. POSTAGE PAID
WILMINGTON, DE
19808
PERMIT NO. 191

| CHECK NO. | AMOUNT PAID |
| --- | --- |
|  | $ |

PATTY J LORAH

| ACCT NO. | AMOUNT DUE |
| --- | --- |
| 243447 | 40.00 |

RETURN THIS STUB WITH PAYMENT

REDACTED

EEOC-D-0104

## Billing Summary

Account Number:   Service Location:

Billing Period:
from:  Nov 11, 2005
to:    Dec 13, 2005

*Make Checks Payable To:*
*Delmarva Power*
*PO Box 17000*
*Wilmington, DE 19886*

Customer Service Phone:
§1-800-375-7117
Emergency Phone 24hrs:
§1-800-898-8042

47

| | | | |
|---|---|---|---|
| Total Due | Electric Delivery | $ | 0.00 |
| Total Due | Gas Delivery | $ | 350.98 |
| ▶TOTAL PAYMENT DUE | | $ | 350.98 |

Past due after Jan 03

## Electric Delivery Summary

| | | |
|---|---|---|
| Previous Balance Last Bill | $ | 8.98- |
| Payment Dec 02, Thank You | $ | 50.00- |
| **Remaining Balance as of Dec 13** | $ | 58.98- |
| This Month's Budget Bill | $ | 55.00 |
| Deposit/Interest Applied | $ | 310.00- |
| Deposit Interest Applied | $ | 6.20- |
| ▶TOTAL CREDIT AMOUNT | $ | 320.18- |

No Payment Due

## For Your Information

For Gas Leaks and Emergencies call 454-0317

Find helpful energy information on our website
www.delmarva.com

Your current bill may reflect an increase due to
temperatures which may have been lower than the
same bill period last year.


**delmarva power**

Please See Back For Further Details

Printed On Recyclable Paper 



EEOC-D-0105



# Artesia Water Company, Inc.
664 Churchmans Road, Newark, DE 19702

Service Address:
Lorah, Patty

| Customer Class | Meter Size | Account Number | Property ID | Bill Date | Late Payment Applied After |
|---|---|---|---|---|---|
| Residential | 5/8" | | | 12/22/2005 | 1/16/2006 |

Mailing Address:
Lorah, Patty

**REDACTED**

**IMPORTANT NOTICE:** Customers with an outside reading device that displays a reading, should check to make sure inside and outside meter readings agree. Also, please verify that the phone number showing on your bill stub is correct. If a discrepancy exists with the meter readings or phone number, please call us at 453-6930. Thank You.

### Billing Detail
*(Please see back of bill for additional information)*

| | |
|---|---|
| Account Balance as of 09/23/2005 .......................................... | $121.04 |
| Payments and Adjustments as of 12/20/2005 ......................... | -121.04 |
| Balance Forward: ..................................................................... | .00 |
| Current Charges: Water Charge Service Dates: 09/15/2005 through 12/13/2005 | |
| First 5 thousand gallons at $3.682 per thousand gallons ...... | 18.41 |
| Next 7 thousand gallons at $3.925 per thousand gallons ...... | 27.48 |
| Customer Charge: .................................................................... | 28.35 |
| Public Fire Hydrant Ready to Serve Charge: .......................... | 6.58 |
| Distribution System Improvement Charge....0.32....Regulatory Assessment Adjustment....0.27 | .59 |
| Temporary Increase: ................................................................ | 11.03 |
| **Total Amount Due – To Avoid Penalty, Please Pay This Amount By 01/16/2006** | **$92.44** |

| Meter Readings (in 1,000 gallons) | | | | | | Consumption Comparison | | |
|---|---|---|---|---|---|---|---|---|
| **From** | | | **To** | | | **Period** | **Total** | **Daily** |
| Date | Type | Reading | Date | Type | Reading | | | |
| 09/15 | Actual | 33 | 12/13 | Actual | 45 | Current Period | 12,000 | 133 gallons |
| | | | | | | Previous Period | 18,000 | 184 gallons |
| | | | | | | Same Period 1 Year Ago | 10,000 | 105 gallons |

---

### Detach stub and return with payment
Make checks payable to Artesian Water Company, Inc. (0010)                    Please allow 10 days for mailing

| Account Number | Property ID | Telephone Number | Amount Due Now | Late Payment Applied After |
|---|---|---|---|---|
| | | | $92.44 | 1/16/2006 |

Amount Paid: $ _____   ❑ cash ❑ check _____

If paying by credit card, please complete the following:

❑ Visa          ❑ Master Card          ❑ Discover

Card Number: _____

Signature: _____

00100000134916000000092445          Expiration Date: _____ /_____

EEOC-D-0106



emittance Section

Statement Date:                                      12/18/2005
Account Number:
Telephone Number:
Due Date:                                            01/15/2006
Total Due:                                           $78.70
Amount Enclosed:                        $


   

To pay by credit card, please call 800.609.2799
or visit us online at www.cavtel.com

P.O. Box 2950 Richmond, VA. 23228-0000
WWW.CAVALIERTELEPHONE.COM
Return Service Requested

JOURDEAN S LORAH

Cavalier Telephone
P.O. Box 37284
Baltimore, MD 21297-3284

11203022250540000003572000000787000000031704832005121&4

*Please detach here and return above portion with payment*
*Make checks payable to Cavalier Telephone and note your phone number on your check.*

## Invoice Information

Statement Date:          12/18/2005
Account Number:
Telephone Number:



P.O. Box 2950 Richmond, VA. 23228-0000
WWW.CAVALIERTELEPHONE.COM



### Important Messages

**Cavalier Service Enhancement!**
Take a look. We´ve developed an amazing new web portal just for Cavalier customers. Setup a free account and create your own customized home page. Select what you want to display from over 40 different content groups including news, sports, movies, careers, photos, travel horoscopes and entertainment. See for yourself - www.cavtel.net

**Get a jump on 2006- Calendar Enclosed**
We designed our 2006 calendar so that you could use it practically anywhere. Post it on the fridge, hang it next to your computer or take it to work. It´s the perfect size. Enjoy it with our compliments. We hope 2006 will be a happy and healthy year for you.

**Note: Service Change**
Effective with this Invoice-
National Directory Assistance calls are $1.95. (Local Directory Assistance will not change).



EEOC-D-0107



06659

**520 BROAD STREET**
**NEWARK, NJ 07102**

Page 1

Invoice Period 11/16/2005 To 12/15/2005
Account No.
Invoice No.

JOURDEAN LORAH

| | |
|---|---|
| Amount of Last Bill | $13.41 |
| Payments as of 12/15/2005 | $13.41 |
| Adjustments as of 12/15/2005 | $0.00 |
| Beginning Balance | $0.00 |
| Current Bill Total Charge | $19.26 |
| Total Amount Due | $19.26 |

Payment Due Date on 01/09/2006

**GET $20 CASH BACK!**
**You will earn a $20 bill credit for every customer you get to switch to IDT!**
**The more you refer, the more you get!**
**Make sure your friend mentions your name when they sign up in order for us to**
**apply the credit to your account.Thank you for choosing IDT**



FOR CUSTOMER SERVICE CALL 1-800-889-9126
For Online Account Management, visit www.idt.net/account



EEOC-D-0108

**Letter from Department of Social Services which verifies that I have no welfare benefits.**

EEOC-D-0109



**DELAWARE HEALTH
AND SOCIAL SERVICES**

JOURDEAN S LORAH                    12/23/2005



Notice to Disenroll from
Medicaid Managed Care Program

Diamond State Health Plan
Delaware Medicaid Health Benefits Manager

You are being disenrolled from the Diamond State Health Plan. You are no longer eligible for Medicaid's
Managed Care Program because you are no longer eligible for Medicaid.

The following people in your family are being disenrolled from the Managed Care Organization
(MCO)  and will no longer get health care services as a member of the MCO:

| Client ID | Client Name | MCO Name | End Date |
|---|---|---|---|
| | JOURDEAN S LORAH | DIAMOND STATE PARTNERS | 12/31/2005 |
| | | | |
| | | | |
| | | | |

The rules and authority we used to take action is: 600 DMAP and 2-6 Diamond State Health Plan
Waivers.

If you do not agree with this action, you have a right to ask for a hearing. To ask for this hearing or
if you  have any questions, please call the health benefits manager at 1-800-996-9969.

¡Tenemos representantes hispanos listos para ayudarle con cualquier pregunta, por favor llamenos al
1-800-996-9969!

LCN  0003304867



EEOC-D-0110

DELAWARE HEATH AND SOCIAL SERVICES
DIVISION OF SOCIAL SERVICES

**RESIDENCE AND HOUSEHOLD SIZE VERIFICATION FORM**

From: S. Cinhron
DSS Address: 1175 W. CENT St.
Wilmi. DE 19805
Pool Number: 110     Telephone: 577-3600
Fax Number: 577-3648     E-mail address:

Re: Jourdean Lorah
Address:
Case Number:

Dear Landlord/Collateral Contact/Mortgagee:
The person listed above is applying for or receiving benefits from Social Services. To determine eligibility, we need to verify the person's address and shelter expenses, identify all household members and their relationship to each other. If the above address is incorrect, please list the address on record. _____

Please list all household members and the relationship to each other. (If you are the landlord, the leaseholder or mortgagee and live at the same address, please include your name and list your relationship to the other individuals.)
Jourdean Lorah          (Daughter)
Patty L. Lorah          (Mother)

Total number of household members is ___2___  * MY MOTHER DOES NOT ALWAYS LIVE AT THIS ADDRESS.

Shelter costs: Please check all that apply to the above person and list the amounts paid:
___ (a) There is no charge for rent.
___ (b) There is no charge for utilities.
_✓_ (c) Tenant pays rent. The charge is $ _500.00_ monthly or $_____ weekly.
___ (d) Tenant pays for lot rent. The monthly lot rent is $_____.
___ (e) Tenant pays for heat separate from rent.
        The type of heat is ___Electric ___Gas ___Oil ___Kerosene ___Wood ___Coal $_____
___ (f) Tenant pays for air conditioning.                                    LONG DISTANCE CARRIER IDT
___ (g) Tenant pays separately for: _✓_Electric $ 105.00  ___Gas (nonheat) $_____  Sewer $_____ $20.00
        _✓_Trash $ 35.00   ___Water $ 87.11   _✓_Other $ 35.00 PHONE BILL
___ (h) Tenant only pays for excess heat or cooling costs. The monthly excess amount is $_____
___ (i) Tenant shares the utility costs. The tenant's share of the utilities is $_____
___ (j) Tenant receives Section 8 subsidized housing and pays $_____ out of pocket each month.
___ (k) Tenant receives a HUD/WHA utility allowance each month. The amount of $_____ is ☐ applied to the
        rent or ☐ received by client
___ (l) Tenant moved in on _____ and started paying charges for month of _____

Check the eating arrangements for the person listed above if you, the landlord, live at the same address:
_✓_(a) Tenant (and tenant's family) purchases and prepares meals separately from you.
___(b) Tenant (and tenant's family) purchases and prepares meals with you.
___(c) Tenant (and tenant's family) pays you for meals. If checked, what is the monthly amount $_____
___(d) Meals are provided to the tenant at no charge.

I UNDERSTAND THAT STATE LAW PROVIDES CRIMINAL PENALTIES FOR INTENTIONALLY GIVING FALSE INFORMATION TO HELP SOMEONE GET CASH ASSISTANCE, FOOD STAMPS AND/OR MEDICAID.

_Patty J. Lorah_
SIGNATURE OF LANDLORD/COLLATERAL CONTACT/MORTGAGEE     PHONE NUMBER

ADDRESS

I hereby give permission for the release of the above information. _____
                                                    APPLICANT/REPRESENTATIVE SIGNATURE DATE

PLEASE DROP OFF, MAIL OR FAX THE FORM TO THE DSS ADDRESS OR FAX NUMBER LISTED ABOVE.
FORM 176 (REV. 09/2003)                                    350701-01-11-02

EEOC-D-0111

REDACTED

**Unemployment Compensation – Stubs to verify the amount of compensation I receive each week beginning in October 2005 and the last check received. The checks come from the Division of Unemployment Insurance. I have also included the most recent letter from the deputy at the Division of Unemployment Insurance.**

EEOC-D-0112



### DELAWARE DEPARTMENT OF LABOR
KEEPING DELAWARE FIRST

**Division of Unemployment Insurance**
**P. O. Box 9955**
**Wilmington, DE 19809**
**(302) 368-6600**

**REMINDER: YOU MAY NOW FILE YOUR WEEKLY CLAIM USING TELEBENEFITS,
CALL 1-800-794-3032.**



J S LORAH

*\* PLEASE DETACH AND RETURN CLAIM FORM TO ADDRESS ABOVE \**

| DE Dept. of Labor |
| Div. of Unemployment |
| Insurance |
| Benefit Payment |
| Account |

J S LORAH

| Fund 10 | Lo. No. 02 |
| C.W.E.D. | AMT. |
| 10/22 | $215.00 |

DATE OF CHECK  10/25/05

CHECK AMOUNT  $215.00

Receipt for your records

---

### DELAWARE DEPARTMENT OF LABOR
KEEPING DELAWARE FIRST

**Division of Unemployment Insurance**
**P. O. Box 8099**
**Newark, DE 19714-8099**
**(302) 368-6600**

302

J S LORAH

*\* PLEASE DETACH AND RETURN CLAIM FORM TO ADDRESS ABOVE \**

| DE Dept. of Labor |
| Div. of Unemployment |
| Insurance |
| Benefit Payment |
| Account |

J S LORAH

| Fund 10 | Lo. No. 02 |
| C.W.E.D. | AMT. |
| 01/15 | $114.00 |

DATE OF CHECK  01/20/05

CHECK AMOUNT  $114.00

Receipt for your records

REDACTED

EEOC-D-0113

State of Delaware
Department of Labor
Division of Unemployment Insurance


**DELAWARE DEPARTMENT OF LABOR**

Notice of
Determination
UC-409

| Claimant | JOURDEAN S. LORAH | SS Number: | | Delivered by Mail |
| Address | | Local Office: | 2 | Redet: No |
| | | Fund Code: | 10 | Count: Yes |
| | | Claim Date: | 10/09/2005 | |
| | | Date of AC: | / / | |
| | | Case Number: | 238636 | |

**Findings of Fact:**
The claimant filed for benefits and indicated she was permanently laid off with severance. She was paid accordingly. The employer submitted subsequent information indicating the claimant was discharged, "not suitable for position." However it was learned, in a phone interview with the employer, there was no misconduct on the claimant's part.

In a discharge case, the burden of proof is with the employer to prove the claimant was discharged with just cause. Just cause for discharge refers to a willful or wanton act in violation of either the employer's interest or of the employee's duties or of the employee's expected standard of conduct. The employer has not met this burden. The claimant is eligible as she was discharged without just cause in connection with the work.

**Title 19 of Delaware Code 3314(2)**
An individual shall be disqualified for benefits: For the week in which he was discharged from his work for just cause in connection with his work and for each week thereafter until he has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

**REDACTED**

**Determination:**
You were discharged by your employer without just cause in connection with the work. Therefore, you are not disqualified from receiving unemployment insurance benefits pursuant to Section 3314(2), Title 19, Delaware Code and will be eligible to receive benefits for each week of unemployment insurance benefits claimed for which the division determines you meet the eligibility requirements of Section 3315, Title 19, Delaware Code. The division shall issue a determination for any week(s) of unemployment insurance benefits claimed for which you are subsequently deemed ineligible to receive benefits.

Claims Deputy Signature:                     Date: 11/03/2005

If you disagree with this determination, you should ask the Claims Deputy for an explanation. If you are not satisfied with the explanation, you may file an appeal.

**Claimant and Employer Appeal Rights**
This determination becomes final on    11/13/2005    unless a written appeal is filed. Your appeal must be received or postmarked on or before the date indicated. If the last date to file an appeal falls on a Saturday, Sunday or Legal Holiday, the appeal will be acceptable the next business day.
If you file an appeal and are still unemployed, you must continue to file weekly claim pay authorization forms with the local office, as instructed, until you receive a final decision.

| Employer Name and Address | HILLCREST ASSOCIATES ATTN: PERSONNELL 1760 FLINT HILL RD LANDENBERG, PA 19350 | Your employer account will not be charged on this claim benefit year, but may be subject to a charge in a subsequent claim benefit year.    EEOC-D-0114 |

Intellectual Property-Art/Fine Art- Gallery

Bank Notes of my fine art work which often sells in the
gallery. One third of each work of art is deducted for
an outreach program.

EEOC-D-0125

**The Rehoboth Art League**
12 DODDS LANE
REHOBOTH BEACH, DE 19971
TEL 302-227-8408
FAX 302-227-4121
www.rehobothartleague.org

MKA

| CUSTOMER'S ORDER NO. | | PHONE | | DATE Aug 22, 04 |
|---|---|---|---|---|
| NAME | | | | |
| ADDRESS | | | | |

| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT | MOSE RETD | PAID OUT |
|---|---|---|---|---|---|---|
| MKA | | | | | | |

| QTY. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| | Seeded by Jourdean Corah | | 150 00 |
| | | | |
| | | | |
| | | −30% | 105 00 |
| | | | |
| | | | |
| | RECEIVED BY | TAX | |
| | | TOTAL | |

All claims and returned goods MUST be accompanied by this bill.

12820

NEBS To Reorder:
900-225-6380 or nebs.com

**Thank You**

EEOC-D-0126

*The Rehoboth Art League*

12 DODDS LANE
REHOBOTH BEACH, DE 19971
TEL 302-227-8408
FAX 302-227-4121
www.rehobothartleague.org

MSG - BIN

| CUSTOMER'S ORDER NO. | | PHONE | | DATE 8/21/02 |
|---|---|---|---|---|

NAME JUDITH L V KLEIN

ADDRESS 4008 INGERSOL DRIVE

SILVER SPRING MD 20902

| SOLD BY Lm | CASH | C.O.D. | CHARGE CC1363 | ON ACCT. | MDSE. RETD. | PAID OUT |
|---|---|---|---|---|---|---|

| QTY. | DESCRIPTION | | PRICE | | AMOUNT | |
|---|---|---|---|---|---|---|
| | JOURBEAN LORAH | | 35 | | 8 | |
| | "BULBS OF GARLIC" | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | -30% | | | 24 5 | |
| | | | | | | |
| | RECEIVED BY | | | TAX | | |
| | | | | TOTAL | | |

All claims and returned goods MUST be accompanied by this bill.

9857        To Reorder:
           306-225-6389 or nebs.com

Thank

EEOC-D-0127

**The Rehoboth Art League**
12 DODDS LANE
REHOBOTH BEACH, DE 19971
TEL 302-227-8408
FAX 302-227-4121
www.rehobothartleague.org

*MSG* ✓
*Bin*

| CUSTOMER'S ORDER NO. | | | PHONE | | | DATE 6/15/02 | |
|---|---|---|---|---|---|---|---|
| NAME Carol Cobb | | | | | | | |
| ADDRESS Rt 3 Box 32 | | | | | | | |
| Shepherdstown, WV 25443 | | | | | | | |

| SOLD BY Jo | CASH ✓ | C.O.D. | CHARGE | ON ACCT. | MDSE. RET'D. | PAID OUT | |
|---|---|---|---|---|---|---|---|

| QTY. | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| | J. Lorah "Rooted Bulbs" | | 35 — |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | −30% | 24 50 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TAX | |
| RECEIVED BY | | TOTAL | |

All claims and returned goods MUST be accompanied by this bill.

9646

NEBS® To Reorder:
800-225-6380 or nebs.com

**Thank You**

EEOC-D-0128

Many of the corporations involved in discriminating have
paired me with someone who looks similar in appearance (double).
This is always an excuse when I have suffered for many years.

I have never been involved with prostitution, nor have I
been arrested for this kind of an offense. The double
seems to be rewarded as I remain in poverty.



My mother did not give birth to twins and I am the birth
right. This situation defrauds me of my accomplishments and
my identity.

EEOC-D-0129



# Guilty Pleas Expected Today in Prostitution Case

By Mary Jordan
Washington Post Staff Writer

A sheriff's deputy accused of soliciting politicians, physicians and lawyers to have sex with his wife for $150 an hour, is scheduled to plead guilty today in Fort Lauderdale, Fla., in a case that has prompted the former vice mayor and dozens of other men to try blocking release of notes she took after appointments.

Jeffrey Willets, 41, a Broward County deputy suspended without pay in July, will plead guilty to profiting from prostitution and to taping customers' telephone conversations illegally, Assistant State Attorney Joel Lazarus said.

Kathy Willets, 33, a self-proclaimed nymphomaniac whose newspaper personal ads tout her "turquoise eyes, great tan, [and] hot body," will plead guilty to a prostitution charge and an illegal wiretap charge, the prosecutor said.

But the plea may merely open the book on the case.

Kathy Willets's appointment book and accompanying comments, which rated customers' performance and mentioned whether her husband was watching from the closet, probably will become public record after sentencing, Lazarus and other lawyers said.

For dozens of John Does—or "John Doughs" as lawyers in the case have dubbed them because of their wealth and prominence—an intensified legal battle has begun.

"There is no reason whatsoever to release the names and notes except to satisfy the country's voyeurism," said Richard L. Rosenbaum, attorney for seven men on Willets's list. Single men are concerned that her comments were too harsh, and married men about their marriages and practices of medicine and law, he said.

"I have one client who had a nervous breakdown on Friday and

checked into a psychiatric ward—I know it related to this—and another customer who got a bleeding ulcer," said Rosenbaum, adding that a third man has lost 30 pounds from worry.

Circuit Court Judge John Frusciante ruled last Wednesday that the client list must be "made public by next Monday. The "John Does" immediately appealed.

Within hours after the Willetses were arrested July 23, Douglas Danziger, 50, resigned as vice mayor of Fort Lauderdale. "Frankly," said David Bogenschutz, Danziger's attorney, "the public's coarse curiosity is damaging peoples' lives."

Police sources said Danziger's name was leaked to the media because he was unpopular with some officers enforcing his crusade against topless dancing, vulgar bumper stickers and sale of pornographic magazines.

Ellis Rubin, who with his son Mark is representing the couple, had said

he planned to argue that taking the anti-depressant drug Prozac caused Kathy Willets to become a nymphomaniac and that Jeffrey Willets's alleged impotence prompted him to encourage her to have sex with many partners.

"If they were doing this as therapy, why did they charge $150 an hour?" asked Lazarus, who said he called the manufacturer of Prozac and was told that it has "no relevance to nymphomania."

"We felt confident in our defense," Mark Rubin said. "But the Willetses felt it was in their best interest to plead. . . . They could have gone to jail for a long time."

Lawyers close to the case said that Kathy Willets likely will be placed on probation and that her husband probably will be jailed for at least several months. Neither has a prior criminal record, the lawyers said.



SEPT. 11, 1991

E003-D-0110

...er t' pointment book may surface.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Philadelphia District Office

21 South 5ᵗʰ Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604,2632& 2685

January 4, 2006

Our Reference: Charge Number 170-2005-02819
Jourdean S. Lorah  v. Tefra Tech, Inc.



Ms. Jourdean S. Lorah

Dear Ms. Lorah:

We have received a response to your allegations of discrimination because of your sex (female), age and disability from Tefra Tech, Inc.  The response with supporting documentation, represents the Respondent's position regarding your specific allegations.

Please review the enclosed information from Tefra Tech, Inc., which summarizes its position , and submit your written response/rebuttal to me by Thursday, January 19, 2006.  Your timely response will enable us to decide what to do next with the processing of your charge.  Your response should be specific and contain information that will rebut the Respondent's position and/or further support your allegations.

Are you currently employed?  If so, please include the name and address of your employer, date of hire, position and salary in your response.  Have you received unemployment compensation?  If so, please include the dates and amounts.

Settlement of charges is always an option that EEOC pursues during our investigations.  If both parties are amenable to pursuing a Negotiated Settlement, the assigned Investigator will facilitate settlement discussions.  Please include in your response the specific terms of relief that you are seeking to resolve your charge.  If those terms include monetary relief, please provide a full explanation of the purpose/basis for the monetary relief requested.

If you fail to respond to this letter within the prescribed timeframe, it will be recommended that your charge be dismissed.  If your charge is dismissed, a Dismissal and Notice of Rights  will be issued to you and you can exercise your right to file a lawsuit against the Respondent in U.S. District court within ninety (90) days of your receipt of the Dismissal/Notice.

If you have any questions or concerns prior to submitting your response, please contact me at (215) 440-2659.

Sincerely,

George E. King, Jr.
Enforcement Supervisor

Enclosure

EEOC-D-0131

REDACTED

## PART II – POSITION STATEMENT

Provide a position statement responding to the facts and circumstances surrounding each alleged discriminatory act, and describe and explain your reasons for taking such actions, along with applicable supporting documentation.

I.    **"I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005."**

Tetra Tech acknowledges that Ms. Lorah was brought in to work for Tetra Tech through the temporary agency Synerfac on March 22, 2005.

**"After I began my employment, I never received the on-the-job training that was promised."**

Tetra Tech denies this allegation. Ms Lorah was brought in to provide administrative assistance in the Survey Department. During her interview with John Traynor, Ms. Lorah was presented with a listing of job responsibilities for the position of Survey Assistant – Office (see Attachment A). At that time Ms Lorah admitted that she had no knowledge of AutoCADD software and Mr. Traynor said we would provide basic training for her in that program.

Once on the job, Ms. Lorah was partnered with another employee, Casey Grabowski, for a full-day training session in AutoCADD. At that time, Ms. Lorah's computers skills were assessed as being below the remedial level. She was given some additional self-study lessons for AutoCADD as well as the Illustrated Guide for Windows 2000 to assist with basic questions on Word and Excel. Additionally, Mr. Traynor and others made themselves available to answer Ms Lorah's computer related questions.

**"Younger employees received this training including a younger female who was hired by the Respondent."**

Tetra Tech denies that there was a younger female employee in the survey department in a similar position to Ms. Lorah. The only other female in the department, Erin Moran, is an Engineer with a different level and scope of job responsibility than Ms. Lorah. Ms Moran already possessed the basic skills in AutoCADD was provided with more advanced training based on her job responsibilities (see Attachment B).

**"On or about June 14, 2005, Respondent had my employer terminate my contract."**

Tetra Tech acknowledges that on June 14, 2005, Synerfac terminated Ms. Lorah's assignment with Tetra Tech per Tetra Tech's request.

**"I was replaced by a younger male."**

Tetra Tech denies that Ms. Lorah was replaced by a younger male. The duties previously assigned to Ms Lorah were reassigned to a female. Tetra Tech is not aware of this individuals age as she is an employee of Synerfac temporary agency on assignment at Tetra Tech.

EEOC-D-0132

II.     "I believe that I have been discriminated against because of my age ███ in violation
        of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of
        my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended
        ("Title VII") and/or because of my disability in violation of the Americans with
        Disabilities Act of 1990 ("ADA")."

Tetra Tech denies all allegations in this statement. While Ms. Lorah was working with Tetra
Tech, we were not aware of Ms. Lorah's age, or of any disability she may have. Additionally, the
duties previously assigned to Ms. Lorah are now assigned to a female.

        "During my interview, a Respondent supervisor asked me if I had a disability."

During the interview with Ms. Lorah, Mr. Traynor asked if there was anything that might prevent
Ms. Lorah from being able to perform the job as outlined. In response to this question, Ms. Lorah
did not disclose any disability.

        "After I began working as a contract employee at Tetra-Tech, my supervisor asked
        me if I had any children and if I had ever been married."

Tetra Tech denies that Ms. Lorah was asked by her supervisor if she had any children or had ever
been married.

EEOC-D-0133

Name: _____ Jourdean rah _____    Date: __July__ , 2005

## ADA INTAKE QUESTIONNAIRE    REDACTED

Please answer each question on this questionnaire completely and accurately. Incomplete answers may delay the processing of your charge. If additional space is needed to answer any question(s), please attach additional pages. When all questions are answered, please sign and date the form and return it to this office.

1. Describe your disability. Provide the medical name for your disability, if known, as well as a general description of your disability in non-medical terms. Describe in general what major life activities (such as walking, lifting, breathing or hearing, etc.) are affected by your disability and describe the extent to which that activity is affected.



one who is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that affect me.

However, further testing is sometimes necessary to determine

This condition is considered

2. Is your disability permanent or of a temporary nature? When was your disability first diagnosed? If your impairment was caused by an accident or injury, when did that accident or injury occur? Has your physician indicated that the limitations caused by your disability are of a permanent nature? Is your disability worsening or improving?



become worse.

EEOC-D-0134

ADA INTAKE QUESTIONNAIRE - . g. 2

_____

_____

_____

_____

_____

_____

_____

_____

3.    If your disability was caused by or made worse by a job-related injury or accident, did you apply for workers compensation?  If yes, were you awarded workers compensation? For what period of time were you on workers compensation? If you are still on workers compensation (or were on workers compensation at the time of the alleged discrimination), explain how you would be able to perform the essential functions of your regular job with or without an accommodation while still on workers compensation.

_____

_____

_____

_____

_____

_____

_____

_____

4.    Explain how your particular disability affects your ability to perform the job in question.  Also, describe any limitations or restrictions related to this job which have been placed on you by a physician for reasons related to your disability.  If your physician recommended that you be placed on "light duty," what type of light duty

EEOC-D-0135

AD, . INTAKE QUESTIONNAIRE -   g. 3

assignments were recommended and for what period of time?

Also, does Respondent have a light duty program?  If so, is this duty limited in any way (e.g., only to persons who had on-the-job injuries, for a limited period of time, for certain categories of employees only, etc.)?



5.   Provide the names, addresses and phone numbers (if known) of all doctors and/or therapists who have treated you for this disability.  For each such person listed, indicate the period of time you were treated by this person.

Dr. Paul Gorrin- 703- 934-0611

Dr. Richard Kim - 302-995-2952

Dr. Alarcon - 703-855-1233

Dr. John Vroom  703-922-1000

EEOC-D-0136

## ADA INTAKE QUESTIONNAIRE – Pg. 4

6.    Describe how, when and which Respondent management officials became aware of your disability and any job-related limitations or restrictions caused by that disability.

On March 14, 2005 Mr. John Traynor asked me if I had any
disabilities. I responded to my employer truthfully.
Later, I had been told that he was not allowed to ask me
if I am disabled.

7.    Have any Respondent managers or supervisors made negative comments concerning your disability?   If so, provide the name and title of each person making the comments and describe those comments in terms of what was said, when it was said, and whether there were any witnesses to those statements.

My suprvisor never made any negative comments about my
diability. My colleagues at work communicated statements
that were offensive and disparaging as if I was contagious.
I was also referred to as someone who was on drugs.

EEOC-D-0137

AD.  . INTAKE QUESTIONNAIRE ·    g. 5

_____

_____

_____

_____

_____

_____

8.  Do you (or did you) need a reasonable accommodation in order to perform the job in question?  If yes, describe for what part or parts of the job you required an accommodation.  Indicate how frequently this part of the job is done and the importance of this part of the job to the total job.

is more comfortable. My doctor has given me a note concerning

this accommodation and my disability. In the past I have

worked with ███████████████████████████

██████████████████████████████████████

█████████████████

Once again, ████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████

9.  Are you (or were you) able to perform all parts of the job in question other than the part(s) described above for which you require an accommodation?  Describe the major functions of the job which you are able to perform without an accommodation.

I did not need an accommodation when I worked with this

employer. ███████████████████████████████

██████████████████████████████████████

█████████

EEOC-D-0138

## ADA INTAKE QUESTIONNAIRE – Pg. 6

_____

_____

_____

_____

_____

_____

_____

_____

_____

10.    Have you ever sought a reasonable accommodation because of your disability?  If yes, describe the circumstances surrounding your request to include: date of request, name and job title of the person(s) to whom the request was made, the type of accommodation requested, and response(s), if any, to the request.

Last year 2004 and 2003 I requested the accommodation.

One complaint is pending regarding a former employer. Their

█████████████████████████████████████████

████████████ h. 2003 (approx.) █████████████

█████████████████████████████████████████

Employer-Creative Concepts –I. did not have to ask, the employer

he knew of my condition. YMCA-Laura -Instructor and supervisor.

The YMCA instructors were notified.

_____

_____

_____

EEOC-D-0139

## ADA INTAKE QUESTIONNAIRE - . g. 7

11. Are there any witnesses, written records or other means available to verify that you made this request for reasonable accommodation and/or that your request was denied, was not acted upon, or was not met in a manner satisfactory to you? If yes, please describe the means by which this can be verified.

No witnesses are needed for this particular complaint. My

supervisor asked me i? I was disabled.I did not need an

accommodation for this position.████████████████████████

████████████████████████████████████████████████████

harrassed by my colleagues as if I was lower in intelligence,

contagious and as if I was on drugs.

12. If you are claiming that you are not disabled, but Respondent incorrectly "perceived" you to have a disability, describe what disability you are perceived as having. In addition, indicate which Respondent representative(s), by name and job title, perceive you to have this disability and what makes you believe that those persons have this perception.

Comments in the past have included comments of mental retardation.

I am not mentally retarded. My co-workers do it intentionally

to create a conflict which will result in my termination.

Many people who are not educated about██████████████████

████████████████████████████████████████and it is

contagious. My disability known██████████████████s not

contagious.

EEOC-D-0140

## ADA INTAKE QUESTIONNAIRE – Pg. 8

_____

_____

_____

13.  If the Respondent has taken an action against you because you are viewed as being a "direct threat" (i.e., that because of your disability you pose a threat to your own safety or the safety of co-workers), provide the name and title of the Respondent representative who informed you of this, when this occurred, whether this was done orally or in writing, and what reason(s) was(were) given for considering you a direct threat, and describe to what extent this was based on medical information.  Also, describe whether Respondent attempted to provide a reasonable accommodation to you to reduce the threat or to transfer you to another position.

I was terminated and I have reason to believe that my

colleagues have blamed me for a number of problems that

they are directly the cause of.  The co-workers communicated

on a daily basis that I was a "sore" (contagiously). Comments

were communicated by one employee on May 6, 2005 by a younger

employee that I have a bacterial infection." He also said, "She's

weird, she wipes down her bedding all the time." I have never

discussed my condition with anyone at work.On the day that I

was terminated, the nurse who gave me ████████████████████

████████████████████████████████  It was very offensive.

I am not a dog with a parasite. This type of condition

was also mentioned at work. I was told on June 10, 2005

by my supervisor that, "I am getting a sore." I didn't give
him a sore.

**I declare under penalty of perjury that I have read the above statements and that they are true and correct.**


Signature  _____         Date  _____Aug. 4, '05____         EEOC-D-0141

REDACTED

# MAJOR LIFE ACTIVITIES
### (including, but not limited to):

| | | | |
|---|---|---|---|
| | Breathing | | Reproduction |
| | Caring for oneself | | Seeing |
| | Concentrating | | Sitting |
| | Eating | | Sleeping |
| | Hearing | | Speaking |
| | Interacting with others | | Standing |
| | Learning | | Stooping |
| | Lifting | | Thinking |
| | Performing manual tasks | | Walking |
| | Reaching | | Working (broad category of jobs) |
| | Reading (limitations cause by disability) | | Other (Identify the activity and explain why it constitutes a major life activity) |

*Check off those that are affected by your disability.*

I know what my limitations are.

*Jundean Lorak*
8/4/05

2·03

EEOC-D-0142

Name: _____ Jourdean Lorah _____    Date: _ August 3, 2005 _____

# HARASSMENT (SEXUAL, RACIAL, ETC.) QUESTIONNAIRE

Provide specific examples of all alleged verbal and/or physical harassment. Be as exact as you can be in describing each act of harassment (e.g., the exact words that were said and/or the exact nature of any physical harassment). If more space is needed for any response, please use additional pages.

1.    For each act of alleged harassment, indicate the following:

    a)    Detailed description of the harassment, including dates:

_____ See enclosed documentation _____
_____
_____
_____
_____
_____
_____

    b)    Name and title of person(s) doing the harassment and the working relationship of each person to you (e.g., immediate supervisor, co-worker):

_____ See enclosed documentation. _____
_____
_____
_____
_____
_____

2.    If you were subjected to unwanted harassment, was your employment status in any way threatened if you did not go along with the harassment? For example, did the harasser tell you that you would be discharged, would receive a lower evaluation, would not receive a pay raise or promotion? If your answer is yes, provide specifics about what was told to you. Yes

_____ I was told often by my colleagues that, "You're not going to
_____ work out." "We see that you are an issue." (another manager)
_____ Jim Nardo is also a manager is this office at Tetra Tech Inc. He
_____ often said to me that it's an issue, but he never made an effort
_____ to confront those indivduals who were involved nor did he tell
_____ them to stop.

3.    Did you inform the person doing the harassment that you objected to what was said or being done? If yes, what did you say? What was the response, if any?

_____ Yes, I confronted the colleague with a Human Resource Administrator
_____ at Tetra Tech Inc. See enclosed

EEOC-D-0143

HARASSMENT (SEXUAL, RACIAL, ETC.) QUESTIONNAIRE

#3. On April 25, 2005, my supervisor asked me to go to
the Elkton Count Research Building (courthouse) with
Erin Moran to do research on a deed. During
my conversation with Erin she said, "And you are in
a brothal." I did not respond to it because it was
in the form of a slip. It is also below my dignity.
This statement was communicated by Erin right before
we arrived at the courthouse. When we began the research,
Erin did not know where the tax parcel number was
located. I proceeded to show Erin how to begin.
During the administrative process of gathering the
research Erin began to mark me with an odd hand
gesture. The gesture was in the form of a bent hand
in an odd manner at the xerox machine and at the files.
Erin then said to me, "They didn't see it." When we
proceeded to finish our research on the third floor, I
overheard someone on the telephone speaking to someone
else,"Erin is extorting her." I documented the
problem and I notified my supervisor on April 29, 2005.
I specifically discussed the misconduct and what was
communicated. I also explained to my supervisor that
it was very offensive and slanderous to my reputation.
In addition to our discussion I reminded him that she
is younger. My supervisor and I decided to circulate
a memo concerning this type of conduct. We also
discussed various ways to solve the problem. He then asked
me to get permission from H.R. Admin. Susan Brewer to
put the memo on the company letterhead.
    On May 12, 2005,  I met with Susan Brewer and she
said, "We don't use memos to solve problems." "We
confront all individuals who are involved." Ms. Brewer
reminded me that I was an agency employee and Erin is
a Tetra Tech Inc. employee. Another employee other
than Erin was also involved. He overheard the
conversation between Mr. Traynor and I on April 29, 2005
when I was in his office. This employee is also younger,
and he repeated the comment as I walked out of my
supervisor's office. During the confrontation with
Erin, Ms. Brewer mediated quietly until both sides
had been heard. Erin denied the statement and the
behavior. She also cried during the mediation. After
Erin left the office and before the other employee
came in, Ms. Brewer said to me, "It's you, you are French."
Then Ms. Brewer said, "Erin is older." I said, "No, Erin
is not older, I am older than Erin." The other employee
was confronted and he too denied the statement. Both Erin
and the other employee said, "I don't even know what a
brothal is." The second employee, Mathew (field crew) told
Ms. Brewer that many of the colleagues had been
discussing my poor performance with the computer. I said,
"I am now taking a course at night." I received 100 on my
exam.(following the meeting -see dates attached.)

EEOC-D-0144

HARASSMENT (SEXUAL, RACIAL, ETC.) QUESTIONNAIRE

#3. Before this mediation, I clearly told Ms. Brewer that I was
not have a conversation with Mathew. I also told Mathew not to
get involved with any discussion with other employees that
would be against the company's policy. Mathew was hired by
Tetra Tech Inc. Ms. Brewer also said, "It's before your
time." (regarding statement about a brothal to Erin, when she
said she didn't know what it was.) Both employees said it and
both employees knew what a brothal was.

EEOC-D-0145

_ARASSMENT QUESTIONNAIRE _ 2)

4.    Does the employer have a (sexual) harassment policy that you are aware of? Is there a provision for reporting sexual or other harassment? If so, did you use that procedure? If you have a copy of this policy, please attach it to this document. Tetra Tech Inc. is a very large company with rules and regulations/policy. After the mediation on April 29, 2005, all Tetra Tech Inc. employees had to sign a document that they had read the policy and rules. I was never given a copy of the policy. I was told that I am not a Tetra Tech Inc. employee. I did not violate any rules.

5.    Did you report the harassment to any employer official or representative? (✗)yes ( )no If yes, indicate the following:

   a)    Name of person Mr. John Traynor/Ms. Susan Brewer -H.R. Admin.

   b)    Job title Mr. Traynor-Manager of Survey/Engineering

   c)    Which act or acts of harassment did you report?

   April 25, 2005 see details of documentation. I heard my supervisor tell someone else that he has a silent employee. I could not respond to the communication, because I did not have an attorney. I was being threatened regarding my position and my intelligence/dignity was being lowered.

   d)    When did you report this harassment?

   I notified my supervisor and a H.R. administrator on April 29, 2005 and Susan Brewer on May 12, 2005.

   e)    Did you report this harassment orally or in writing?

   I reported the harassment orally, but I documented the problem, the date and who was involved.

   f)    If in writing, do you have a copy of the complaint? If so, please attach. Notes-scrap pieces of paper. The documentation is in my daily journal/calendar. I always document what is necessary when I am working. I have been told to do so.

   g)    What happened as a result of your complaint? If you received a written response, please attach a copy. I did not receive anything in writing. I received a a call from Melissa at Synerfac on June 14, 2005. It was on this day that I was terminated.

EEOC-D-0146

ARASSMENT QUESTIONNAIRE _ . 3)

6.  Other than as described in #4 above, did you tell any co-workers about any act or acts of harassment? If yes, provide the following information:

a)  Name/address/phone number of co-worker(s)

Erin Moran

Casey Grabowski

George, Ralph Boedecker, Jim Nardo

b)  Indicate which act or acts of harassment you mentioned and the date you mentioned the acts.

See documented dates enclosed or attached.

c)  When did you tell the person or persons?

See documentation

7.  To the best of your knowledge, have any other current or former employees been subjected to similar harassment? If yes, provide the following for each such employee, adding extra pages if needed?

a)  Name  Dan Sica

b)  Job title  CAD Designer/Surveyor

c)  Address/phone number
No number

He walked out on his job, without any notice. There is a huge problem with many of the Tetra Tech Inc. employees. During the time I was employed, there were three employees hired/fired.

d)  Description of harassment received

I can not speak on behalf of Dan. He obviously was unhappy, or he would not have walked out on his position. Dan worked on many drawings. One of the drawings had to be redlined. This a process that is needed for all corrections. The drawing had Price instead of Prince Street. This occurred before I was asked to work on the inverts for Dover Air Force Base.

e)  Name and job title of each person doing the harassment

See enclosed documentation.

EEOC-D-0147

HARASSMENT (SEXUAL, RACIAL, ETC.) QUESTIONNAIRE

#7g. - I was asked by my supervisor to do the recruiting.
        In addition to my assigned position, I had to contact
        various counselors at college campuses for interns,
        graduates etc. I arranged all interviews for each
        applicant.

HARASSMENT QUESTIONNAIRE (. 4)

_____

_____

_____

**f)**    Approximate date(s) of harassment

_____

_____

**g)**    How are you aware that this other harassment occurred?

There are a lot of employees leaving their job for another

position. There are also a lot of employees that are fired.

The communication is very bad. Casey Grabowski often spoke

in a lowly manner about an Engineer (Eileen) on the third floor.

She left her position for another position. He always did this to me.

**7.** If you were not directly harassed but were affected by the offensive conduct of a harasser toward another person, provide the name, postion or other identification of the person harassed and the harasser.

_____

_____

_____

_____

_____

**8.**    Were there any other witnesses to harassment? If so, provide the name and job title of each such witness, along with his/her telephone number and address if you know them, and indicate which incident(s) the individual witnessed.

Jeanie Pepi- Secretary -Tetra Tech - She may not provide

any information.

Doug Souzy - Tetar Tech employee - He may not provide any information.

My supervisor John Traynor said, "I have a silent employee." He also

said, "You are more proper." Joe Wichess - employee of Synerfac -

He was fired. I have not been able to contact him. Synerfac will not

give me his number.

**I declare under penalty of perjury that I have read the above statements and that they are true and correct.**

_____     _____
**Signature**                                           **Date**

EEOC-D-0149

**HARASSMENT (SEXUAL, RACIAL, ETC. ) QUESTIONNAIRE**

**Documentation regarding the questionnaire**

On March 14, 2005 - I interviewed with Mr. John Traynor, supervisor of the Surveying department at Tetra Tech Inc. located at 56 W. Main Street in Christiana, Delaware. I was hired for the position of a survey assistant/administrative work. It was on this day during my interview that Mr. Traynor asked me if I had a disability. I responded honestly that I have asthma/allergies. Mr. Traynor told me to contact Manpower or Synerfac for the position. We discussed salary and the description of the position that was available.

On March 15, 2005 - I called Mr. Greg Porter at Synerfac regarding my interview with Mr. Traynor. Mr. Traynor called Synerfac to verify the hire/selection. Directly following the resume on March 15, 2005, I met with Melissa from Synerfac on March 16, 2005 to complete the application and to go over the rules and regulations.

March 18, 2005 - On or around this date, I received a call from Mr. Traynor. Mr. Traynor informed that I would be watched very closely.

March 22, 2005 - I began the contract at Tetra Tech .

March 25, 2005 - A colleague, Casey Grabowski said, "We see that you are not going to work out." Casey Grabowski received a promotion to the third floor Civil Engineering. I became aware of his promotion when I began this position.

March 28, 2005 - Jim Nardo, another supervisor at the Surveying Dept. began to complain that someone had erased/or messed up his drawings on the computer. Mr. Nardo complained to me directly and I said, "I didn't touch your drawings nor did I erase your work."

Later, Casey Grabowski said, "Your'e not wearing a slip." "Your'e not sexy." The comment about "not sexy" was often communicated.

March 29, 2005 - There was a discussion at the survey table concerning mental retardation and my brain. "We see it is your brain." I asked Casey a question about the project I was working on (St. Andrews) and he just walked away.

March 30, 2005 - I noticed my work done on the computer for St. Andrews Alta had been erased or had been transferred to another template. When I asked a co-worker/Casey what happened to the project he tried to retrieve the drawings , but he was not sure what had happened.

EEOC-D-0150

**HARASSMENT (SEXUAL, RACIAL, ETC.) QUESTIONNAIRE**

**Page 2, Documentation**

Casey did try to resolve the problem, but we were unable to locate the drawings in my file. I had checked the changes that were made before I left the office. The project was on my computer file/template when I left the office.

March 30, 2005 - Dan Sica -CAD designer/surveyor who sat next to me at another computer station was given the assignment that I was working on (St. Andrews Alta). This particular project was a difficult project and there were a lot of changes/problems. Casey complained constantly about another colleague named Eileen an Engineer, Originally, Eileen had been working on this project. Casey negatively communicated statements about Eileen and how her drafting was not very good. Dan told me that his training was consistent from the beginning of the drawing to the end. His training was also on a daily basis. Then he said, "I don't know why they are not training you the same way."

Later, Dan received a letter from a V.P. congratulating him on his work for St. Andrews Alta. (Dan was a Tetra Tech Inc. employee) Dan Sica walked out on his job approximately one to two weeks after he received his letter. ( I am not sure of Dan's last day of work )

April 1, 2005 - Dan Sica said, "It's a pain in the ass." Then Jim Nardo said, "It's a pain in the ass." (while he was Xeroxing documents)

Later, that afternoon Dan was sitting at his computer station and he said to Casey, "She is highly skilled." I was sitting next to Dan at my computer station when he told Casey. Casey responded, "It's not just that." "She's a whole lot of stuff." I ignored the statement, because Casey is suppose to be very intelligent, but he does not always apply his technology when he is speaking. Casey often in a lowly manner communicated negatively about female employees. I always apply my technology and I specifically state what it is I am talking about.

April 11, 2005 – Casey and I discussed the inverts for the Dover Air Force Base project. Casey explained to me what he wanted me to do. During the process I noticed that the pipes were not consistent. I was not asked to redline this project (the project was not finished) but I documented the inconsistency. I then checked the field notes at this particular sanitary manhole. There was no inconsistency on the field notes only a questions mark. I then realized that someone on the third floor drafted an error on the plat. Casey said during the instruction, "I don't know what that is. I said referring back to the field notes, "Why is he questioning it?" (?) " I decided to wait and ask the field crew chief to go over this particular manhole. I checked the list of abbreviations and this particular abbreviation was not on the list.

Page 3

The field crew chief was not in the office (he works in the field). I completed the inverts. The error on this drawing was the same error on my record. (See enclosed details)

Casey also asked me a few questions regarding math that I had in 1995. This was similar to an oral math test. I told Casey, I have not had any recent math courses ( since 1995). This math drill had nothing to do with my calculations on the inverts. The inverts had been completed and they were done correctly with a calculator. Casey asked me many questions concerning water systems. I knew the answers while other colleagues did not.

Several other colleagues had been given either a written math test or an oral math test. They too did not pass. Each colleague said, "I have not had any math courses in along time." One colleague was angry (Joe Wichess) that he was given the exam in a written form. No one passed the math exam.

Later, that afternoon I heard Casey say to someone, "She doesn't have the intelligence." He also said to me, " I don't know If I want you to work on these drawings." I received very little training when I was employed on this job. I was always thankful and most appreciative of any training that I received. Casey knew how appreciative I was. I thanked him on many occasions.

April 12, 2005 - Project numbers were being changed.

April 13, 2005 - Later, when I spoke with the field crew chief (7:00AM), Dan Luther. He said, "I have already shared that information with Casey." I received no explanation. (Dover Air Force Base)

April 14, 2005 - I noticed an odor of marijuana and cigarette smoke combined in the ladies room at 12:45 in the afternoon. Casey went over another project with me, but he really didn't have any time to discuss it or to explain it. Instead he quickly and in a hurry went through the project. It was obvious I could not work on a project that no one had time to explain.

I also noticed the odor in the office. Someone walked into the office and said, "It smells in here." Somebody went outside for a cigarette break with a cigarette that also contained marijuana in it. Instead of exhaling outside they exhale inside the office. It was hardly noticeable.

April 15, 2005 - Casey did not want to give me his daily logs. He said, "No way."

That evening I went shopping at Acme, a grocery store near my home. I noticed a

EEOC-D-0152

Page 4.

chemical odor different then the one at work. I was unable to identify it.

April 19, 2005 - Odor of marijuana with cigarette smoke in the bathroom again.

April 20, 2005 - Casey went over the daily logs which included project names, numbers and description of the work that had been done on that particular day. Casey said, "It's insane!" I said , "I wouldn't describe daily work logs as insane." I also said, "I am tired of the disturbing communication regarding the issues in this office." Many of the issues in this office are personal or it's none of your business. I also said, "These issues should not be discussed." "It's very unprofessional and it is very disruptive." I also said, "I need to concentrate." Casey apologized. All of the employees in the office on this particular day heard what I said. I addressed the issues and the poor communication. I also told Casey that no one is insane in this office.

April 21, 2005- My supervisor Mr. Traynor told me not to talk to Casey. I told John Traynor that Casey is not going to continue to lower my dignity. Mr. Traynor told me Casey was intelligent. Mr. Traynor also mentioned an ego problem among many of the colleagues that worked at Tetra Tech Inc.

April 2, 2005- A colleague named George, a Soil Analyst said, "Why is it that when you climb to the top of the ladder with all of the sinners that it smells?" (George was speaking to me about Casey)

April 25, 2005 - Erin Moran referred to me as being in a brothal and she offended me with an odd gesture. See all documentation regarding this on #3.

April 25, 2005 - Casey said, "It's a pain in the ass." "It sucks in Pasadena, California. California is where Tetra Tech's main office is located. (CEO's)

April 26, 2005 - Elkton County Courthouse again with Erin Moran - hand gesture.

April 27, 2005 - Erin told George that  it was odd

April 28, 2005 I received a call from Kealy at Synerfac. She wanted to know if I was Jordan. I said, "No, I am not Jordan."

That afternoon Casey told me he had mental problems. (Gender, he was referring to someone else)

April 29, 2005 - Notified Mr. Traynor of Erin Moran's behavior.

May 2, 2005 - George asked me to go to lunch with him.

EEOC-D-0153

Page 5.

May 5, 2005 - I told George I could not go to lunch with him. I explained to him that there were a lot of rumors that had been communicated by several people. I said, "Aren't you married?" Then I said, "I don't think it would be a very good idea. George said, " I just noticed, you are not on the hand." I said, "I am single and I am not engaged."

Later in the afternoon someone said, "Drugs as they were walking out the door." I was standing at the Xerox machine working on a transmittal for project involving aerial photography/delivery. John Traynor was out of town from May 5, 2005 through May 8, 2005. I certainly was not delivering any drugs to any clients.

May 6, 2005 - Bob George on the third floor told me that Casey was trying to get me fired. Mr. George gave me an assignment regarding the documents for Army Creek.

May 6, 2005 - Casey told Joe Wichess - Cad Designer that I had a bacterial infection and I was spreading around. He also said I was weird because I wipe my bedding down.

May 9, 2005 - Joe asked me if I had any children. I am always asked this question concerning children or marriage.

May 11, 2005 - Joe said, "It's a pain in the ass."

May 12, 2005 - Confrontation with Erin Moran, Mathew and a Human Resource Administrator/Mediation. See #3.

After the meeting I met with John Traynor in his office. Mr. Traynor said, "You criminals aren't allowed to drive the company trucks anymore. I said, "I don't drive the company trucks."

May 16, 2005 - Mr. Traynor said, It's a courtroom bash!

May 19, 2005 - I was in Mr. Traynor's office when he said to me, "Don't use pencil." "It isn't bright."

May 26, 2005 - A field crew colleague said, "They literally cut your balls off today."

May 31, 2005 - John Traynor sponsors Mathcounts which is a group of children who obtain high scores in Math. One of the various tasks that I was given was to arrange the dinner held by the Delaware Engineering Society. I had to contact parents, principals and coaches for this particular event. Mr. Traynor extended an invitation to the diner, but I politely declined. The communication among colleagues as well as the students that were attending a class at Delaware Tech was very bad.

EEOC-D-0154

**Page 6.**

See enclosed letter with documentation to the dean.)  I did not want Mr. Traynor to be affected by the problem.

June 3, 2005 - I worked in the field with a field crew colleague. I had no problems with this colleague and there were others that were very nice. However, as an example regarding an older colleague and the younger colleagues, I was not hired by the company. This colleague was a Manpower employee who was unable to close the perimeter on the building that we went out to measure. I was on the dummy end of the tape measure and there was a difference of four feet . Tetra Tech Inc. hired this younger employee before I was terminated.

June 6, 2005 - I was asked by my supervisor, John Traynor to give up my desk and computer station to A.J. who was just hired through Synerfac. I had to share a work station with a colleague who worked in the field. A.J. is younger than I and less experienced.   I called Melissa at Synerfac to meet with he concerning the space that I was now sharing with another colleague.

At 4:40 I went to Synerfax and Greg Porter said, "It's a pain in the ass." Approximately twenty minutes later I spoke with Melissa. I discussed the defamation, the sexual harassment and no desk. I overheard a conversation while I was in Mr. Traynor's office. Mr. Traynor put the phone on the speaker so that I could hear what was being said. Greg told Mr. Traynor he would take care of me personally later.  (This conversation was before this date of my complaint)

June 6, 2005 - Dan Luther -Field crew chief said to me, "They are not getting your bed." He also said, "I don't have any more work for you." "I did my homework." This chief is the colleague who did not want to go over the Dover Air Force Base project. He said, "I already shared that information with Casey."
(Error on the drawing which matches the error on my record.)

June 7, 2005 - Erin Moran told me, "Bye!" "He is telling you to leave." She said  this from her computer station across the room." Erin Moran also said, "She is soliciting parents and children." This statement was communicated when I was following up on all of my calls to parents for Mathcounts. Mr. Traynor never told me to leave nor did he complain to me about my work performance.

Earlier on this day, I need help in printing out the daily logs. No one that I asked knew how to do it. When Mr. Traynor began to go over it he said, "It's  too hard for you." Once again, I asked Mr. Traynor to allow me to sit at the computer while he showed me how to do it. Mr. Traynor preferred sitting at the computer while I sat next to him. I explained to him on many occasions that this is not the way that you learn. When he could not figure out the method for printing the  logs he said, "You may be right." I immediately said, "I will figure out."  I managed to figure it out.

EEOC-D-0155

Page 7.

June 8, 2005 - George and Ralph discussed often an issue regarding a "sore". This discussion took place often at the door near the Xerox machine and at Ralph's office next to Mr. Traynor's office. This discussion was often discussed on a regular basis. Mr.Traynor had to shut his office door on one particular afternoon.

June 10, 2005 - Mr. Traynor told me that he was getting a sore. I did not respond. I knew that the conversation between George and Ralph was finally coming to an end.

June 14, 2005 - I worked with Jeanie Pepi on the third floor and I also binded the manuals for Marketing. One of the Tetra Tech Inc. employees asked me a few questions about where I use to live. Then another employee began talking to Jeanie while I was at her desk. The conversation was regarding someone that was getting married and Jeanie made reference to someone who was terminated. She said to Doug, "They terminated her." Directly following the conversation with Jeanie and Doug, several employees were discussing my contract. One employee said as she walked out the door, "We see that we can't do this. Jeanie also said, "We see that they are lying." "They always do." Later that day, I received a call from Synerfac. I called Melissa back and she requested that I leave the office to come over to the agency to speak with her. I asked Melissa if it could wait because I didn't want to leave early from the office. I also had to attend class that evening. When I asked if I could come another day, she said, "No Tetra Tech Inc. would like for me to take care of this now. I then told Melissa I would call her back. After the conversation with Melissa I told John that I sensed that my contract was ending. I asked John if he knew anything about it and if he it had anything to do with my job performance. John said, "If it is upper management there is nothing I can do. He also said it was not my job performance.

Melissa and I met at approximately 4:00. The reason for the termination was, "It is not conducive with Tetra Tech Inc. " I explained to Melissa that she was going to have to come up with a better reason. I also reminded her that I had already received my right to sue regarding disability, age and gender. Obviously, the excuse is really that the Tetra Tech inc. employees are not conducive with the company's policy or the projects that they are working on. I did not violate any rules and I never spoke inappropriately nor did I discriminate or speak lowly of anyone. The company has a lot of employees that are either terminated or they walk out.

John Traynor often said, "I have a silent employee."

Presently, I am in the process of contacting the District Attorney and the Department of Justice regarding the continuing harassment. Not only have I been harassed at work, but I am harassed at the college at Delaware Tech . and by various neighbors in the neighborhood. I confronted my neighbors yesterday

Page 8.

(6:00PM)evening on August 2,n 2005. I told my neighbor to stop the disturbing communication or I will call  the police. The neighbor is involved with the issues concerning Erin and Mr. Nardo's name has been mentioned several times.  Mr. Traynor's name has also been mentioned at the college campus involving the students in the computer lab. I know that John is not involved with the issue that these students are communicating. My rights have been violated and it threatens me in public and in those places where I have a right to be left alone. The continuing violation and the harassment is like a form of entertainment for those who are profiting or gaining in promotions. My ideas are used, my privacy is invaded, and discrimination is present. I never receive the jobs that I am lolled for. In addition to the discrimination each contract is in the form of a marriage which is often discussed by my colleagues. My colleagues stand around lying and communicating statements that are either not true or  it is simply none of their business. I overheard George tell my supervisor that they were going to divorce me (divorce the contract).

EEOC-D-0157

Name:      Jourdean Lor _____ Date: _____ July 25, 2005 _____

## DISCIPLINE QUESTIONNAIRE
## (DEMOTION, SUSPENSION, DISCHARGE, ETC.)

1.    Provide your employment history with the Respondent employer as follows:

    a)    date of hire: ___ March 14, 2005-interview Hiring date March 22, 2005
    b)    position title at time of hire: Survey Assistant/Administrative assist.

    c)    position title at time of most recent discipline:
       Survey office assistant

    d)    date you were selected for the job you held at the time of the most recent discipline:
    March 14, 2005-interview/Hired   Began position-March 22, 2005

    e)    name of section/department at time of most recent discipline:

       Survey Dept. at Tetra Tech Inc. Discipline was against
   an employee on May 12, 2005. The employee was an employee of Tetra Tech.
    f)    name and title of your immediate supervisor at time of most recent discipline:
       I notified my supervisor of the employee on April 29, 2005.

   John Traynor. Susan Brewer was notified on May 12, 2005.
2.    Describe the most recent discipline (discharge, suspension, demotion, etc.) given you:
    I did not receive any discipline. I complained about an

    employee's offensive behavior on April 29, 2005. I notified

    H.R. on May 12, 2005. I was terminated on June 14, 2005
3.    What explanation was given to you as to the reason(s) for your receiving this most recent discipline?
    No reason was given. Melissa at Synerfac siad, "It is not

    conducive with Tetra Tech Inc." My supervisor John Traynor was

    not aware that the agency was ending my contract or upper

    management at Tetra Tech Inc. He had no complaints of my

    work performance.


4.    On what date were you told of the discipline to be given you?
    I was terminated on June 14, 2005. The Tetra Tech Inc. employee
    was confronted on May 12, 2005.
5.    Were you informed orally or in writing of this discipline?
    I was terminated orally in person at Synerfac.

6.    What are the name and title of the person who informed you of the discipline to be given you?
    Melissa at Synerfac.


10/02

EEOC-D-0158

## DISCIPLINE QUESTIONNAIRE (p. 2)

7.  If known, is the person identified is Q. #6 the person who recommended your discipline? _____ If not, identify by name and title the person who recommended that you be disciplined.

I do not know if it is Synerfac or upper management at Tetra Tech

Inc. Clearly, I had never been given a review or all of my training.

I was not the employee who need to be disciplined for their conduct.

*If you were disciplined for performance deficiencies, please answer questions 8 – 13 and provide copies of all documents in your possession which describe each answer.*

8.  What is the employer's discipline policy related to alleged performance deficiencies?

I followed all of the rules by Synerfac. I was never given

any policies or rules from Tetra Tech Inc.

_____

_____

_____

_____

9.  How do you know what this discipline policy is?

_____

_____

_____

_____

10. Did you have performance problems to the extent claimed by your employer? If not, what is your version of your performance record and how can this be documented?

No, my supervisor Mr. Traynor told me on June 14, 2005, "It

has nothing to do with your job performance." John Traynor

was very happy with the various tasks that I was assigned to do.

11. Is performance documented by means such as manual or computer-generated sales records, productivity reports, etc.? If yes, describe the type(s) of reports generated. If there are no such reports or listings, explain to the best of your knowledge how the employer keeps track of performance-related matters.

A CAD designer on the third floor generated an error on the plat.

This project was Dover Air Force Base. I was asked to do the

inverts for the sanitary sewers. I noticed the error, but I was not

asked to do the redlining (project was not finished). Instead of ERROR TCP

questioning the error, I decided to wait until I could speak with the

field crew chief from the field. Directly following this assignment,

I asked the chief. His response, "I already shared that inf. with

Casey."

EEOC-D-0159

DISCIPLINE QUESTIONNAIRE

#11. Continued
      See the enclosed daily log which verifies that I
      worked on this particular project. In addition
      to this daily log, other copies of daily logs
      pertaining to each day verifies my assignments.
      I also have my work documented in a daily
      journal which my supervisor has. This journal
      explains in detail all projects, administrative
      work and research/document control.

EEOC-D-0160

## DISCIPLINE QUESTIONNAIRE (p. 3)

12.  Describe your last 2 performance reviews, to include the overall rating, any specific area(s) of negative comments, the approximate date of each review, and the name and title of the person who gave you each review.

I have business references of my recommendations. My former employer is pending for reasons of Title VII. My job performance had nothing to do with the downsizing of his staff. My recent supervisor John Traynor was not unhappy with my performance either. He told me that my job performance went beyond the V.P at Tetra Tech. Administratively I was assigned to do a multi tasked position.

I was also assigned to be a survey assistant. I was responsible for planning a dinner and awards ceremony for Mr. Traynor.

13.  Have you received any oral or written counseling or notices of deficiency related to performance (e.g., written warnings, suspensions, placement on probation, etc.)?  If yes, describe all such actions to include nature of action taken by the employer, stated reason for action taken, date, and name/title of supervisor or manager who caused the action to be taken.

A college course for computers was suggested.

I enrolled in the course and I received a 100 on my exam after two weeks of course training. I was also harrassed by several younger students. The communication was similar to the communication at Tetra Tech. One of the Tetra Tech employee's name was mentioned.

*If you were disciplined for conduct violations, please answer questions 14- 17 and provide copies of all documents in your possession which describe each answer.*

14.  What is the discipline policy related to the rules, policies or practices which you were charged with violating?

Tetra Tech Inc. never gave me any rules or regulations concerning policies. I abided by the rules that were given to me from Synerfac.

15.  How do you know what the discipline policy is?

EEOC-D-0161

### DISCIPLINE QUESTIONNAIRE (p. 4)

16. Did you commit the offense(s) or violate the rule(s) for which you were disciplined? If not, what is your version of what happened and how can you demonstrate that you did not commit this offense?

I did not violate any of the rules.

17. What disciplines have you previously received? Describe each discipline including the date, reason, type of discipline, and name and title of your immediate supervisor at the time of each discipline.

None from my previous supervisor John Traynor.

*Continue here whether discipline was for performance or conduct reasons.*

18. Identify all persons in comparable positions who have had similar performance or conduct problems within the last 2 years but who received a lesser discipline than you received. For each person named, provide the following information (adding extra pages, if needed, to complete your answer):

a) name: Erin Moran

b) race W, sex F, national origin _____, and approximate age 30

c) job title: EIT Engineer in Training

d) name/job title of immediate supervisor: John Traynor Supervisor of the Surveying Dept.

e) description of performance or conduct problems: Erin Moran referred to me as someone who was in a brothal or a bordello. Then she offended me with an odd gesture at the County Courthouse when we were assigned to do deed research on a project on April 25, 2005. Erin is younger than I and she was a Tetra Tech Inc. employee.

f) type of discipline, if any, given to this person: I confronted Erin Moran regarding he rbeavior with a Human Resource Administrator on April 12, 2005. Erin denied the comments.

g) when did this occur? April 25, 2005

h) how do you know about the performance or conduct deficiencies and discipline given to this employee? I had heard several comments communicated about Erin's job performance regarding a project. Common drafting mistakes.

EEOC-D-0162

## DISCIPLINE QUESTIONNAIRE (p. 5)

_____

_____

_____

_____

19.    Identify all persons in comparable positions who have had performance or conduct problems in the last 2 years and who have been disciplined in the same manner as you were. For each person listed, provide the following (adding extra pages, if needed, to complete this answer):

a)    name: __Joe Wichess/Synerfac employee_____

b)    race _W_, sex _M_, national origin _____, and approximate age _40's_ __.

c)    job title: ___Civil Designer/CAD Designer-Surveyor_____

d)    name/job title of immediate supervisor: __John Traynor_____

_____

e)    description of performance or conduct problems: _Joe was a very good employee. He was terminated because he was loitering in the parking lot at Tetra Tech Inc. after work hours._____

_____

_____

_____

f)    discipline given to this person: __Joe Wichess was terminated.__ 6/4/05

_____

g)    when did this occur? _____

h)    how do you know about the above circumstances? _____
__John Traynor told me._____

_____

_____

_____

_____

_____

_____

_____

_____

## DISCIPLINE QUESTIONNAIRE (p. 6)

20.   Why do you believe that you and the persons cited in #19 above were disciplined more severely than those persons cited in #18 above?

I was terminated on June 14, 2005. It is not related to my work

performance, behavior or conduct. The employees that are presently

employed at Tetra Tech Inc. who were either confronted or who had

work performance deficiencies are still employed.

Neither Jow Wichess or I were employed directly from Tetra Tech Inc.
We were employed by Synerfac.

21.   For what reason(s) do you believe that you were discriminated against because of your race, sex, color, religion, national origin, age, disability, or in retaliation in a manner made unlawful by the statutes administered by EEOC?

I am older with more work related experience than most of those

employees who are involved with offensive behavior. I also have a

disability which requires me to receive weekly treatment at a

doctor's office (allergy specialist) and medication daily. I am single

and disabled. I do not have to be a married male or female employee

to keep my position. Age, diability and gender is currently

part of my complaint.

Additional space to answer questions.  Please indicate number of question.

All questions concerning discipilne. I am a well respected

individual with a total of sixteen years of work related

experience in surveying/engineering, architecture, design, teaching

and marketing. I am also an artist. My work sells in a gallery.

My behavior is not in question nor did I violate any rules of

conduct.

**I declare under penalty of perjury that I have read the above statements and that they are true and correct.**

Signature  _Jundean Lorak_                 Date  _Aug. 4, '05_

Name: Jourdean Lorah                    Date: July 5, 2005

# SELECTION QUESTIONNAIRE
## (HIRING, PROMOTION, TRANSFER, ETC.)

1. Name of position you applied for: Survey Assistant/Administrative Services

2. How did you learn of the vacancy? I called Mr. John Traynor, supervisor of the Survey Dept. at Tetra Tech Inc. located at 56 W. Main Street in Christiana, Delaware.

3. What were the requirements for the position? Previous work related experience. Strong grammar skills and writing skills. My previous experience involved both drafting and field work for land surveying. (1987)

4. How do you know what the requirements were? I interviewed with Mr. John Traynor, supervisor of the Survey Dept. at Tetra Tech Inc. on March 14, 2005. Mr. John Traynor described the position that was available.

5. Describe how you met all of the known requirements:

Administratively I organized Mr. Traynor's files. I read many of the policies and job requirements that were on file. The job requirements also included Certification in CPR and first aid. I am certified.

I met all of the requirements except for a license that was not needed. I have 16 years of work related experience.

9/02

EEOC-D-0165

## SELECTION QUESTIONNAIRE (p. 2)

6. When did you apply for the position? ___March 14, 2005___

7. Did you apply in writing or orally? __In writing through an agency called__
   Synerfac.

8. What were the name and the title of the person to whom you addressed your application or, if done orally, to whom you indicated that you had an interest in the position in question?

   Mr John Traynor, supervisor of the Surveying Dept. of Tetra Tech

   Inc. Mr. Greg Porter was responsible for all paperwork concerning

   my application and recruitment. (Synerfac)

9. Were you interviewed for the position? If yes, how many times? For each time you were interviewed, identify by name and title the person(s) who interviewed you.

   I was interviewed by Mr. John Traynor supervisor of the Surveying

   Dept. at Tetra Tech Inc. (once) Mr. Traynor notified Synerfac for

   the application and recruitment process.

10. Were you given any type of written or oral test? If yes, describe the type of test and the results, if known: College course-Del.Tech was a 100 on the exam.

    No written or oral test was given. I demonstrated my strong oral

    communication skills during the interview. I was hired immediately.

    My supervisor was aware that my math skills were not real strong.

    Mr. John Traynor said, "That won't be a problem," "I will train you."

    I was orally given a math test after I began this position. Neither

    I or many others who had been hired before me or directly after me

    passed. I received my college math in 1995. It was not a requirement.

11. How and when were you notified that you were not selected for the position?

    I was hired immediately on the day of my interview. (March 14, 2005)

    Approximately one month and a half, I was notified by one of my

    colleagues that my position was given to Erin Moran. See all

    documentation regarding discrimination/harrassment.

12. What reason(s) was/were given for not selecting you?
    I was selected for the position. No reason was given to me by my

    immediate supervisor.

## SELECTION QUESTIONNAIRE (p. 3)

13. What are the name and the title of the person who notified you that you had not been selected?

On June 14, 2005, Melissa from Synerfac requested that I meet with

her to discuss the conflict at work. On this day of June 14, 2005,

I was terminated.

14. Was the person identified in #13 above the person who made the selection? __no__. If not, identify (if known) the name and the title of the person who made the selection.

Mr. John Traynor hired me on the day of my interview (March 14, 2005)

However, he was unable to hire me through Tetra Tech Inc. He

advised me to go to Manpower or Synerfac for the recruitment.

Mr. Traynor hired a female employee through Tetra Tech. one month later.

15. If you know, name the person who got the position you applied for.

Mr. Greg Porter recruited me from Synerfac Agency. Then he recruited

a younger individual. I had to give up my desk/computer.

16. What are that person's sex __M__, race __W__, national origin _____, approximate age 20-30

Tetra Tech Inc. hired a younger employee/Erin Moran
And a female in her late 20's or 30's.(her salary was higher)

17. Did that person meet the stated requirements for the position?

I don't know. I know he did not have the number of years in work

related experience that I currently have.

18. If he/she did not meet the requirements, in what way did he/she not meet them?

Number of years in work related experience, certification and

grammar. Another individual was also hired directly after me. I was

told that she had been given my position by another colleague. She is

younger and I was harrassed by her in an offensive way. This younger

colleague referred to me as someone from a brothal or bordello.

She also made reference that I was ill.

EEOC-D-0167

LECTION QUESTIONNAIRE (p.

19.    Why do you believe that you should have been selected instead of the person who was selected?

I am older and I have more years in work related experience.

When I was hired, my supervisor, Mr. Traynor gave me a six month

agreement which included training. This agreement had not been

completed. On June 14, 2005, I asked my supervisor about my work

performance. He had no complaints. The employees who were hired after

me were younger, less experienced and they received more training.

The female employee received more money per hour.

20.    Why do you believe that you were not selected because of your race, sex, color, religion, national origin, age, disability or in retaliation for having opposed a practice made unlawful by one of the statutes administered by EEOC?

I am ████████████████████████    I have a disability known as

████████████████████████████    for my

condition. I believe it is discrimination under Title VII for

age, gender and disability. Retaliation is also present for

confronting the younger colleague regarding her offensive comments

and behavior. Many younger colleagues who were hired after me were
given more training. I received minimal training. I was refused
training by a younger male employee. On June 6, 2005, I was left
without a desk or computer station to work from. I had to give
up my desk to a younger male employee who had less work related
experience. I was told to share a computer station with a
surveyor who works in the field. Many of my colleagues referred to me
as someone who was ill and contagious. I am not ill nor am I contagiuos.
One of my colleagues told my supervisor that my position would be
divorced like a marriage. Two employees were hired through the company
from agencies who did not have my work related experience. They were
younger male employees. One employee was a younger female.

**I declare under penalty of perjury that I have read the above statements and that they are true and correct.**

_____          ___Aug. 4, 2005___
**Signature**                                  **Date**

REDACTED

EEOC-D-0168

NAME: Jourdean L. ah          DATE: July 2, 2005

## REMEDY INFORMATION

1.  If your charge alleges failure to hire or failure to promote, what was the salary or salary range of the job you applied for? $14.00Hr. What was the salary of the position you held at the time you applied for the position in question? $20.00Hr. (previous job)

2.  If your charge alleges discharge or suspension without pay, what was the salary of the position you held at the time of discharge or suspension? $_____.

3.  If your charge alleges demotion, what was the salary of the position you held before you were demoted? $_____. After you were demoted? $_____.

5.  Other than loss of salary, what money have you lost as a result of the alleged discrimination (e.g., cost of looking for new job, cost of health insurance you had to buy, etc.)? Describe each type of loss and provide an approximate dollar value for each type of loss. (NOTE: You should save receipts or other proof of all such expenses.)

    No health insurance, unable to pay my rent, unable to pay

    my bills, unable to afford the cost of materials for

    producing fine art work for sales, and unable to afford

    my groceries. Synerfac reported that I was employed when

    my social service representative requested a report financially.

    This resulted in no food stamps until July 21, 2005.

    I was unemployed without a check. Presently, there is

    no funding in my unemployment account. As a result, I am

    considered to be adult poverty and on welfare.

6.  Other than monetary losses, what losses have you incurred as a result of the alleged discrimination (e.g., loss of seniority, no longer being part of a pension plan, loss of company car, had to seek psychiatric services)?

    No retirement benefits, no promotions, and my dignity is

    always taken as if I am a lowly person. Slanderous

    communication has become a sport with most of the

    colleagues that I work with when I am employed.

    It is also discrimination regarding my age, disability

    and gender.

5/96

EEOC-D-0169

**REMEDY INFORMATION (p. 2,**

7.  What relief or remedy are you seeking in response to filing a charge with EEOC?

    Training with a professional who respects me and is willing
    to recognize my skills and work related experience. My
    salary should commensurate with my skill level and work
    related experience. Health benefits are necessary (medical and denta
    along with a retirement plan. Promotions should be considered
    when I have demonstrated a higher level (once a year).
    Relief should be considered for back pay regarding my colleagues.

8.  If your charge alleges discharge or failure to hire, have you obtained other employment
    since the date of the alleged discrimination?  If yes, please indicate the date of
    employment and the salary you earn with this new employer.  (If there has been more
    than one employer, please indicate all dates of employment and salary with each
    employer since your date of discharge or the date you were denied hire by the employer
    named in your charge.)

    I will begin a new position on August 8, 2005. My
    salary will be $17.00 per hour.

I declare under penalty of perjury that I have read the above statements and that they are true
and correct.

_____        Aug. 4, '05
Signature                           Date

## Remedy Information

.5  Include the approximate dollar value for each type of loss.

Rent............................................................. $500.00

Health Insurance ..................................... $95.00
Dental/monthly with a plan-approximately

Medication Monthly................................ $350.00
Approximately

Connective/Utility.................................... $162.00

Artisan Water ......................................... $85.00

Econo Haul............................................... $35.00

Comcast.................................................... $45.00

Phone Bill................................................. $35.00

Long Distance Carrier.............................. $20.00

Groceries.................................................. $200.00
Per month-approximately

Gas weekly ............................................... $25.00


**\*Charity is necessary when I become unemployed without any unemployment
benefits. The above list of bills monthly is the approximate amount.**

EEOC-D-0171

EEOC
Attention: Mr. Marinucci
21 South 5Th Street  Suite 400
Philadelphia, Pennsylvania  19106


August 3, 2005


Jourdean Lorah

The following document is concerning my hourly rate when I was employed with
Synerfac/Terta Tech Inc. Ralph Boedecker requested this hourly rate in writing
from my agency. He said, "The Department of Natural Resources and
Environmental Control is requesting it because you  worked on a couple of projects
that they were involved with. " Several weeks after I began this position, Ralph
Boedecker was on the phone speaking with someone about DNREC. Ralph said,
"They are trying to fire her." See attached letter from Synerfac verifying my hourly
rate.


Sincerely,

Jourdean Lorah


REDACT

EEOC-D-0172



JUN. 3. 2005  2:43PM     NE'  ASTLE 3023249404                    NO. 2503   P. 2/2

2 Read's Way | Suite 209
New Castle | DE 19720

302 | 324-9400
fax 302 | 324-9404

www.synerfac.com

A division of SYNERFAC, Inc.

June 3, 2005

To Whom It May Concern:

Per Jourdean Lorah's request, this letter is to inform you of her current pay rate of $14.00/hour.

If you have additional requests please let Jourdean know and with her permission I will release the information.

Sincerely,

*Melissa K. Palese*

Melissa K. Palese
Recruiting Manager- Wilmington Branch
Synerfac Technical Staffing
2 Read's Way, Suite 209
New Castle, DE 19720
P 302.324.9400
F 302.324.9404
Toll Free 800.562.7040

EEOC-D-0173

Jourdean Lorah


REDACTED

June 28, 2005

Delaware Tech
Stanton Campus
Attention: Regan Hicks Goldstein

Dear Ms. Goldstein,

     Per conversation on June 16, 2005, a written complaint was requested documenting the specific dates as well as the communication among various students. As I stated, it is presently, Title VII (disability discrimination, age and equal pay.) I received my right to sue letter several months ago. The discrimination is currently pending at the EEOC.
     On May 24, 2005, I began the 171 EDD course at the Stanton Campus. My instructor is Mr. Bruce Thorngate. This particular course was selected and suggested for my full time position at Tetra Tech Inc. I was not directly employed with this company. I was indirectly contracted through Synerfac. As of June 14, 2005, my contract with Tetra Tech Inc./Synerfac had ended. The following dates of statements as well as defamatory communication is very disturbing.

May 26, 2005 – An employee's name from Tetra Tech was mentioned during class time. The communication was in the form of lowering my intelligence and defamation concerning alcohol. "Your o.k. you only had one drink." You're not as intelligent."

May 31, 2005 – Various comments were verbally stated loud enough to be disturbing. The comments did not have anything to do with class nor the educational program that I had paid for. The students were discussing a sore. "you're a sore and you are now stuck with it." This same type of communication
was discussed at work by several people. I do not have a sore nor am I contagiously ill. The student in front of me discussed a termination. She said, "You are fired." The instructor also said it.

June 2, 2005 – The person sitting next to me discussed someone's pill addiction as he described how it affected this person's arm. He also discussed low blood pressure (very low). At the end of the evening, he said to me as I was leaving in front of my instructor, "He sees that you are in bad shape." I ignored it. Gender is also a problem.

June 6, 2005 – I met with a recruiter at Synerfac to discuss my need for a desk. I also mentioned the harassment that was connected to the course that I was taking with certain people at Tetra Tech Inc. I also gave the recruiter the name of the person who works at Tetra Tech Inc and who has been harassing me as well as discriminating. Apparently, he is well known at the campus.

EEOC-D-0174

June 7, 2005 - One of my colleagues at work said, "Bye". (as if my contract had ended.)

June 14, 2005 - I had my CAD exam at Del Tech. I received a 100 on the exam. When I arrived at the classroom before the exam, my instructor said to me "We see you are not Tetra Tech Inc." Before the exam began the person sitting next to me told the person next to him, that I was terminated. My contract ended on this day.

June 17, 2005 - My instructor mentioned Synerfac a number of times during his conversation with other students. The conversation sounded as if he was trying to find out who ended my contract.

June 21, 2005 - My instructor discussed Synerfac again.

June 23, 2005 - The person next to me was imagining that he was in the ghetto instead of a classroom. His communication right next to me was not acceptable for the amount of money that it costs to take a college course. Recently, he noticed how much work I had actually completed. "You really have done a lot of work." I almost said, "It doesn't sound as if I am in, "bad shape." He also keeps referring to me as Joey. This is not my name.

My contract with Synerfac/Tetra Tech Inc. began on March 22, 2005. I was hired immediately. There were many factors that qualified me for my position when I was interviewed. My agreement was six months of training. I did not receive my full agreement nor my training (discrimination). I need CAD experience and my training was very important to me.

My overall experience over the total number of years including work related experience is sixteen years. Any contract that I obtain is not the business of my instructor or the students that are in class. Defamatory statements concerning someone who has a pill addiction or problems with alcohol has no place in the classroom. And it certainly does not apply to me. The continuing violation that is pending has violated me. I am an individual with no support and I am unable to afford an attorney. I would appreciate your cooperation to end the communication that continues to lower my dignity and continues to discriminate leaving me unemployed.

Sincerely,

Jourdean Lorah

EEOC-D-0175

TRANSMISSION VERIFICATION REPORT

```
                                 TIME  : 06/19/2005 12:21
                                 NAME  :
                                 FAX   :
                                 TEL   :
```

```
    DATE,TIME          06/19  12:20
    FAX NO./NAME       14107236955
    DURATION           00:00:36
    PAGE(S)            02
    RESULT             OK
    MODE               STANDARD
                       ECM
```

**FAX:** 410-723-6955

**TO:** OFFICER CATRINO
      OCEAN CITY POLICE DEPT.

**FROM:** JOURDEAN LORAH

**DATE:** JUNE 19, 2005

**NUMBER OF PAGES:** 2

**COMMENTS:** PER MESSAGE JUNE 17, '05. ON JUNE 14, 2005 I WAS TERMINATED FROM MY FULL TIME POSITION AT TETRA TECH INC. IN CHRISTIANA, DE. I WORKED IN THE SURVEY DEPT. ON A NUMBER OF VARIOUS PROJECTS (LAND SURVEYS) AS WELL AS ADMINISTRATIVE TASKS. DURING MY EMPLOYMENT I

EEOC-D-0176

FAX: 410-723-6955

TO: OFFICER CATRINO
     OCEAN CITY POLICE DEPT.

FROM: JOURDEAN LORAH

DATE: JUNE 19, 2005

NUMBER OF PAGES: 2

COMMENTS: PER MESSAGE JUNE 17, '05. ON JUNE 14, 2005 I WAS TERMINATED FROM MY FULL TIME POSITION AT TETRA TECH INC. IN CHRISTIANA, DE. I WORKED IN THE SURVEY DEPT. ON A NUMBER OF VARIOUS PROJECTS (LAND SURVEYS) AS WELL AS ADMINISTRATIVE TASKS. DURING MY EMPLOYMENT I WAS HARASSED BY MY COLLEAGUES ABOUT A HEALTH ISSUE CONCERNING A SORE. I IGNORED IT BUT I DOCUMENTED THE VARIOUS DATES (JUNE 10, '05). MANY DEFAMATORY STATEMENTS WERE MADE. MOST OF THE STATEMENTS WERE COMMUNICATED BY A FAMILY MEMBER WHILE SHE WAS VISITING MY MOM AND I

EEOC-D-0177

2.

In our home. A restraining order may be necessary.

With respect to Tetra Tech Inc; I was asked to do the inverts on the sanitary sewers (manholes). I noticed an error on one of the sites involving a RCP (concrete pipe) The error on the plat was PCP and I did not say anything. I waited until I could speak with the Field Chief concerning this project. When I asked the Field Chief to go over it with me, he said, "I have already shared that information with Casey. The error is also on my prior record in the form of a typo. I can't do anything about the violation because I have no attorney. Directly following this error I also detected the smell of marihuana in the (Finger Prints were taken) bathroom and in the office. Once again, I could not say anything. It's possible that the error on the plat was not intentional, but I was harassed incessantly. I am also harassed at the campus where I now go to school.

I have tried going to the Police, but I was harassed at work directly following my contact at the Police Station. I was told to go to the New Castle Police Dept. Could you please notify the New Castle Police Dept. about the violation concerning extortion? I will try to call you after I have met w/ the Dept. of Labor. If you need the names and dates of these individuals, I can provide it. I also have a copy of my original record.

EEOC-D-0178

TRANSMISSION VERIFICATION REPORT

TIME : 06/19/2005 12:21
NAME :
FAX  :
TEL  :

| | |
|---|---|
| DATE,TIME | 06/19  12:20 |
| FAX NO./NAME | 14107236955 |
| DURATION | 00:00:36 |
| PAGE(S) | 02 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

**FAX:** 410-723-6955

**TO:** OFFICER CATRINO
OCEAN CITY POLICE DEPT.

**FROM:** JOURDEAN LORAH

**DATE:** JUNE 19, 2005

**NUMBER OF PAGES:** 2

**COMMENTS:** PER MESSAGE JUNE 17, '05. ON JUNE
14, 2005 I WAS TERMINATED FROM MY FULL
TIME POSITION AT TETRA TECH INC. IN CHRISTIANA,
DE. I WORKED IN THE SURVEY DEPT. ON A NUMBER
OF VARIOUS PROJECTS (LAND SURVEYS) AS WELL
AS ADMINISTRATIVE TASKS. DURING MY EMPLOYMENT I

EEOC-D-0179

2.

In our home. A restraining order may be necessary.
With respect to Tetra Tech Inc; I was asked to
do the inverts on the sanitary sewers (manholes).
I noticed an error on one of the sites involving
a RCP (concrete pipe). The error on the plat
was PCP and I did not say anything. I waited until
I could speak with the Field Chief concerning
this project. When I asked the Field chief to
go over it with me, he said, "I have already
shared that information with Casey. The error
is also on my prior record in the form of a typo.
I can't do anything about the violation because I
have no attorney. Directly following this error (finger prints
I also detected the smell of marihuana in the were taken)
bathroom and in the office. Once again, I could not
say anything. It's possible that the error on the
plat was not intentional, but I was harassed incessantly.
I am also harassed at the campus where I now go
to school.
I have tried going to the police, but I was harassed
at work directly following my contact at the police station.
I was told to go to the New Castle Police Dept.
Could you please notify the New Castle Police
Dept. about the violation concerning extortion?
I will try to call you after I have met w/ the
Dept. of Labor. If you need the names and dates
of those individuals, I can provide it. I also have a
copy of my original record.

EEOC-D-0180

**FAX:** 410-723-6955

**TO:** OFFICER CATRINO
OCEAN CITY POLICE DEPT.

**FROM:** JOURDEAN LORAH

**DATE:** JUNE 19, 2005

**NUMBER OF PAGES:** 2

**COMMENTS:** PER MESSAGE JUNE 17, '05. ON JUNE

14, 2005 I WAS TERMINATED FROM MY FULL

TIME POSITION AT TETRA TECH INC. IN CHRISTIANA,

DE. I WORKED IN THE SURVEY DEPT. ON A NUMBER

OF VARIOUS PROJECTS (LAND SURVEYS) AS WELL

AS ADMINISTRATIVE TASKS. DURING MY EMPLOYMENT I

WAS HARASSED BY MY COLLEAGUES ABOUT A HEALTH

ISSUE CONCERNING A SORE. I IGNORED IT BUT

I DOCUMENTED THE VARIOUS DATES (JUNE 10, '05).

MANY DEFAMATORY STATEMENTS WERE MADE. MOST OF

THE STATEMENTS WERE COMMUNICATED BY A FAMILY

MEMBER WHILE SHE WAS VISITING MY MOM AND I

EEOC-D-0181



UFCW
NEWSFEED™ 4/93
:60 RADIO SCRIPT
INTERVIEW: JANE PERKINS

STATIONS: The following is a news announcement from the Citizens Trade Campaign.

. . . . in 3, 2, 1...

With the North American Free Trade Agreement with Mexico under consideration in Congress, U.S. trade policies are an immediate concern to all Americans whose jobs, communities and futures are at risk. The Citizens Trade Campaign is a coalition of environmental, consumer, farm, church, human rights and labor groups. They are calling for citizen action to demand fair trade policies that promote American jobs, decent living standards and environmental protection. Jane Perkins is president of Friends of the Earth, and she thinks the Free Trade Agreement, in its current form, is a bad idea:

(PERKINS):

WE JUST WON'T LET MULTINATIONAL CORPORATIONS DEGRADE THE ENVIRONMENT AND

EXPOSE COMMUNITIES TO ENVIRONMENTAL HAZARDS IN THE NAME OF FREE TRADE.

NAFTA MUST PROTECT THE RIGHTS OF THE ENVIRONMENT AND THE RIGHTS OF WORKERS.

(CLOSE):

For more information, contact Greg Denier (duh-'near) at (202) 223-3111.

| Post-It™ brand fax transmittal memo 7671 | # of pages ▶ | |
|---|---|---|
| To KEITH WEINMAN | From LOURDEAN LORAH | |
| Co. HOMEFRONT RADIO | Co. | |
| Dept. NEWS RM. | Phone # | |
| Fax # 303-892-4700 | Fax # | |

Large corporations are responsible for the environmental hazards

and they have profited greatly, while the rights of workers

are violated and neglected.

EEOC-D-0182

Office of Workers' Compensation
PO βox 8902
Wilm, DE 19899-8902
302-761-8200

STATE OF DELAWARE
FIRST REPORT
OF
OCCUPATIONAL INJURY OR DISEASE



40-0600-210
LOCATION/DEPT

299400-76-21-40-2
INSURANCE POLICY NUMBER

| 1. EMPLOYEE:  FIRST        MIDDLE        LAST | 2.  EMPLOYEE SOCIAL SECURITY NO. |
|---|---|
| Jordan                              Lorah | |

| 3.   ADDRESS – INCLUDE COUNTY AND ZIP CODE | 4. MALE  ☒  FEMALE  ☐ | 5.  EMPLOYEE TELEPHONE NUMBER |
|---|---|---|
| DE         Sussex Co. | | |

| 6.   DATE OF BIRTH | 7.  AGE | 8.   WAGE  $ 9.50 per hour | 9.   WEEKLY HOURS WORKED  40 |
|---|---|---|---|

| 10.   OCCUPATION (REGULAR)  Lifeguard | 11.   DIVISION REGULARLY EMPLOYED  DNREC/Parks & Recreation | 12.   HOW LONG EMPLOYED  2 years ( seasonal) |
|---|---|---|

| 13.  EMPLOYER  **DEPT. OF NAURAL RESOURCES & ENVIRONMENTAL CONRTOL** | 14.   PERSON MAKING OUT THIS REPORT  Bonnie Korstange |
|---|---|

| 15.   ADDRESS – INCLUDE COUNTY AND ZIP CODE  89 Kings Highway, Kent County, DE 19901 | 16.   EMPLOYER TELEPHONE NUMBER  (302) – 739-5823 |
|---|---|

| 17.   MAILING ADDRESS – IF DIFFERENT FROM ABOVE  N/A | 18.   NATURE OF BUSINESS  STATE GOVERNMENT |
|---|---|

| 19.  DATE OF REPORT  06/30/2003 | 19.   DATE OF INJURY AND TIME  06/29/2003  4:30   ☐ AM ☒ PM | 20.  NORMAL STARTING TIME  9:00   ☒ AM ☐PM | 22.  IF EMPLOYEE BACK TO WORK GIVE DATE  06/30/2003 | 23.  AT SAME WAGE  ☒ YES  ☐ NO |
|---|---|---|---|---|

| 24.  IF FATAL INJURY, GIVE DATE OF DEATH | 24.   DATE EMPLOYER KNEW OF INJURY  06/30/2003 | 26.  DATE DISABILITY BEGAN  /    / | 27.   LAST FULL DAY PAID – DATE  /    / |
|---|---|---|---|

28.  DESCRIBE THE INJURY/ILLNESS AND PART OF BODY AFFECTED.

Injured right hand

29.  SPECIFY THE DEPARTMENT WHERE INCIDENT OCCURRED AND THE WORK PROCESS INVOLVED.

Cape Henlopen State Park

30.  LIST THE EQUIPMENT, MATERIALS, AND CHEMICALS EMPLOYEE WAS USING WHEN THE INCIDENT OCCURRED, E.G. ACETYLENE.

None

31.   DESCRIBE THE EMPLOYEE'S ACTIVITY AT THE TIME OF INJURY OR ILLNESS, I.E.
Working out - diving into water

32.   DESCRIBE HOW THE INJURY/ILLNESS OCCURRED.

While diving into water, employee jammed right hand into sand.

| 33.   NAME OF PHYSICIAN  None fsted at this tim | 34.   PHYSICIAN'S ADDRESS |
|---|---|

| 35.  HOSPITAL (IF APPLICABLE) | 36.  HOSPITAL ADDRESS |
|---|---|

WORKER'S COMPENSATION INSURANCE COMPAYN AND COMPLETE ADDRESS (PREPRINT OR STAMP INCLUDE IAB CODE)
37. (THIS SECTION MUST BE COMPLETED IN ORDER TO PROCESS)

**PMA MANAGEMENT CORP.**
**P.O. BOX 25248**          I.A.B. CODE    40          POLICY NO.    7621402
**LEHIGH VALLEY, PA  18002**

*Bonnie Korstange* 7/8/03
SIGNATURE OF PERSON IN 14 ABOVE

*H.R Technician*
OFFICIAL POSITION

EEOC-D-0183

**PMA Management Corp.**

July 15, 2003

**REDACTED**

JORDAN LORAH

DE

Dear JORDAN LORAH

　　We at The PMA Management Corp are in receipt of a Workers' Compensation claim submitted by your employer. In order to speed the processing of your claim, we ask that you sign and return the enclosed Medical Authorization form and provide your health professionals with your assigned claim number.

```
                         Client:  STATE OF DELAWARE
               Date of Accident:  06/29/03
                   Claim Number:  W8903-43819
         Policy/Contract Number:
          Social Security Number:
```

　　Please refer to your assigned claim number in all correspondence. Please mail your Medical Authorization, any medical bills or medical reports to:

```
          PMA Corporate Processing Center
          PO Box 25249
          Lehigh Valley, PA 18002-5249
```

Please note that the Delaware law requires notification that the statute of limitations for Workers' Compensation claims is two years.  If the claim has been accepted as compensable and payments (medical or indemnity) made to the employee, the statute of limitations is five years from the date of last payment.

To contact us, please write to us at the above address or call us toll free at 1-888-4PMA-NOW (1-888-476-2669) and have your claim number ready.

Sincerely,

The PMA Management Corp

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, file a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

MO-C

EEOC-D-0184

Equal Employment Opportunity Commission
Attention: Mr. Marinucci
21 South 5Th Street   Suite 400
Philadelphia, Pennsylvania  19106-2515

August 3, 2005

Jourdean Lorah

▮▮▮▮▮▮▮

REDACTED

Dear Mr. Marinucci,

Enclosed are all of the documents concerning my complaint. I have also included documentation regarding the college campus. This form of communication was consistent with the communication at Tetra Tech Inc. and a Tetra Tech Inc. employee's name was mentioned several times. My supervisor's name was also mentioned. I have contacted the police regarding the old record. I have been given further instructions regarding this problem. I will be following up with the Department of Justice as well as the District Attorney. I have also met with a police officer who is neglecting the situation.  I know that they are aware of the problem and they have been aware of the problem. One officer from another jurisdiction informed me that the EEOC needs to intervene.   If you have any questions concerning any of the documents, please contact me at 302-225-0540.

Sincerely,

*Jourdean Lorah*

Jourdean Lorah

JOSEPH R. BIDEN, Jr.
DELAWARE

201 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510-0802
(202) 224-5042
www.senate.gov/~biden

# United States Senate

JUDICIARY COMMITTEE

SUBCOMMITTEE ON
CRIME, CORRECTIONS AND VICTIMS' RIGHTS
RANKING MEMBER

FOREIGN RELATIONS COMMITTEE
RANKING MEMBER

CAUCUS ON INTERNATIONAL
NARCOTICS CONTROL
CO-CHAIRMAN

January 14, 2004

Ms. Jourdean Lorah

REDACTED

Dear Ms. Lorah:

Thank you for your recent letter regarding your issues in the workplace. The rights of employees to be free from discrimination in their compensation is protected under several laws, including the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964, both of which you have mentioned in your letter.

Employees who believe they are under compensated because of their race, color, religion, sex, national origin, age or disability may file a charge with the U.S. Equal Employment Opportunity Commission. You can contact the EEOC district office in Philadelphia by calling 215-440-2600. In addition, if you are seeking legal counsel and cannot afford an attorney, may I suggest that you contact the Community Legal Aid Society at 302-856-0038.

Again, thank you for contacting my office and I am hopeful that the information I have provided in this letter will assist you with any legal issues or questions.

Sincerely,

Joseph R. Biden, Jr.
United States Senator



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

October 20, 2005

Ms. Jourdean Lorah



REDACTED

**Our Reference:**     EEOC Charge Number 170-2005-02819
Jourdean Lorah v. Tetra Tech, Inc.

and

EEOC Charge Number 170-2006-00048
Jourdean Lorah v. Synerfac Agency

Dear Ms. Lorah:

Enclosed are the two *revised* charges of discrimination (one against Tetra-Tech and one against Synerfac) drafted based upon information which you previously provided to the EEOC. Please review the charge and, if it is accurate, please sign and date the first page of all 4 copies at the bottom where highlighted. If you find that there are any errors or significant changes to be made, please contact me at once at (215) 440-2636. Return both forms to me using the enclosed stamped, self-addressed envelope. Once we receive your completed forms, we will return a copy of each form to you for your records.

Very truly yours,

George J. Marinucci
Investigator

EEOC-D-0187

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 170-2005-02819 |

| Delaware Department of Labor | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| Ms. Jourdean S. Lorah | ~~████~~ | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| ~~████████████~~ | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, | Phone No. *(Include Area Code)* |
|---|---|---|
| TETRA TECH INC. | 101 - 200 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 56 West Main Street, Christiana, DE 19720 | | |

| Name | No. Employees, | Phone No. *(Include Area Code)* |
|---|---|---|

| Street Address | City, State and ZIP Code | |
|---|---|---|

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | Earliest                    Latest |
| ☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ OTHER *(Specify below.)* | 06/14/2005          06/14/2005 |
| | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees recieved this training including a younger female who was hired by the Respondent. On or about June 14, 2005, Respondent had my employer terminate my contract. I was replaced by a younger male.

II. I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). During my interview, a Respondent supervisor asked me if I had a disability. After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married.

REDACTED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

| Date | Charging Party Signature | EEOC-D-0188 |
|---|---|---|

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 170-2006-00048 |

| Delaware Department of Labor | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)*  **Ms. Jourdean S. Lorah** | Home Phone No. *(Incl Area Code)* ▉▉▉▉▉ | Date of Birth |
|---|---|---|

Street Address ▉▉▉▉▉▉▉▉▉▉▉  City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name  **Synerfac Agency** | No. Employees.  **101 - 200** | Phone No. *(Include Area Code)* |
|---|---|---|

Street Address  **2 Reads Way; New Castle Corporate Commons; New Castle, DE 19720**  City, State and ZIP Code

| Name | No. Employees. | Phone No. *(Include Area Code)* |
|---|---|---|

Street Address  City, State and ZIP Code

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | Earliest  **06/14/2005**   Latest  **06/14/2005** |
|---|---|
| ☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ OTHER *(Specify below.)* | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I.  I was an employee of Synerfac (the "Respondent"), an employment agency, and was contracted to work at Tetra-Tech, Inc. beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees recieved this training. On or about June 14, 2005, Respondent terminated my employment. I was replaced by a younger male.**

**II.  I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").**

REDACTED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
|  | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

| Date | Charging Party Signature |
|---|---|

EEOC-D-0189

Jourdean Lorah



October 14, 2005

Equal Employment Opportunity Commission
Attention: Mr. George Marinucci
21 South 5ᵗʰ Street   Suite 400
Philadelphia, Pennsylvania   19106-2515

Charge Number - 170-2005-02819

Dear Mr. Marinucci,

     Enclosed with this letter is the charges that you drafted. I made the corrections as requested. In addition to the corrections I have included several statements that may be necessary. These statements are relevant to the issues that were often discussed and it was obvious that I am neither engaged or married (younger female is) . My documentation includes the dates of harassment which began with the younger female employee (hired after me). When I confronted the younger female employee with a Human Relation's Administrator (temporarily subsided) the harassment continued. The confrontation resulted in retaliation among several colleagues. Consideration should be given regarding the facts of the statements that I have included. They can not be disputed (age, disability and sex). When you get older no one wants you. Employers and colleagues want my event, but they do not want me employed. Therefore, please reconsider the drafted charge and the charge as a continuing violation. The harassment is also at the campus (Delaware Tech) where I attended my evening classes for CAD. If you have any questions or you are in need of additional information,  please contact me at home at 302-225-0540.

Sincerely,

*Jourdean Lorah*

Jourdean Lorah

EEOC-D-0190

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 170-2006-00048 |

| Delaware Department of Labor | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Jourdean S. Lorah | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Synerfac Agency | 101 - 200 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 2 Reads Way; New Castle Corporate Commons; New Castle, DE 19720 | APPROX. 25 - SYNERFAC |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☑ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest        Latest
06/14/2005     06/14/2005

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I was an employee of Synerfac (the "Respondent"), an employment agency, and was contracted to work at Tetra-Tech, Inc. beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees recieved this training. On or about June 14, 2005, Respondent terminated my employment. I was replaced by a male. *Younger*

II. I believe that I have been discriminated against because of my age, 46, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my ~~because of my~~ disability in violation of the Americans with Disabilities Act of 1990 ("ADA").

REDACTED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| _____     _____<br>Date          Charging Party Signature | |

EEOC-D-0191

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA  ☒ EEOC | 170-2005-02819 |

| Delaware Department of Labor | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.)  Ms. Jourdean S. Lorah | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Street Address | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name  TETRA TECH INC. | No. Employees,  101 - 200 | Phone No. (Include Area Code) |
|---|---|---|
| Street Address  56 West Main Street, Christiana, DE 19720 | City, State and ZIP Code | |

| Name | No. Employees, | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.) | Earliest **06/14/2005**   Latest **06/14/2005**   ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees received this training. On or about June 14, 2005, Respondent had my employer terminate my contract. I was replaced by a younger male. A younger female employee who was hired after me through Tetra Tech received her training. JL.

II. I believe that I have been discriminated against because of my age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").

My supervisor (Tetra Tech) asked me if I had a disability during my interview. After I became employed through Synerfac, my supervisor at Tetra Tech asked me if I had any children and he also asked me if I had ever been married. JL.

REDACTED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.  I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements  I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT  SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
|---|---|
| _____    _____  Date            Charging Party Signature | |

EEOC-D-0192



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

October 11, 2005





Ms. Jourdean Lorah

 

 

Our Reference:     EEOC Charge Number 170-2005-02819
Jourdean Lorah v. Tetra Tech, Inc.

and

EEOC Charge Number 170-2006-00048
Jourdean Lorah v. Synerfac Agency

Dear Ms. Lorah:

Enclosed are the two charges of discrimination (one against Tetra-Tech and one against Synerfac) drafted based upon information which you previously provided to the EEOC. Please review the charge and, if it is accurate, please sign and date the first page of all 4 copies at the bottom where highlighted. If you find that there are any errors or significant changes to be made, please contact me at once at (215) 440-2636. Return both forms to me using the enclosed stamped, self-addressed envelope. Once we receive your completed forms, we will return a copy of each form to you for your records.

Very truly yours,

George J. Marinucci
Investigator
215-440-2636

EEOC-D-0193

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 170-2005-02819 |

| Delaware Department of Labor | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Jourdean S. Lorah | ▮▮▮▮▮ | |

| Street Address | City, State and ZIP Code |
|---|---|
| ▮▮▮▮▮▮▮▮▮ | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees. | Phone No. (Include Area Code) |
|---|---|---|
| TETRA TECH INC. | 101 - 200 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 56 West Main Street, Christiana, DE 19720 | |

| Name | No. Employees. | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | Earliest: 06/14/2005   Latest: 06/14/2005 |
| ☐ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ OTHER (Specify below.) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005. After I began my employment, I never received the on-the-job training that was promised. Younger employees recieved this training. On or about June 14, 2005, Respondent had my employer terminate my contract. I was replaced by a younger male.

II. I believe that I have been discriminated against because of my age▮▮▮▮ in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").

REDACTED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| _____   _____ Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC-D-0194

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  <br> ☒ EEOC | 170-2006-00048 |

| Delaware Department of Labor | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Jourdean S. Lorah** | | |

| Street Address | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Synerfac Agency** | **101 - 200** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **2 Reads Way; New Castle Corporate Commons; New Castle, DE 19720** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **06/14/2005**   Latest **06/14/2005**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I.  I was an employee of Synerfac (the "Respondent"), an employment agency, and was contracted to work at Tetra-Tech, Inc. beginning in or about March 2005.  After I began my employment, I never received the on-the-job training that was promised.  Younger employees recieved this training.  On or about June 14, 2005, Respondent terminated my employment.  I was replaced by a male.**

**II.  I believe that I have been discriminated against because of my age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA").**

REDACTED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT <br><br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

_____     _____
Date                          *Charging Party Signature*

EEOC-D-0195

**FAX:**   215-440-2604

**TO:**   Mr. George Marinnuci
          Equal Employment Opportunity Commission
          21 South 5Th. Street   Suite 400
          Philadelphia, Pennsylvania  19106-2515

**FROM:**   Jourdean Lorah

REDACTED

**DATE:**   October 10, 2005

**NUMBER OF PAGES INCLUDING COVER PAGE:**   2

**COMMENTS:**   Per conversation on October 6, 2005.

Changes that need to be included on my charge of discrimination.

Charge Number  170-2005-02819

Jourdean Lorah

10/10/05

EEOC-D-0196

Jourdean Lorah

███████████████████

REDACTED

October 8, 2005

Equal Employment Opportunity Commission
Attention: George Marinucci
21 South 5th Street   Suite 400
Philadelphia, Pennsylvania   19106-2515

EEOC Charge Number 170-2005-02819

Dear Mr. Marinucci,

    Per conversation on October 6, 2005, I did receive the charge of discrimination per number above. As suggested, I have disregarded this charge until another charge is drafted. Please include disability on the basis of discrimination. I provided the documentation which supports my disability ████████████ Ms. Wjasow/Diane Decoursey. I am protected under the laws of OSHA ████████████ concerning this type of disability. My colleagues referred to me as someone with a severe disability or someone who is contagious. My disability ████████████ I am not a risk nor do I need an accommodation ████████████ See documentation which refers to specific dates regarding the disability.

    In addition to the disability, I never receive my training. The agreement was six months of training and a three month probationary period. Synerfac was certain I would be working for Tetra Tech within a couple of months. Younger employees were hired after me who received their training and who were then selected to work for Tetra Tech. One intern named Jordan (younger employee) was given an entire work station within a cubicle (3rd Floor) directly after she was hired. Refer back to the documentation regarding my gender (sex) and the name Jordan. Additional information can be obtained to prove this discrimination. The discrimination is a continuing violation and my supervisor John Traynor and an employee of Tetra Tech suggested I take a course in CAD. I enrolled in the course and I was incessantly harassed at the college campus on the evenings I attended class. I included the documentation concerning the dean at Delaware Tech. My supervisor's name was mentioned, a Tetra Tech employee's name was mentioned and Synerfac was also mentioned. I will be contacting the dean regarding my claim at the campus concerning my rights which have been violated. As of October 5, 2005, the police have been notified.
    Your cooperation and consideration is most appreciated.

Sincerely,

Jourdean Lorah   10/10/05
Jourdean Lorah

EEOC-D-0197



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5ᵗʰ Street, Suite 400
Philadelphia, PA  19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

October 5, 2005

REDAC▮▮▮

Ms. Jourdean Lorah



REDACTED

**Our Reference:**     EEOC Charge Number 170-2005-02819
Jourdean Lorah v. Tetra Tech, Inc.

Dear Ms. Lorah:

Enclosed is the charge of discrimination which was drafted based upon information which you previously provided to the EEOC.  Please review the charge and, if it is accurate, please sign and date the first page at the bottom where highlighted.  If you find that there are any errors or significant changes to be made, please contact me at once at (215) 440-2636.  Return all completed forms to me using the enclosed stamped, self-addressed envelope. Once we receive your completed forms, we will return a copy of each form to you for your records.

Very truly yours,

George J. Marinucci
Investigator

EEOC-D-0198

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 170-2005-02819 |

| Delaware Department of Labor | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Jourdean S. Lorah** | ▓▓▓▓▓▓ | |

| Street Address | City, State and ZIP Code |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓ | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **TETRA TECH INC.** | **101 - 200** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **56 West Main Street,  Christiana, DE 19720** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest            Latest |
| ☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)* | 06/14/2005      06/14/2005 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.  I worked for Tetra-Tech, Inc. (the "Respondent") until I was fired on June 14, 2005.  I was fired for unspecified performance problems.

II.  I believe that I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and because of my age, ▓▓▓ in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") in that a younger male employee was hired to take over my position.

REDACTED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| _____  _____ Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

 **TETRA TECH, INC.**

About Tetra Tech | Solutions & Services | Investor Relations

**About Tetra Tech**

Fact Sheet

History

Office Locations

Subsidiaries

Management Team

Social Responsibility

Contact Us

# Contact Us

For more information, please email the following Tetra Tech departments:

General company information or questions:

General Information

Investor Relations inquiries:

Investor Relations

Employment opportunities:

Job Opportunities

Questions or comments on our web site:

Site Support

Our corporate headquarters are located at:

3475 East Foothill Boulevard
Pasadena, CA 91107
(626) 351-4664
(626) 351-5291 (fax)

About Tetra Tech | Investor Relations | Solutions & Services | Careers
Contact Us | Site Map | Privacy Statement | Terms of Use

© 2005 Tetra Tech, Inc., All Rights Reserved

EEOC-D-0200

**TETRA TECH, INC.**

Contact Us | Site Ma



| About Tetra Tech | Solutions & Services | Investor Relations |

### About Tetra Tech

Fact Sheet

History

Office Locations

Subsidiaries

Management Team

Social Responsibility

Contact Us

# Janis B. Salin

*Vice President, General Counsel and Secretary*

Ms. Salin joined us in February 2002 and was named Vice President and General Counsel in November 2002. She was elected Secretary in November 2003. From 1985 to 2002, Ms. Salin was a Principal with the law firm of Riordan & McKinzie (which was acquired by Bingham McCutchen LLP in July 2003), and served as Managing Principal of that firm from 1990 to 1992. She served as our outside counsel from the time of our formation in 1988. Ms. Salin holds B.A. and J.D. degrees from the University of California at Los Angeles.

### Related Links

Management Tea

Board of Director

Board Committee

About Tetra Tech | Investor Relations | Solutions & Services | Careers
Contact Us | Site Map | Privacy Statement | Terms of Use

© 2005 Tetra Tech, Inc., All Rights Reserved

**EEOC-D-0201**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2632 & 2805

## EEOC APPOINTMENT

NAME _____Gourdeen Lorah_____

INQUIRY NUMBER _____170-2005-02819N_____

Your scheduled appointment time to have an intake interview with an Investigator concerning the possible filing of a charge of employment discrimination is as follows:

DAY: _Tuesday_    DATE: _July 26, 2005_    TIME: _11:30 a.m_

YOUR INTERVIEWER: _____Mr. Marinucci_____

In order to facilitate the charge taking procedure, you should bring with you relevant notes, documents or letters as well as names, addresses and telephone numbers of any witnesses or other materials that you believe may support your charge. Also, if you have been given a questionnaire by EEOC, please complete and bring this with you.

**Please note that the intake appointment is normally scheduled for two hours.** This length of time is needed to insure that all intake processing and counseling can be completed without the need for you to return again to the office. Therefore, please schedule your other appointments accordingly to permit you to keep this EEOC appointment. In addition, please insure that you make travel and parking arrangements suitable to enable you to remain in the office during the allotted interview time.

PLEASE REPORT ON TIME AS INDICATED ABOVE. <u>PLEASE NOTE THAT IF YOU ARRIVE MORE THAN 15 MINUTES AFTER THE SCHEDULED APPOINTMENT TIME, WE WILL MOST LIKELY BE UNABLE TO KEEP YOUR APPOINTMENT TIME AVAILABLE FOR YOU AND YOUR APPOINTMENT WILL NEED TO BE RESCHEDULED.</u> IF YOU CANNOT KEEP YOUR APPOINTMENT, PLEASE CALL AS SOON AS POSSIBLE TO CANCEL THAT APPOINTMENT AND ARRANGE FOR RESCHEDULING. <u>YOU SHOULD NOTE</u> THAT A RESCHEDULED APPOINTMENT DATE WILL PROBABLY BE 4-6 WEEKS AFTER YOUR ORIGINAL APPOINTMENT. THUS, IT IS TO YOUR ADVANTAGE TO KEEP THE ORIGINAL APPOINTMENT. CALLS FOR CANCELLATION AND SUBSEQUENT RESCHEDULING SHOULD BE MADE TO THE CHARGE RECEIPT/TECHNICAL INFORMATION UNIT AT (215) 440-2607. PLEASE STATE YOUR NAME, SPELL THE LAST NAME, GIVE THE DATE AND TIME OF THE PREVIOUS APPOINTMENT AND LEAVE A PHONE NUMB NUMBER WHERE YOU MAY BE REACHED DURING THE DAY. YOUR CALL WILL BE RETURNED AS SOON AS POSSIBLE.

Your signature below indicates your receipt of this document:

Signature: _____    Date: ____June 30, '05____

*Present this form to the Receptionist when you arrive at our office.*    *Rev. 3/7/05*

EEOC-D-0202

REDACTED

## CHARGE QUESTIONNAIRE

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on back before completing this form.

EEOC Use Only    Name (Intake Office
① 770-2005-02819 N

Please answer the following questions, telling us briefly why you believe you have been discriminated against in employment. An officer of the EEOC will talk with you after you complete this form.

Date of Birth ▇▇▇▇▇▇    Social Security Number ▇▇▇▇▇▇

*(Please Print)*

| | | | |
|---|---|---|---|
| NAME Mr./Ms. | JOURDEAN (First) | SARAH (Middle Name or Initial) | LORAH (Last) | DATE JUNE 20, 2005 |

ADDRESS ▇▇▇▇▇▇    TELEPHONE NO. (Include area code) ▇▇▇▇▇▇

CITY ▇▇▇▇▇▇    STATE ▇▇    ZIP ▇▇    COUN ▇▇

Please provide the name of an individual at a different address in your local area who would know how to reach you.

NAME _____    RELATIONSHIP _____    PHONE _____

ADDRESS _____    CITY _____    STATE _____    ZIP _____

I believe I was discriminated against by: (Check those that apply)

[✓] EMPLOYER    [ ] UNION (Give Local No.)    [✓] EMPLOYMENT AGENCY    [ ] OTHER (Specify)

APPROX NO. EMPLOYED BY THIS EMPLOYER    OVER 100

NAME SYNERFAC AGENCY
ADDRESS 2 READS WAY
NEW CASTLE CORPORATE COMMONS
CITY, STATE, ZIP NEW CASTLE, DE. 19720
MAIN TELEPHONE NUMBER 324-9400

NAME TETRA TECH INC.
ADDRESS 50 WEST MAIN ST.
CITY, STATE, ZIP CHRISTIANA, DE
MAIN TELEPHONE NUMBER

RECEIVED
05 JUN 20 PM 1:8
PHILADELPHIA DO.
EEOC

If you checked "Employer" above, are you now employed by the Employer that you believed discriminated against you?    NO

YES: From _____ (date)    NO: I applied for ____ ✓ (position) on _____ (Date)    OR: I was employed as _____ (position) until _____ (date) I was _____ (laid off, fired, etc.)

_____ (current position)

What action was taken against you that you believe to be discriminatory? What harm, if any, was caused to you or others in your work situation as a result of that action? (if more space is required, use reverse.)

I HAD AN AGREEMENT WITH MY SUPERVISOR @ TETRA TECH, INC.
IN CHRISTIANA, DE. TO BE HIRED AS A SURVEY ASSISTANT
AS WELL AS AN ADMINISTRATIVE ASSIST. I WAS ALSO TOLD THAT I
WOULD RECEIVE SIX MONTHS OF TRAINING BEFORE A DECISION
OR A REVIEW CONCERNING A POSITION AS AN EMPLOYEE OF TETRA TECH
DURING MY CONTRACT W/ TETRA TECH (THROUGH SYNERFAC)
I WAS DEMOTED FROM A SURVEY ASSIST. TO AN OFFICE ASSIST.
WHEN I BEGAN THE CONTRACT I HAD A COMPUTER AND A DESK.
THEN I WAS ASKED TO SHARE A WORKSTATION BECAUSE A MALE

WHAT WAS THE MOST RECENT DATE THE HARM YOU ALLEGED TOOK PLACE? JUNE 14, '05

EEOC-D-0203

EEOC Form 283 (10/94)

JUNE 10, '05

Do you believe this action was taken against you because of: (check the one(s) that apply and specify your race (if you checked race), your religion (if you checked religion), your national origin (if you checked national origin) or your disability (if you checked disability))

☐ Race          ☐ Religion          ☐ National Origin          ☑ Age

☑ Disability          Other (explain)  RETALIATION

If you checked any block(s) above, explain why. If you did not check any block above, explain the reason(s) why you believe the action was taken against you.

EMPLOYEE WHO WAS YOUNGER THAN ME NEEDED MY DESK.
SEVERAL EMPLOYEES KNEW THAT I WAS OLDER. THE
YOUNGER EMPLOYEES WHO WERE HIRED AFTER ME RECEIVED
A DESK AND TRAINING. I WAS ALSO REFERRED AS JORDAN
JORAN WHO IS A NINETEEN YR. OLD MAN. I CORRECTED
MY COLLEAGUES, BUT THEY CONTINUED TO HARASS ME AND
LOWER MY DIGNITY. THEY VARIOUS COLLEAGUES REFERRED
TO ME AS SOMEONE WHO WAS ILL W/ A CONTAGEOUS ILLNESS.
THIS WAS UNTRUE. MY SUPERVISOR WAS AWARE OF THE
RIGHT TO SUE LETTER THAT I HAD RECEIVED. HE ALSO KNEW
THAT I WAS NOT REPRESENTED BY AN ATTORNEY.

Have you sought assistance about the action you think was discriminatory from any agency, from your union, an attorney, or from any other source?          ☐ No          ☑ Yes          (If answer is yes, complete below.)

NAME OF SOURCE ASSISTANCE  NO REPRESENTATION / ECONOMIC REASONS  DATE  MAY '05

RESULTS IF ANY:  I CAN NOT AFFORD AN ATTORNEY.

Have you filed a complaint about the action you think was discriminatory with any other Federal, State, or Local Government Anti-discrimination agency?          ☐ No          ☑ Yes          (If answer is yes, complete below.)

NAME OF SOURCE ASSISTANCE  DEPT. OF LABOR - ONE YR. AGO  DATE

RESULTS IF ANY:  RIGHT TO SUE- STATUE OF LIMITATIONS /OVER

Have you filed an EEOC Charge in the past?          ☐ No          ☑ Yes          (if answer is yes, complete below)

APPROX. DATE FILED  APRIL 26, '05          ORGANIZATION CHARGED  CREATIVE CONCEPTS          CHARGE NUMBER (IF KNOWN)  170 - 2005 - 00461

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE  Jordean Lorak          DATE  June 20, '05

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Form 283, Charge Questionnaire (12/93).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction. When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s).
4. ROUTINE USES. Information provided on this form will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over allegations of employment discrimination and to provide such charge filing counseling as is appropriate. Information provided on this form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. Information may also be disclosed to charging parties in consideration of or in connection with litigation.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. The providing of this information is   voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

Reverse Side of Form 283 (10/94)

EEOC-D-0204

Have you filed the harm you are alleging on the attached form with any agency?  Such as:

      The Pennsylvania Human Relations Commission

      The Philadelphia Commission on Human Relations

      The New Jersey Division on Civil Rights

      The Delaware Department of Labor

✓    Yes.  If so, approximate date ___LAST YEAR_____.

_____   No.

Do you have an appointment for an interview with one of the above agencies?   NO

   _____  Yes.  Date Scheduled Interview _____.

If yes to either question, with which agency _____.

If you fail to inform EEOC and we are notified by one of the above Agencies that you have filed a charge a del in the processing of your charge can result.

RECEIVED - EEOC
PHILADELPHIA D.O.
05 JUN 20 PM 1:48

**EEOC-D-0205**

ADR – R. Smith
12/6/05

 **TETRA TECH, INC.**

December 30, 2005

George King, Jr.
Supervisory Investigator
Philadelphia District Office
21 South 5th Street, Suite 400
Philadelphia, PA 19106

Re:    Charge No. 170-2005-02819

Dear Mr. King:

This letter constitutes the written statement of position for Tetra Tech Division (Tetra Tech) in the above-captioned Notice of Charge. As the facts set forth below make clear, there is no basis for Ms. Jourdean Lorah's allegation of discrimination on the basis of retaliation, gender, age or disability. Tetra Tech's employment decisions regarding Ms. Lorah were not motivated by retaliation, gender, age, disability or any other unlawful basis.

Tetra Tech wishes to cooperate with the department and its investigation into this matter. If you have further questions or need any additional information upon reviewing this response, please contact me at (626) 470-2516.

Sincerely,

Amy Clark
Human Resources Director
Tetra Tech Division

RECEIVED - EEOC
PHILADELPHIA.D.O.
06 JAN -3 AM 10: 46

3475 East Foothill Boulevard, Pasadena, CA 91107
Tel 626.351.4664 Fax 626.351.5291

EEOC-D-0206

**REQUEST FOR INORMATION AND REQUEST FOR POSITION STATEMENT**
by Tetra Tech Division

Charge number: 170-2005-02819

**PART I – GENERAL INFORMATION**

1. **State the correct name and address of the specific installation charged.**

   Tetra Tech Division
   56 West Main Street
   Christiana, DE 19702

2. **Briefly identify the primary function of the establishment charged and where incorporated.**

   The primary function of the establishment charged is architecture and engineering consulting. Tetra Tech was incorporated in Delaware.

3. **State the number of persons (including supervisors and managers and part-time employees) employed at the specific installation charged and by the organization as a whole on the most recent payroll date.**

   Installation – 81
   Organization - 797

EEOC-D-0207

**PART II – POSITION STATEMENT**

Provide a position statement responding to the facts and circumstances surrounding each alleged discriminatory act, and describe and explain your reasons for taking such actions, along with applicable supporting documentation.

I.     **"I was an employee of Synerfac, an employment agency, and was contracted to work at Tetra-Tech, Inc. (the "Respondent") beginning in or about March 2005."**

Tetra Tech acknowledges that Ms. Lorah was brought in to work for Tetra Tech through the temporary agency Synerfac on March 22, 2005.

**"After I began my employment, I never received the on-the-job training that was promised."**

Tetra Tech denies this allegation. Ms Lorah was brought in to provide administrative assistance in the Survey Department. During her interview with John Traynor, Ms. Lorah was presented with a listing of job responsibilities for the position of Survey Assistant – Office (see Attachment A). At that time Ms Lorah admitted that she had no knowledge of AutoCADD software and Mr. Traynor said we would provide basic training for her in that program.

Once on the job, Ms. Lorah was partnered with another employee, Casey Grabowski, for a full-day training session in AutoCADD. At that time, Ms. Lorah's computers skills were assessed as being below the remedial level. She was given some additional self-study lessons for AutoCADD as well as the Illustrated Guide for Windows 2000 to assist with basic questions on Word and Excel. Additionally, Mr. Traynor and others made themselves available to answer Ms Lorah's computer related questions.

**"Younger employees received this training including a younger female who was hired by the Respondent."**

Tetra Tech denies that there was a younger female employee in the survey department in a similar position to Ms. Lorah. The only other female in the department, Erin Moran, is an Engineer with a different level and scope of job responsibility than Ms. Lorah. Ms Moran already possessed the basic skills in AutoCADD was provided with more advanced training based on her job responsibilities (see Attachment B).

**"On or about June 14, 2005, Respondent had my employer terminate my contract."**

Tetra Tech acknowledges that on June 14, 2005, Synerfac terminated Ms. Lorah's assignment with Tetra Tech per Tetra Tech's request.

**"I was replaced by a younger male."**

Tetra Tech denies that Ms. Lorah was replaced by a younger male. The duties previously assigned to Ms Lorah were reassigned to a female. Tetra Tech is not aware of this individuals age as she is an employee of Synerfac temporary agency on assignment at Tetra Tech.

EEOC-D-0208

REDACTED

II.    **"I believe that I have been discriminated against because of my age, ▓▓▓ in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and/or because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and/or because of my disability in violation of the Americans with Disabilities Act of 1990 ("ADA")."**

Tetra Tech denies all allegations in this statement. While Ms. Lorah was working with Tetra Tech, we were not aware of Ms. Lorah's age, or of any disability she may have. Additionally, the duties previously assigned to Ms. Lorah are now assigned to a female.

**"During my interview, a Respondent supervisor asked me if I had a disability."**

During the interview with Ms. Lorah, Mr. Traynor asked if there was anything that might prevent Ms. Lorah from being able to perform the job as outlined. In response to this question, Ms. Lorah did not disclose any disability.

**"After I began working as a contract employee at Tetra-Tech, my supervisor asked me if I had any children and if I had ever been married."**

Tetra Tech denies that Ms. Lorah was asked by her supervisor if she had any children or had ever been married.

**EEOC-D-0209**

**PART III – RESPONSE TO THE CHARGE**

1. **Copies of all Respondent documents, correspondence or memoranda, whether initiated by Respondent, by Charging Party or by other sources, concerning the Charging Party insofar as they relate to the allegations contained in the charge.**

   Copies of the following are attached (see Attachment C);
   - Ms. Lorah's cover letter and resume
   - Notes taken by Ms. Susan Brewer regarding complaints made by Ms. Lorah and Tetra Tech's response to those complaints.
   - A notice Ms. Lorah requested to be posted in the Survey Department.

2. **Copies of the applicable policies or procedures relating to each and every one of the act(s) alleged to be discriminatory.**

   Attached is Tetra Tech's Corporate EEO Statement and Code of Employee Conduct (see Attachment D).

3. **A listing by name and job title of all officials who participated in or made decisions relative to the issues raised in the charge and what role was played by each named official. Provide statements from each person in response to all allegations of discriminatory treatment for which that official was in any manner involved.**

   The following individuals participated in the decisions relative to this complaint:

   - Susan Brewer, Manager General Services and Administration - Ms Brewer was responsible for coordinating with Synerfac temporary agency and investigating the complaints raised by Ms. Lorah.

   - Bob Maffia, Location Manager - Mr. Maffia is responsible for managing the Christiana, DE office. He was made aware of the complaints raised by Ms. Lorah and that Ms. Brewer was unable to substantiate her complaints. Mr. Maffia and Ms. Brewer together decided to terminate Ms. Lorah's assignment with Tetra Tech through Synerfac temporary agency.

   - John Traynor, Survey Department Manager - Mr. Traynor was the supervisor of the Survey Department and the person to whom Ms. Lorah reported.

   All of the above individuals state that the decisions regarding Ms. Lorah's assignment with Tetra Tech were not based on her age, gender or disability and instead were based on her inability to work well with others in the survey department.

4. **For any person(s) who allegedly received more favorable treatment than Charging Party (as identified on the face of the charge or otherwise), provide documents which show how each person was treated and the reason(s) for such treatment.**

   Ms. Lorah's complaint alleges that a younger female employee received on-the-job training that was denied Ms. Lorah. As our position statement outlines, there

were no other younger female employees in the Survey Department in a similar position to Ms. Lorah. The only other female in the department, Erin Moran, is an Engineer. Ms. Moran's position required a higher level of proficiency in computer drafting programs including AutoCADD. Since Ms. Moran already possessed the basic skills in this software program (see Attachment E), she received more advanced on-the-job training to accommodate her job responsibilities.

5. **For charges that include an allegation of discriminatory termination, layoff or demotion, provide documents to show the replacement's: a) name; b) date of hire, transfer or promotion into the position; c) relevant qualifications for the position; and d) starting salary.**

Ms. Lorah's position was replaced by Ms. Linda Whiteford on June 20, 2005. Ms. Whiteford was contracted through Synerfac temporary agency at a rate of $16.50 per hour. Ms. Whiteford's qualifications are outlined in her resume (see Attachment F).

6. **Not Applicable**

7. **Not Applicable**

8. **For charges which include an allegation of disability-based discrimination, provide documents which establish Respondent's understanding of the nature of the disability(ies) and any work-related restrictions or limitations.**

Tetra Tech was not aware of Ms. Lorah's disability or any work-related restrictions or limitations.

9. **For charges that include an allegation of retaliation:**

   a. **Provide a copy of any grievance, complaint, formal charge or any other written concern raised by Charging Party at any time during his/her employment that includes an allegation of discrimination (with respect to Charging Party or on behalf of other persons) based on race, color, religion, sex, national origin, age or disability.**
   b. **Provide a summary of any similar allegation not reduced to writing by Charging Party or his/her representative.**
   c. **Specify each management official identified in Part III(3) who was aware of any or all of the complaints identified in parts (a) and (b) above and the approximate date he/she first became aware of each such complaint(s).**

Attached are the notes taken by Ms. Susan Brewer regarding Ms. Lorah's complaints and Tetra Tech's response to said complaints (see Attachment C). Mr. John Traynor was first made aware of Ms. Lorah's complaint by Ms. Lorah on April 29, 2005. Ms. Lorah then contacted Ms. Susan Brewer on May 11, 2005 regarding the issue. Ms. Brewer informed Mr. Bob Maffia on approximately May 16, 2005.

10. **If Charging Party has raised any or all of the allegations contained in this charge with any other internal or external source or agency, provide a copy of the**